IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448(ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

**EMERGENCY MOTION OF DEBTORS FOR ENTRY OF AN ORDER APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF A PORTION OF THE DEBTORS' ASSETS, (B) PROCEDURES FOR THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) THE FORM AND MANNER OF NOTICE OF THE SALE HEARING AND ASSUMPTION PROCEDURES, (D) PROCEDURES FOR SELECTION OF ONE OR MORE STALKING HORSE BIDDERS, AND (E) DATES FOR AN AUCTION AND SALE HEARING**

> **Emergency relief has been requested. Relief is requested not later than 9:00 a.m. (Prevailing Central Time) on September 23, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on Monday, September 23, 2024, at 9:00 a.m. (Prevailing Central Time) in Courtroom 400, 4th Floor, 515 Rusk Avenue, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

> **access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference code number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge 's home page. The meeting code is "JudgePerez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):

### Relief Requested

1. The Debtors hereby seek entry of an order (the "Bidding Procedures Order"):

   (a) approving the proposed bidding procedures attached as Annex 1 to the Bidding Procedures Order (the "Bidding Procedures") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of their assets at the Temple location (the "Assets"), through one or more sales of the Assets (each, a "Transaction");

   (b) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

   (c) approving the form and manner of notice of the Auction (defined below) and sale hearing (the "Sale Notice") and Assumption and Assignment Procedures (the "Assumption Notice");

   (d) approving the procedures governing the Debtors' selection of one or more stalking horse bidders (each, a "Stalking Horse Bidder"), if any, and the provision of Bid Protections (defined below) to such Stalking Horse Bidder(s), if necessary;

   (e) scheduling (1) a date for an auction if the Debtors receive one or more timely and acceptable Qualified Bids (defined below) (the "Auction") and (2) a final hearing (the "Sale Hearing") to approve one or more Transactions, as necessary; and

   (f) granting related relief.

**Jurisdiction and Venue**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested in this Motion are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and section B of Procedures for Complex Chapter 11 Cases in the Southern District of Texas.

**Background**

5. On August 24 and August 29, 2024 (the "Petition Dates"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The cases are jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Debtors are a technology company. The Debtors' main activity involves utilizing proprietary technology to self-mine bitcoin, with the goal of increasing sustainability and cost-efficiency. The Debtors operate two datacenters in Texas: in Temple (the "Temple Site") and in Rockdale (the "Rockdale Site").

7. Information regarding the circumstances leading to the commencement of these chapter 11 cases and additional information regarding the Debtors' businesses and capital structure is set forth in the *Declaration of David Dunn in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), [Dkt. No. 35], which is incorporated by reference herein.[2]

### The Debtor's Prepetition Sale and Marketing Efforts

8. Beginning in April 2024, the Debtors engaged Quinn Emanuel to explore restructuring alternatives, and shortly thereafter, engaged Province to assist with related financial services. The Debtors additionally engaged with parties both inside and outside the corporate structure to relieve liquidity pressures, including potential third-party financing providers and potential asset purchasers. *See* First Day Decl., ¶ 15-16.

9. Through this process, two primary paths emerged: (i) a sale of certain assets of the Company that would provide liquidity to continue servicing the Debtors' debt, operate the Debtors' business, and fund ongoing litigation, and (ii) a chapter 11 case to consummate a comprehensive restructuring, including debtor-in-possession financing provided by a third-party DIP provider. The Debtors and their advisors continued to explore both options in parallel, seeking to arrive at a deal that was as beneficial as possible for the Company and its stakeholders. *Id.* ¶ 18-19.

10. The Company also engaged in marketing efforts to sell its Temple Site mining facility and received a preliminary letter of intent for a $105 million cash acquisition. However, the risks associated with pending litigation made it impossible to consummate the deal before the Petition Date. *Id.* ¶ 20.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**The Debtor's Proposed Sale Process**

11. Through the Bidding Procedures outlined in this Motion, the Debtors intend to build upon the prepetition efforts by continuing the marketing process with interested parties contacted during the prepetition process as well as expanding the outreach to additional potential purchasers, including those who may be interested in only certain business segments or a subset of the Assets. The Debtors will entertain all viable proposals and are not committed to any specific path except to maximize recoveries for their creditors and to preserve their going concern value. This postpetition marketing process for the Assets provides the best path forward to consummating a value-maximizing transaction.

