IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| RHODIUM ENCORE LLC, *et al.*,[1] ) | Chapter 11 |
| ) | |
| Debtors. ) | Case No. 24-90448 (ARP) |
| ) | |
| ) | (Jointly Administered) |
| ) | |

**DIP AGENT'S REPLY IN SUPPORT OF FINAL APPROVAL OF DEBTORS'
PROPOSED DIP FINANCING AND USE OF CASH COLLATERAL**

Galaxy Digital, LLC (together with its affiliates, "***Galaxy***"), in its capacity as DIP Agent[2] under the $30 million senior secured, superpriority debtor-in-possession financing facility, for itself and on behalf of the DIP Lenders thereunder (together with the DIP Agent, the "***DIP Secured Parties***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***") of Rhodium Encore LLC ("***Rhodium Encore***") and its affiliated debtors (collectively, the "***Debtors***"), files this reply (this "***Reply***") to the objection (the "***Objection***") of the Valley Encore Creditors (the "***Valley Encore Creditors***") to the approval on a final basis of the *Emergency Motion of the Debtors for Entry of Interim and Final Orders (i) Authorizing the Debtors' Use of Cash Collateral, (ii) Granting Adequate Protection, (iii) Modifying the Automatic Stay, (iv) Scheduling a Final Hearing, and (v) Granting Related Relief* [Dkt. No. 37] (the "***Cash Collateral Motion***") and the

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511).  The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

[2] Capitalized terms not defined herein have the meanings given to them in the Motions or the Objection (each as defined below), as applicable.

1

*Emergency Motion of Debtors for Entry of Interim and Final Orders (a) Authorizing the Debtors to Obtain Postpetition Financing, (b) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (c) Modifying the Automatic Stay, (d) Scheduling a Final Hearing, and (e) Granting Related Relief* [Dkt. No. 38] (the "**DIP Motion**" and, together with the Cash Collateral Motion, the "**Motions**"). The DIP Agent joins in the Debtors' reply in support of the Motions (the "**Debtors' Reply**") in its entirety, and respectfully states as follows:

## REPLY

1. The DIP Lenders have stepped in to finance the Debtors' postpetition operations when no prepetition creditor, including the Valley Encore Creditors, was willing to provide the capital the Debtors desperately needed on a non-priming basis. *See* DIP Decl. ¶¶ 19-21. The DIP Lenders agreed to fund a $30 million ***non-priming***,[3] ***new money*** DIP facility (the "**DIP Facility**") in two tranches (the first $15 million of which was borrowed following entry of the Interim DIP Order). The DIP Facility is the product of hard-fought, arm's-length negotiations between the Debtors and the DIP Lenders, and it involved significant concessions by the DIP Lenders, including a standard Carve-Out for the benefit of estate professionals as set forth in the proposed Final Order [Dkt. No. 161] (the "**Final DIP Order**").[4] *See* DIP Decl. at ¶ 23.

2. The DIP Lenders bargained for certain rights in connection with their agreement to provide the Debtors with the DIP Facility, such as sale and DIP-related milestones and the entry of orders approving the DIP Motion and the Cash Collateral Motion on a final basis in form and substance reasonably satisfactory to the DIP Lenders. The DIP Lenders have no obligation to fund

---

[3] The Valley Encore Creditors admit that "the DIP Loan itself does not seek to prime the liens of the Valley Encore Creditors with respect to their liens at the Encore debtor." Obj. ¶ 5.

[4] As the Court observed at the first day hearing, the application of the carveout to prepetition secured lenders is a reasonable trade for the Debtors' waiver of the surcharge under section 506(c), which the Debtors have provided to the consenting prepetition secured lenders. *See* Final DIP Order ¶ F(f).

the remaining amounts under the DIP Facility if the protections for which they negotiated are not granted in those final orders.

3. The DIP Lenders hoped (and so did the Debtors) that agreeing to junior, non-priming liens on the Debtors' encumbered assets would avoid costly litigation with the Prepetition Secured Parties. *See Id.* at ¶ 25. While most of the prepetition secured lenders have consented to the requested relief (such lenders, the "**Consenting Prepetition Secured Lenders**"), certain holdout creditors of Rhodium Encore, calling themselves the "Valley Encore Creditors," have elected to object to the DIP Motion and the Cash Collateral Motion.

4. But the Valley Encore Creditors do not dispute that the Debtors need access to the DIP Facility to fund these Chapter 11 Cases, nor that the Debtors validly exercised their business judgment to enter into this DIP Facility with the DIP Lenders. Instead, the Valley Encore Creditors have objected to heavily-negotiated provisions in the proposed final orders that are integral to the DIP Lenders' agreement to provide the DIP Facility on a non-priming basis. They seek to have all the benefits of the DIP Facility, while shifting all the risks and burdens of these Chapter 11 Cases to the DIP Lenders, the Consenting Prepetition Secured Lenders and the Debtors' other stakeholders. This should not be countenanced, and their Objection should be overruled.

