IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Case No. 24-90448-ARP |
| RHODIUM ENCORE LLC, *et al.*[1] | § § § | Chapter 11 |
| Debtor. | § § § | |

## WHINSTONE US, INC'S EMERGENCY MOTION FOR A STATUS CONFERENCE

**Emergency relief has been requested. Relief is requested not later than September 30, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Whinstone US, Inc. ("**Whinstone**") moves this Court for an emergency order scheduling a status conference to resolve discovery issues that are in immediate need of resolution. Whinstone requests that such status conference occur as soon as possible—during the week starting September 30, 2024—given the Scheduling Order (defined below) in this contested matter, which is proceeding on an accelerated timeline. In support of this motion, Whinstone states the following:

1. As Whinstone foretold at the August 30, 2024 status conference and thoroughly detailed in *Whinstone US, Inc.'s Preliminary Response and Objection to Debtors' Motion and Supplemental Motion to Assume Certain Executory Contracts with Whinstone US, Inc.* [Dkt. #

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

144] (the "Preliminary Response"), Debtors—consistent with their past pattern and practice—continue to obstruct discovery in such a manner that requires immediate Court intervention. In response, the Court indicated that "to the extent there are discovery disputes [it is] available […] basically 24/7 to rule on that." The first of those disputes has now arisen.

2. On September 20, 2024, Whinstone served Debtors with its *First Request for Inspection of Premises to Debtors Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10mw LLC, Rhodium 30mw LLC, and Air HPC LL* (the "Request for Inspection"), attached as Exhibit 1 hereto. The Request for Inspection gave notice of Whinstone's intent to inspect portions of buildings B and C at Whinstone's data center facility (the "Facility") located in Rockdale, Texas. The purpose of the Request for Inspection was fivefold: (i) avoid any accusations by Debtors of Whinstone improperly inspecting portions of the Facility (despite Whinstone's unfettered right to access the property); (ii) avoid any accusations by Debtors of improper evidence tampering; (iii) document the interior and exterior areas that certain Debtors occupy at the Facility; (iv) document certain Debtors' cryptocurrency mining equipment and operations at the Facility; and (v) confirm certain Debtors' cryptocurrency mining performance data. Any individuals inspecting the Facility at that time would be accompanied by one of Whinstone's attorneys, an officer of this Court, at all times.

3. As the actual lessee of the Facility with exclusive possession thereof pursuant to a written agreement with its own landlord, Whinstone arguably did not need Debtors' permission or the presence of counsel at all. Indeed, the hosting agreements by and between Whinstone and certain Debtors—described in detail in Whinstone's Preliminary Response and which Debtors seek to assume through this contested matter—explicitly state that the Debtors do not have any real property interest at Rockdale:

> 23.2. **No Lease**
>
> This Agreement does not create any real property interest for Customer in the Customer Area or the Facility, and Customer shall not, shall not attempt to, and shall not encourage any third party to file or otherwise create any liens or other property interest or liability on the Facility or any portion thereof.

Moreover, Debtors have restricted access rights to the Rockdale Facility under the Hosting Agreement, and their rights to access the Rockdale Facility are purely at the discretion of Whinstone:

> 5. **Access to the Facility; Data Center Rules**
>
> 5.1. Customer Representatives may access the Customer Area of the Facility during Working Hours, in accordance with the Data Center Rules, for equipment inspections, installation, removal, additions, subtractions or physical maintenance or otherwise by prior appointment as mutually agreed. To obtain such access, Customer must provide prior notice to Provider in accordance with the Data Center Rules, and coordinate with Provider so that all such access may be escorted. Notwithstanding anything to the contrary, Provider shall have the right to remove any Customer Representative from the Facility premises in Provider's sole discretion, at any time, and without any liability to Customer or any Customer Representative.
>
> 5.2. Customer, and the Customer Representatives, shall comply with all Data Center Rules in connection with such access. Customer shall inform each applicable Customer Representative of the Data Center Rules prior to such Customer Representative accessing the Facility. Customer shall be liable for the acts and omissions of all Customer Representatives who access, or attempt to access, the Facility, including for their violation of the Data Center Rules, at least to the same extent as if such acts and omissions were Customer's own.

4. However, given Whinstone's contentious relationship with Debtors and the ongoing contested matters between them, and out of an abundance of caution given the existence of these bankruptcy cases, Whinstone issued the Request for Inspection notifying Debtors of its intentions in connection with preparing for the hearing currently scheduled to begin November 12.

5. The Request for Inspection should have been a non-event. Whinstone and Debtors are busy completing written discovery in advance of the deadline for substantial completion of document production currently set for September 26, 2024, and the deadline for all discovery other than depositions currently set for October 3, 2024. *See Scheduling Order for Contested Matter* [Dkt. No. 121] (the "Scheduling Order"). Though certain issues have arisen—as Whinstone

predicted they would—the parties are attempting to work through them outside the purview of the Court to the greatest possible extent.

