IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

**MOTION OF DEBTORS FOR ORDER (I) AUTHORIZING USE, SALE, OR LEASE OF
CERTAIN PROPERTY OF THE ESTATE, (II) ESTABLISHING PROCEDURES
FOR DE MINIMIS ASSET SALES, AND (III) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Rhodium Encore LLC, and its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, respectfully represent as follows in support of this motion (the "Motion"):

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

12875-00001/15409870.2

**Background**

A.  **General Background**

1. On August 24 and August 29, 2024 (the "Petition Dates"), the Debtors each commenced with this Court a voluntary case under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The cases are jointly administered.

2. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 22, 2024, the U.S. Trustee appointed an official committee of unsecured creditors (the "Unsecured Creditors' Committee"). No trustee or examiner has been appointed in these Chapter 11 Cases.

3. Further details of the Debtors' business, capital structure, governing bodies, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") (ECF. No. 35).

B.  **The Sale Process**

4. On September 17, 2024, the Debtors filed the *Emergency Motion of Debtors for Entry of an Order Approving (A) Bidding Procedures, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, C) Form and Manner of Notice of the Sale Hearing and Assumption Procedures, (D) Procedures for Selection of One or More Stalking Horse Bidders, and (E) Dates for an Auction and Sale Hearing (*ECF No. 151).

5. On September 24, 2024 the Court entered the *Order Establishing (A) Bidding Procedures for the Sale of a Portion of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form*

*and Manner of Notice of the Sale Hearing and Assumption Procedures, (D) Procedures for Selection of One or More Stalking Horse Bidders, and (E) Dates for an Auction and Sale Hearing* ("the Bid Procedures Order") (ECF No. 187).

6. Pursuant to the Bid Procedures Order, the Debtors conducted an auction of certain Debtors' Assets on November 20, 2024.

7. On November 26, 2024, the Debtors participated in a hearing before this Court to approve the sale. That same day, the Court entered the *Order (I) Authorizing the Sale of the Debtors' Temple Lease; and (II) Granting Related Relief* (ECF No. 509).

## Jurisdiction

8. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion.

9. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The bases for the relief requested are sections 105 and 363 of title 11 of the Bankruptcy Code (the "Bankruptcy Code"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4002-1(e) and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Relief Requested

11. By this Motion, the Debtors seek entry of an order (the "Proposed Order"), pursuant to sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6004, (i) authorizing the use, sale, or lease of certain property of the Debtors' estate, (ii) establishing procedures (as set forth below, the "De Minimis Transaction Procedures") to authorize the Debtors to sell or otherwise transfer certain assets efficiently, including any rights or interests therein, that are of

relatively *de minimis* value compared to the Debtors' total asset base (the "De Minimis Assets"), and (iii) granting related relief.

**The De Minimis Transactions and Proposed Procedures**

A.      **The De Minimis Transactions**

12.     On November 20, 2024, the Debtors completed the sale of certain of the Debtors' assets. In connection with the Debtors' further restructuring efforts, the Debtors and their advisors are undertaking an analysis of the Debtors remaining assets and anticipate that they are likely to consummate certain sales, leases, or other transfers of De Minimis Assets during the pendency of these chapter 11 cases (the "De Minimis Transactions").

13.     The Debtors expect that most of the De Minimis Transactions will be consummated in the ordinary course of the Debtors' business and, therefore, are arguably permitted under section 363(c) of the Bankruptcy Code without the need for Court authority. However, potential purchasers or sellers may request confirmation that the De Minimis Transactions are authorized by the Bankruptcy Court and/or are made free and clear of any liens under section 363(f) of the Bankruptcy Code. Further, the Debtors anticipate that some De Minimis Transactions could conceivably constitute transactions outside the ordinary course of the Debtors' business, thereby requiring this Court's approval pursuant to section 363(b)(1) of the Bankruptcy Code.

14.     Obtaining Court approval for each De Minimis Transaction would be administratively burdensome and costly to the Debtors' estates and could undermine or even eliminate any economic benefits that would be realized from such transactions. In some instances, for example, the usual process for obtaining Court approval for such transactions may hinder the Debtors' ability to take advantage of sale opportunities that are available for only a limited time.