12. A summary of the proposed transaction timeline is set forth below:

**Transaction Milestones**

| Date and Time (all in prevailing Central Time) | Event or Deadline |
|---|---|
| September 23, 2024, at 10:00 a.m. (CT) | Hearing on Approval of the Bidding Procedures |
| October 4, 2024 | Deadline to File Assumption and Assignment Notice |
| November 8, 2024 at 5:00 p.m. (CT) | Bid Deadline |
| November 11, 2024 at 10:00 a.m. (CT) | Determination of Qualified Bids |
| November 14, 2024 at 1:30 p.m. (CT) | Auction |
| Within one (1) business day of conclusion of Auction | Deadline to Serve Post-Auction Notice |
| November 18, 2024 at 5:00 p.m. (CT) | Deadline to File Contract Objections |
| November 19, 2024 at 5:00 p.m. (CT) | Deadline to File Objection to Sale |
| November 21, 2024 | Deadline to File Reply to Objections |
| November 26, 2024, subject to Court availability | Sale Hearing |

13. The Debtors respectfully submit that the timeline set forth above is necessary under the circumstances of the Chapter 11 Cases. Such timeline provides a seventy-one day period between the Petition Date and the Bid Deadline and a fifty-two day period between the filing of the motion and the Bid Deadline, and is comparable to other timelines recently approved in this district. *See, e.g.*, *In re Conn's, Inc.*, Case No. 24-33357(ARP) (Bankr. S.D. Tex. August 20, 2024) (approving a sale timeline that provided an approximate six-week period between the filing of the motion and the bid deadline); *In re Steward Health Care Sys. LLC*, Case No. 24-90213 (CML) (Bankr. S.D. Tex. May 15, 2024) (approving a sale timeline that provided an approximate six-week period between the filing of the motion and the bid deadline); *In re Eiger Pharms., Inc.*, Case No. 24- 80040 (SGJ) (Bankr. N.D. Tex. Apr. 5, 2024) (approving a sale timeline that provided an approximate two-week period between the filing of the motion and the bid deadline); *In re Impel Pharms. Inc.*, Case No. 23-80016 (SGJ) (Bankr. N.D. Tex. Jan. 11, 2024) (approving a sale timeline that provided a five-week period between the filing of the motion and the bid deadline); *In re AppHarvest Prods., LLC*, Case No. 23-90745 (DRJ) (Bankr. S.D. Tex. Aug. 25, 2023) (approving a sale timeline that provided a four-week period between the filing of the motion and the bid deadline).

**A.     The Debtor's Assets**

14. As of the Petition Date, the Debtors' Assets included, but were not limited to, the following: Bitcoin mining infrastructure, leases, power agreements, colocation agreements, and intangibles.

15. The Assets add up to a collection of unique business opportunities that can be evaluated individually or packaged together. The Debtors' whole business may also be sold as a going concern in the event such a sale would generate the highest and/or best return for the estates.

B.  **Bidding Procedures**

16.  The Debtors believe the proposed Bidding Procedures summarized below, and attached as <u>Annex 1</u> to the Bidding Procedures Order, are fair and appropriate. The Bidding Procedures provide, among other things, the following:

- On or prior to November 8, 2024 (the "Bid Deadline"), potential buyers shall be required to submit written binding bids (each, a "Bid," and bids satisfying the qualification requirements in the Bidding Procedures, "Qualified Bids");

- Qualified Bids may be for substantially all or any portion of the Assets;

- Qualified Bids must be accompanied by a deposit equal to 10% of the purchase price;

- Qualified Bids must be accompanied by evidence of committed financing or other financial ability to consummate the transaction in a timely manner. If the bidder is an entity formed for the purpose of the proposed Transaction, the Debtors must be provided evidence of the approval of the Bid by the bidder's equity holders;

- Qualified Bids shall not contain any financing, due diligence (other than customary diligence relating to environmental and title matters) or internal approval contingencies to closing on the proposed transaction;

- To the extent a Stalking Horse Bidder is selected prior to the Bid Deadline, each Qualified Bid for any Assets subject to the Stalking Horse Agreement (defined below) (alone or combined with Bids for other Assets subject to the Stalking Horse Agreement) must exceed the Stalking Horse Bidder's Bid by at least three percent (3%);