**The Valley Encore Creditors Should Not be Exempt from the Carve-Out**

5. The Valley Encore Creditors' objection to the Carve-Out is premised on a fundamental misunderstanding about how it operates. The Carve-Out in the Final DIP Order is a standard carve-out consistent with market practice in this district and others to protect estate professionals in the event of a DIP Termination Event and the DIP Agent's exercise of remedies. The Valley Encore Creditors mischaracterize the Carve-Out as a non-consensual priming lien. *See* Obj. ¶ 1-2. The Carve-Out is not a lien – priming or otherwise. It is a pre-funded escrow account

3

designed to protect certain fees incurred by estate professionals. The Carve-Out is funded with loan proceeds from the DIP Facility, not any of the money in the bank account of Rhodium Encore (approximately $120,000) or purported cash collateral (if any) of the Valley Encore Creditors.[5]

6. Prior to the delivery of a Carve-Out Notice, the Carve-Out is funded on a weekly basis with proceeds from DIP loans in an amount equal to the Weekly Estimated Fees and Expenses. *See* Final DIP Order ¶ 20(c). After the delivery of a Carve-Out Notice, the Debtors are required to utilize all cash proceeds from amounts previously drawn under the DIP Facility to fund up to $750,000 in professional fees and expenses, allocated between the Debtors' professionals and professionals retained by a statutory creditors' committee (if any). *See Id.* at ¶ 20(b) and (d). These amounts are to be deposited into a Professional Fee Escrow Account, which is not subject to the DIP Liens and does not constitute DIP Collateral. *See Id.* at ¶ 20(d)-(e). Any amounts remaining in the Professional Fee Escrow Account after payment of Allowed Professional Fees are to be applied to the DIP Obligations until they are Paid in Full. *See Id.* at ¶ 20(e). Any excess amounts remaining thereafter shall be applied in accordance with the Final DIP Order. *Id.* This customary arrangement recognizes the need for (and professional obligations of) estate professionals to continue to render certain services to the Debtors' estates leading up to and following a DIP Termination Event.

7. The Carve-Out makes clear that no party – including the DIP Lenders that provided the Debtors with much needed liquidity and the Consenting Prepetition Secured Lenders – has any right to the amounts in the Professional Fee Escrow Account until the estate professionals are paid. There is no statutory basis for the Valley Encore Creditors to have greater rights or protections

---

[5] The DIP Secured Parties understand from the Debtors that the Valley Encore Creditors do not have a valid, perfected lien on Rhodium Encore's bank accounts.

than any other stakeholders (including the DIP Lenders) or to be exempt from the requirements of the Carve-Out.

8. The Valley Encore Creditors also argue without any basis that the Carve-Out is "a *de facto* surcharge" under section 506(c). *See* Obj. ¶ 3. Section 506(c) permits a trustee to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim…." 11 U.S.C. § 506(c). The Carve-Out is not being funded from "property securing" the claims of the Valley Encore Creditors because they do not have any lien on the loan proceeds from the DIP Facility being used to fund the Carve-Out nor on the Professional Fee Escrow Account.[6] And, even if they had a lien on that property, the Valley Encore Creditors and their collateral are benefiting from the Debtors' continuing operation and execution on their chapter 11 strategy, as stated in the Debtors' Reply. Accordingly, the Valley Encore Creditors should be subject to the Carve-Out to the same extent as the DIP Lenders and the Consenting Prepetition Secured Lenders.

**The Valley Encore Creditors' Other Objections Have no Merit[7]**

9. The Valley Encore Creditors contend that the "silent second" nature of the proposed adequate protection liens is inappropriate. But not liking a term is not a legal argument regarding its propriety nor does it render it inappropriate under the circumstances. The DIP Lenders agreed to provide $30 million of financing without priming the existing secured lenders' liens on the basis

---

[6] This situation is easily distinguishable from the situations in the cases cited by the Valley Encore Creditors. In each of those cases, the debtor (or trustee) sought a carveout from the secured lenders' cash collateral. *See In re California Webbing Indus., Inc.*, 370 B.R. 480 (Bankr. D.R.I. 2007) (holding Court had not ordered and secured lender had not agreed to carve-out from secured lender's collateral); *In re Blackwood Assoc.*, 153 F.3d 61 (2d Cir. 1998) (holding mortgage lender was not required to disgorge adequate protection payments paid from its cash collateral to fund carve-out); *In re Trim-X Inc.*, 695 F. 2d 296 (7th Cir. 1982) (holding trustee was entitled to recover from secured lender expenses incurred to preserve secured lender's collateral). Here, the Carve-Out is funded from the proceeds of the loans under the DIP Facility. Therefore, the Valley Encore Creditors' reliance on those cases is misplaced.