6. Yet, true to form, Debtors objected to the Request for Inspection, claiming it is "untimely," "overbroad and unreasonable," "intrusive," and an "improper attempt[] to expand discovery well past the deadline for written discovery," amongst other frivolous objections. Ex. 3, Sept. 24, 2024 Email. Debtors even went so far as to take the position: "Whinstone had ample opportunity to request data and information through written discovery." *Id.*

7. In response, Whinstone conferred with Debtors clarifying that "[t]he purpose of the inspection is to document the interior and exterior areas that certain Debtors occupy at the Facility, document certain Debtors' cryptocurrency mining equipment and operations at the Facility, and confirm certain Debtors' cryptocurrency mining performance data." Ex. 3, Sept. 25, 2024 Email. Whinstone further offered to conduct an inspection at a time more convenient to Debtors. *Id.* Debtors continued to object. Ex. 3, Sept. 26, 2024 Email.

8. Debtors' position belies their own conduct. Despite the compressed schedule, Debtors argue that they are entitled to "weeks" of advanced notice before Whinstone's experts can conduct inspection of Whinstone's own premises under Rule 34. Interestingly, Debtors sent their own expert to the Rockdale Facility with no advance notice, no Rule 34 Request for Inspection, and not even an email from counsel stating that they intended to have their expert inspect the Rockdale Facility. On September 20, 2024, Debtors directed Willibroad Mbah of Baer Engineering to inspect, document, and photograph the Facility, as well as take soil samples, apparently for discovery purposes in this proceeding. Debtors did not seek advanced permission for an expert witness to access the site and take soil samples and pictures. What is most troubling is Debtors' expert witness's conduct violates Whinstone's Data Center Rules, resulting in yet another breach of the terminated agreements:

> **2. Compliance with the Policy.** At all times while I am present at the Facility, I will comply with the Policy in all respects. I acknowledge and agree that my access to the Facility is conditioned upon my compliance with the Policy, and I understand that my access thereto may be revoked as a result of my failure, or the failure of my persons accompanying me while I am present on the Facility premises, to comply with the Policy. Further, I hereby consent to my removal from the Facility by Whinstone personnel should I fail to comply with the Policy.

> "**Representative**" means, a person's Affiliates, directors, officers, employees, partners, agents, consultants or contractors, as well as any persons with whom such party shares Confidential Information with respect to the Discussions or which such party involves in the Discussions.

> **A. Do Not Engage in Prohibited Behavior. YOU SHALL NOT:**

> vii. except as specifically permitted by written agreement between you and Whinstone, take or allow any person in your group to take photographs, or video or audio recordings within or of the Facility;

> **FOR THE AVOIDANCE OF DOUBT, ANY USE OF CAMERAS, VIDEO AND OTHER PHOTOGRAPHIC EQUIPMENT, AND ANY USE OF AUDIO MONITORING AND AUDIO CAPTURE DEVICES, IS STRICTLY PROHIBITED WITHIN THE FACILITY.**

Ex. 2 Data Center Rules and Acceptable Use Policy. Importantly, the Facility is located on a ***superfund site*** due to Alcoa's (the current lessor) prior activity. Debtors continue to disregard Whinstone's rules—the very rules that they claim that they will comply with should the Court permit them to assume the terminated agreements. Unlike Whinstone, Debtors did not make any effort to follow the proper procedure for obtaining an expert inspection by submitting a request for inspection. Ultimately, Debtors claim that any request to inspect the Rockdale Facility is untimely. So, they simply conducted a day-long inspection without any prior notice to counsel or Whinstone. Debtors are holding Whinstone to a standard that they themselves ignore. Whinstone should not be penalized for going through the proper procedure while Debtors flaunt the Federal Rules of Civil Procedure and Whinstone's Data Center Rules.

9. "A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). As discussed above, since entry of the Scheduling Order, the parties have been engaged in routine communications regarding discovery, including multiple meet-and-confers regarding issues, in an attempt not to have to take up the Court's invitation to come back. Given the timeline of the case and the inability of the parties to reach consensual resolution on this particular issue, however, now is the time for the Court to exercise its inherent power to conduct a status conference in this case. Accordingly, Whinstone requests that the status conference be set on an expedited basis in the week beginning September 30, 2024, the earlier the better.

WHEREFORE, Whinstone respectfully requests that the Court grant this emergency motion, set a status conference to discuss the Request for Inspection, and grant all such other relief as the Court deems appropriate under the circumstances.

<table>
<tr><td>DATED: September 26, 2024</td><td>Respectfully submitted by:<br><br>*/s/ Mark C. Moore*<br>Robert T. Slovak (TX 24013523)<br>Steven C. Lockhart (TX 24036981)<br>J. Michael Thomas (TX 24066812)<br>Mark C. Moore (TX 24074751)<br>Brandon C. Marx (TX 24098046)<br>**FOLEY & LARDNER LLP**<br>2021 McKinney Avenue, Suite 1600<br>Dallas, TX 75201<br>Telephone: (214) 999-3000<br>Facsimile: (214) 999-4667<br>rslovak@foley.com<br>slockhart@foley.com<br>jmthomas@foley.com<br>mmoore@foley.com<br>bmarx@foley.com<br><br>**COUNSEL TO WHINSTONE US, INC.**</td></tr>
</table>

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing document to be filed on September 26, 2024, using the Court's CM/ECF System which caused it to be served upon those parties registered in the system to receive such service.

/s/ *Mark C. Moore*
Mark C. Moore