15.     Accordingly, to alleviate the cost and delay of filing a separate motion for each proposed De Minimis Transaction, the Debtors seek approval of the De Minimis Transaction

Procedures. The De Minimis Transaction Procedures will allow for more expeditious and cost-effective review by parties in interest and will conserve the resources of the Court and the Debtors by avoiding the need for numerous motions to approve relatively modest sales or other transfers. The Debtors submit that the entry of an order approving such procedures and authorizing the sale or transfer of De Minimis Assets without further notice or hearing, other than as set forth below, is warranted under the circumstances and in furtherance of the Debtors' efforts to prosecute these chapter 11 cases efficiently.

**B.     Proposed De Minimis Transaction Procedures**

16.     The Debtors seek authorization to sell, lease, or transfer De Minimis Assets outside of the ordinary course of business pursuant to the procedures set forth below:[2]

   a.  Non-Noticed Asset Transactions:  For property that, in the Debtors' good faith determination, has a fair market value (aggregating the value of all property to be sold to the same purchaser) of less than $200,000 and is proposed to be sold or transferred in a transaction, or in a series of related transactions (each, a "Non-Noticed Transaction"):

       i.   Business Judgment Standard.  The Debtors are authorized to consummate the sale or transfer of such property without further order of the Bankruptcy Court or notice to any party if the Debtors determine in a reasonable exercise of their business judgment that such a sale or transfer is in the best interest of the Debtors' estates; provided that, three (3) business days prior to the consummation of such sale or transfer, the Debtors will (a) provide e-mail notification to counsel to the Creditors' Committee and the Office of the United States Trustee (the "U.S. Trustee") and (b) serve a notice to all known parties holding or asserting liens, claims, encumbrances or other interests in the assets being sold or transferred and their respective counsel, if known (collectively with the Creditors' Committee and U.S. Trustee, the "Transaction Notice Parties").

       ii.  Sale Free and Clear.  Any such sale of property shall be free and clear of all liens, claims, and encumbrances ("Liens"), with any valid and properly perfected Liens attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the transaction.

---

[2] Nothing in this Motion, the Proposed Order, or the De Minimis Transaction Procedures shall prohibit the Debtors from filing one or more motions to approve a sale of assets.

      iii.    **Good Faith Purchaser.**  Each purchaser of property pursuant to such a sale will be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

      iv.    **Transaction Reports.**  Within 30 days following each quarterly period, commencing with the period ending December 31, 2024, the Debtors will file with the Bankruptcy Court a report summarizing any Non-Noticed Transactions that were completed pursuant to the De Minimis Transaction Procedures during the immediately preceding quarter, and serve it on the Transaction Notice Parties.  With respect to each applicable Non-Noticed Transaction, each quarterly report shall identify (as applicable): (a) the De Minimis Assets sold or transferred; (b) a summary of the reasons for selling or transferring such De Minimis Assets; (c) the entity that purchased or received the De Minimis Assets; (d) the sale price for such De Minimis Assets; and (e) any broker or auctioneer that advised or assisted the Debtors with such transactions and any fees paid to such party in connection with such transactions.

b.    **Noticed Asset Transactions.**  For property that, in the Debtors' good faith determination, has a fair market value equal (aggregating the value of all property to be sold to the same purchaser) to or greater than $200,000, and less than or equal to $2,000,000, and is proposed to be sold in a transaction, or in a series of related transactions (each, a "**Noticed Transaction**"); provided, that the Debtors in their discretion may treat certain transactions with a fair market value of less than $200,000 as a Noticed Transaction:

      i.    **Business Judgment Standard.**  The Debtors are authorized to consummate such a sale without further order of the Bankruptcy Court, subject to the procedures set forth herein, if the Debtors determine in a reasonable exercise of their business judgment that such a sale or transfer is in the best interest of the Debtors' estates.

      ii.    **Sale or Purchase Free and Clear.**  Any such sale shall be free and clear of all Liens, with any valid and perfected Liens attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to the transaction.