- Each subsequent overbid at the Auction must exceed the prior high bid by 1% plus—in the event that the Debtors have entered into a Stalking Horse Agreement with respect to the Assets to which the overbid relates—the aggregate amount of Bid Protections (including any break-up fees and/or expense reimbursements) under such Stalking Horse Agreement;

- At the conclusion of the Auction, the Debtors shall select in consultation with the DIP Secured Parties (except to the extent that the DIP Secured Parties or their affiliates are a Bidder), the overall highest or otherwise best Bid or Bids for their respective Assets (each such Bid, a "Successful Bid," and the Bidder submitting each such Successful Bid, a "Successful Bidder") in accordance with the Bidding Procedures. The Debtors shall also select in consultation with the DIP Secured Parties (except to the extent that the DIP Secured Parties or their affiliates are a Bidder) the next highest or otherwise best Bid or Bids at the Auction as the "Backup Bid(s)" and the Bidder(s) submitting such Backup Bid(s), as the "Backup

Bidder(s)" in accordance with the Bidding Procedures; *provided*, that such Backup Bid shall be subject to Court approval in connection with the Court's approval of the Successful Bid.  The Backup Bidder(s) shall be required to keep the Backup Bid(s) open and irrevocable until the earlier of 5:00 p.m. (Central Time) on the date that is twenty-five (25) business days after the date of entry of the Sale Order, or the date of the closing of the Transaction with the Successful Bidder;

- The Debtors shall retain the right (in consultation with the DIP Secured Parties, except to the extent that the DIP Secured Parties or their affiliates are a Bidder) to modify the Bidding Procedures as they deem appropriate to serve the best interest of the estate; and

- Nothing in the Bidding Procedures will preclude a bidder from submitting a Qualified Bid in the form of a plan of reorganization and it being understood that such Bid may be determined by the Debtors (in consultation with the DIP Secured Parties, except to the extent that the DIP Secured Parties or their affiliates are a Bidder) to be a Qualified Bid, Stalking Horse Bid, Successful Bid, or Backup Bid.

**C.     Stalking Horse Bidder(s), Related Bid Protections and Purchase Agreement(s)**

17.     The Bidding Procedures provide that the Debtors may, in consultation with the DIP Secured Parties (except to the extent that the DIP Secured Parties or their affiliates are a Bidder), enter into a stalking horse agreement (a "Stalking Horse Agreement"), subject to approval by the Court and higher or otherwise better offers at the Auction, with any Stalking Horse Bidder to establish a minimum Bid at the Auction with respect to all or any portion of the Assets.  A Stalking Horse Agreement may provide for payment of break-up fees or reimbursement of reasonable documented expenses (the "Bid Protections").

18.     The Bidding Procedures provide that in the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall file with the Court and provide to interested parties the Stalking Horse Agreement upon request.

**D.     Sale Notice**

19.     The Debtors request that the Court approve the form of Sale Notice attached as Annex 2 to the Bidding Procedures Order.  The Debtors submit that service of the Sale Notice as

set forth below is proper and sufficient to provide notice of the Auction, the Sale Objection Deadline and the Sale Hearing to all known and unknown parties.

20. The Debtors propose that within five (5) business days after the entry of the Bidding Procedures Order, the Debtors serve the Sale Notice, the Bidding Procedures Order and the Bidding Procedures, by first-class mail, postage prepaid, upon: (i) to the best knowledge of the Debtors' management, all entities that have expressed written interest in a Transaction with respect to all or substantially all of the Assets within the past six (6) months; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (iii) the United States Trustee; (iv) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (v) all parties entitled to notice pursuant to Bankruptcy Local Rule 2002-1 and 6004; and (vi) all known creditors of the Debtors, including their contract counterparties; provided, however, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

**E.     The Assumption and Assignment Procedures Are Appropriate and Should Be Approved**

21. The Debtors also request that the Court approve the form of assumption notice (the "Assumption Notice") attached hereto as Annex 3 to the Bidding Procedures Order. The Debtors submit that service of the Assumption Notice on the Counterparties (as defined below) is proper and sufficient to provide notice to the Counterparties of the Assumption and Assignment Procedures.

22. To facilitate the sale Transactions, the Debtors seek authority to assume and assign the Designated Contracts to the Successful Bidder(s) in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are as follows:

- On or prior to October 4, 2024 (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty,"

and collectively, the "Counterparties") to a Designated Contract, the Assumption Notice.