[7] As described in the Debtors' Reply, many of the objections asserted by the Valley Encore Creditors have been addressed in the proposed versions of the Final DIP Order and Final Cash Collateral Order. The DIP Agent does not address those objections here.

that any adequate protection granted to the existing secured lenders be limited to silent, junior adequate protection liens. This was a *critical* intercreditor deal term because it was not acceptable to the DIP Lenders for any existing secured lender to use the threat of enforcement of adequate protection liens to the detriment of the DIP Secured Parties or the Debtors and their estates as long as any DIP Obligations are outstanding. Accordingly, the limitations on the enforcement of the Valley Encore Creditors' adequate protection liens are necessary and appropriate under the circumstances, and the Valley Encore Creditors have not articulated any credible theory for why such limitations are legally impermissible.

10. The Valley Encore Creditors also seek to delete the language which provides that the DIP Order controls the Cash Collateral Order. *See* Obj. ¶ 4. As is standard in DIP financings, the DIP Lenders required as a condition to funding that material orders entered by the Court be reasonably satisfactory to them. The Debtors agreed understanding that the DIP Lenders needed certainty that fundamental deal terms memorialized in the DIP Orders and related documents will govern the DIP Lenders' rights. Moreover, each "first-day" order entered by this Court is, by its terms, subject to the Approved Budget and the Interim DIP Order (and, as applicable, the Final DIP Order). The DIP Lenders are not willing to make any exception for the orders relating to the use of cash collateral or granting adequate protection.

11. The Valley Encore Creditors complain that the DIP Lenders should not be permitted to dispose of the Valley Encore Creditors' collateral without their consent. They cite to paragraph 18(c)(ii) of the Interim DIP Order,[8] which relates to the right of the DIP Agent to exercise remedies after a DIP Termination Event. *See* Obj. ¶ 5. They misconstrue the meaning of these provisions. That paragraph is intended to prescribe the process for the DIP Agent to seek

---

[8] The Valley Encore Creditors cite to the Interim DIP Order. The DIP Agent notes for clarity that paragraph 18(c)(ii) is the same in the Interim DIP Order and the Final DIP Order.

stay relief, and it preserves certain rights of parties (including the Prepetition Secured Parties) to object to that request for stay relief. There is nothing in that paragraph that affects the prepetition liens of the Valley Encore Creditors or their rights as secured creditors under applicable law.[9]

12.     The Valley Encore Creditors similarly misunderstand paragraph 24 of the Final DIP Order which preserves the DIP Agent's statutory right to credit bid all or any portions of its claims on the DIP Collateral. If the DIP Agent exercises that right in a section 363 sale or in connection with a chapter 11 plan (as set forth in paragraph 24 of the Final FIP Order), the Valley Encore Creditors will have an opportunity to object and be heard if they believe that the DIP Agent's credit bid does not comply with applicable law. The Final DIP Order need not prescribe that process in advance.

## RESERVATION OF RIGHTS

The DIP Secured Parties expressly reserve all rights to respond to all objections advanced by the Valley Encore Creditors and offer and present evidence and corresponding arguments during the final hearing concerning the relief requested in the DIP Motion and Cash Collateral Motion.

## CONCLUSION

WHEREFORE, the DIP Agent, for itself and on behalf of the DIP Lenders thereunder, respectfully requests that the Court overrule the Objection and grant the Motions.

---

[9] Paragraph 11 of the Final DIP Order has general language preserving the rights of the Prepetition Secured Parties (including the Valley Encore Creditors).

Dated: September 20, 2024        Respectfully submitted,

By: /s/ Ryan C. Wooten
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Ryan C. Wooten, Texas Bar No. 24075308
609 Main Street, 40th Floor
Houston, TX 77002-3106
Telephone: (713) 658-6400
Facsimile: (713) 658-6401
Email: rwooten@orrick.com

Robert Trust (admitted *pro hac vice*)
Mark Franke (admitted *pro hac vice*)
Brandon Batzel (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: rtrust@orrick.com
mfranke@orrick.com
bbatzel@orrick.com

*Counsel for the DIP Agent, for itself and on behalf of the DIP Lenders*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of September 2024, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on all parties receiving ECF notice.

/s/ *Ryan C. Wooten*
Ryan C. Wooten