      iii.    **Good Faith Purchaser.**  Each purchaser of property to such a sale will be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

      iv.    **Transaction Notice.**  The Debtors shall, at least seven days prior to closing such sale, file a written notice of such sale with the Court (a "Transaction Notice") and serve a Transaction Notice of such sale by e-mail, facsimile, or overnight delivery service to the Transaction Notice Parties.  The Transaction Notice shall consist of, as applicable:

       1. identification of the De Minimis Asset being sold;

       2. identification of the purchaser of the De Minimis Asset and any relationship such party has with the Debtors;

       3. identification of any parties known to the Debtors as holding Liens on the property being sold and a statement indicating whether (i) all such Liens are capable of monetary satisfaction, or (ii) the holders of such Liens have consented to the sale;

       4. the sale price;

       5. any other significant terms of the sale;

       6. the date and time within which objections must be filed and served on the Debtors; and

       7. any broker or auctioneer that advised or assisted the Debtors with such transaction and any fees paid or to be paid to such party in connection with such transaction.

    v. **Objection Procedures.** Parties objecting to a Noticed Transaction must file and serve a written objection so that such objection is filed with the Bankruptcy Court and is actually received by the Transaction Notice Parties as well as counsel to the Debtors no later than seven (7) days after the date the Debtors serve the relevant Transaction Notice.

    vi. **No Objection.** If no objection to a Noticed Transaction is timely filed by any of the Transaction Notice Parties within seven (7) days of service of such Transaction Notice, the Debtors are authorized to consummate such transaction immediately.

    vii. **Unresolved Objections.** If a timely objection is filed and not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the unresolved objection, and such hearing shall be held on an expedited basis. If such objection is overruled or withdrawn, or if the sale of De Minimis Assets is specifically approved by further order of the Bankruptcy Court, the Debtors are authorized to immediately consummate such transaction.

    viii. **Transaction Reports.** Within 30 days following each quarterly period, commencing with the period ending December 31, 2024, the Debtors will file with the Bankruptcy Court a report summarizing any Noticed Transactions that were completed pursuant to the De Minimis Transaction Procedures during the immediately preceding quarter, and serve it on the Transaction Notice Parties. With respect to each applicable Noticed Transaction, each quarterly report shall identify (as applicable): (a) the De Minimis Assets sold; (b) a summary of the reasons for selling such De Minimis Assets; (c) the entity that purchased the De Minimis Assets; (d) the

    sale price for such De Minimis Assets; and (e) any broker or auctioneer that advised or assisted the Debtors with such transactions and any fees paid to such party in connection with such transactions.

  c. <u>Sale Pursuant to Motion.</u> For property that, in the Debtors' good faith determination, has a fair market value (aggregating the value of all property to be sold to the same purchaser) greater than $2,000,000, and is proposed to be sold in a transaction, or in a series of related transactions, the Debtors shall seek authority to sell such property pursuant to a motion and in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

## Basis for Relief

**A. The De Minimis Assets Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code**

  17. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts routinely authorize a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See Matter of Bouchard Transportation Co., Inc.*, 74 F.4th 743, 750 (5th Cir. 2023).

  18. Procedures to sell assets must be evaluated under the business judgment standard, which affords considerable deference to the debtor's business judgment. *In re Asarco, L.L.C.*, 650 F.3d 593, 603 (5th Cir. 2011), *aff'g* 441 B.R. 813, 824 (S.D. Tex. 2010). ("The business judgment standard in section 363 is flexible and encourages discretion."); *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

  19. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See In re Lionel Corp.*, 722 F.2d at 1063; *In re Bigler,*

443 B.R. 101, 115 (Bankr. S.D. Tex. 2010) (providing that the two goals for a sale of the debtors' assets are "maximizing value for the estate and preserving the integrity of the judicial process").

20. Further, section 105 of the Bankruptcy Code provides, in relevant part, that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary to the efficient administration of the Debtors' estates.

21. Selling or otherwise transferring De Minimis Assets pursuant to the proposed De Minimis Transaction Procedures reflects a reasonable exercise of sound business judgment and is in the best interests of the Debtors' estates. As discussed above, the De Minimis Transaction Procedures provide for an efficient and cost-effective means of maximizing the value to be realized with respect to De Minimis Assets. Obtaining Court approval for each De Minimis Transaction would be administratively burdensome to the Court, would result in unnecessary legal costs, and could significantly reduce the ultimate net benefit of certain De Minimis Transactions to the Debtors' estates. The Debtors need to act expeditiously to sell their remaining assets to minimize administrative costs to the estates and provide a distribution to creditors as soon as possible upon emergence from chapter 11.