- The Assumption Notice shall include, without limitation, a list of Designated Contracts expected to be assumed and assigned (the "Designated Contract List") and the cure amount (each, a "Cure Cost"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under Bankruptcy Code Section 365(b)(1)(A) and (B) for each of the Designated Contracts.  If a Counterparty objects to the Cure Cost, the Counterparty must file with the Court and serve on the Contract Objection Notice Parties (as defined below) a written objection (a "Contract Objection") on or before the Contract Objection Deadline (as defined below).

- Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and Bankruptcy Local Rules; (iii) be filed with the Clerk of the Court on or before 5:00 p.m. (Central Time) on November 18, 2024 (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Recipients; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under Bankruptcy Code Sections 365(b)(1)(A) and (B) for the applicable Designated Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

- The "Objection Recipients" are as follows: (A) the Debtors, Attn.: Charles Topping, 2617 Bissonnet Street, Suite 234, Houston, TX 77005; (B) counsel to the Debtors, Quinn Emanuel Urquhart & Sullivan LLP, 700 Louisiana Street, Suite 3900, Houston, TX 77002, Attn.: Patricia B. Tomasco; (C) The Province Firm, 445 Park Ave Suite 10c, New York, NY 10022, Attn.: Michael Robinson; (D) counsel to the DIP Secured Parties, Orrick Herrington & Sutcliffe LLP, 51 West 52nd Street, New York, New York 10019, Attn.: Robert Trust, and (E) the U.S. Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn.: Ha M. Nguyen.

- If, after the Assumption Notice Deadline, additional executory contracts or unexpired leases of the Debtors are determined to be Designated Contracts in connection with such Transaction or the Debtors seek to modify the previously stated Cure Cost associated with any Designated Contract, as soon as practicable thereafter and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with the Court and serve, by overnight delivery on the applicable counterparties, a revised Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that the revised Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, (b) two (2) days prior to the Sale Hearing in the event that the revised Assumption Notice was filed and served at least seven (7) days prior to the commencement of the Sale Hearing, and (c) two (2) hours prior to the commencement of the Sale Hearing in

- the event that such Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing.

- As soon as practicable after the Auction and in no event less than one (1) business day before the date of the Sale Hearing, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties a notice substantially in the form attached as <u>Annex 4</u> to the Bidding Procedures Order (the "Post-Auction Notice")[3] identifying the Successful Bidder(s), and the Counterparties shall file any Contract Objections solely on the basis of adequate assurance of future performance by the Successful Bidder (each, an "Adequate Assurance Objection") not later than two (2) hours prior to the commencement of the Sale Hearing.

- At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder(s) of only those Designated Contracts that have been selected by such Successful Bidder(s) to be assumed and assigned (collectively, the "Selected Designated Contracts"). The Debtors and their estates reserve any and all rights with respect to any Designated Contracts that are not ultimately designated as Selected Designated Contracts.

- If no Contract Objection is timely received with respect to a Selected Designated Contract: (i) the Counterparty to such Selected Designated Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Selected Designated Contract, and be forever barred from asserting any objection with regard to such assumption and assignment; (ii) any and all defaults under the Selected Designated Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code Section 365(b)(1)(A) and (B) upon payment of the Cure Cost set forth in the Assumption Notice for such Selected Designated Contract; and (iii) the Cure Cost set forth in the Assumption Notice for such Selected Designated Contract shall be controlling, notwithstanding anything to the contrary in such Selected Designated Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Cost and shall be forever barred from asserting any other Claims related to such Selected Designated Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

- To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under Bankruptcy Code Sections 365(b)(1)(A) and (B) (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; <u>provided</u>, <u>however</u>, that if the Contract Objection relates solely to a Cure Dispute, the Selected Designated Contract may be assumed by the Debtors and assigned to

---

[3] The Debtors will file a form of Post-Auction Notice in advance of the Bidding Procedures hearing.

the Successful Bidder, <u>provided</u> that the cure amount the Counterparty asserts is required to be paid under Bankruptcy Code Sections 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

- Any party failing to timely file a Contract Objection with respect to the assumption and assignment of any Designated Contract or related Cure Cost specified on an Assumption Notice will be barred from objecting thereto, including asserting any additional cure or other default amounts against the Debtors or any of the Debtors' estates, or the Successful Bidder with respect to such Designated Contract, and shall be deemed to consent to the sale Transactions and the assumption and assignment of such Designated Contract.