22. Moreover, the Debtors may face time constraints in meeting closing deadlines established by interested purchasers. The De Minimis Transaction Procedures will permit the Debtors to be responsive to the needs of interested purchasers (thereby minimizing the risk of lost sales due to delay), while still providing appropriate notice to review proposed transactions.

23. Notably, although the Debtors request authority to sell De Minimis Assets for am aggregate price of up to $2,000,000, the Debtors believe that many individual transactions will, in

fact, be for assets worth substantially less. In light of the size of the Debtors' estates, the proposed sale price limitations are modest and appropriate.

**B.   The De Minimis Transaction Procedures Satisfy Notice and Hearing Requirements Under Section 363(b)(1)**

24.   The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances of a proposed transaction. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances"). Courts have noted that "the notice requirements of bankruptcy law are 'founded in fundamental notions of procedural due process.'" *Morgan Olson L.L.C. v. Frederico* (*In re Grumman Olson Indus., Inc.*), 467 B.R. 694, 706 (S.D.N.Y. 2012) (citations omitted). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (internal quotation marks and citations omitted).

25.   Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of twenty-one (21) days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code, unless a debtor shows "cause." *See* Fed. R. Bankr. P. 2002(a)(2) and (i). Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes this Court to shorten the generally applicable 21-day notice period and direct a method of giving notice other than by mail. Fed. R. Bankr. P. 2002(a)(2). Moreover, this Court has authorization to limit notice of asset sales or purchases outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed

under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice. Fed. R. Bankr. P. 2002(i).

26. In addition, the sale or transfer of property by the Debtors outside the ordinary course of business may be authorized without an actual hearing, if no party in interest timely requests such a hearing. *See* 11 U.S.C. § 102(1)(b)(i) (notwithstanding the statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest").

27. The De Minimis Transaction Procedures comply with the notice requirements of the Bankruptcy Code, as well as due process, by providing the Transaction Notice Parties with an opportunity to present objections to De Minimis Transactions for sales and transfers over $200,000. With respect to sales or transfers up to $200,000, the Debtors will file notices with the Court on a quarterly basis summarizing any such transactions.

**C.    The De Minimis Transaction Procedures Satisfy Requirements of Section 363(f) of the Bankruptcy Code**

28. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if: (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) such entity consents; (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363; *see In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

29.     The De Minimis Transaction Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code.  Pursuant to the De Minimis Transaction Procedures, for sales of assets worth more than $200,000, the Debtors will provide any known lien holders with a Transaction Notice prior to the disposition of the applicable De Minimis Asset.  Absent any objection to a De Minimis Asset Transaction, a holder of a lien shall be deemed to consent to the De Minimis Transaction and such asset may be sold free and clear of such lien.  *See In re Fieldwood Energy III LLC,* 2023 WL 2402871 (S.D. Tex. Mar. 7, 2023), *aff'd sub nom. Matter of Fieldwood Energy LLC, 93 F.4th 817* (5th Cir. 2024); *In re Enron Corp,* 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)); *In re Borders Grp., Inc.*, 453 B.R. 477 (Bankr. S.D.N.Y. 2011) ("Under section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens.").  As noted above, the interests of a holder of a lien will attach to the proceeds of the sale or transfer, subject to any rights and defences of the Debtors with respect thereto.  To the extent Debtors prove unable to obtain consent of a lienholder, the holder of any lien could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

**D.     Purchasers of De Minimis Assets Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

30.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11  U.S.C. § 363(m).