## Basis for Relief

**A.      The Bidding Procedures Should Be Approved**

23.     Bankruptcy Code section 363 and Bankruptcy Rule 6004(f)(1) authorize a debtor to sell property outside the ordinary course of business by private sale or by auction.  Section 363(b) provides: "[t]he [debtor in possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

24.     Courts uniformly recognize that procedures intended to enhance competitive bidding maximize the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., In re Asarco, L.L.C.*, 650 F.3d 593, 603 (5th Cir. 2011), *aff'g* 441 B.R. 813, 824 (S.D. Tex. 2010) (affirming the bankruptcy court's approval of bid procedures designed to maximize the value of the debtor's estate); *In re Bigler*, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010) (providing that the two goals for a sale of the debtors' assets are "maximizing value for the estate and preserving the integrity of the judicial process"); *In re Integrated Res.,*

*Inc.,* 147 B.R. 650, 659 (S.D.N.Y. 1992) (bid procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

25. Procedures to sell assets must be evaluated under the business judgement standard, which affords considerable deference to the debtor's business judgement. *Asarco,* 650 F.3d at 601 ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard."); *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). "The business judgment standard in section 363 is flexible and encourages discretion." *ASARCO*, 650 F.3d at 601.

26. Here, the Bidding Procedures should be approved because they are reasonable and appropriate and are in the best interest of the Debtors' estates. The Debtors have used their business judgement to carefully design procedures that will maximize value received from the sale of the Debtors' Assets. Indeed, the Bidding Procedures will allow the Debtors to solicit offers in a controlled, fair, and open fashion that will encourage participation by financially capable bidders. They also provide the Debtors with the opportunity to consider competing bids and select the highest and/or best offer.

**B.    The Procedures and Notice Related to the Selection of Stalking Horse Bidders Should Be Approved**

27. The proposed procedures and notice for the selection of Stalking Horse Bidder(s), the execution of the Stalking Horse Agreement(s), the provision of Bid Protections to Stalking Horse Bidder(s), and Court approval of the foregoing are fair and reasonable under the circumstances. Entry into the Stalking Horse Agreements with Stalking Horse Bidder(s) ensures that the Debtors obtain the highest and/or best consideration for the Debtor Assets by setting a floor price that can be tested in the marketplace. *See In re John J. Peterson, Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009) ("The purpose and goal of any asset sale is to maximize the recovery

of value for the benefit of the bankruptcy estate. In many instances, a 'stalking horse' offer will facilitate a realization of that value, by establishing a framework for competitive bidding.").

C. **Approval of Bid Protections for Stalking Horse Bidders Is Appropriate**

28. To induce Stalking Horse Bidders to enter into Stalking Horse Agreements, setting floor prices for the Assets that may be tested in the marketplace, the Debtors may be required to provide Bid Protections. The Debtors seek authority to negotiate reasonable Bid Protections to include break-up fees or reimbursement of reasonable documented expenses. The terms of any Bid Protections negotiated by the Debtors as part of the Stalking Horse Agreement shall be noticed to all relevant parties as set forth in the Bidding Procedures.

29. Subject to providing notice to creditors of the specific Bid Protections and Court approval of the same, the Debtors believe that granting Bid Protections to Stalking Horse Bidder(s) is fair and reasonable. Courts have acknowledged that the approval of break-up fees and expenses in connection with substantial sales in bankruptcy is warranted to compensate an unsuccessful acquirer whose initial offer served as the basis and catalyst for higher or better offers. *See Matter of Bouchard Transportation Co., Inc.*, 74 F.4th 743, 751 (5th Cir. 2023) (affirming bankruptcy court's grant of $3.3 million in break-up fees and administrative expenses); *In re ASARCO*, 650 F.3d at 602, n.9; *In re JW Res., Inc.*, 536 B.R. 193, 195-96 (Bankr. E.D. Ky. 2015) (approving break-up fees totaling $375,000); *In re John J. Peterson*, 411 B.R. at 137 (approving break-up fee for expenses actually incurred as part of presenting a stalking horse offer); *In re Wintz Cos.*, 230 B.R. 840, 846 (B.A.P. 8th Cir. 1999) ("courts permit [break-up fees] provided the fees create an incentive for increased bidding in sales from bankruptcy assets"); *In re Hupp Indus., Inc.*, 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992).