31. The Bankruptcy Code does not define good faith, but the Fifth Circuit has defined the term in two ways: (1) a good faith purchaser one who purchases the assets for value, in good faith, and without notice of adverse claims and 2) a good faith purchaser is one who does not engage in misconduct, including, " fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders." *Matter of RE Palm Springs II, L.L.C.*, 65 F.4th 752, 759 (5th Cir.); *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988). Section 363(m) fosters the "'policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

32. The De Minimis Transaction Procedures provide for certain parties to receive notice and the opportunity to object for sales and transfers over $200,000, and for the Debtors to file a notice summarizing sales or transfers up to $200,000. Further, the Proposed Order provides that the De Minimis Transaction Procedures do not apply to transactions with insiders. As such, the Debtors submit that any De Minimis Transaction consummated in accordance with such procedures will be an arm's length transaction entitled the protections of section 363(m).

**E.  Procedures Similar to the Proposed De Minimis Transaction Procedures Have Been Approved in Other Chapter 11 Cases**

33. In light of the demonstrable benefits of streamlined procedures to sell or transfer De Minimis Assets and the legal justifications described above, this Court and bankruptcy courts in other circuits have approved procedures similar to the De Minimis Transaction Procedures in other large chapter 11 cases. *See, e.g.*, *In re Sorrento Therapeutics, Inc.*, No. 23-90085 (Bankr. S.D. Tex. June 2023) (authorizing sales up to $10 million pursuant to de minimis asset sale procedures); *In re Bristow Group Inc.*, No. 19-32713 (Bankr. S.D. Tex. July 22, 2019) (authorizing sales up to $10 million pursuant to de minimis asset sale procedures); *In re iHeartMedia, Inc.*, No.

18-31274 (Bankr. S.D. Tex. June 21, 2018) (authorizing sales up to $15 million pursuant to de minimis asset sale procedures); *In re Vanguard Natural Resources, LLC,* No. 17-30560 (Bankr. S.D. Tex. March 1, 2017) (authorizing sales up to $10 million pursuant to de minimis asset sale procedures); *In re CHC Group Ltd.*, No. 16-31854 (Bankr. N.D. Tex. Dec. 5, 2016) (authorizing sales up to $10 million pursuant to de minimis asset sale procedures); *In re EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Apr. 27, 2020) (Docket No. 1198) (authorizing sales up to $10 million pursuant to de minimis asset sale procedures); *In re Westinghouse Electric Company LLC* No. 17-10751 (Bankr. S.D.N.Y January 25, 2018) (authorizing sales up to $5 million pursuant to de minimis asset sale procedures); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. Jun. 3, 2014) (authorizing sales up to $5 million pursuant to de minimis asset sale procedures).

34.     For the foregoing reasons, the requested relief is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should authorize the Debtors to use, sell, and lease the De Minimis Assets as described here and approve the De Minimis Asset Transaction Procedures.

### **Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)**

35.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

### **Reservation of Rights**

36.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which

may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Notice

37. Notice of this Motion will be provided to (i) the Office of the United States Trustee; (ii) counsel to the Creditors' Committee; (iii) any other party that has requested notice pursuant to Bankruptcy Rule 2002; and (iv) any other party entitled to notice pursuant to Local Rule 9013-1(d).

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Respectfully submitted this 7th day of January, 2025.

> QUINN EMANUEL URQUHART & SULLIVAN, LLP
>
> */s/  Patricia B. Tomasco*
> Patricia B. Tomasco (SBN 01797600)
> Cameron Kelly (SBN 24120936)
> Alain Jaquet (*pro hac vice*)
> 700 Louisiana Street, Suite 3900
> Houston, Texas 77002
> Telephone: 713-221-7000
> Facsimile: 713-221-7100
> Email: pattytomasco@quinnemanuel.com
> Email: cameronkelly@quinnemanuel.com
> Email: alainjaquet@quinnemanuel.com
>
> - and -
>
> Eric Winston (*pro hac vice*)
> Razmig Izakelian (*pro hac vice*)
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, California 90017
> Telephone: 213-443-3000
> Facsimile: 213-443-3100
> Email: ericwinston@quinnemanuel.com
> Email: razmigizakelian@quinnemanuel.com
>
> *Counsel to the Debtors and*
> *Debtors-In-Possession*

**Certificate of Service**

I, Patricia B. Tomasco, hereby certify that on the 7th day of January, 2025, a copy of the foregoing Motion was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

> */s/ Patricia B. Tomasco*
> Patricia B. Tomasco