30. In assessing whether to allow break-up fees under the business judgment standard, courts have considered: (a) whether the relationship of the parties who negotiated the break-up fee

is tainted by self-dealing or manipulation; (b) whether the fee hampers, rather than encourages, bidding; and (c) whether the amount of the fee is unreasonable when compared to the proposed purchase price. *In re Bouchard Transportation Co., Inc.*, 639 B.R. at 719.

31. Here, the Bid Protections satisfy the foregoing test. Any Stalking Horse Agreement will be the culmination of a marketing effort and part of a process undertaken by the Debtors to identify and negotiate a transaction that they believe to be the highest and/or best proposal for the Assets. Thus, granting Bid Protections will maximize the value realized for the benefit of the Debtors' estates, their creditors, and other parties in interest.

32. The Stalking Horse Bidder(s) will have expended, and will continue to expend, considerable time, money and energy in connection with the Transaction, including extensive good faith negotiations. The Debtors will only agree to a break-up fee of a fair and reasonable percentage of the proposed purchase price. Additionally, payment of the Bid Protections in the event that a purchaser outbids a Stalking Horse Bidder will not diminish the Debtors' estates. The Bidding Procedures require that any competing bid must exceed a Stalking Horse Bid by an amount in excess of the break-up fee and expense reimbursement. For the foregoing reasons, the Bid Protections will reflect a sound business purpose and be fair and appropriate under the circumstances.

### D. The Assumption and Assignment Procedures Are Appropriate and Should Be Approved

33. The Debtors believe an orderly sale must establish a process by which (i) the Debtors and the Counterparties can reconcile cure obligations, if any, and (ii) such Counterparties can object to the assumption and assignment of executory contracts and unexpired leases and any applicable Cure Costs.

34. The Debtors request that any Counterparty that fails to object to the proposed assumption and assignment of any Designated Contract be deemed to consent to the assumption and assignment of the applicable Designated Contract. *See, e.g., In re Borders Group, Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011); *In re Arena Media Networks, LLC*, 2010 WL 2881346, at *6 (Bankr. S.D.N.Y. 2010); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985).

35. The Assumption and Assignment Procedures are fair and reasonable, provide notice to the Counterparties to the Designated Contracts regarding the potential assumption and assignment of the Designated Contracts, and provide certainty to all parties in interest regarding their rights and obligations. Therefore, the Debtors request that the Court approve the Assumption and Assignment Procedures.

**E.     The Form and Manner of the Sale Notice Should Be Approved**

36. To facilitate the sale Transactions, the Debtors seek authority to assume and assign the Designated Contracts to the Successful Bidder(s) in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are as follows:

37. Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c)(1), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

38. The notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, together with service of the Sale Notice as provided for herein, constitutes good and adequate notice of the Auction and the Sale Hearing, and satisfies the applicable requirements of Bankruptcy Rules 2002, 6004, and 6006.

**Notice**

39. Notice of this Motion has been provided to: (a) the Office of the United States Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) the Internal Revenue Service; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

40. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Respectfully submitted this 17th day of September, 2024.

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

        */s/ Patricia B. Tomasco*
        Patricia B. Tomasco (SBN 01797600)
        Joanna D. Caytas (SBN 24127230)
        Cameron Kelly (SBN 24120936)
        Alain Jaquet (*pro hac vice*)
        700 Louisiana Street, Suite 3900
        Houston, Texas 77002
        Telephone: 713-221-7000
        Facsimile: 713-221-7100
        Email: pattytomasco@quinnemanuel.com
        Email: joannacaytas@quinnemanuel.com
        Email: cameronkelly@quinnemanuel.com
        Email: alainjaquet@quinnemanuel.com

        - and -

        Eric Winston (*pro hac vice*)
        Razmig Izakelian (*pro hac vice*)
        865 S. Figueroa Street, 10th Floor
        Los Angeles, California 90017
        Telephone: 213-443-3000
        Facsimile: 213-443-3100
        Email: ericwinston@quinnemanuel.com
        Email: razmigizakelian@quinnemanuel.com

        *Proposed Counsel to the Debtors and Debtors-In-Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ Patricia B. Tomasco
Patricia B. Tomasco

**Certificate of Service**

I, Patricia B. Tomasco, hereby certify that on the 17th day of September, 2024, a copy of the foregoing Motion was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Patricia B. Tomasco
Patricia B. Tomasco