# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448(ARP) |
|  | § |  |
| Debtors. | § |  |
|  | § | (Jointly Administered) |
|  | § |  |

## JOINT CHAPTER 11 PLAN
## OF RHODIUM ENCORE LLC AND ITS AFFILIATED DEBTORS

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Patricia B. Tomasco (SBN 01797600)
Cameron Kelly (SBN 24120936)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100

Alain Jaquet (*pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Eric D. Winston (*pro hac vice*)
Razmig Izakelian (*pro hac vice*)
Benjamin Roth (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100

Rachel Harrington (*pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Telephone: 212-849-7000
Facsimile: 212-849-71000

*Attorneys for the Debtors and Debtors-In-Possession*

Dated:  May 22, 2025
          Houston, Texas

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

**<u>TABLE OF CONTENTS</u>**

<b>Page</b>

ARTICLE I. DEFINITIONS AND INTERPRETATION. ....................................................... 6

A. **Definitions.** ............................................................................................. 6

B. **Interpretation; Application of Definitions and Rules of Construction** .... 19

C. **Computation of Time** ........................................................................... 20

D. **Reference to Monetary Figures** ........................................................... 20

E. **Reference to the Debtors or the Reorganized Debtors** ............................ 20

F. **Controlling Document** .......................................................................... 20

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS ................................................................... 20

2.1. Administrative Expense Claims .............................................................. 20

2.2. Professional Fee Claims. ......................................................................... 21

2.3. Priority Tax Claims. ................................................................................ 21

2.4. Professional Fee Escrow. ........................................................................ 21

2.5. Professional Fee Claims Estimate. .......................................................... 22

2.6. Post-Effective Date Fees and Expenses. .................................................. 22

ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS. ................................. 22

3.1. Classification in General. ........................................................................ 22

3.2. Summary of Classification of Claims and Interests. ................................. 23

3.3. Special Provision Governing Unimpaired Claims. ................................... 24

3.4. Elimination of Vacant Classes. ............................................................... 24

3.5. No Waiver. .............................................................................................. 24

3.6. Voting Classes; Presumed Acceptance by Non-Voting Classes. .............. 24

3.7. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ......... 24

ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS. ......................................... 24

4.1. Rhodium 2.0 Secured Notes Claims (Class 1). ........................................ 24

4.2. Rhodium Encore Secured Notes Claims (Class 2). ................................... 25

4.3. Rhodium Technologies Secured Notes Claims (Class 3). .......................... 25

4.4. Priority Non-Tax Claims (Class 4). ......................................................... 26

4.5. Guaranteed Unsecured Claims (Class 5a) ................................................ 26

4.6. General Unsecured Claims (Class 5b). ..................................................... 27

4.7. Intercompany Claims (Class 6) ............................................................... 27

4.8. Late Filed Claims (Class 7) ..................................................................... 27

4.9. Section 510(b) Claims (Class 8). ............................................................. 28

4.10.    Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, REI/RTL Interests (Classes 9a-f). ........................ 28

4.11.    Intercompany Interests (Class 9) ......................................................................... 29

ARTICLE V.        MEANS FOR IMPLEMENTATION. .............................................. 29

5.1.    Compromise and Settlement of Claims, Interests, and Controversies. ................ 29

5.2.    Rhodium Litigation Trust .................................................................................... 29

5.3.    Interpleader Proceeding ....................................................................................... 31

In an Interpleader Scenario: ........................................................................................... 31

5.4.    Continued Corporate Existence; Effectuating Documents; Corporate Action; Restructuring Transactions. .............................................................................. 32

5.5.    Exemption from Securities Laws. ........................................................................ 33

5.6.    Cancellation of Liens. ......................................................................................... 33

5.7.    Officers and Boards of Directors. ....................................................................... 33

5.8.    Nonconsensual Confirmation. ............................................................................. 34

5.9.    Closing of the Chapter 11 Cases. ........................................................................ 34

5.10.    Dissolution of Certain Debtors; Consolidation of Debtors' Estates. .................. 34

On the Effective Date, all of the Debtors other than Rhodium Enterprises Inc. and Rhodium Technologies shall be dissolved pursuant to this Plan and the Confirmation Order. ........................................................................................................... 34

5.11.    Notice of Effective Date. ..................................................................................... 34

ARTICLE VI.        DISTRIBUTIONS. ......................................................................... 35

6.1.    Distributions Generally. ...................................................................................... 35

6.2.    Distribution Record Date. ................................................................................... 35

6.3.    Date of Distributions. .......................................................................................... 35

6.4.    Disbursing Agent. ............................................................................................... 35

6.5.    Rights and Powers of Disbursing Agent. ............................................................ 35

6.6.    No Postpetition Interest on Claims. .................................................................... 36

6.7.    Delivery of Distributions. ................................................................................... 36

6.8.    Distributions after Effective Date. ...................................................................... 36

6.9.    Unclaimed Property. ........................................................................................... 36

6.10.    Time Bar to Cash Payments ................................................................................ 37

6.11.    Manner of Payment under Plan .......................................................................... 37

6.12.    Satisfaction of Claims. ........................................................................................ 37

6.13.    Minimum Cash Distributions. ............................................................................. 37

6.14.    Setoffs and Recoupments. ................................................................................... 37

6.15.    Allocation of Distributions between Principal and Interest. ............................... 38

6.16.    No Distribution in Excess of Amount of Allowed Claim ..................................... 38

6.17.    Withholding and Reporting Requirements. .......................................................... 38

ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS. ................................................ 39

7.1.    Disputed Claims Generally. ................................................................................. 39

7.2.    Objections to Claims. ........................................................................................... 39

7.3.    Estimation of Claims. ........................................................................................... 39

7.4.    Adjustment to Claims Register Without Objection. ............................................ 39

7.5.    Disallowance of Claims. ....................................................................................... 40

7.6.    No Distributions Pending Allowance. .................................................................. 40

7.7.    Distributions after Allowance. ............................................................................. 40

7.8.    Claim Resolution Procedures Cumulative. .......................................................... 40

7.9.    Single Satisfaction of Claims. .............................................................................. 40

7.10.    Amendments to Claims. ....................................................................................... 41

ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ..................... 41

8.1.    General Treatment. ............................................................................................... 41

8.2.    Determination of Assumption and Cure Disputes and Deemed Consent. ........... 41

8.3.    Rejection Claims. .................................................................................................. 43

8.4.    Survival of the Debtors' Indemnification Obligations. ........................................ 43

8.5.    Employee Arrangements and Employee Obligations. .......................................... 43

8.6.    Insurance Policies/Claims Payable By Third Parties. .......................................... 45

8.7.    Intellectual Property Licenses and Agreements. .................................................. 46

8.8.    Assignment. .......................................................................................................... 46

8.9.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. 46

8.10.    Reservation of Rights. .......................................................................................... 46

ARTICLE IX.    CONDITIONS PRECEDENT TO EFFECTIVE DATE. ................................ 47

9.1.    Conditions Precedent to the Effective Date. ........................................................ 47

9.2.    Timing of Conditions Precedent. ......................................................................... 48

9.3.    Waiver of Conditions Precedent. ......................................................................... 48

9.4.    Effect of Failure of a Condition. .......................................................................... 48

ARTICLE X.    EFFECT OF CONFIRMATION OF PLAN ................................................... 48

10.1.    Vesting of Assets in the Reorganized Debtors ..................................................... 48

10.2.    Binding Effect. ..................................................................................................... 49

10.3.    Discharge of Claims and Termination of Interests. ............................................. 49

10.4.    Term of Injunctions or Stays ............................................................................... 49

| | | | |
|---|---|---|---|
| | 10.5. | Injunction. | 49 |
| | 10.6. | Releases. | 50 |
| | 10.7. | Exculpation. | 52 |
| | 10.8. | Gatekeeper Injunctions | 53 |
| | 10.9. | Retention of Causes of Action/Transfer of Causes of Action and Reservation of Rights. | 53 |
| | 10.10. | Ipso Facto and Similar Provisions Ineffective. | 54 |
| | 10.11. | Solicitation of Plan. | 54 |
| | 10.12. | Corporate and Limited Liability Company Action. | 54 |
| ARTICLE XI. | | RETENTION OF JURISDICTION. | 54 |
| | 11.1. | Retention of Jurisdiction. | 54 |
| | 11.2. | Courts of Competent Jurisdiction. | 56 |
| ARTICLE XII. | | MISCELLANEOUS PROVISIONS. | 56 |
| | 12.1. | Payment of Statutory Fees. | 56 |
| | 12.2. | Substantial Consummation of the Plan. | 56 |
| | 12.3. | Request for Expedited Determination of Taxes. | 56 |
| | 12.4. | Exemption from Certain Transfer Taxes. | 57 |
| | 12.5. | Amendments. | 57 |
| | 12.6. | Effectuating Documents and Further Transactions. | 57 |
| | 12.7. | Revocation or Withdrawal of the Plan. | 58 |
| | 12.8. | Severability of Plan Provisions. | 58 |
| | 12.9. | Governing Law. | 58 |
| | 12.10. | Time. | 58 |
| | 12.11. | Dates of Actions to Implement the Plan. | 58 |
| | 12.12. | Immediate Binding Effect. | 59 |
| | 12.13. | Deemed Acts. | 59 |
| | 12.14. | Successor and Assigns. | 59 |
| | 12.15. | Entire Agreement. | 59 |
| | 12.16. | Exhibits to Plan. | 59 |
| | 12.17. | Dissolution of Creditors' Committee. | 59 |
| | 12.18. | Notices. | 60 |

Each of Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511) (each, a "**Debtor**" and, collectively, the "**Debtors**") proposes the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan, the settlements and transactions contemplated thereby, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan provides that all Debtors other than Rhodium Enterprises Inc. and Rhodium Technologies LLC will be dissolved prior to or on the Effective Date. Thereafter, the Debtors' estates will be consolidated for all purposes, including distributions.

The Plan provides for the creation of the Rhodium Litigation Trust and the designation of a Litigation Trustee. The Plan contemplates the assignment to the Rhodium Litigation Trust of the Trust Assets, which expressly include the Trust Causes of Action (which, in turn, include the Avoidance Actions). The assets transferred to the Rhodium Litigation Trust shall be administered for the benefit of the Trust Beneficiaries.

The Plan provides that, in the event the Settled Equity Split does not garner enough support from the Holders of Interests (*i.e.*, in an Interpleader Scenario), the Equity Reserve will be deposited in an interest-bearing account with the Bankruptcy Court, which shall be subject to the Interpleader Proceeding. The Interpleader Proceeding would be initiated to resolve the substantial disagreements among Holders of Interests regarding the proper allocation of the Equity Reserve. The Interpleader Proceeding shall continue until resolution is reached, regardless of when the Effective Date of the Plan occurs. Distributions in accordance with the resolution of the Interpleader Proceeding, if applicable, shall be made pursuant to applicable orders of the Bankruptcy Court and deemed to be distributions pursuant to this Plan and shall be subject to the terms hereof, except where otherwise expressly stated herein.

Pursuant to the Pending Pleadings, the Debtors are seeking relief to, among other things, (i) make distributions to Holders of certain Secured Claims, General Unsecured Claims, and Guaranteed Unsecured Claims in accordance with the terms of the Pending Pleadings, and (ii) dissolve the Creditors Committee on the date of Plan Confirmation. For the avoidance of doubt, any distributions made pursuant to the Pending Pleadings shall be in lieu of any payments due on account of such Claims under this Plan, and all such Claims shall be extinguished in the same manner as thought the distributions had been made pursuant to this Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.        DEFINITIONS AND INTERPRETATION.

### A.      **Definitions.**

The following terms shall have the respective meanings specified below:

*1.1* ***"Administrative Expense Claim"*** means any Claim against any Debtor for a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections, 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for good and other services and leased premises) and (ii) Professional Fee Claims.

*1.2* ***"Affiliate"*** shall, with respect to an Entity, have the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

*1.3* ***"Allowed"*** means, with respect to any Claim or Interest, except as otherwise provided herein: (i) a Claim (or any portion thereof) that is evidenced by a Proof of Claim Filed by the applicable Bar Date established in the Chapter 11 Cases; (ii) an Interest (or any portion thereof) that is evidenced by a Proof of Interest Filed by the applicable Bar Date established in the Chapter 11 Cases; (iii) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim or Proof of Interest has been timely Filed that asserts a Claim or Interest different in amount or priority from that listed in the Schedule (unless otherwise agreed by stipulation between the Debtors and the applicable Holder); or (iv) a Claim or Interest Allowed pursuant to the Plan, including as settled or compromised pursuant to section 7.2 hereof, or a Final Order; *provided* that with respect to a Claim or Interest described in clauses (i) and (ii) above, such Claim or Interest shall be considered Allowed only if and to the extent that (A) with respect to such Claim or Interest, no objection to the allowance thereof, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn by the Claim Objection Deadline, (B) an objection to such Claim or Interest is asserted and such Claim or Interest is subsequently allowed pursuant to a Final Order, or (C) such Claim or Interest is settled pursuant to a Final Order; *provided*, *further* that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims and Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502, 503, 506 or 507 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims or Interests that are Reinstated or otherwise Unimpaired pursuant to the Plan.  If a Claim or Interest is Allowed only in part, any provisions hereunder with respect to Allowed Claims or Interests are applicable solely to the Allowed portion of such Claim or Interest.  For the avoidance of doubt, a Proof of Claim or a Proof of Interest Filed after the Bar Date shall not be Allowed for any purpose whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest and a Claim or Interest that has been Disallowed by a Final Order or settlement shall not be Allowed for any purpose whatsoever.  "Allow," "Allowing," and "Allowance," shall have correlative meanings.

*1.4* ***"Asset"*** means all of the rights, title, and interests of a Debtor in, and to property of, whatever type or nature, including real, personal, mixed, intellectual, tangible, and intangible property.

*1.5* ***"Assumption Dispute"*** means an unresolved objection regarding assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of

section 365 of the Bankruptcy Code), or any other issue relating to assumption of an Executory Contract or Unexpired Lease.

1.6 **"Avoidance Actions"** means any and all actual or potential Claims and Causes of Action to avoid or recover a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code and applicable non-bankruptcy law.

1.7 **"Ballot"** means the form distributed to each Holder of a Claim or Interest in a Class entitled to vote on the Plan (as set forth herein), on which it is to be indicated, among other things, acceptance or rejection of the Plan.

1.8 **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.9 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division having jurisdiction over the Chapter 11 Cases, and to the extent of any reference made under section 157 of title 28 of the United States Code or if the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.10 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.11 **"Bar Date"** means, collectively, the General Bar Date, the Governmental Bar Date, the Equity Interests Bar Date, the Rejection Damages Bar Date, and the Amended Schedules Bar Date.

1.12 **"Bar Date Order"** means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving the Form of Proofs of Claim and the Manner of Filing, (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* (Docket No. 284).

1.13 **"Base Salary"** shall mean base salary as of the Effective Date (or with respect to any Participant who began participation in the Plan after the Effective Date, such Participant's base salary on the first day of such Participant's participation in the Plan), excluding shift premiums, overtime, bonuses, commissions, other special payments or any other allowance.

1.14 **"Business Day"** means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in New York, New York are authorized or required by law or other governmental action to close.

1.15 **"Cash"** means the legal tender of the United States of America

1.16 **"Cause"** shall mean where the Participant has (A) repeatedly refused or failed to perform the material duties assigned to him/her; (B) engaged in a willful or intentional act that is materially injurious to the Company; (C) continually or repeatedly been absent from the Company, unless due to serious illness or disability; (D) used illegal drugs or been impaired due to other substances; (E) been convicted of any felony; (F) committed an act of gross misconduct, fraud, embezzlement or theft against the Company; or (G) violated a material Company policy that results in a material injury to the Company.

*1.17* ***"Causes of Action"*** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, proceeding, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), choate or inchoate, reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any claim pursuant to section 362 of the Bankruptcy Code; (iv) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (v) any state law fraudulent transfers; and (vi) any Avoidance Actions.

*1.18* ***"Chapter 11 Cases"*** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

*1.19* ***"Claim"*** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

*1.20* "***Claim Objection Deadline***" means the deadline for objecting to Filed Proofs of Claim or scheduled claims, which shall be, unless otherwise extended pursuant to the Plan (i) the one hundred eightieth (180th) day following the later of (a) the Effective Date and (b) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim; or (ii) such later date as may be fixed by the Bankruptcy Court; *provided*, *however*, that the Debtors may extend the Claim Objection Deadline for an additional ninety (90) days in their sole discretion upon the filing of a notice with the Bankruptcy Court, with further extensions thereafter permitted after notice and a hearing.

*1.21* ***"Claims and Noticing Agent"*** means Kurtzman Carson Consultants, LLC dba Verita Global, the claims, noticing, and solicitation agent retained by the Debtors pursuant to the *Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Claims, Noticing, and Solicitation Agent* (Docket No. 43).

*1.22* ***"Class"*** means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*1.23* ***"Collateral"*** means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid and has not been avoided under the Bankruptcy Code or applicable nonbankruptcy law.

*1.24* "***Company***" means, collectively, the Debtors and their non-Debtor Affiliates.

*1.25* ***"Confirmation"*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

*1.26* ***"Confirmation Date"*** means the date on which the Bankruptcy Court enters the Confirmation Order.

*1.27* **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

*1.28* **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, [which shall be in form and substance acceptable to the Debtors, and the Creditors' Committee (solely to the extent it materially affects the treatment of Guaranteed Unsecured Claims or General Unsecured Claims)].

*1.29* **"Creditors' Committee"** means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on November 22, 2024 (Docket No. 488), the membership of which may be reconstituted from time to time.

*1.30* **"Cure Amount"** means, as applicable, (i) the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (b) permit the Debtors to assume such Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code or (ii) the payment of Cash by the Debtors in an amount required by section 1124(2) of the Bankruptcy Code to Reinstate a Claim.

*1.31* "**D&O Policy**" means, collectively, all insurance policies (including any "tail policy") issued or providing coverage to any of the Debtors for current or former directors', managers', and officers' liability, and all agreements, documents, or instruments related thereto.

*1.32* **"Debtor or Debtors"** has the meaning set forth in the introductory paragraph of the Plan.

*1.33* **"Debtors in Possession"** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

*1.34* **"Disallowed**" means any Claim or Interest, or any portion thereof, that (i) has been disallowed by the Plan, Final Order, or settlement; (ii) is scheduled at zero, or as contingent, disputed, or unliquidated on the Schedules and as to which no Proof of Claim or Proof of Interest has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including any claims or interests bar date order, or otherwise deemed timely Filed under applicable law; (iii) is not scheduled on the Schedules and as to which no Proof of Claim or Proof of Interest has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law; (iv) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (v) has been withdrawn by the Holder thereof.  "Disallow" and "Disallowance" shall have correlative meanings.

*1.35* **"Disbursing Agent"** means any Entity (including any applicable Debtor or Reorganized Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

*1.36* **"Disclosure Statement"** means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

*1.37* "**Disclosure Statement Approval Order**" means the [*Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures and Solicitation Packages, (C) Scheduling Hearings, (D) Establishing Procedures For Objecting to the Plan and Disclosure Statement, (E) Approving the Form, Manner, and Sufficiency of Notice of the Hearings, and (F) Granting Related Relief*], which may be amended or modified.

*1.38* ***"Disputed"*** means with respect to a Claim or Interest, (i) any Claim or Interest, which Claim or Interest is disputed under Section 7.1 of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (ii) any Claim or Interest, proof of which was required to be Filed by order of the Bankruptcy Court but as to which a Proof of Claim or Proof of Interest was not timely or properly Filed by the applicable Bar Date; (iii) any Claim or Interest that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim or Proof of Interest has been Filed by the applicable Bar Date; or (iv) any Claim or Interest that is otherwise disputed by any of the Debtors or the Reorganized Debtors, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.  To the extent the Debtors dispute only the amount of a Claim or Interest, such Claim or Interest shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim or Interest.

*1.39* ***"Disputed Claims Estimation Amount"*** means the maximum amount of each contingent, unliquidated, and Disputed Claim for purposes of distributions hereunder, as determined by the Bankruptcy Court pursuant to a Final Order of the Bankruptcy Court.

*1.40* ***"Distribution Record Date"*** means the record date for purposes of determining which

(i)        Holders of Allowed Claims are eligible to receive distributions under the Plan, which, unless otherwise specified, shall be the earlier of (a) the date that is two (2) Business Days before the Effective Date or such other date as is designated by the Debtors, and (b) the date such Claim becomes Allowed, and

(ii)        Holders of Allowed Interests are eligible to receive distributions under the Plan, which, unless otherwise specified, shall be the Effective Date in a Settled Equity Split Scenario or such later date as may be necessary in an Interpleader Scenario, in accordance with the terms hereof, any Final Order of the Bankruptcy Court, and applicable law.

*1.41* ***"Effective Date"*** means, with respect to the Plan, the date that is a Business Day selected by the Debtors on which: (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent specified in section 9.1 of the Plan have been satisfied or waived (in accordance with section 9.3). Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

*1.42* "***Employee Arrangements***" means all employment or employee-related arrangements, agreements, programs, and policies, and all compensation and benefits plans, policies, award letters, key employee retention agreements, and programs of the Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all agreements with professional employer organizations, savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, life and accidental death and dismemberment insurance plans.

*1.43* "***Entity***" means an individual, corporation, partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or other Person or other entity.

*1.44* "***Equity Interests Bar Date***" means June 20, 2025, at 5:00 p.m. (Prevailing Central Time) as established by the Corrected Order (I) Setting Bar Date for Filing Proofs of Interest, (II) Approving the Form of Proofs of Interest and the Manner of Filing, (III) Approving Notice of Bar Date, and (IV) Granting Related Relief entered on May 14, 2025 (Docket No. 1100).

1.45 **"Equity Reserve"** means the Cash available for distribution to Holders of Interests in the Company after payment in full of all Allowed Claims.

1.46 **"Estate or Estates"** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code upon the commencement of each Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by each Debtor after the Petition Date and before the Effective Date.

1.47 **"Exculpated Parties"** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; (ii) the Creditors' Committee and each of its present and former members, each solely in its capacity as such (and as it relates to former members, solely with regard to the time period for which they served on the Creditors' Committee); (iii) the Independent Directors and (iv) with respect to each of the foregoing Persons in clauses (i) through (iii), all Related Parties.

1.48 **"Executory Contract"** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.49 **"Existing Common Interests"** means common stock issued by the Debtors that existed immediately prior to the Effective Date; *provided, however*, that as used herein, Existing Common Interests shall not include any (i) Imperium Interests, (ii) LTIP Interests, (iii) SAFE Interests, (iv) Transcend Parties Interests, (v) Intercompany Interests, or (vi) REI/RTL Interests.

1.50 **"Federal Judgment Rate"** means the interest rate of 4.41% per annum as provided under 28 U.S.C. § 1961(a), calculated as of the Petition Date.

1.51 **"File, Filed, or Filing"** means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, with the Claims and Noticing Agent.

1.52 **"Final Order"** means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, with respect to the relevant subject matter, which (a) has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, reconsideration or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, reconsideration or rehearing has been timely taken, or (b) as to which any appeal that has been taken or any petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be Filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for new trial, reargument, reconsideration or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

1.53 **"General Bar Date"** means November 22, 2024, at 5:00 p.m. (prevailing Central Time), which is the deadline by which all Persons, except Governmental Units, were required to have Filed Proofs of Claim against the Debtors as established by the Bar Date Order.

*1.54* "***General Unsecured Claim***" means any Claim that is not a Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Professional Fee Claim, Guaranteed Unsecured Claim, Intercompany Claim, Section 510(b) Claim, Late Filed Claim, or an Administrative Expense Claim. Except as otherwise agreed upon pursuant to a settlement with the Debtors, any interest accruing on General Unsecured Claims from the Petition Date through the Effective Date shall accrue at the Federal Judgment Rate.

*1.55* "***Good Reason***" shall mean (A) where there has been a material adverse diminution of any material duties or responsibilities of the Participant; (B) any failure of the Company to comply with the provisions of this Plan; or (C) a material reduction in the Participant's Base Salary or annual bonus opportunity.

*1.56* "***Governmental Bar Date***" means February 20, 2025, at 5:00 p.m. (prevailing Central Time), which is the deadline by which all Governmental Units [are/were] required to have Filed Proofs of Claim against the Debtors, as established by Local Rule 3003-1 and ratified by the Bar Date Order.

*1.57* "***Governmental Unit***" has the meaning set forth in section 101(27) of the Bankruptcy Code.

*1.58* "***Guaranteed Unsecured Claim***" means any Claim arising under or related to those certain secured promissory notes between Rhodium Technologies and the counterparties thereto, which are secured by a pledge by Imperium Investments Holdings LLC of certain of its Class A units in Rhodium Technologies, as set forth in the pledge agreements related to those secured promissory notes. Except as otherwise agreed upon pursuant to a settlement with the Debtors, any interest accruing on Guaranteed Unsecured Claims from the Petition Date through the Effective Date shall accrue at 3.05%.

*1.59* "***Holder***" means any Person holding (including as successor or assignee pursuant to a valid succession or assignment) a Claim or an Interest, as applicable, solely in its capacity as such.

*1.60* "***Impaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

*1.61* "***Imperium***" means Imperium Investments Holdings LLC.

*1.62* "***Imperium Interests***" means any Interest held by Imperium in any of the Debtors.

*1.63* "***Indemnification Obligation***" means any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation or formation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date, excluding any obligation to indemnify any of the foregoing parties with respect to any act or omission for or on behalf of the Debtors arising out of any act or omission determined by a Final Order to constitute actual fraud, willful misconduct, or gross negligence.

*1.64* "***Independent Directors***" means David Eaton and Spencer Wells in their capacities as independent directors of the Debtors.

*1.65* "***Insured Litigation Claims***" means any insured claims constituting Guaranteed Unsecured Claims, General Unsecured Claims, or Section 510(b) Claims, as applicable.

*1.66* "***Intercompany Claim***" means any Claim against a Debtor held by another Debtor.

*1.67* "***Intercompany Interest***" means an Interest in a Debtor held by another Debtor, other than REI/RTL Interests.

*1.68* "***Interpleader Proceeding***" means the adversary proceeding substantially in the form attached hereto as **Exhibit A** which will be initiated by the Debtors or Reorganized Debtors regarding ownership of the Equity Reserve in an Interpleader Scenario.

*1.69* "***Interpleader Scenario***" means a scenario in which (i) the Holders of Interests do not reach agreement regarding the allocation of the Equity Reserve prior to the Confirmation Date and (ii) the Interpleader Proceeding is initiated in the Bankruptcy Court.

*1.70* "***Interests***" means any equity in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instruments evidencing an ownership interest, or equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, whether or not transferable, and any restricted stock, warrant or right, contractual or otherwise, including, without limitation, equity-based employee incentives, grants, stock appreciation rights, performance shares/units, incentive awards, or other instruments issued to employees of the Debtors, to acquire any such interests in a Debtor that existed immediately before the Effective Date (in each case whether or not arising under or in connection with any employment agreement); *provided*, that the foregoing shall not apply to any entitlement to participate in or receive any Interests of the Reorganized Debtors.  For the avoidance of doubt, Interests, as used herein, includes, without limitation, all of (i) Existing Common Interests, (ii) Imperium Interests, (iii) LTIP Interests, (iv) SAFE Interests, (v) Transcend Parties Interests (vi) Intercompany Interests, and (vii) REI/RTL Interests.

*1.71* "***Late Filed Claim***" means a Claim Filed after the applicable Bar Date.

*1.72* "***Lien***" has the meaning set forth in section 101(37) of the Bankruptcy Code.

*1.73* "***Litigation Trust Agreement***" means a trust agreement, substantially in the form attached hereto as **Exhibit C**, providing for the Rhodium Litigation Trust, which agreement shall be entered into and filed with the Bankruptcy Court prior to the Confirmation Hearing, and approved by the Bankruptcy Court as part of the Confirmation Order; *provided*, that the Debtors and Reorganized Debtors shall not be responsible for any costs of the Rhodium Litigation Trust.

*1.74* "***Litigation Trustee***" means the Trustee of the Rhodium Litigation Trust, as approved by the Bankruptcy Court.

*1.75* "***Local Rules***" means the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

*1.76* "***LTIP Interests***" means Interests held by participants in the Debtors' Long-Term Incentive Plan in any of the Debtors.

*1.77* "***Non-Released D&O Claims***" means any claim, right, demand, or cause of action against any Person who serves, or has served, at any time, as a director or officer of any of the Debtors or their subsidiaries, in their capacity as such.

*1.78* "***Person***" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

*1.79* "***Petition Date***" means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

*1.80* "***Pending Pleadings***" means, collectively, the (a) *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to Amend the Final Cash Collateral Order to Provide for Payment to Prepetition Secured Lenders; and (II) Granting Related Relief* (Docket No. 1056); and (b) *Debtors' Emergency Motion for Entry of an Order (I) Approving The Accelerated Payment Procedures; and (II) Granting Related Relief* (Docket No. 1057).

*1.81* "***Plan***" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

*1.82* "***Plan Distribution***" means the payment or distribution of consideration to Holders of Allowed Claims and Interests under the Plan.

*1.83* "***Plan Documents***" means any of the documents, other than the Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement and the Litigation Trust Agreement.

*1.84* "***Plan Supplement***" means a supplemental appendix to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules, which may include, but not be limited to: (i) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (ii) the Schedule of Retained Causes of Action; (iii) the Schedule of Rejected Contracts; and (iv) the Schedule of Assumed Contracts; *provided*, that through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan.

*1.85* "***Prerequisite Condition***" shall have the meaning ascribed to such term in Section 9.2 of the Plan.

*1.86* "***Priority Non-Tax Claim***" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

*1.87* "***Priority Tax Claim***" means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*1.88* "***Pro Rata Share***" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in that Class and other Classes entitled to share in the same recovery as such Class under the Plan.

*1.89* "***Professional***" means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services

rendered on or after the Petition Date and before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.90 **"Professional Fee Claims"** means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date and before or on the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

1.91 **"Professional Fee Claims Estimate"** means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with Section 2.7 of the Plan.

1.92 **"Professional Fee Escrow"** means an escrow account established and funded pursuant to Section 2.5 of the Plan.

1.93 **"Proof of Claim"** means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

1.94 **"Proof of Interest"** means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

1.95 **"Reinstate, Reinstated, or Reinstatement"** means, with respect to Claims and Interests, the treatment provided for in section 1124(2) of the Bankruptcy Code.

1.96 **"REI/RTL Interests"** means any Interests held by Rhodium Enterprises, Inc. in Rhodium Technologies.

1.97 **"Related Parties"** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

1.98 **"Released Parties"** means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Creditors' Committee; (iv) the present and former members of the Creditors' Committee, solely in their capacities as such; (v) the Independent Directors and the Independent Directors' agents and advisors; (vi) the Debtors' and Reorganized Debtors' advisors, including, without limitation, all Debtors' Professionals; and (vii) with respect to each of the foregoing Persons in clauses (iii) through (vi), all Related Parties.

1.99 "**Releasing Parties**" means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Reorganized Debtors; (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), all Related Parties; (iv) the Released Parties; (v) the Holders of all Claims or Interests that vote to accept the Plan; (vi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (vii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; and (viii)

the Holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out.

1.100 **"Reorganized Debtor"** means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

1.101 "**Restructuring Transactions**" means one or more transactions to occur on or prior to the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including: (i) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, amalgamation, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) such other transactions that are required to effectuate the Plan in the most tax efficient manner for the Debtors and Reorganized Debtors, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (v) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order or rule; (vi) any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations necessary or appropriate to simplify or otherwise optimize the Debtors' organizational structure; (vii) the execution and delivery of the Litigation Trust Agreement and the creation of the Rhodium Litigation Trust; and (viii) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

1.102 "**Restructuring Transactions Exhibit**" means a memorandum setting forth the transactions that are required to effectuate the Restructuring Transactions contemplated by the Plan, which will be included in the Plan Supplement.

1.103 **"Rhodium Technologies"** means Rhodium Technologies LLC.

1.104 **"Rhodium 2.0 Secured Notes"** means the secured notes issued by Debtor Rhodium 2.0 LLC.

1.105 **"Rhodium Encore Secured Notes"** means the secured notes issued by Debtor Rhodium Encore LLC.

1.106 "**Rhodium Litigation Trust**" means the trust to be created pursuant to the Article V of this Plan and in accordance with the terms of the Litigation Trust Agreement.

1.107 **"Rhodium Technologies Secured Notes"** means the secured notes issued by Debtor Rhodium Technologies that are secured by certain property of Rhodium 30 MW LLC, as set forth in the security agreements related to the Rhodium Technologies Secured Notes.

1.108 **"Rhodium 2.0 Secured Notes Claims"** means any Claim arising under or related to the Rhodium 2.0 Secured Notes.

1.109 **"Rhodium Encore Secured Notes Claims"** means any Claim arising under or related to the Rhodium Encore Secured Notes.

1.110 **"Rhodium Technologies Secured Notes Claims"** means any Claim arising under or related to the Rhodium Technologies Secured Notes.

1.111 **"Rollup"** means the corporate reorganization consummated by the Debtors on June 30, 2021.

1.112 **"SAFE Agreement(s)"** means Simple Agreements for Future Equity between Debtor Rhodium Enterprises, Inc., on the one hand, and certain investors, on the other hand, issuing rights to receive shares of Rhodium Enterprises, Inc. LLC Class A common stock as set forth in the SAFE Agreement.

1.113 **"SAFE Holder"** means any counterparty to a SAFE Agreement.

1.114 **"SAFE Claim"** means any Claim arising under or related to a SAFE held by a Person that is a party to any SAFE Agreement.

1.115 **"SAFE Interest"** means any Interest arising under or related to a SAFE held by a SAFE Holder.

1.116 **"Schedule of Assumed Contracts"** means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which is to be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

1.117 **"Schedule of Rejected Contracts"** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, if any, which is to be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

1.118 **"Schedule of Retained Causes of Action"** means the schedule of Causes of Action to be retained by the Reorganized Debtors, which will be included in the Plan Supplement.

1.119 **"Schedules"** means any schedules of Assets and liabilities, schedules of Executory Contracts and Unexpired Leases, the Schedule of Retained Causes of Action, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as the same may have been amended, modified, or supplemented from time to time.

1.120 **"Section 510(b) Claims"** means any Claim against any Debtor (i) arising from the rescission of a purchase or sale of an Interest of any Debtor or an Affiliate of any Debtor (including the Existing Common Interests); (ii) for damages arising from the purchase or sale of such Interest; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim. For the avoidance of doubt, to the extent any SAFE Claims exist, such SAFE Claims are Section 510(b) Claims.

1.121 **"Secured Claim"** means a Claim (i) secured by a Lien on Collateral to the extent of the value of such Collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code exceeds the value of the Claim, or (ii) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

*1.122* **"Securities Act"** means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

*1.123* **"Security"** means any Security, as such term is defined in section 101(49) of the Bankruptcy Code.

*1.124* **"Settled Equity Split"** means an agreed allocation of the Equity Reserve, the terms of which may be contained in one or more restructuring support agreement(s), settlement(s) to be approved by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019, or otherwise.

*1.125* **"Settled Equity Split Scenario"** means a scenario in which, prior to the Confirmation Date, all, or a portion, of Holders of Interests in the Company agree (whether such agreement is memorialized in writing or otherwise) to vote in favor of a Plan incorporating the Settled Equity Split, and such contingent of Interest Holders is sufficient to allow for Confirmation of such Plan in accordance with the requirements of the Bankruptcy Code.

*1.126* **"Severance Period"** shall be a period of 12 months.

*1.127* **"SIR"** means self-insured retention or similar deductible.

*1.128* **"Solicitation Materials"** means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, the Disclosure Statement Approval Order, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

*1.129* **"Special Committee"** means the Special Committee of the Board of Directors of Rhodium Enterprises, Inc., which is comprised of the Independent Directors.

*1.130* **"Transaction"** has the meaning as set forth in the Whinstone Settlement Approval Order.

*1.131* **"Transcend Parties"** means [the GR Fairbairn Family Trust, Grant Fairbairn Revocable Trust, NC Fairbairn Family Trust, the Nina Claire Fairbairn Revocable Trust, Transcend Partners Legend Fund LLC, Valley High LP, NCF Eagle Trust, GRF Tiger Trust].

*1.132* **"Transcend Parties Interests"** means any Interest held by any of the Transcend Parties in any of the Debtors.

*1.133* **"Trust Assets"** means (a) any Causes of Action arising under or based on sections 542, 543, 544 through 548, 550, or 553 of the Bankruptcy Code, any state law fraudulent transfer, fraudulent conveyance, or voidable transaction law, or any statute limiting or prohibiting transfers to shareholders, (b) any Cause of Action relating to fraudulent transfer, fraudulent conveyance, voidable transaction, illegal dividend, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, alter ego, or unjust enrichment, (c) Non-Released D&O Claims.

*1.134* **"Trust Beneficiaries"** means (i) in an Interpleader Scenario, all named defendants in the Interpleader Proceeding, or (ii) in a Settled Equity Split Scenario, such Persons or Entities as may be agreed upon pursuant to the terms of the Settled Equity Split.

*1.135* **"Trust Cause of Action"** means a Cause of Action that is a Trust Asset.

*1.136* **"U.S. Trustee"** means the United States Trustee for Region 7.

*1.137* **"Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

*1.138* **"Unimpaired"** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

*1.139* **"Voting Deadline"** means the date and time as may be set by the Bankruptcy Court pursuant to the Solicitation Materials.

*1.140* **"Whinstone Settlement"** means the Transaction, the terms of which were approved by the Bankruptcy Court pursuant to the Whinstone Settlement Approval Order.

*1.141* **"Whinstone Settlement Approval Order"** means the *Order (I) Approving Emergency Motion for a Settlement and Compromise Between Debtors and Whinstone US, Inc. Pursuant to Bankruptcy Rule 9019; (II) Authorizing the Use, Sale, or Lease of Certain Property of the Debtors' Estate Pursuant to 11 U.S.C. § 363; and (III) Granting Related Relief* (Docket No. 921).

*1.142* **"Workers' Compensation Programs"** has the meaning as set forth in the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs, and (B) Pay Certain Obligations with Respect Thereto; and (II) Granting Related Relief* (Docket No. 75).

B.        **Interpretation; Application of Definitions and Rules of Construction**

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan and/or the Confirmation Order, as applicable; (iv) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xii) except as otherwise provided herein, any reference to a document or agreement that is to be issued or entered into that is dependent on an election to be made pursuant to the Plan or an event occurring shall be deemed to be followed by the words "if applicable"; (xiii) any immaterial effectuating provisions may be interpreted by the Debtors, or after the Effective Date, the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; *provided*, that any effectuating provision that has an economic impact will not

be considered "immaterial"; and (xiv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.  To the extent that the treatment, allowance, or disallowance of any Claim herein is interpreted as a claim objection, the Plan shall be deemed a Claim objection to such Claim.

### C.      Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

### D.      Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

### E.      Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

### F.      Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or the Confirmation Order). In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

## ARTICLE II.      ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims (including Professional Fee Claims, Priority Tax Claims, and post-petition Intercompany Claims) have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in Article III.

### 2.1.     *Administrative Expense Claims*

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment, each Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, (i) Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim or (ii) such other

treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders, course of dealing or agreements governing, instruments evidencing, or other documents relating to, such transactions.

### 2.2. *Professional Fee Claims.*

      *(a)*      All Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims shall (i) File, on or before (and no later than) the date that is forty-five (45) days after the Effective Date (unless extended by the Reorganized Debtors, in their sole discretion), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claims.

      *(b)*      The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3. *Priority Tax Claims.*

      Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or (ii) such other treatment reasonably acceptable to the Debtors or Reorganized Debtors (as applicable) and consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; *provided* that the Debtors and the Reorganized Debtors, as applicable, are authorized in their absolute discretion, but not directed, to prepay all or a portion of any such amounts at any time without penalty or premium. For the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

### 2.4. *Professional Fee Escrow.*

      *(a)*      As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors, the Debtors' Estates, or the Reorganized Debtors and (ii) shall be held in trust for the Professionals; *provided* that funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' obligations with respect to Professional Fee Claims shall not be limited

nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow, but subject to any order of the Bankruptcy Court capping the amount of any such fees.

(b)    If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow from the Debtors' Estates without any further action or order of the Bankruptcy Court, subject to any order of the Bankruptcy Court capping the amount of any such fees.

(c)    Any objections to Professional Fee Claims shall be served and Filed no later than twenty-one (21) days after Filing of the final applications for compensation or reimbursement.

2.5.    ***Professional Fee Claims Estimate.***

Each Professional shall estimate in good faith its unpaid Professional Fee Claim and other unpaid fees and expenses incurred in rendering services to the Debtors, the Special Committee, or the Creditors' Committee, as applicable, before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

2.6.    ***Post-Effective Date Fees and Expenses.***

(a)    Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash all reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Debtors or the Reorganized Debtors, as applicable.

(b)    Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.**

3.1.    ***Classification in General.***

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Existing Common Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Section 3.6.

3.2.    *Summary of Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Rhodium 2.0 Secured Notes Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Rhodium Encore Secured Notes Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Rhodium Technologies Secured Notes Claims | Unimpaired | No (Presumed to Accept) |
| 4 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 5a | Guaranteed Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 5b | General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 6 | Intercompany Claims | Unimpaired | No (Presumed to Accept) |
| 7 | Late Filed Claims | Unimpaired | No (Presumed to Accept) |
| 8 | Section 510(b) Claims | Unimpaired | No (Presumed to Accept) |
| 9a | Existing Common Interests | Unimpaired/Impaired | Settled Equity Split Scenario Yes (Entitled to Vote); Interpleader Scenario No (Presumed to Accept) |
| 9b | Transcend Parties Interests | Unimpaired/Impaired | Settled Equity Split Scenario Yes (Entitled to Vote); Interpleader Scenario No (Presumed to Accept) |
| 9c | LTIP Interests | Unimpaired/Impaired | Settled Equity Split Scenario Yes (Entitled to Vote); Interpleader Scenario No (Presumed to Accept) |
| 9d | SAFE Interests | Unimpaired/Impaired | Settled Equity Split Scenario Yes (Entitled to Vote); Interpleader Scenario No (Presumed to Accept) |
| 9e | Imperium Interests | Unimpaired/ Impaired | Settled Equity Split Scenario Yes (Entitled to Vote); Interpleader Scenario No (Presumed to Accept) |
| 9f | REI/RTL Interests | Unimpaired/Impaired | Settled Equity Split Scenario Yes (Entitled to Vote) Interpleader Scenario No (Presumed to Accept) |
| 10 | Intercompany Interests | Impaired | No (Deemed to Reject) |

### 3.3. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims or Reinstated Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims or Reinstated Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired (including, for the avoidance of doubt, any Claim that is Reinstated) by the Plan. Except as otherwise specifically provided in the Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 3.4. *Elimination of Vacant Classes.*

Any Class of Claims against, or Interests in, a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.5. *No Waiver.*

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

### 3.6. *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

### 3.7. *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan to the extent, if any, confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including to implement a merger of two or more Debtor Entities, the assignment of Assets from one Debtor Entity to one or more Debtor Entities, and/or other transactions.

## ARTICLE IV.   TREATMENT OF CLAIMS AND INTERESTS.

### 4.1. *Rhodium 2.0 Secured Notes Claims (Class 1).*

(a)  *Classification*: Class 1 consists of the Rhodium 2.0 Secured Notes Claims.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Rhodium 2.0 Secured Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Rhodium 2.0 Secured Notes Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Rhodium 2.0 Secured Notes Claim.

*Provided,* that the aggregate amount of all Allowed Rhodium 2.0 Secured Notes Claims shall be reduced by (i) the amount of Cash received by Holders of such Claims as adequate protection and (ii) the amount of Cash received by Holders of such Claims in accordance with the Pending Pleadings.

(c)      *Impairment and Voting*: Class 1 is Unimpaired, and the Holders of Rhodium 2.0 Secured Notes Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Rhodium 2.0 Secured Notes Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Rhodium 2.0 Secured Notes Claims.

### 4.2.      *Rhodium Encore Secured Notes Claims (Class 2).*

(a)      *Classification*: Class 2 consists of Rhodium Encore Secured Notes Claims.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Rhodium Encore Secured Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Rhodium Encore Secured Notes Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Rhodium Encore Secured Notes Claim.

*Provided,* that the aggregate amount of all Allowed Rhodium Encore Secured Notes Claims shall be reduced by (i) the amount of Cash received by Holders of such Claims as adequate protection and (ii) the amount of Cash received by Holders of such Claims in accordance with the Pending Pleadings.

(c)      *Impairment and Voting*: Class 2 is Unimpaired, and the Holders of Rhodium Encore Secured Notes Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Rhodium Encore Secured Notes Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Rhodium Encore Secured Notes Claims.

### 4.3.      *Rhodium Technologies Secured Notes Claims (Class 3).*

(a)      *Classification*: Class 3 consists of Rhodium Technologies Secured Notes Claims.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Rhodium Technologies Secured Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Rhodium Technologies Secured Notes Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Rhodium Technologies Secured Notes Claim.

*Provided*, that the aggregate amount of all Allowed Rhodium Technologies Secured Notes Claims shall be reduced by the amount of Cash received by Holders of such Claims in accordance with the Pending Pleadings.

(c)      *Impairment and Voting*: Class 3 is Unimpaired, and the Holders of Rhodium Technologies Secured Notes Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Rhodium Technologies Secured Notes Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Rhodium Technologies Secured Notes Claims.

### 4.4.      *Priority Non-Tax Claims (Class 4).*

(a)      *Classification*: Class 4 consists of Priority Non-Tax Claims.

(b)      *Treatment:* Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Priority Non-Tax Claim.

(c)      *Impairment and Voting*: Class 4 is Unimpaired, and the Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Priority Non-Tax Claims.

### 4.5.      *Guaranteed Unsecured Claims (Class 5a)*

(a)      *Classification*: Class 5a consists of Guaranteed Unsecured Claims.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Guaranteed Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the later of (as applicable) (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) on or before the first Business Day after the date that is thirty (30) calendar days after the date such Guaranteed Unsecured Claim becomes an Allowed Guaranteed Unsecured Claim, payment in Cash in an amount equal to such Allowed Guaranteed Unsecured Claim.

*provided*, that to the extent that a Holder of an Allowed Guaranteed Unsecured Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtors arising from or relating to the same obligations or liability as such Guaranteed Unsecured Claim, such Holder shall only be entitled to a distribution on one Guaranteed Unsecured Claim against the Debtors in full and final satisfaction of all such Claims; *provided, further*, that the aggregate amount of all Allowed Guaranteed Unsecured Claims shall be reduced by the amount of Cash received by Holders of such Claims in accordance with the Pending Pleadings.

For purposes of this Section 4.5, except as otherwise agreed upon pursuant to a settlement with the Debtors, the Allowed amount of any Guaranteed Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at 3.05%.

(c)      *Impairment and Voting*: Class 5a is Unimpaired, and the Holders of Guaranteed Unsecured Claims in Class 5a are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Guaranteed Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Guaranteed Unsecured Claims.

4.6.     ***General Unsecured Claims (Class 5b).***

(a)     *Classification*: Class 5b consists of General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the later of (as applicable) (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) on or before the first Business Day after the date that is thirty (30) calendar days after the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, payment in Cash in an amount equal to such Allowed General Unsecured Claim.

*provided*, that to the extent that a Holder of an Allowed General Unsecured Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtors arising from or relating to the same obligations or liability as such General Unsecured Claim, such Holder shall only be entitled to a distribution on one General Unsecured Claim against the Debtors in full and final satisfaction of all such Claims; *provided, further*, that the aggregate amount of all Allowed General Unsecured Claims shall be reduced by the amount of Cash received by Holders of such Claims in accordance with the Pending Pleadings..

For purposes of this Section 4.6, except as otherwise agreed upon pursuant to a settlement with the Debtors, the Allowed amount of any General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate.

(c)     *Impairment and Voting*: Class 5b is Unimpaired, and the Holders of General Unsecured Claims in Class 5b are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such General Unsecured Claims.

4.7.     ***Intercompany Claims (Class 6).***

(a)     *Classification*: Class 6 consists of Intercompany Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Intercompany Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Intercompany Claim, on the Effective Date, or as soon as reasonably practicable thereafter, without the need for any further corporate or limited liability company action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable, each such Holder shall receive payment in Cash in an amount equal to such Allowed Intercompany Claim.

(c)     *Impairment and Voting*: Class 6 is Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

4.8.     ***Late Filed Claims (Class 7)***

(a)     Classification: Class 7 consists of Late Filed Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Late Filed Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed

Late Filed Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Late Filed Claim..

(c)      *Impairment and Voting*: Class 7 is Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Late Filed Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Section 510(b) Claims.

### 4.9.    *Section 510(b) Claims (Class 8).*

(a)      Classification: Class 8 consists of Section 510(b) Claims.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Section 510(b) Claim agrees to a less favorable treatment of such Claim, all Holders of Section 510(b) Claims shall receive the same treatment under the Plan as afforded to them on account of their Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, or REI/RTL Interests, as applicable.

(c)      *Impairment and Voting*: Class 8 is Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Section 510(b) Claims.

### 4.10.   *Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, REI/RTL Interests (Classes 9a-f).*

(a)      *Classification*: Classes 9a-f consist of Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, and REI/RTL Interests.

(b)      *Treatment*: On the Effective Date, without the need for any further corporate or limited liability company action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable:

   a. In an Interpleader Scenario, all Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, and REI/RTL Interests shall remain unaltered.  Any and all distributions on account of Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, and REI/RTL Interests shall be made after, and in accordance with, the resolution of the Interpleader Proceeding, and all distributions to Holders of such Interests or any other Person or Entity party to the Interpleader Proceeding shall be made solely from the Equity Reserve.

   b. In a Settled Equity Split Scenario, each Holder of Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, and REI/RTL Interests shall receive payment in Cash in an amount equal to its Pro Rata Share of the Equity Reserve as provided for in, and in accordance with the terms of, the Settled Equity Split.

(c)      Impairment and Voting:

a. In an Interpleader Scenario, Classes 9a-f are Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, and REI/RTL Interests are not entitled to vote to accept or reject the Plan.

b. In a Settled Equity Split Scenario, Classes 9a-f are Impaired and such Holders of Existing Common Interests, Transcend Parties Interests, LTIP Interests, SAFE Interests, Imperium Interests, or REI/RTL Interests are entitled to vote to accept or reject the Plan.

4.11.  *Intercompany Interests (Class 9)*

*(a)*  *Classification*: Class 9 consists of Intercompany Interests.

*(b)*  *Treatment*: On the Effective Date, without the need for any further corporate or limited liability company action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable, all Intercompany Interests shall be cancelled, released, and extinguished without any distribution.

*(c)*  *Impairment and Voting*: Class 9 is Impaired and such Holders of Intercompany Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

**ARTICLE V.     MEANS FOR IMPLEMENTATION.**

5.1.  ***Compromise and Settlement of Claims, Interests, and Controversies.***

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, including, for the avoidance of doubt, the Whinstone Settlement, the Settled Equity Split and the Interpleader Proceeding, as applicable, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies, except Trust Causes of Action, relating to the contractual, legal, and subordination rights that a Claim Holder or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest, including pursuant to any Restructuring Transactions, the Settled Equity Split, or the Interpleader Proceeding. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the Debtors, their Estates, and Holders of Allowed Claims and Interests, and is fair, equitable, and is within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

5.2.  ***Rhodium Litigation Trust***

*(a)*  *Vesting of Trust Assets in the Rhodium Litigation Trust*.  On the Effective Date, and except as otherwise expressly provided in the Plan, all Trust Assets shall vest in the Rhodium Litigation Trust free and clear of any and all Liens, obligations, and all other interests of every kind and nature, and

the Confirmation Order shall so provide. The Rhodium Litigation Trust, through the Rhodium Litigation Trustee, shall be authorized, but not directed, to pursue the Trust Causes of Action and distribute the proceeds in accordance with the Plan.

(b)     *Appointment of Litigation Trustee*.  The Debtors will appoint a Trustee of the Rhodium Litigation Trust subject to approval of the Bankruptcy Court. On and after the Effective Date, the operations of the Rhodium Litigation Trust shall be the responsibility of the Litigation Trustee.

(c)     *Compensation of Litigation Trustee and Professionals*. The Litigation Trustee's fees and expenses, and those of any employees or professionals engaged or retained by the Litigation Trustee, shall be satisfied from recoveries made by the Rhodium Litigation Trust.  The Litigation Trustee shall not be entitled to any payment of fees and expenses from any of the Reorganized Debtors.

(d)     *Pursuit of Causes of Action.*

On the Effective Date, the Trust Causes of Action shall be vested in the Rhodium Litigation Trust, except to the extent a Holder of any Claim or Interest or other third party has been specifically released from any Cause of Action by the terms of this Plan or by a Final Order of the Bankruptcy Court. The Rhodium Litigation Trust will have the right, in its sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Trust Causes of Action without seeking any approval from the Bankruptcy Court. The Debtors express no opinion on the merits of any of the Trust Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtors state that any party in interest that engaged in business or other transactions with the Debtors prior to the Petition Date or that received payments from the Debtors prior to the Petition Date may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. All costs and expenses (including legal fees) to pursue the Causes of Action shall be paid from the proceeds of recoveries by the Rhodium Litigation Trust.

No Holder of any Claim or Interest or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to, or on the belief that it will, obtain any defense to any Cause of Action. No Holder of any Claim or Interest or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY TRUST CAUSES OF ACTION, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE RHODIUM LITIGATION TRUST. Holders of Claims and Interests are advised that legal rights, claims and causes of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a Final Order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Holders of Claims and Interests are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Holder of any Claim or Interest in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or the Rhodium Litigation Trust does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Holder of a Claim or Interest votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of the Rhodium Litigation Trust. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Rhodium Litigation Trust, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Except as expressly provided, nothing in this Plan operates as a release of any of the Causes of Action.

The Debtors do not presently know the full extent of the Trust Causes of Action and, for purposes of voting on the Plan, all Holders of Claims and Interests are advised that the Rhodium Litigation Trust will have substantially the same rights that a Chapter 7 trustee would have with respect to the Trust Causes of Action. Accordingly, neither a vote to accept the Plan by any Holders of Claims or Interests nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Holder of Claims or Interests or any other Person or Entity, unless such Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata* or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Trust Causes of Action following Confirmation of the Plan.

The Estates shall remain open, even if the Chapter 11 Cases shall have been closed, as to any and all Trust Causes of Action until such time as the Trust Causes of Action have been fully administered and the recoveries on account of any Trust Causes of Action have been received by the Rhodium Litigation Trust; *provided, however*, that nothing in the Plan or the Disclosure Statement shall prohibit the Rhodium Litigation Trust from pursuing any Trust Causes of Action (excluding the Avoidance Actions) in any courts other than the Bankruptcy Court.

(e)     *Prosecution and Settlement of Trust Causes of Action.* The Rhodium Litigation Trust (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Trust Cause of Action which the Debtor had asserted or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Trust Cause of Action. From and after the Effective Date, the Rhodium Litigation Trust shall be authorized, pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code, to compromise and settle any Trust Cause of Action in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Cause of Action or objection to a Claim originally asserted in an amount equal to or less than $100,000.00, then the Rhodium Litigation Trust may settle the Cause of Action and execute necessary documents, including a stipulation of settlement or release; and (ii) if the resulting settlement involves a Cause of Action or objection to a Claim originally asserted in an amount exceeding $100,000.00, then the Rhodium Litigation Trust shall be authorized and empowered to settle such Cause of Action only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and after notice to the required parties.

5.3.     ***Interpleader Proceeding***

In an Interpleader Scenario:

(a)     *Maintenance of the Equity Reserve by the Bankruptcy Court.*  In connection with the Interpleader Proceeding, the Equity Reserve shall be deposited with the Bankruptcy Court and the Bankruptcy Court shall maintain the Equity Reserve pending resolution of the Interpleader Proceeding. From and after the deposit of the Equity Reserve with the Bankruptcy Court, the Debtors or Reorganized Debtors, as applicable, shall have no obligations in connection with the Equity Reserve.

(b)     *Fees and Costs.* All parties to the Interpleader Proceeding shall bear sole responsibility for their own incurred costs and expenses in connection therewith, including attorneys' fees or any other professionals' fees, and in no event shall the Debtors or the Reorganized Debtors, as applicable, be liable to any party for any costs incurred in connection with the Interpleader Proceeding.

(c)     *Incorporation into the Plan*.  The Interpleader Proceeding, and any resolution thereof, is hereby incorporated in this Plan, and Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and controversies related to ownership of the Equity Reserve, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the Debtors, their Estates, and Holders of Interests, and is fair, equitable, and is within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

(d)     *No Further Action*.  Upon acceptance of the Interpleader Proceeding, no Debtor or Reorganized Debtor, nor any of its Affiliates, shall be obligated to take any action in connection therewith or in connection with the Equity Reserve or distribution thereof.  All distributions made in accordance with the resolution of the Interpleader Proceeding shall be deemed approved by entry of the Confirmation Order without any further action by the Bankruptcy Court or any other Party.

(e)     *Distributions*.  Distributions of the Equity Reserve shall be made to Persons or Entities party pursuant to the Interpleader Proceeding in accordance with the resolution of the Interpleader Proceeding.

### 5.4.    *Continued Corporate Existence; Effectuating Documents; Corporate Action; Restructuring Transactions.*

(a)     Except as otherwise provided in the Plan or the Plan Documents, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors as they existed before the Petition Date, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the respective certificate of incorporation or bylaws (or other analogous formation documents) in effect before the Effective Date, as applicable, except to the extent such certificate of incorporation or bylaws (or other analogous formation, constituent, or governance documents) are amended by the Plan or otherwise, and to the extent any such document is amended, such document is deemed to be amended pursuant to the Plan and requires no further action or approval (other than any requisite filings required under applicable state or federal law).

(b)     Notwithstanding anything herein to the contrary, on or about the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall take all actions set forth in and contemplated by the Restructuring Transactions Exhibit, and enter into any transaction and may take all actions as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including the Restructuring Transactions.

(c)     Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the assumption of Executory Contracts and Unexpired Leases as provided herein, (ii) the selection of the managers, directors, or officers for the Reorganized Debtors, (iii) execution of Litigation Trust Agreement, and (iv) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.

(d)     The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize and direct parties, as applicable, among other things, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to, effectuate the Plan, including the Restructuring Transactions.

(e)    Each officer, member of the board of directors, or manager of the Debtors is (and each officer, member of the board of directors, or manager of the Reorganized Debtors shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.

(f)    All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or by any other stakeholder, and with like effect as though such action had been taken unanimously by the stockholders, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

5.5.    *Exemption from Securities Laws.*

(a)    The Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the securities to be issued under the Plan under applicable securities laws or the validity of any other transaction contemplated by the Plan or the Confirmation Order. Notwithstanding anything to the contrary in the Plan or otherwise, no Person or Entity may require from the Debtors or Reorganized Debtors a legal opinion regarding the validity of any transaction contemplated by the Plan.

5.6.    *Cancellation of Liens.*

(a)    Except as otherwise specifically provided herein, including Sections 4.4 and 4.6 hereof, all notes, instruments, certificates evidencing debt of the Debtors will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable Persons to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)    After the Effective Date, the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of Claims or Interests including, without limitation, UCC-3 termination statements, in accordance with the Plan.

5.7.    *Officers and Boards of Directors.*

(a)    On the Effective Date, to the extent compliant with Delaware General Corporation Law, the New Board shall consist of those individuals, which will be disclosed pursuant to a plan supplement. The composition of the boards of directors or boards of managers of each Reorganized Debtor, as applicable, shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of

the Bankruptcy Code. The chairperson of the new board shall be determined by a simple majority of the new board, without giving effect to the vote of the director selected as the new chairperson.

*(b)*        The officers of the respective Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment agreement with the Reorganized Debtors and applicable non-bankruptcy law. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

*(c)*        Except to the extent that a member of the board of directors or a manager, as applicable, of a Debtor continues to serve as a director or manager of such Debtor on and after the Effective Date, the members of the board of directors or managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date. After the Effective Date, the nomination and appointment of directors to the board of directors will be in accordance with the applicable corporate governance documents.

5.8.        *Nonconsensual Confirmation.*

The Debtors intend to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.9.        *Closing of the Chapter 11 Cases.*

After the Effective Date, the Reorganized Debtors shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance reasonably acceptable to the U.S. Trustee and the Reorganized Debtors, that closes and issues a final decree for each of the Chapter 11 Cases; *provided* that any order of the Bankruptcy Court closing the Chapter 11 Cases shall provide that the Chapter 11 Case of Rhodium Enterprises Inc. shall remain open through the pendency of any litigation commenced by the Rhodium Litigation Trust or an earlier date determined by the Rhodium Litigation Trust, and that for purposes of sections 546 and 550 of the Bankruptcy Code, the Rhodium Litigation Trust may proceed in the Chapter 11 Case as if the other cases had not been closed; *provided further* that the Rhodium Litigation Trust shall bear the cost of the Chapter 11 Case of Rhodium Enterprises Inc. following the entry of an order of the Bankruptcy Court closing the Chapter 11 Cases of the other Debtors.

5.10.        *Dissolution of Certain Debtors; Consolidation of Debtors' Estates.*

On the Effective Date, all of the subsidiary Debtors' assets (other than Rhodium Enterprises, Inc.) shall be merged into Rhodium Technologies, and such subsidiary Debtors shall be dissolved pursuant to this Plan and the Confirmation Order, in accordance with the terms of the Restructuring Transactions Exhibit, as the same may be amended or modified pursuant to the terms thereof. The surviving Reorganized Debtors shall be Rhodium Enterprises, Inc. and Rhodium Technologies.

5.11.        *Notice of Effective Date.*

As soon as practicable, the Debtors shall File a notice of the occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE VI.      DISTRIBUTIONS.

### 6.1.      *Distributions Generally.*

Except as otherwise provided in the Plan, the Disbursing Agent shall make all applicable Plan Distributions to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan. The Reorganized Debtors shall be authorized to cause partial distributions to be made on account of Allowed Claims before all Claims are Allowed.

### 6.2.      *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Debtors or the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the applicable Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.3.      *Date of Distributions.*

Except as otherwise provided in the Plan (including payments made in the ordinary course of the Debtors' business) or as paid pursuant to a prior Bankruptcy Court order, on the Effective Date or, if a Claim or Interest is not Allowed on the Effective Date, on the date that such Claim or Interest becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, or as otherwise determined in accordance with the Plan and Confirmation Order, including, without limitation, the treatment provisions of Article IV of the Plan and Section 5.4 of the Plan, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class; *provided* that the Reorganized Debtors may implement periodic distribution dates to the extent they determine them to be appropriate.

### 6.4.      *Disbursing Agent.*

All distributions under the Plan shall be made by the applicable Reorganized Debtor or applicable Disbursing Agent on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable fees and expenses incurred by such Disbursing Agent directly related to distributions hereunder shall be reimbursed by the Reorganized Debtors.

### 6.5.      *Rights and Powers of Disbursing Agent.*

*(a)*      From and after the Effective Date, each Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, Holders of Claims against and Interests in the Debtors and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No Holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action

vested in a Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by such Disbursing Agent to be necessary and proper to implement the provisions hereof.

        *(b)*    <u>Powers of Disbursing Agent.</u> Each Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in such Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to the Plan or (B) as deemed by such Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

        *(c)*    <u>Expenses Incurred on or After the Effective Date.</u> Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by a Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

        6.6.    ***No Postpetition Interest on Claims.***

        Except as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

        6.7.    ***Delivery of Distributions.***

        Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made to a Disbursing Agent, which shall transmit such distribution to the applicable Holders of Allowed Claims as and when required by the Plan at (i) the address of such Holder on the books and records of the Debtors or their agents or (ii) at the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any transfers of Claim Filed pursuant to Bankruptcy Rule 3001. In the event that any distribution to any Holder is returned as undeliverable, no further distributions shall be made to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then-current address, at which time, or as soon thereafter as reasonably practicable, all currently-due, missed distributions shall be made to such Holder without interest. Nothing herein shall require any Disbursing Agent to attempt to locate Holders of undeliverable distributions and, if located, assist such Holders in complying with Section 6.19 of the Plan.

        6.8.    ***Distributions after Effective Date.***

        Distributions made after the Effective Date shall, in each case, be deemed to have been made on the Effective Date.

        6.9.    ***Unclaimed Property.***

        One year from the later of (i) the Effective Date and (ii) the date that is ten (10) Business Days after the date of a distribution on an Allowed Claim or Existing Common Interest, all distributions payable on account of such Claims that are undeliverable or otherwise unclaimed shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtors or their successors or assigns, and all claims of any other Person (including the Holder of a Claim in the same Class) to such distribution shall be discharged and forever barred. The Reorganized Debtors and the Disbursing Agent

shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records, including the records of the Debtors' transfer agent(s), and the Bankruptcy Court's Filings.

6.10.    ***Time Bar to Cash Payments.***

Checks issued by a Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of first issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the applicable Disbursing Agent by the Holder of the Allowed Claim to which such check was originally issued, prior to the expiration of the ninety (90) day period.

6.11.    ***Manner of Payment under Plan.***

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the Reorganized Debtors, as applicable, any Cash payment to be made hereunder by the Debtors or Reorganized Debtors may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.12.    ***Satisfaction of Claims.***

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, release, settlement, and discharge of, and exchange for, such Allowed Claims.

6.13.    ***Minimum Cash Distributions.***

A Disbursing Agent shall not be required to make any distribution of Cash less than one hundred dollars ($100) to any Holder of an Allowed Claim; *provided*, *however*, that if any distribution is not made pursuant to this Section 6.13, such distribution shall be added to any subsequent distribution to be made on behalf of such Holder's Allowed Claim.

6.14.    ***Setoffs and Recoupments.***

(a)    Each Debtor, Reorganized Debtor, or such entity's designee as instructed by such Debtor or Reorganized Debtor, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made pursuant to the Plan on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that a Debtor, Reorganized Debtor, or its successors may have against the Holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor, a Reorganized Debtor, or its successor of any claims, rights, or Causes of Action that a Debtor, Reorganized Debtor, or its successor or assign may possess against the Holder of such Claim.

(b)    In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor, unless (i) the Debtors or the Reorganized Debtors, as applicable, have consented or (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and which was ultimately granted by the Bankruptcy Court, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to

section 553 of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, this paragraph does not create any new rights to setoff or recoupment that did not exist under any applicable law or agreement in existence prior to the Effective Date.

      6.15.    ***Allocation of Distributions between Principal and Interest.***

Except as otherwise provided in the Plan and subject to Section 6.7 of the Plan or as otherwise required by law (as reasonably determined by the Reorganized Debtors), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any, including accrued but unpaid interest.

      6.16.    ***No Distribution in Excess of Amount of Allowed Claim***

Notwithstanding anything in the Plan to the contrary, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim (plus any postpetition interest on such Claim solely to the extent permitted by the Plan).

      6.17.    ***Withholding and Reporting Requirements.***

    *(a)*    *Withholding Rights.* In connection with the Plan, any Person issuing any instrument or making any distribution described in the Plan (or any other related agreement) or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or non-U.S. taxing authority, and, notwithstanding any provision in the Plan to the contrary, any such Person shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any distribution or payment to be made under or in connection with the Plan (or any other related agreement) to generate sufficient funds to pay applicable withholding taxes, using its own funds to pay any applicable withholding taxes and retaining a portion of the applicable distribution, withholding distributions pending receipt of information necessary or appropriate to facilitate such distributions or establishing any other mechanisms it believes are reasonable and appropriate. Any amounts withheld shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Claim or Interest or any other Person that receives a distribution pursuant to the Plan or payment in connection therewith shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

    *(b)*    *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent or such other Person designated by the Reorganized Debtors (which Person shall subsequently deliver to the applicable Disbursing Agent any applicable Internal Revenue Service ("**IRS**") Form W-8 or Form W-9 received) an appropriate IRS Form W-9 or an appropriate IRS Form W-8 and any other forms or documents reasonably requested by any Reorganized Debtor to reduce or eliminate any withholding required by any federal, state, or local taxing authority. If such request is made by the Reorganized Debtors, the Disbursing Agent, or such other Person designated by the Reorganized Debtors or a Disbursing Agent and such party fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to

the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

## ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS.

### 7.1.    *Disputed Claims Generally.*

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or Final Order, including the Confirmation Order (when it becomes a Final Order), Allowing such Claim. Except insofar as a Claim is Allowed under the Plan or was Allowed prior to the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall have and retain any and all rights and defenses such Debtor has with respect to any Disputed Claim. Any objections to Claims shall be served and Filed on or before the Claim Objection Deadline. All Disputed Claims not objected to by the end of such period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

### 7.2.    *Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan, the Debtors or Reorganized Debtors, as applicable, shall be entitled to object to Claims. Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors shall have the authority to (i) file, withdraw, or litigate to judgment objections to Claims, (ii) settle or compromise any Disputed Claim without any further notice to, or action, order, or approval by, the Bankruptcy Court, and (iii) administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to, or action, order, or approval by, the Bankruptcy Court.

### 7.3.    *Estimation of Claims.*

The Debtor or Reorganized Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.

### 7.4.    *Adjustment to Claims Register Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or Reorganized Debtors, as applicable, upon stipulation or any agreement in writing, including,

without limitation, email correspondence, between the parties in interest without a Claims objection having to be Filed and without any further notice or action, order, or approval of the Bankruptcy Court.

7.5.    ***Disallowance of Claims.***

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or Reorganized Debtors, as applicable.

Except as otherwise provided herein or otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice or action, order, or approval of the Bankruptcy Court, and Holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests, unless the Bankruptcy Court shall have determined by a Final Order, on or before the Confirmation Hearing, that cause exists to extend the Bar Date as to such Proof of Claim on the basis of excusable neglect.

7.6.    ***No Distributions Pending Allowance.***

If an objection, motion to estimate, or other challenge to a Claim or Interest is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until (and only to the extent that) such Disputed Claim or Interest becomes an Allowed Claim or Allowed Interest.

7.7.    ***Distributions after Allowance.***

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan, including the treatment provisions provided in Article IV and Section 5.4 of the Plan. As soon as reasonably practicable after the date that the Final Order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date.

7.8.    ***Claim Resolution Procedures Cumulative.***

All of the Claims, objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.9.    ***Single Satisfaction of Claims.***

In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Interest exceed 100 percent of the underlying Allowed Claim plus applicable interest required to be paid hereunder, if any.

7.10.    *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of (i) the Bankruptcy Court or (ii) the Reorganized Debtors, and any other new or amended Claim or Proof of Claim Filed after the Effective Date shall be deemed Disallowed in full and expunged without any further action of or notice to the Bankruptcy Court.

# ARTICLE VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1.    *General Treatment.*

*(a)*    As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 8.5 of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.

*(b)*    Subject to (i) satisfaction of the conditions set forth in section 8.1(b) of the Plan, (ii) resolution of any disputes in accordance with section 8.2 of the Plan with respect to the Executory Contracts or Unexpired Leases subject to such disputes, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by any provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

*(c)*    To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

*(d)*    The Debtors reserve the right, subject to the consent of the Creditors' Committee, such consent not to be unreasonably withheld, conditioned, or delayed, on or before the Effective Date, to amend the Schedule of Rejected Contracts or the Schedule of Assumed Contracts, to add or remove any Executory Contract or Unexpired Lease; *provided* that the Debtors or Reorganized Debtors, as applicable, may amend the Schedule of Rejected Contracts or Schedule of Assumed Contracts to add or delete any Executory Contracts or Unexpired Leases after such date to the extent agreed with the relevant counterparties or authorized by the Bankruptcy Court.

8.2.    *Determination of Assumption and Cure Disputes and Deemed Consent.*

*(a)*    The Debtors shall File, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts. At least ten (10) days before the deadline to object to Confirmation of the Plan, the Debtors shall serve a notice on parties to Executory Contracts or Unexpired

Leases to be assumed, assumed and assigned, or rejected, reflecting the Debtors' intention to potentially assume, assume and assign, or reject, the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any). If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign is not listed on such a notice, the proposed Cure Amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0). **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court**. Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption or assumption and assignment of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor or any Reorganized Debtor, as applicable, under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor or any Reorganized Debtor, as applicable. Each such provision shall be deemed to not apply to the assumption or assumption and assignment of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in this section 8.2(a), shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

      *(b)*      If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; *provided* that the Debtors or the Reorganized Debtors, as applicable, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

      *(c)*      To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Assumption Dispute; *provided* that the Debtors or the Reorganized Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Reorganized Debtor).

      *(d)*      Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied promptly, or otherwise as soon as practicable, by the Debtors or Reorganized Debtors, as the case may be, upon assumption or assumption and assignment, as applicable, of the underlying Executory Contracts and Unexpired Leases. Assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full and final satisfaction, settlement, release, and discharge of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption or

assumption and assignment, as applicable. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, as applicable, shall be deemed disallowed and expunged, without further notice to, or action, order or approval of, the Bankruptcy Court or any other Entity, upon the deemed assumption of such Executory Contract or Unexpired Lease.

8.3.    *Rejection Claims.*

Unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order or such other order of the Bankruptcy Court, as applicable, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Reorganized Debtors, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and may be objected to in accordance with the provisions of Section 7.2 of the Plan and applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

8.4.    *Survival of the Debtors' Indemnification Obligations.*

(a)    Notwithstanding anything in the Plan (including Section 10.3 of the Plan), all Indemnification Obligations shall (i) remain in full force and effect, (ii) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (iii) not be limited, reduced or terminated after the Effective Date, and (iv) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on, or after the Petition Date; *provided* that the Reorganized Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that are not indemnified by such Indemnification Obligation. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors. Any Claim based on the Debtors' Indemnification Obligations shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)    In accordance with the foregoing, the Reorganized Debtors shall cooperate with current and former officers, directors, members, managers, agents, or employees in relation to the Indemnification Obligations assumed under the Plan, including responding to reasonable requests for information and providing access to attorneys, financial advisors, accountants, and other professionals with knowledge of matters relevant to any such claim covered by an Indemnification Obligation assumed under the Plan, including any claim or Cause of Action arising under any state or federal securities laws.

8.5.    *Employee Arrangements and Employee Obligations.*

(a)    Employees and Management shall be entitled to the Severance Benefits set forth on the attached **Exhibit B**, notwithstanding any other previously negotiated contractual terms, in the event that such Participant's employment with the Company is terminated after the Effective Date (i) by the Company without Cause and not due to such Participant's death or Disability, or (ii) by the Participant for Good

Reason; *provided*, *however*, that the Severance Benefits shall be payable only if the Participant executes, and fails to revoke within the statutory revocation period, a release following termination of employment which is, in form and substance, satisfactory to the Company. Each Participant shall receive written notification, as soon as practicable after the Effective Date, of such Participant's Retention Bonus under the Plan.  For the avoidance of doubt, the Employee and the Company may agree to an alternative payment schedule, *provided, however*, any such amounts will not exceed those provided for here in the Plan.

(b)     Unless otherwise listed on the Schedule of Rejected Contracts, all employment agreements and offer letters shall be deemed assumed on the Effective Date as Executory Contracts pursuant to sections 365 and 1123 of the Bankruptcy Code (which assumption shall include any modifications to such employments agreements). Any such assumption shall not trigger any applicable change of control, immediate vesting, termination, or similar provisions therein, including, *e.g.*, any right to severance pay in connection with a change in control. No participant shall have rights under the assumed Employee Arrangements other than those existing immediately before such assumption (with respect to services performed prior to the Effective Date); *provided* that new rights may arise relating to the performance of services on or after the Effective Date pursuant to the terms of such assumed Employee Arrangements (*e.g.*, go-forward salary and bonus) and any vesting of rights under such Employee Arrangements will be recognized as continuous through the Effective Date (*e.g.*, annual bonus for calendar year 2023).

(c)     As of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under all applicable Workers' Compensation Programs and in accordance with all applicable workers' compensation laws in states in which the Reorganized Debtors operate. Any Claims arising under Workers' Compensation Programs shall be deemed withdrawn once satisfied without any further notice to, or action, order, or approval of, the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable law, including non-bankruptcy law, with respect to any such Workers' Compensation Programs; *provided, further,* that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

(d)     With respect to any Employee Arrangements that are Executory Contracts and are not otherwise addressed in this Section 8.5 or listed on the Schedule of Rejected Contracts, all such Employee Arrangements shall be deemed assumed on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code; *provided,* that any Employee Arrangements that provide for or contemplate (in whole or in part) rights to Interests (whether actual or contingent) shall not be assumed pursuant to this Section 8.5(c).

(e)     With respect to any Employee Arrangements that are not Executory Contracts and are not otherwise addressed in this Section 8.5, all such Employee Arrangements shall be continued in the ordinary course of business following the Effective Date; *provided,* that any Employee Arrangements that provide for or contemplate (in whole or in part) rights to Interests (whether actual or contingent) shall not be continued as a result of this Section 8.5(d).

(f)     Severance Benefits shall be as follows:

a. The Company shall pay to the Participant an amount equal to the Participant's base salary, at the rate in effect at the time of termination of his or her employment, to be paid in accordance with Company's normal payroll practices and periods for the duration of the Severance Period (as defined below).

b.  The Company shall continue to cover the Participant and his or her dependents under, or provide such Participant and his or her dependents with insurance coverage no less favorable than, the Company's health and dental benefit plans or programs (as in effect on the day immediately preceding the date of termination of employment) for a period equal to the lesser of (A) the Severance Period or (B) until such Participant is provided benefits by another employer that are substantially comparable (with no preexisting condition limitations) to the benefits provided by such plans or programs. To the extent any such benefits cannot be provided under the benefit plans or programs of the Company or any of its subsidiaries, the Participant will be entitled to receive, on a monthly basis following termination, cash payments in an amount equal to the monthly cost of such benefits.

### 8.6.  *Insurance Policies/Claims Payable By Third Parties.*

*(a)*     All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be assumed by the applicable Debtors or the Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall vest in the Reorganized Debtors. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured Persons" in any D&O Policy.

*(b)*     In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

*(c)*     In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

*(d)*     In the event that the Debtors determine that an Allowed Claim is covered in full or in part under one of the Debtors' insurance policies, no distributions under the Plan shall be made on account of such Allowed Claim unless and until, and solely to the extent that, (i) the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) an insurer authorized to issue a coverage position under such insurance policy, or the agent of such insurer, issues a formal determination, which the Debtors in their sole discretion do not contest, that coverage under such insurance policy is excluded or otherwise unavailable for losses arising from such Allowed Claim. Any proceeds available pursuant to one of the Debtors' insurance policies shall reduce the Allowed amount of a Claim on a dollar-for-dollar basis. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court. If an applicable insurance policy has a SIR, the Holder of an Insured Litigation Claim shall have an Allowed General Unsecured Claim or a Section 510(b) Claim, as applicable, against the applicable Debtor's Estate solely up to the amount of the SIR that may be established upon the liquidation of the Insured Litigation

Claim. Such SIR shall be considered satisfied pursuant to the Plan through allowance of the General Unsecured Claim or Section 510(b) Claim, as applicable, solely in the amount of the applicable SIR, if any; *provided*, however that nothing herein obligates the Debtors or the Reorganized Debtors to otherwise satisfy any SIR under any insurance policy. Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof. Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy. Nothing herein relieves any Entity from the requirement to timely File a Proof of Claim by the applicable Bar Date.

### 8.7. *Intellectual Property Licenses and Agreements.*

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the Confirmation Date shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion Filed by the Debtors in accordance with the Plan. Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.8. *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including, without limitation, those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 8.9. *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed in the Schedule of Assumed Contracts.

### 8.10. *Reservation of Rights.*

*(a)* Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory

Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors or their respective Affiliates has any liability thereunder.

(b)     Except as otherwise provided in the Plan, nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors or the Reorganized Debtors under any Executory Contract or non-executory contract or any Unexpired Lease or expired lease.

(c)     Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors under any Executory Contract or non-executory contract or any Unexpired Lease or expired lease.

(d)     If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or Reorganized Debtors, as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment.

## ARTICLE IX.     CONDITIONS PRECEDENT TO EFFECTIVE DATE.

### 9.1.     *Conditions Precedent to the Effective Date.*

The following are conditions precedent to the Effective Date of the Plan:

(a)     the Plan Supplement shall have been Filed;

(b)     the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance (i) acceptable to the Debtors, and (ii) solely to the extent it materially affects the treatment of Guaranteed Unsecured Claims or General Unsecured Claims, reasonably acceptable to the Creditors' Committee, and such Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered;

(c)     all conditions precedent to the effectiveness of the Whinstone Settlement shall have been satisfied or waived in accordance with the terms thereof, and the Whinstone Settlement shall be in full force and effect and binding on all parties thereto;

(d)     the Professional Fee Escrow shall have been established and funded in Cash;

(e)     no court of competent jurisdiction (including the Bankruptcy Court) or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, prohibiting, or materially affecting the consummation of any of the transactions contemplated under the Plan;

(f)     all governmental and third-party approvals and consents necessary, if any, in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

### 9.2. *Timing of Conditions Precedent.*

Notwithstanding when a condition precedent to the Effective Date occurs, unless otherwise specified in the Plan or any Plan Supplement document, for the purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; *provided* that to the extent a condition precedent (the "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the applicable Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

### 9.3. *Waiver of Conditions Precedent.*

(a)     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Each of the conditions precedent of the Plan may be waived by the Debtors, and in consultation with the Creditors' Committee, without notice to, leave from, or order of, the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

(b)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

### 9.4. *Effect of Failure of a Condition.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors, (ii) prejudice in any manner the rights of any Person, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Person.

## ARTICLE X.     EFFECT OF CONFIRMATION OF PLAN.

### 10.1. *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any Plan Document, on the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Assets of the Estates other than Trust Assets, including all claims, rights, and Causes of Action that are not Trust Causes of Action and any property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Liens, Claims, charges, or other interests or encumbrances unless expressly provided otherwise by the Plan or Confirmation Order. In addition, all rights, benefits, and protections provided to any of the Creditors' Committee, the Special Committee, the Debtors, or their Estates pursuant to the Plan, the Plan Supplement, or the Confirmation Order including, but not limited to, the release, exculpation, and injunction provisions provided in Article X of the Plan, shall vest in each respective Reorganized Debtor unless expressly provided otherwise by the Plan or the Confirmation Order. On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims (including any Administrative Expense Claims), Interests, and Causes of Action that are not Trust Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective

Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.2.    ***Binding Effect.***

As of the Effective Date, the Plan shall bind all Holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such Holders were (a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

10.3.    ***Discharge of Claims and Termination of Interests.***

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

10.4.    ***Term of Injunctions or Stays.***

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5.    ***Injunction.***

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 10.6(a) or Section 10.6(b), shall be discharged pursuant to Section 10.3 of the Plan, or are subject to exculpation pursuant to Section 10.7, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to Section 10.7 with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or**

means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to Section 11.1, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

10.6.   *Releases.*

(a)      <u>Releases by the Debtors</u>.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise

provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors, and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(a) (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any Released Party from Claims or Causes of Action held by the Debtors arising from an act or omission that is determined by a Final Order or by a federal government agency to have constituted a violation of any federal securities laws, (c) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (d) any Trust Causes of Action, *provided* that, for the avoidance of doubt, nothing herein shall be construed as, deemed as, or otherwise release, settle, diminish, or impair any Non-Released D&O Claims, all of which are specifically preserved, *provided further* that, recovery on account of a Non-Released D&O Claim shall be limited to the maximum insurance coverage available under any D&O Policy.

(b)     **Releases by Holders of Claims and Interests.**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or

unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(b) (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (c) any Trust Causes of Action.

10.7. *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, from the Petition Date through the Effective Date, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of consideration pursuant to

the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 10.7 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (*provided* that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### 10.8. *Gatekeeper Injunctions*

No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Debtors without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against any  Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court will have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted.

No entity may commence or pursue a claim or cause of action of any kind against any Exculpated Party with respect to any of their roles, actions and duties in connection with the Chapter 11 Cases without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against them, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted.

### 10.9. *Retention of Causes of Action/Transfer of Causes of Action and Reservation of Rights.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article X, the Reorganized Debtors shall have, retain, reserve and be entitled to assert, and may enforce all rights to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than (i) Causes of Action that are Trust Causes of Action, and (ii) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article X of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. **The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity not released pursuant to the Plan.**

10.10. ***Ipso Facto and Similar Provisions Ineffective.***

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Entity based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; (c) the Confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (d) the restructuring.

10.11. ***Solicitation of Plan.***

As of the Confirmation Date (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any Securities under the Plan.

10.12. ***Corporate and Limited Liability Company Action.***

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the assumption of all employee compensation and Employee Arrangements of the Debtors as provided herein, (ii) the selection of the managers, directors, and officers for the Reorganized Debtors, and (iii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, but not limited to, and (r) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 10.12 shall be effective notwithstanding any requirements under non-bankruptcy law.

## ARTICLE XI.    RETENTION OF JURISDICTION.

11.1. ***Retention of Jurisdiction.***

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, proceeding, application, contested matter, and/or other litigated matter pending on or commenced after the Confirmation Date;

(c)     to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     to ensure that distributions to Holders of Allowed Claims and Interests are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)     to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or any counterclaim related thereto;

(f)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all Professional Fee Claims;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)     to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(o)   to resolve disputes concerning Disputed Claims or the administration thereof;

(p)   to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any Claims Bar Date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purposes;

(q)   to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(r)   to enter a final decree closing the Chapter 11 Cases;

(s)   to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located; and

(t)   to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

### 11.2.   *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.   MISCELLANEOUS PROVISIONS.

### 12.1.   *Payment of Statutory Fees.*

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall File all monthly operating reports through the Effective Date. On and after the Effective Date, the Reorganized Debtors or any Disbursing Agent shall pay any and all such fees in full in Cash when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's, or Reorganized Debtor's, as applicable, case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

### 12.2.   *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.   *Request for Expedited Determination of Taxes.*

The Debtors and the Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

12.4.   ***Exemption from Certain Transfer Taxes.***

Pursuant to section 1146 of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments or documents, (ii) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (iii) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise), and (iv) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to, or taxed under, any law imposing any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.5.   ***Amendments.***

*(a)   Plan Modifications.* The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; *provided*, that the Plan may only be amended, modified, or supplemented with the consent of the Creditors' Committee, such consent not to be unreasonably withheld, conditioned, or delayed. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of Holders of Allowed Claims or Interests pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

*(b)   Other Amendments.* Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; provided, that the Plan and the documents contained in the Plan Supplement may only be adjusted or modified pursuant to this section 12.5(b) with the consent of the Creditors' Committee, such consent not to be unreasonably withheld, conditioned, or delayed.

12.6.   ***Effectuating Documents and Further Transactions.***

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable member(s), board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.7.    ***Revocation or Withdrawal of the Plan.***

The Debtors reserve the right [(after consultation with the Creditors' Committee)] to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors. If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by any Debtor or any other Person.

12.8.    ***Severability of Plan Provisions.***

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power (after consultation with the Creditors' Committee) to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted, provided that any such alteration or interpretation shall be acceptable to the Debtors and the Creditors' Committee. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms, (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be) or the Creditors' Committee, and (iii) nonseverable and mutually dependent.

12.9.    ***Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

12.10.    ***Time.***

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.11.    ***Dates of Actions to Implement the Plan.***

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.12.   ***Immediate Binding Effect.***

Notwithstanding any Bankruptcy Rule providing for a stay of the Confirmation Order or Plan, including Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Holders of Claims and Interests, the Released Parties, each of their respective successors and assigns, including, without limitation, the Reorganized Debtors, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or debt has voted on the Plan.

12.13.   ***Deemed Acts.***

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.14.   ***Successor and Assigns.***

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.15.   ***Entire Agreement.***

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.16.   ***Exhibits to Plan.***

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.17.   ***Dissolution of Creditors' Committee.***

On the Effective Date, any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve; *provided* that following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purposes of (i) Filing and prosecuting applications for allowance of Professional Fee Claims and (ii) seeking removal of the committee as a party in interest in any proceeding on appeal. Upon the dissolution of any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; *provided* that for the avoidance of doubt, any Claims or Causes of Action asserted by the Creditors' Committee, whether direct or derivative (including any Claims seeking declaratory judgments) shall be withdrawn with prejudice and/or vest in the Debtors' Estates, to be immediately fully and indefensibly released in accordance with section 10.6 of the Plan.

12.18.   *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

    (a)    if to the Debtors or the Reorganized Debtors:

        Rhodium Encore LLC
        Attn: Charles Topping
            Morgan Soule
        2617 Bissonnet Street, Suite 234
        Houston, Texas 77005
        Email: chucktopping@rhdm.com
        Email: morgansoule@rhdm.com
             - and -

        Quinn Emanuel Urquhart & Sullivan, LLP
        Attn: Patricia B. Tomasco
        700 Louisiana, Suite 3700
        Houston, Texas 77002
        Email: pattytomasco@quinnemanuel.com

    (b)    if to the Counsel to the Official Committee of Unsecured Creditors:

        McDermott Will & Emery LLP
        Attn: Charles R. Gibbs
        2501 North Harwood Street, Suite 1900
        Dallas, Texas 75201-1664
        Email: crgibbs@mwe.com

    (c)    if to the U.S. Trustee:

        United States Trustee
        Attn: Ha Minh Nguyen
        515 Rusk, Suite 3516
        Houston, Texas 77002
        Email: ha.nguyen@usdoj.gov

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated: May 22, 2025

Respectfully submitted,

/s/ Michael Robinson

By:  Michael Robinson
Co-Chief Restructuring Officer
Rhodium Enterprises and its affiliate debtors

# EXHIBIT A
# COMPLAINT FOR INTERPLEADER

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |
| RHODIUM TECHNOLOGIES LLC; RHODIUM ENTERPRISES, INC., | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Adv. Proc. No. 25-_____ |
| | § | |
| v. | § | |
| | § | |
| 2103088 ALBERTA LTD; 345 PARTNERS SPV2 LLC; NYDIG ABL LLC; AFC DEVELOPMENT LLC; ALTOIRA EMPIRE TRUST CUSTODIAN FBO ROSSANO WLODAWSKY TRADITIONAL IRA; BARTHOLAMEW MALLON; BRIAN CULLINAN; MIKE BURNSTEIN; BYRAM RIVER INVESTMENTS LLC; CALEB VANZOEREN; CHARLES TOPPING; CHP CAPITAL US, INC.; CHRISTOPHER BLACKERBY; CLARK KEMBLE; LAURIE KEMBLE; CROSS THE RIVER, LLC; CRYPTO LOTUS FUND B (MASTER) LTD; DANIEL CHEN; DANIEL GARRIE; MICHAEL GARRIE; DISTRIBUTED LEDGER TECHNOLOGIES IRELAND LIMITED; DLT DATA CENTER 1 LLC; DROIP3 LLC; ELYSIUM MINING, LLC; | § | |

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

1

| | |
|---|---|
| VALENTIN ANGELKOV; ERS CAPITAL LLC; ETHOS INVESTMENTS XIV LLC; ETHOS INVESTMENTS X LLC; EMILY FAIRBAIRN AS TRUSTEE AND ON BEHALF OF MALCOLM P AND EMILY T FAIRBAIRN 2021 CHARITABLE REMAINDER UNITRUST; MALCOLM FAIRBAIRN AS TRUSTEE AND ON BEHALF OF MALCOLM P AND EMILY T FAIRBAIRN 2021 CHARITABLE REMINDER UNITRUST; KIRK BLACKMON AS TRUSTEE AND ON BEHALF OF KIRK A. BLACKMON 2013 FAMILY TRUST; JERALD WEINTRAUB AS TRUSTEE AND ON BEHALF OF JERALD AND MELODY HOWE WEINTRAUB REVOCABLE LIVING TRUST DTD 02/05/98, AS AMENDED; WILLIAM HO AS TRUSTEE AND ON BEHALF OF GR FAIRBAIRN FAMILY TRUST, THE NCF EAGLE TRUST, THE GRF TIGER TRUST, AND THE NC FAIRBAIRN FAMILY TRUST; GRANT FAIRBAIRN AS TRUSTEE AND ON BEHALF OF GRANT R FAIRBAIRN CHARITABLE REMAINDER UNITRUST; MIKE WILKINS AS TRUSTEE AND ON BEHALF OF WILKINS-DUIGNAN 2009 REVOCABLE TRUST; BRENNAN NACOL AS TRUSTEE AND ON BEHALF OF BRENNAN M. NACOL 2015 IRREVOCABLE TRUST; JOHN BICK AS TRUSTEE AND ON BEHALF OF THE JJB 2018 TRUST; GAURAV PARIKH AS TRUSTEE AND ON BEHALF OF GAURAV PARIKH 2020 REVOCABLE TRUST; RYAN NACOL AS TRUSTEE AND ON BEHALF OF RYAN NACOL 2015 IRREVOCABLE TRUST; JACQUELYN LETSCHERT AS TRUSTEE AND ON BEHALF OF JACQUELYN B. NACOL 2015 IRREVOCABLE TRUST; SCOTT KINTZ AS TRUSTEE AND ON BEHALF OF THE KINTZ FAMILY TRUST; CRYSTAL | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

2

ZACKER AS TRUSTEE AND ON §
BEHALF OF TZ SOLO401K TRUST; §
THEODORE GOODMAN AS TRUSTEE §
AND ON BEHALF OF THE GOODMAN §
FAMILY TRUST; TRUDO LETSCHERT §
II AS TRUSTEE AND ON BEHALF OF §
THE TRUDO T M LETSCHERT II §
REVOCABLE TRUST; TAYLOR §
MOORE AS TRUSTEE AND ON §
BEHALF OF THE MOORE REVOCABLE §
TRUST DATED JULY 31 2014; CHAD §
CORBETT AS TRUSTEE AND ON §
BEHALF OF MSH TRUST; ROSSANO §
WLODAWKSY IN HIS INDIVIDUAL §
CAPACITY, AND AS TRUSTEE AND ON §
BEHALF OF ROSSANO WLODAWSKY §
AND MARNIE S WLODAWSKY JOINT §
REVOCABLE TRUST; CHARLES §
CHANG AS TRUSTEE AND ON §
BEHALF OF CHANG LIVING TRUST; §
LUDWIG DIAZ AS TRUSTEE AND ON §
BEHALF OF MAGIC CIRCLE TRUST; §
ANNMARIE FORNARO AS TRUSTEE §
AND ON BEHALF OF ANNMARIE §
FORNARO TRUST DATED JANUARY 9, §
2017; PHILIP FORNARO AS TRUSTEE §
AND ON BEHALF OF PHILIP M. §
FORNARO TRUST DATED JANUARY 9, §
2017; NINA FAIRBAIRN AS TRUSTEE §
AND ON BEHALF OF NINA C §
FAIRBAIRN CHARITABLE §
REMAINDER UNITRUST; GR10X §
CORP.; HUDSON FAMILY HOLDINGS §
INC.; COLIN HUTCHINGS; IMPERIUM §
INVESTMENT HOLDINGS LLC; §
INFEVO TECHNOLOGIES CO., LTD; §
JACOB RUBIN; JAMES CALVIN; §
JAMES M. FARRAR; ADDA B. §
DELGADILLO FARRAR; JBMI LLC; §
JOHN LEWIS ZOECKLER; JON ABORN; §
K & B FINANCIAL SOLUTIONS, LLC; §
KATHERINE PLINTZ; KEEKBC LLC; §
ZACH KERR; THOMAS LIENHART; §
LIQUID MINING FUND I LLC; LIQUID §
MINING FUND II LLC; LNW FAMILY II §
LP; MARSHALL LONG; CASSANDRA §

MALLORY; JENNIFER MANZ; §
MIDWEST MINING PARTNERS, LLC; §
MORRISON PARK CAPITAL LLC; §
OMEGA CAPITAL VENTURES SRL; §
PAT HAWKINS; PAUL SCHWARZ; §
PECAN LAKE HOLDINGS LLC; PETER §
STRIS; PLEXUS TECHNOLOGY §
CORPORATION; PRINTING CAPITAL I, §
LP; PRIVATE INVESTOR CLUB §
FEEDER FUND 2020-D LLC; PRIVATE §
INVESTOR CLUB FEEDER FUND 2020- §
E LLC; PRIVATE INVESTOR CLUB §
FEEDER FUND 2020-G LLC; PRIVATE §
INVESTOR CLUB FEEDER FUND 2020- §
H LLC; PRIVATE INVESTOR CLUB §
FEEDER FUND 2021-H LLC; PROLLO §
GROWTH PARTNERS LLC; PROOF §
CAPITAL ALTERNATIVE GROWTH §
FUND; PROOF CAPITAL §
ALTERNATIVE INCOME FUND; §
PROOF PROPRIETARY INVESTMENT §
FUND INC.; R2BMI LLC; RACHANA §
PATHAK; REAL OPPORTUNITY §
INVESTING, INC.; RENATA SZKODA; §
RESOLUTIONS REAL ESTATE §
SERVICES, LLC; RH FUND I, A SERIES §
OF PERMIT RH, LP; RH FUND I, A §
SERIES OF TELEGRAPH TREEHOUSE §
LP; RH FUND II, A SERIES OF §
TELEGRAPH TREEHOUSE LP; §
RHODIUM TX SPV LLC; RICHARD §
FULLERTON; RKS INVESTMENTS §
LLC; ROBERT SPENCER; NANCY §
SPENCER; STEVIE SAGANSKI; SCOTT §
THURMAN; SHANE BLACKMON; §
SHEN VALLEY PROPERTY §
INVESTMENTS LLC; JUSTIN SIEGEL; §
MATT SMITH; SOLO SESSIONS, LLC §
PROFIT SHARING PLAN; STADLIN §
GROUP INVESTMENTS LLC; STADLIN §
GROUP INVESTMENTS SERIES §
ROCKDALE LLC; STADLIN GROUP §
INVESTMENTS – SERIES RHODIUM §
LLC; THEODORE A GOODMAN MD §
401K PSP; TRINE MINING, LLC; §
UPGRADEYA INVESTMENTS, LLC; §

VICTOR O'CONNELL; VIDA KICK LLC; §
VINCENT        VUONG;        WILLIAM §
BRUMDER; WRE CROWN HOLDINGS §
LLC; ANTHONY AUSIELLO; IVAN §
ALMARAZ;    ODILTON    BARRETO; §
REBECCA      BARTHA;      WILLIAM §
BOARDMAN; KYLE BROSSIA; JORGE §
CALDERON;  SPENCER  GILLILAND; §
ALICIA  CATATAO;  CHRISTOPHER §
CLEMENTS;  BILLY  COLLIER;  SEAN §
CONNER; BRENDAN COTTRELL; LESS §
DAVENPORT; JAMIE ESTES; ADRIAN §
GONZALEZ;    MICHAEL    GRIDER; §
JOSEPH GRYZAN; JONATHAN HALL; §
AMBER    HAMES;    KEVIN    HAYS; §
ASHLEY  JONSON;  ROBERTO  LEAL; §
AMARNATH       MAMIDI;       JARED §
MELILLO;    MICHAEL    NORMAN; §
DANIEL  NAJACHT;  JONAS  NORR; §
PAUL OPOKU; JOHNATHAN PLETSCH; §
JOSE    RAMIREZ    JR.;    MANUEL §
RAMIREZ;   CHRISTIAN   SARTORI; §
DAVID    SHAFER;    ALEXANDER §
PELOUBET;  MICHELLE  RATHBUN §
SAGANSKI; PETER RICHISON; WADE §
ROGERS; ZACHARY SCHEICH; ETHAN §
SHARP; ZACHARY SHARP; MORGAN §
SOULE;     CHARLES     STEFFENS; §
JACKSON    STEWART;    TIMOTHY §
TURNIPSEED;   ABUNDANCE   2021, §
LLC;    DEREK    BLAIN;    MICHAEL §
BROWN; BT REAL ESTATE LLC; §
BULLFROG  INVESTMENT  GROUP, §
INC.; CELSIUS MINING LLC; PAUL A. §
CORONEOS;  ETHOS  INVESTMENTS §
XV,        LLC;        FELLOWSHIP §
MANAGEMENT     GROUP     LLC; §
GENGLOBAL    RIG    LLC;    SEAN §
MICHAEL GILBERT; ADAM HIBBLE; §
BRETT JENNINGS; KARL PHILIP; JWS §
QRP HOLDINGS LLC; MATTHEW J. §
KESSNER; ZOLTAN LACZKO; JAMES §
LAU;     CHRISTOPHER     MCBEE; §
METTLEHEAD CAPITAL, LLC; NOBLE §
CREST CAPITAL, LLC; DOUGLAS ORR; §
PEPPER GROVE HOLDINGS LIMITED; §

PERMIT VENTURES, LLC; RH FUND III, §
A    SERIES    OF    TELEGRAPH §
TREEHOUSE,    LP;    ALEXANDER §
MATTHEW    SALVADORI;    ROBERT §
SHOEMAKER; JEFFREY SMITH; EMIL §
STEFKOV; TEN R TEN LLC; NEIL §
KUMAR    THAKUR;    THUNDER §
MOUNTAIN       HOLDINGS       LLC; §
VANTAGE FBO AMBER WIMBERLY §
IRA; WINCHESTER PARTNERS, LP; §
INFINITE   MINING,   LLC;   J.   BLUE §
COMPANY,   LLC;   BRAD   WEBER; §
PATTY  YANG;  TERRY  BENNETT; §
BRUCE KUTSCHE; CRAIG TARVIN; §
GAVIN    TANG;    REBECCA    RICE; §
RANGER    PRIVATE    INVESTMENT §
PARTNERS, L.P.; ALFRED MURRAY §
CAPITAL, LLC; JORDAN MOORHEAD; §
PRECINCT    HOLDINGS,    LLC;    C5 §
CAPITAL LLC; DEL PAPA VENTURES §
LTD.;  LIMITLESS  ADVISORS,  LLC; §
SCM    WORLDWIDE    LLC;    VESANO §
VENTURES  LLC;  ARCTOS  CREDIT §
LLC;    THE    KINGDOM    TRUST §
COMPANY,    FBO    MALCOLM    P §
FAIRBAIRN ROTH IRA, 9510281370; §
THE KINGDOM TRUST COMPANY, §
FBO EMILY FAIRBAIRN ROTH IRA, §
7465812820;       SING       FAMILY §
ENTERPRISE LIMITED §
§
§
    Defendants. §

## COMPLAINT FOR INTERPLEADER

  Plaintiffs Rhodium Technologies LLC ("Rhodium Technologies") and Rhodium

Enterprises Inc. ("Rhodium Enterprises," and together with Rhodium Technologies, the

"Plaintiffs"),[2] as debtors and debtors in possession in the above-captioned chapter 11 cases (the

---

[2] The Plaintiffs and their affiliates are collectively defined as "Rhodium."

"Chapter 11 Cases"), by and through its undersigned counsel, hereby bring this Complaint for Interpleader (the "Complaint").

## PARTIES

### I.   Plaintiffs

1.       Plaintiff Rhodium Technologies LLC is a Delaware limited liability company with its principal place of business in Texas.  Its service address is 2617 Bissonnet Street, Suite 234, Houston, Texas 77005.

2.       Plaintiff Rhodium Enterprises, Inc. is a Delaware corporation with its principal place of business in Texas.  Its service address is 2617 Bissonnet Street, Suite 234, Houston, Texas 77005.

### II.   Defendants

3.       Upon information and belief, defendant 2103088 Alberta Ltd. is a Canadian corporation with its principal place of business and/or a service address in Calgary, Canada.

4.       Upon information and belief, defendant 345 Partners SPV2 LLC is a California limited liability company with its principal place of business and/or a service address in Los Gatos, California.

5.       Upon information and belief, defendant AFC Development LLC is a Texas limited liability company with its principal place of business and/or a service address in Granbury, Texas.

6.       Upon information and belief, defendant Altoira Empire Trust Custodian FBO Rossano Wlodawsky Traditional IRA is a self-directed IRA with a service address in Midlothian, Virginia.

7.     Upon information and belief, defendant NYDIG ABL LLC, previously named Arctos Credit LLC, is a Delaware limited liability company with its principal place of business and/or a service address in San Francisco, California.

8.     Upon information and belief, defendant Bartholamew Mallon is a resident of San Francisco, California.

9.     Upon information and belief, defendant Brennan Nacol is the trustee of the Brennan M. Nacol 2015 Irrevocable Trust.  The Plaintiffs bring this interpleader action against Brennan Nacol as the trustee of the Brennan M. Nacol 2015 Irrevocable Trust.  Upon information and belief, Brennan Nacol is a resident of Austin, Texas.  Upon information and belief, Brennan Nacol acts as the trustee of the Brennan M. Nacol 2015 Irrevocable Trust in Austin, Texas.

10.    Upon information and belief, defendant Brian Cullinan is a resident of La Quinta, California.

11.    Upon information and belief, defendant Mike Burnstein is a resident of Sugar Land, Texas.

12.    Upon information and belief, defendant Byram River Investments LLC is a Delaware limited liability company with its principal place of business and/or a service address in New York, New York, 10017.

13.    Upon information and belief, defendant Charles Chang is the trustee of the Chang Living Trust.  The Plaintiffs bring this interpleader action against Charles Chang as the trustee of the Chang Living Trust.   Upon information and belief, Charles Chang is a resident of San Francisco, California.  Upon information and belief, Charles Chang acts as the trustee of the Chang Living Trust in San Francisco, California.

14.     Upon information and belief, defendant Caleb Vanzoeren is a resident of Austin, Texas.

15.     Upon information and belief, defendant Charles Topping is a resident of Bradenton, Florida.

16.     Upon information and belief, defendant CHP Capital US, Inc. is a Washington corporation with its principal place of business and/or a service address in Bellevue, Washington.

17.     Upon information and belief, defendant Christopher Blackerby is a resident of Clearwater, Florida.

18.     Upon information and belief, defendant Clark Kemble is a resident of Fort Worth, Texas.

19.     Upon information and belief, defendant Laurie Kemble is a resident of Fort Worth, Texas.

20.     Upon information and belief, defendant Cross the River LLC is a Montana limited liability company with its principal place of business and/or a service address in Loma Linda, California.

21.     Upon information and belief, defendant Crypto Lotus Fund B (Master) Ltd is a Cayman Islands limited company with its principal place of business and/or a service address in San Francisco, California.

22.     Upon information and belief, defendant Daniel Chen is a resident of Sugar Land, Texas.

23.     Upon information and belief, defendant Daniel Garrie is a resident of Kingston, New York.

24.     Upon information and belief, Michael Garrie is a resident of Charlotte, North Carolina.

25.     Upon information and belief, defendant Distributed Ledger Technologies Ireland Limited is an Irish limited company with its principal place of business and/or a service address in Oslo, Norway.

26.     Upon information and belief, defendant DLT Data Center 1 LLC is a Delaware limited liability company with its principal place of business and/or a service address in San Juan, Puerto Rico.

27.     Upon information and belief, defendant DROip3 LLC is a Texas limited liability company with its principal place of business and/or a service address in Folly Beach, South Carolina.

28.     Upon information and belief, defendant Elysium Mining, LLC is a Montana limited liability company with its principal place of business and/or a service address in Loma Linda, California.

29.     Upon information and belief, defendant Equity Trust Company Custodian FBO Valentin Angelkov IRA has a service address in The Woodlands, Texas.

30.     Upon information and belief, defendant ERS Capital LLC is a New Mexico limited liability company with its principal place of business and/or a service address in Los Gatos, California.

31.     Upon information and belief, defendant Ethos Investments X, LLC is a Florida limited liability company with its principal place of business and/or a service address in Miami, Florida.

32.     Upon information and belief, defendant Ethos Investments XIV LLC is a Delaware limited liability company with its principal place of business and/or a service address in San Francisco, California.

33.     Upon information and belief, defendant Gaurav Parikh is the trustee of the Gaurav Parikh 2020 Revocable Trust.  The Plaintiffs bring this interpleader action against Gaurav Parikh as the trustee of the Gaurav Parikh 2020 Revocable Trust.  Upon information and belief, Gaurav Parikh is a resident of Winchester, Massachusetts.  Upon information and belief, Gaurav Parikh acts as the trustee of the Gaurav Parikh 2020 Revocable Trust in Winchester, Massachusetts.

34.     Upon information and belief, defendant William Ho is the trustee of the GR Fairbairn Family Trust, the NCF Eagle Trust, the GRF Tiger Trust, and the NC Fairbairn Family Trust.  The Plaintiffs bring this interpleader action against William Ho as the trustee of the GR Fairbairn Family Trust, the NCF Eagle Trust, the GRF Tiger Trust, and the NC Fairbairn Family Trust.  Upon information and belief, William Ho is a resident of New York, New York.  Upon information and belief, William Ho acts as the trustee of the GR Fairbairn Family Trust, the NCF Eagle Trust, the GRF Tiger Trust, and the NC Fairbairn Family Trust in New York, New York.

35.     Upon information and belief, defendant GR10X Corp. is a Canadian corporation with its principal place of business and/or a service address in Calgary, Canada.

36.     Upon information and belief, defendant Grant Fairbairn is the trustee of the Grant R Fairbairn Charitable Remainder Unitrust.  The Plaintiffs bring this interpleader action against Grant Fairbairn as the trustee of the Grant R Fairbairn Charitable Remainder Unitrust.  Upon information and belief, Grant Fairbairn is a resident of Orinda, California.  Upon information and belief, Grant Fairbairn acts as the trustee of the Grant R Fairbairn Charitable Remainder Unitrust in Orinda, California.

37.     Upon information and belief, defendant Hudson Family Holdings Inc. is a corporation with its principal place of business and/or a service address in Montgomery, Texas.

38.     Upon information and belief, defendant Colin Hutchings is a resident of Puerto Rico.

39.     Upon information and belief, defendant Imperium Investment Holdings LLC ("Imperium") is a Wyoming limited liability company with its principal place of business and/or a service address in Houston, Texas.

40.     Upon information and belief, defendant Infevo Technologies Co., Ltd is a Delaware corporation with its principal place of business and/or a service address in Newark, Delaware.

41.     Upon information and belief, defendant Jacob Rubin is a resident of Diablo, California.

42.     Upon information and belief, defendant Jacquelyn Letschert is the trustee of the Jacquelyn B. Nacol 2015 Irrevocable Trust.  The Plaintiffs bring this interpleader action against Jacquelyn Letschert as the trustee of Jacquelyn B. Nacol 2015 Irrevocable Trust.   Upon information and belief, Jacquelyn Letschert is a resident of Sarasota, Florida.  Upon information and belief, Jacquelyn Letschert acts as the trustee of the Jacquelyn B. Nacol 2015 Irrevocable Trust in Sarasota, Florida.

43.     Upon information and belief, defendant James Calvin is a resident of Winthrop, Massachusetts.

44.     Upon information and belief, defendant James M. Farrar is a resident of Chicago, Illinois or Orlando, Florida.

45.     Upon information and belief, defendant Adda B. Delgadillo Farrar is a resident of Chicago, Illinois or Orlando, Florida.

46.     Upon information and belief, defendant JBMI LLC is New York limited liability company with principal place of business and/or a service address in Midlothian, Virginia.

47.     Upon information and belief, defendant Jerald Weintraub is the trustee of the Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended.  The Plaintiffs bring this interpleader action against Jerald Weintraub as the trustee of the Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended.  Upon information and belief, Jerald Weintraub is a resident of Lafayette, California.  Upon information and belief, Jerald Weintraub acts as the trustee of the Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended, in Lafayette, California.

48.     Upon information and belief, defendant John Lewis Zoeckler is a resident of Novato, California.

49.     Upon information and belief, defendant Jon Aborn is a resident of New York, New York.

50.     Upon information and belief, defendant K & B Financial Solutions, LLC is a California limited liability company with its principal place of business and/or a service address in Fountain Valley, California.

51.     Upon information and belief, defendant Katherine Plintz is a resident of Calgary, Canada.

52.     Upon information and belief, defendant KeekBC LLC is a Delaware limited liability company with its principal place of business and/or a service address in Folly Beach, South Carolina.

53.     Upon information and belief, defendant Zach Kerr is a resident of Hutto, Texas.

54.     Upon information and belief, defendant Scott Kintz is the trustee of the Kintz Family Trust.  The Plaintiffs bring this interpleader action against Scott Kintz as the trustee of the Kintz Family Trust.  Upon information and belief, Scott Kintz is a resident of Del Mar, California.  Upon information and belief, Scott Kintz acts as the trustee of the Kintz Family Trust in Del Mar, California.

55.     Upon information and belief, defendant Liquid Mining Fund I LLC is a Delaware limited liability company with its principal place of business and/or a service address in New York, New York.

56.     Upon information and belief, defendant Liquid Mining Fund II LLC is a Delaware limited liability company with its principal place of business and/or a service address in New York, New York.

57.     Upon information and belief, defendant LNW Family II LP is a Texas limited partnership with its principal place of business and/or a service address in Granbury, Texas.

58.     Upon information and belief, defendant Marshall Long is a resident of Sugar Land, Texas.

59.     Upon information and belief, defendant Emily Fairbairn is the trustee of the Malcolm P and Emily T Fairbairn 2021 Charitable Remainder Unitrust.  The Plaintiffs bring this interpleader action against Emily Fairbairn as the trustee of the Malcolm P and Emily T Fairbairn 2021 Charitable Remainder Unitrust.  Upon information and belief, Emily Fairbairn is a resident of Orinda, California.  Upon information and belief, Emily Fairbairn acts as the trustee of the Malcolm P and Emily T Fairbairn 2021 Charitable Remainder Unitrust in Orinda, California.

60.     Upon information and belief, defendant Malcolm Fairbairn is the trustee of the Malcolm P and Emily T Fairbairn 2021 Charitable Remainder Unitrust.  The Plaintiffs bring this

interpleader action against Malcolm Fairbairn as the trustee of the Malcolm P and Emily T Fairbairn 2021 Charitable Remainder Unitrust. Upon information and belief, Malcolm Fairbairn is a resident of Orinda, California. Upon information and belief, Malcolm Fairbairn acts as the trustee of the Malcolm P and Emily T Fairbairn 2021 Charitable Remainder Unitrust in Orinda, California.

61.     Upon information and belief, defendant Cassandra Mallory is a resident of Arlington, Texas.

62.     Upon information and belief, defendant Jennifer Manz is a resident of Round Rock, Texas.

63.     Upon information and belief, defendant Midwest Mining Partners, LLC is a Michigan limited liability company with its principal place of business and/or a service address in Douglas, Michigan.

64.     Upon information and belief, defendant Taylor Moore is the trustee of the Moore Revocable Trust dated July 31 2014. The Plaintiffs bring this interpleader action against Taylor Moore as the trustee of the Moore Revocable Trust dated July 31 2014. Upon information and belief, Taylor Moore is a resident of San Francisco, California. Upon information and belief, Taylor Moore acts as the trustee of the Moore Revocable Trust dated July 31 2014 in San Francisco, California.

65.     Upon information and belief, defendant Morrison Park Capital LLC is a Massachusetts limited liability company with its principal place of business and/or a service address in Wakefield, Massachusetts.

66.     Upon information and belief, defendant Chad Corbett is the trustee of the MSH Trust. The Plaintiffs bring this interpleader action against Chad Corbett as the trustee of the MSH

Trust.  Upon information and belief, Chad Corbett is a resident of Orlando, Florida.  Upon information and belief, Chad Corbett acts as the trustee of the MSH Trust in Orlando, Florida.

67.     Upon information and belief, defendant Nina Fairbairn is the trustee of the Nina C Fairbairn Charitable Remainder Unitrust.  The Plaintiffs bring this interpleader action against Nina Fairbairn as the trustee of the Nina C Fairbairn Charitable Remainder Unitrust.  Upon information and belief, Nina Fairbairn is a resident of Lafayette, California.  Upon information and belief, Nina Fairbairn acts as the trustee of the Nina C Fairbairn Charitable Remainder Unitrust in Lafayette, California.

68.     Upon information and belief, defendant Omega Capital Ventures SRL is a Romanian Societate cu Raspundere limitada with its principal place of business and/or a service address in Romania.

69.     Upon information and belief, defendant Pat Hawkins is a resident of Fort Worth, Texas.

70.     Upon information and belief, defendant Paul Schwarz is a resident of Glenview, Illinois.

71.     Upon information and belief, defendant Pecan Lake Holdings LLC is New York limited liability company with its principal place of business and/or a service address in New York, New York.

72.     Upon information and belief, defendant Peter Stris is a resident of Cerritos, California.

73.     Upon information and belief, defendant Plexus Technology Corporation is a Canadian corporation with its principal place of business and/or a service address in Calgary, Canada.

74.     Upon information and belief, defendant Printing Capital I, LP is a Canadian partnership with its principal place of business and/or a service address in Toronto, Canada.

75.     Upon information and belief, defendant Private Investor Club Feeder Fund 2020-D LLC is a Delaware limited liability company with its principal place of business and/or a service address in Tampa, Florida.

76.     Upon information and belief, defendant Private Investor Club Feeder Fund 2020-E, LLC is a Delaware limited liability company with its principal place of business and/or a service address in Tampa, Florida.

77.     Upon information and belief, defendant Private Investor Club Feeder Fund 2020-G LLC is a Delaware limited liability company with its principal place of business and/or a service address in Tampa, Florida.

78.     Upon information and belief, defendant Private Investor Club Feeder Fund 2020-H LLC is a Delaware limited liability company with its principal place of business and/or a service address in Tampa, Florida..

79.     Upon information and belief, defendant Private Investor Club Feeder Fund 2021-H LLC is a Delaware limited liability company with its principal place of business and/or a service address in Tampa, Florida.

80.     Upon information and belief, defendant Prollo Growth Partners LLC is an Arizona limited liability company with its principal place of business and/or a service address in Wakefield, Massachusetts.

81.     Upon information and belief, defendant Proof Capital Alternative Growth Fund is open-ended unit trust with a service address in Calgary, Canada.

82.     Upon information and belief, defendant Proof Capital Alternative Income Fund is a Canadian open-ended unit trust with a service address in Calgary, Canada.

83.     Upon information and belief, defendant Proof Proprietary Investment Fund Inc. is a Canadian corporation with its principal place of business and/or a service address in Calgary, Canada.

84.     Upon information and belief, defendant R2BMI LLC is a Virginia limited liability company with its principal place of business and/or a service address in Glen Allen, Virginia.

85.     Upon information and belief, defendant Rachana Pathak is a resident of Cerritos, California.

86.     Upon information and belief, defendant Real Opportunity Investing, Inc. is a Florida corporation with its principal place of business and/or a service address in Palmetto, Florida.

87.     Upon information and belief, defendant Renata Szkoda is a resident of Orland Park, Illinois.

88.     Upon information and belief, defendant Resolutions Real Estate Services, LLC is a Florida limited liability company with its principal place of business and/or a service address in Orlando, Florida.

89.     Upon information and belief, defendant RH Fund I, A Series of Permit RH, LP is a Delaware limited partnership with its principal place of business and/or a service address in Seattle, Washington.

90.     Upon information and belief, defendant RH Fund I, A Series of Telegraph Treehouse, LP is a Delaware limited partnership with its principal place of business and/or a service address in Seattle, Washington.

91.     Upon information and belief, defendant RH Fund II, a series of Telegraph Treehouse, LP is a Delaware limited partnership with its principal place of business and/or a service address in Seattle, Washington.

92.     Upon information and belief, defendant RH Fund III, a series of Telegraph Treehouse, LP is a Delaware limited partnership with its principal place of business and/or a service address in Seattle, Washington.

93.     Upon information and belief, defendant Rhodium TX SPV LLC is a Delaware limited liability company with its principal place of business and/or a service address in Monroe, Ohio.

94.     Upon information and belief, defendant Richard Fullerton is a resident of San Francisco, California.

95.     Upon information and belief, defendant RKS Investments LLC is an Illinois limited liability company with its principal place of business and/or a service address in Orland Park, Illinois.

96.     Upon information and belief, defendant Robert Spencer is a resident of Granbury, Texas.

97.     Upon information and belief, defendant Nancy Spencer is a resident of Granbury, Texas.

98.     Upon information and belief, defendant Rossano Wlodawsky owns Class A Equity Stock (as defined below) in his individual capacity.  Upon information and belief, Rossano Wlodawsky is also the trustee of the Rossano N Wlodawsky and Marnie S Wlodawsky Joint Revocable Trust.  The Plaintiffs bring this interpleader action against Rossano Wlodawsky in his individual capacity and as the trustee of the Rossano N Wlodawsky and Marnie S Wlodawsky

Joint Revocable Trust.  Upon information and belief, Rossano Wlodawsky is a resident of Midlothian, Virginia.  Upon information and belief, Rossano Wlodawsky acts as the trustee of the Rossano N Wlodawsky and Marnie S Wlodawsky Joint Revocable Trust in Midlothian, Virginia.

99.     Upon information and belief, defendant Ryan Nacol is the trustee of the Ryan Nacol 2015 Irrevocable Trust.  The Plaintiffs bring this interpleader action against Ryan Nacol as the trustee of the Ryan Nacol 2015 Irrevocable Trust.  Upon information and belief, Ryan Nacol is a resident of Austin, Texas.  Upon information and belief, Ryan Nacol acts as the trustee of the Ryan Nacol 2015 Irrevocable Trust in Austin, Texas.

100.     Upon information and belief, defendant Stevie Saganski is a resident of Temple, Texas.

101.     Upon information and belief, defendant Scott Thurman is a resident of Fort Worth, Texas.

102.     Upon information and belief, defendant Shane Blackmon is a resident of Leander, Texas.

103.     Upon information and belief, defendant Shen Valley Property Investments LLC is a Virginia limited liability company with its principal place of business and/or a service address in Verona, Virginia.

104.     Upon information and belief, defendant Justin Siegel is a resident of Wheat Ridge, Colorado.

105.     Upon information and belief, defendant Matt Smith is a citizen of Austin, Texas.

106.     Upon information and belief, defendant Solo Sessions, LLC Profit Sharing Plan has a service address in Austin, Texas.

107.    Upon information and belief, defendant Stadlin Group Investments LLC is a California limited liability company with its principal place of business and/or a service address in Tiburon, California.

108.    Upon information and belief, defendant Stadlin Group Investments Series Rockdale LLC is a California limited liability company with its principal place of business and/or a service address in Tiburon, California.

109.    Upon information and belief, defendant Stadlin Group Investments – Series Rhodium LLC is a California limited liability company with its principal place of business and/or a service address in Tiburon, California.

110.    Upon information and belief, defendant Theodore Goodman is the trustee of The Goodman Family Trust.  The Plaintiffs bring this interpleader action against Theodore Goodman as the trustee of The Goodman Family Trust.  Upon information and belief, Theodore Goodman is a resident of Sacramento, California.  Upon information and belief, Theodore Goodman acts as the trustee of The Goodman Family Trust in Sacramento, California.

111.    Upon information and belief, defendant John Bick is the trustee of The JJB 2018 Trust.  The Plaintiffs bring this interpleader action against John Bick as the trustee of The JJB 2018 Trust.  Upon information and belief, John Bick is a resident of Arlington, Texas.  Upon information and belief, John Bick acts as the trustee of The JJB 2018 Trust in Arlington, Texas.

112.    Upon information and belief, defendant Kirk Blackmon is the trustee of The Kirk A. Blackmon 2013 Family Trust.   The Plaintiffs bring this interpleader action against Kirk Blackmon as the trustee of The Kirk A. Blackmon 2013 Family Trust.  Upon information and belief, Kirk Blackmon is a resident of Fort Worth, Texas.   Upon information and belief, Kirk Blackmon acts as the trustee of The Kirk A. Blackmon 2013 Family Trust in Fort Worth, Texas.

113.     Upon information and belief, defendant Trudo Letschert II is the trustee of The Trudo T M Letschert II Revocable Trust.  The Plaintiffs bring this interpleader action against Trudo Letschert II as the trustee of The Trudo T M Letschert II Revocable Trust.  Upon information and belief, Trudo Letschert II is a resident of Sarasota, Florida.  Upon information and belief, Trudo Letschert II acts as the trustee of The Trudo T M Letschert II Revocable Trust in Sarasota, Florida.

114.     Upon information and belief, defendant Theodore A Goodman MD 401K PSP has a service address in Sacramento, California.

115.     Upon information and belief, defendant Trine Mining, LLC is a Montana limited liability company with its principal place of business and/or a service address in Loma Linda, California.

116.     Upon information and belief, defendant Crystal Zacker is the trustee of the TZ Solo401K Trust.  The Plaintiffs bring this interpleader action against Crystal Zacker as the trustee of the TZ Solo401K Trust.  Upon information and belief, Crystal Zacker is a resident of San Antonio, Texas.  Upon information and belief, Crystal Zacker acts as the trustee of the Solo401K Trust in San Antonio, Texas.

117.     Upon information and belief, defendant Upgradeya Investments, LLC is a South Carolina limited liability company with its principal place of business and/or a service address in Mount Pleasant, South Carolina.

118.     Upon information and belief, defendant Victor O'Connell is a resident of Cerritos, California.

119.     Upon information and belief, defendant Vida Kick LLC is a Florida limited liability company with its principal place of business and/or a service address in Clearwater, Florida.

120.    Upon information and belief, defendant Vincent Vuong is a resident of Edmonton, Canada.

121.    Upon information and belief, defendant Mike Wilkins is the trustee of the Wilkins-Duignan 2009 Revocable Trust.  The Plaintiffs bring this interpleader action against Mike Wilkins as the trustee of the Wilkins-Duignan 2009 Revocable Trust.  Upon information and belief, Mike Wilkins is a resident of Berkeley, California.  Upon information and belief, Mike Wilkins acts as the trustee of the Wilkins-Duignan 2009 Revocable Trust in Berkeley, California.

122.    Upon information and belief, defendant William Brumder is a resident of Rio Grande, Puerto Rico.

123.    Upon information and belief, defendant WRE Crown Holdings LLC is a Florida limited liability company with its principal place of business and/or a service address in Hutto, Texas.

124.    Upon information and belief, defendant Anthony Ausiello is a resident of Hamilton, Massachusetts.

125.    Upon information and belief, defendant Ivan Almaraz is a resident of Temple, Texas.

126.    Upon information and belief, defendant Odilton Barreto is a resident of Pflugerville, Texas.

127.    Upon information and belief, defendant Rebecca Bartha is a resident of Temple, Texas.

128.    Upon information and belief, defendant William Boardman is a resident of Jupiter, Florida.

129.    Upon information and belief, defendant Kyle Brossia is a resident of Austin, Texas.

130. Upon information and belief, defendant Jorge Calderon is a resident of Conroe, Texas.

131. Upon information and belief, defendant Spencer Gilliland is a resident of Temple, Texas.

132. Upon information and belief, defendant Alicia Catatao is a resident of Fort Lauderdale, Florida.

133. Upon information and belief, defendant Christopher Clements is a resident of Georgetown, Texas.

134. Upon information and belief, defendant Billy Collier is a resident of Cameron, Texas.

135. Upon information and belief, defendant Sean Conner is a resident of Hutto, Texas.

136. Upon information and belief, defendant Brendan Cottrell is a resident of Taylor, Texas.

137. Upon information and belief, defendant Less Davenport is a resident of Rockdale, Texas.

138. Upon information and belief, defendant Jamie Estes is a resident of Maryville, Tennessee.

139. Upon information and belief, defendant Adrian Gonzalez is resident of Willis, Texas.

140. Upon information and belief, defendant Michael Grider is a resident of Cameron Texas.

141. Upon information and belief, defendant Joseph Gryzan is a resident of Temple, Texas.

142.    Upon information and belief, defendant Jonathan Hall is a resident of Austin, Texas.

143.    Upon information and belief, defendant Amber Hames is a resident of Allen, Texas.

144.    Upon information and belief, defendant Kevin Hays is a resident of Houston, Texas.

145.    Upon information and belief, defendant Ashley Jonson is a resident of Dallas, Texas.

146.    Upon information and belief, defendant Roberto Leal is a resident of Lozano, Texas.

147.    Upon information and belief, defendant Amarnath Mamidi is a resident of Round Rock, Texas.

148.    Upon information and belief, defendant Jared Melillo is a resident of Wilmington, Massachusetts.

149.    Upon information and belief, defendant Michael Norman is a resident of Temple, Texas.

150.    Upon information and belief, defendant Daniel Najacht is a resident of Hutto, Texas.

151.    Upon information and belief, defendant Jonas Norr is a resident of Michigan Beach, Florida.

152.    Upon information and belief, defendant Paul Opoku is a resident of Hutto, Texas.

153.    Upon information and belief, defendant Johnathan Pletsch is a resident of Jupiter, Florida.

154.    Upon information and belief, defendant Jose Ramirez Jr. is a resident of Rio Hondo, Texas.

155.    Upon information and belief, defendant Manuel Ramirez is a resident of Rio Hondo, Texas.

156.    Upon information and belief, defendant Christian Sartori is a resident of Round Rock.

157.    Upon information and belief, defendant David Shafer is a resident of Cameron, Texas.

158.    Upon information and belief, defendant Alexander Peloubet is a resident of Dallas, Texas.

159.    Upon information and belief, defendant Michelle Rathbun Saganski is a resident of Temple, Texas.

160.    Upon information and belief, defendant Peter Richison is a resident of Taylor, Texas.

161.    Upon information and belief, defendant Wade Rogers is a resident of Austin, Texas.

162.    Upon information and belief, defendant Zachary Scheich is a resident of Austin, Texas.

163.    Upon information and belief, defendant Ethan Sharp is a resident of Cameron, Texas.

164.    Upon information and belief, defendant Zachary Sharp is a resident of Schoolcraft, Michigan.

165.    Upon information and belief, defendant Morgan Soule is a resident of Quincy, Massachusetts.

166.    Upon information and belief, defendant Charles Steffens is a resident of Round Rock, Texas.

167.    Upon information and belief, defendant Jackson Stewart is a resident of College Station, Texas.

168.    Upon information and belief, defendant Timothy Turnipseed is a resident of Austin, Texas.

169.    Upon information and belief, defendant Abundance 2021, LLC is a Florida limited liability company with principal place of business and/or a service address in Orlando, Florida.

170.    Upon information and belief, defendant AnnMarie Fornaro is the trustee of the AnnMarie Fornaro Trust dated January 9, 2017.  The Plaintiffs bring this interpleader action against AnnMarie Fornaro as the trustee of the AnnMarie Fornaro Trust dated January 9, 2017. Upon information and belief, AnnMarie Fornaro is a resident of Lagrange, Illinois.   Upon information and belief, AnnMarie Fornaro acts as the trustee of the AnnMarie Fornaro Trust dated January 9, 2017 in Lagrange, Illinois.

171.    Upon information and belief, defendant Derek Blain is a resident of Arlington, Virginia.

172.    Upon information and belief, defendant Michael Brown is a resident of Phoenix, Arizona.

173.    Upon information and belief, defendant BT Real Estate, LLC is a Wyoming limited liability company with its principal place of business and/or a service address in Cheyenne, Wyoming.

174.    Upon information and belief, defendant Bullfrog Investment Group, Inc. is a Wyoming corporation with its principal place of business and/or a service address in Kanab, Utah.

175.    Upon information and belief, defendant Celsius Core LLC is a limited liability company with its principal place of business and/or a service address in New York, New York.

176.     Upon information and belief, defendant Paul A. Coroneos is a resident of the District of Columbia.

177.     Upon information and belief, defendant Ethos Investments XV, LLC is a Delaware limited liability company with its principal place of business and/or a service address in San Francisco, California.

178.     Upon information and belief, defendant Fellowship Management Group LLC is a Louisiana limited liability company with its principal place of business and/or a service address in Lake Charles, Louisiana.

179.     Upon information and belief, defendant GenGlobal RIG LLC is a Delaware limited liability company with its principal place of business and/or a service address in San Francisco, California.

180.     Upon information and belief, defendant Sean Michael Gilbert is a resident of San Diego, California.

181.     Upon information and belief, defendant Adam Hibble is a resident of Bend, Oregon.

182.     Upon information and belief, defendant Infinite Mining, LLC is a Montana limited liability company with its principal place of business and/or a service address in Kila, Montana.

183.     Upon information and belief, defendant J. Blue Company, LLC is a Texas limited liability company with its principal place of business and/or a service address in Schertz, Texas.

184.     Upon information and belief, defendant Brett Jennings is a resident of San Jose, California.

185.     Upon information and belief, defendant Karl Philip is a resident of San Juan, Puerto Rico.

186.     Upon information and belief, defendant JWS QRP Holdings LLC is a Wyoming limited liability company with its principal place of business and/or a service address in Atlanta, Georgia.

187.     Upon information and belief, defendant Matthew J. Kessner is a resident of Katy, Texas.

188.     Upon information and belief, defendant Zoltan Laczko is a resident of San Juan, Puerto Rico.

189.     Upon information and belief, defendant James Lau is a resident of San Juan, Puerto Rico.

190.     Upon information and belief, defendant Thomas Lienhart is a resident of Cincinnati, Ohio.

191.     Upon information and belief, defendant Christopher McBee is a resident of Fort Worth, Texas.

192.     Upon information and belief, defendant Ludwig Diaz is the trustee of the Magic Circle Trust.  The Plaintiffs bring this interpleader action against Ludwig Diaz as the trustee of the Magic Circle Trust.  Upon information and belief, Ludwig Diaz is a resident of Woodside, New York.  Upon information and belief, Ludwig Diaz acts as the trustee of the Magic Circle Trust in Woodside, New York.

193.     Upon information and belief, defendant Mettlehead Capital, LLC is a Wyoming limited liability company with its principal place of business and/or a service address in Cheyenne, Wyoming.

194.     Upon information and belief, defendant Noble Crest Capital, LLC is a Texas limited liability company with its principal place of business and/or a service address in Fort Worth, Texas.

195.     Upon information and belief, defendant Douglas Orr is a resident of Greenburg, Indiana.

196.     Upon information and belief, defendant Pepper Grove Holdings Limited is a British Virgin Islands business company with its principal place of business and/or a service address in Hamilton, Bermuda.

197.     Upon information and belief, defendant Permit Ventures, LLC is a Delaware limited liability company with its principal place of business in Weston, Massachusetts.

198.     Upon information and belief, defendant Philip Fornaro is the trustee of the Philip M. Fornaro Trust dated January 9, 2017.  The Plaintiffs bring this interpleader action against Philip Fornaro as the trustee of the Philip M. Fornaro Trust dated January 9, 2017.  Upon information and belief, Philip Fornaro is a resident of Lagrange, Illinois.  Upon information and belief, Philip Fornaro acts as the trustee of the Philip M. Fornaro Trust dated January 9, 2017 in Lagrange, Illinois.

199.     Upon information and belief, defendant Alexander Matthew Salvadori is a resident of San Diego, California.

200.     Upon information and belief, defendant Robert Shoemaker is a resident of Louisville, Kentucky.

201.     Upon information and belief, defendant Jeffrey Smith is a resident of North Redington Beach, Florida.

202.    Upon information and belief, defendant Emil Stefkov is a resident of New York, New York.

203.    Upon information and belief, defendant Ten R Ten, LLC is a Wyoming limited liability company with its principal place of business and/or a service address in Mount Pleasant, South Carolina.

204.    Upon information and belief, defendant Neil Kumar Thakur is a resident of San Francisco, California.

205.    Upon information and belief, defendant Thunder Mountain Holdings LLC is a Wyoming limited liability company with its principal place of business and/or a service address in San Antonio, Texas.

206.    Upon information and belief, defendant Vantage FBO Amber Wimberly IRA is a self-directed IRA with a service address in Phoenix, Arizona.  Amber Wimberly is the beneficiary.

207.    Upon information and belief, defendant Winchester Partners, LP is a Delaware limited partnership with its principal place of business and/or a service address in Highland Park, Illinois.

208.    Upon information and belief, defendant Brad Weber is a resident of Mount Pleasant, South Carolina.

209.    Upon information and belief, defendant Patty Yang is a resident of Australia.

210.    Upon information and belief, defendant Terry Bennett is a resident of Van Alstyne, Texas.

211.    Upon information and belief, defendant Bruce Kutsche is a resident of Middleville, Michigan.

212.    Upon information and belief, defendant Craig Tarvin is a resident of Round Rock, Texas.

213.    Upon information and belief, defendant Gavin Tang is a resident of Austin, Texas.

214.    Upon information and belief, defendant Rebecca Rice is a resident of Westworth Village, Texas.

215.    Upon information and belief, defendant Ranger Private Investment Partners, L.P. is a Texas limited partnership with its principal place of business and/or a service address in Northbrook, Illinois.

216.    Upon information and belief, defendant Alfred Murray Capital LLC is a Wyoming limited liability company with its principal place of business and/or a service address in New Orleans, Louisiana.

217.    Upon information and belief, Jordan Moorhead is a resident of Austin, Texas.

218.    Upon information and belief, Precinct Holdings, LLC is a Massachusetts limited liability company with its principal place of business and/or a service address in Reading, Massachusetts.

219.    Upon information and belief, C5 Capital LLC is a Wisconsin limited liability company with its principal place of business and/or a service address in Charlotte, North Carolina.

220.    Upon information and belief, Del Papa Ventures Ltd. is a Texas limited partnership with its principal place of business and/or a service address in Austin, Texas.

221.    Upon information and belief, Limitless Advisors, LLC is a Wyoming limited liability company with its principal place of business and/or a service address in Beverly Hills, California.

222.    Upon information and belief, SCM Worldwide LLC is a North Carolina limited liability company with its principal place of business and/or a service address in Charlotte, North Carolina.

223.    Upon information and belief, Vesano Ventures LLC is a North Carolina limited liability company with its principal place of business and/or a service address in Charlotte, North Carolina.

224.    Upon information and belief, The Kingdom Trust Company, FBO Malcolm P Fairbairn Roth IRA, 9510281370 has a service address in Murray, Kentucky.

225.    Upon information and belief, The Kingdom Trust Company, FBO Emily Fairbairn Roth IRA, 7465812820 has a service address in Murray, Kentucky.

226.    Upon information and belief, Sing Family Enterprise Limited has a service address in Charlotte, North Carolina.

## JURISDICTION AND VENUE

227.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157.  To the extent the Court determines this adversary proceeding is not a "core proceeding," Plaintiffs confirm their consent to the entry of final orders or judgments by the Court.

228.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

229.    This adversary proceeding is commenced pursuant to Rule 7001(b), (g) and (i) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").  The statutory predicates for the relief sought herein are Rule 22 of the Federal Rules of Civil Procedures (the "Rules") and Bankruptcy Rule 7022.

## BACKGROUND

### I.    Rhodium's Business Activities

230.    Rhodium was a technology company mining bitcoin that was founded in 2020 by (i) Nathan Nichols; (ii) Cameron Blackmon; (iii) Chase Blackmon; and (iv) Nicholas Cerasuolo (the "Founders").

231.    Rhodium mainly conducted its operations out of a facility located in Rockdale, Texas (the "Rockdale Site").  Whinstone U.S., Inc. ("Whinstone") owned the Rockdale Site.

232.    Rhodium's business operations at the Rockdale Site were premised on several long-term contracts with Whinstone (the "Whinstone Contracts"), where the latter provided electricity and water necessary for Rhodium's mining activities.

### II.    Rhodium's Corporate Ownership Prior to Rollup

233.    Prior to the Rollup (as defined below), which took place in or around June 2021, Rhodium's corporate structure provided for:

- Five Delaware limited liability companies that mined bitcoin: (i) Jordan HPC LLC ("Jordan"); (ii) Rhodium 10MW LLC ("Rhodium 10MW"); (iii) Rhodium 30MW LLC ("Rhodium 30MW"); (iv) Rhodium 2.0 LLC ("Rhodium 2.0"); and (v) Rhodium Encore LLC ("Rhodium Encore," and collectively, the "Operating Companies").

- One Delaware limited liability company—Rhodium JV LLC ("Rhodium JV")— that: (i) was the result of a joint venture between Whinstone and Imperium; and (ii) held various majority interests in four of the Operating Companies doing business at the Rockdale Site.[3]  The remaining interests in the four Operating Companies were owned by third-party investors.

- One Delaware limited liability company—Air HPC LLC ("Air")—that owned a majority stake in Jordan.  As for the other four Operating Companies, the remaining interests in Jordan were owned by third-party investors.

---

[3]    Specifically, Rhodium JV owned at least the 50% of Rhodium 10MW, Rhodium 2.0, Rhodium 30MW and Rhodium Encore.

- One Delaware limited liability company, Rhodium Technologies,[4] which (i) owned Rhodium JV and Air; and (ii) had Imperium as its majority owner.

## III.   Rhodium's Ownership Structure Following the Rollup

### A.   The Class A Common Stock

234.   In or around June 2021, Rhodium Technologies completed a "rollup" transaction (the "Rollup"), which aimed to consolidate the (previously sparse) ownership of the Operating Companies into Rhodium Technologies.

235.   The Rollup entailed the creation of Rhodium Enterprises, which became the majority stakeholder of Rhodium Technologies.  Imperium held the remaining stake in Rhodium Technologies.

236.   In connection with the Rollup, Imperium and the minority investors in the Operating Companies exchanged their respective equity interests with 110,593,401 shares of Class A Common Stock of Rhodium Enterprises.[5]

237.   A list of the current holders of Class A Common Stock in Rhodium Enterprises (the "Class A Holder[s]") is included in **Exhibit 1** (pp. 4-6) to the Complaint.

### B.   The SAFES

238.   Between June and October 2021, Rhodium Enterprises raised capital by entering 58 Simple Agreements for Future Equity (the "SAFE Agreements") with certain investors (the "SAFE Holder[s]") for an amount totaling $86,925,341.

239.   The SAFE Agreements provide for the SAFE Holders to receive equity in Rhodium Enterprises upon the occurrence of certain events: equity financing or an initial public offering. The SAFE Agreements alternatively provide that in the event of a change in voting control of

---

[4]   Rhodium Technologies was previously named Rhodium Enterprises, LLC.

[5]   These shares in Rhodium Enterprises had a par value of $0.0001 per share.

Rhodium Enterprises or a liquidation or disposition of substantially all of Rhodium Enterprises' assets, the SAFE Agreements will "operate like standard Common Stock," meaning that in that event, SAFE Holders will receive payment of available proceeds—after payment of all "outstanding indebtedness and creditor claims" and on par with common equity.

240.    A list of the SAFE Holders is included in **Exhibit 1** (p. 8) to the Complaint.

C.    **The Warrants**

i.    The Fairbairn Warrants

241.    In October 2021, in relation to one of Debtors' capital raises,[6] Rhodium Enterprises issued warrants (the "Fairbairn Warrants") to several entities linked to Malcolm and Emily Fairbairn (these entities are collectively defined as the "Fairbairn Warrant Holder[s]") for approximately $91,108.

242.    The Fairbairn Warrants allow their holders to purchase equity in Rhodium Enterprises.   Specifically, prior to October 1, 2026, the Fairbairn Warrant Holders could cumulatively purchase 7,500,000 Class A Common Stock of Rhodium Enterprises, par value $0.0001 per share, at a price of $10.29 (the "Exercise Price").

243.    The Fairbairn Warrants include an anti-dilution clause stating that the Exercise Price is subject to adjustment if Rhodium Enterprises "issues or sells any shares of Common Stock for a consideration per share or issues any common stock equivalents with an exercise price or conversion price … [that is] less than … the Exercise Price" (the "Anti-Dilution Clause").  Under the foregoing scenario, the Anti-Dilution Clause provides that their holders can purchase Class A Common Stock at that lower, adjusted price.

---

6    The "Debtors" are those entities mentioned in footnote 1.

244.     A list of the Fairbairn Warrant Holders is included in **Exhibit 1** (p. 10) to the Complaint.

        ii.     The Penny Warrants

245.     In September 2022, while the Debtors issued certain notes, Rhodium Enterprises also issued warrants (the "Penny Warrants") allowing certain investors (the "Penny Warrant Holder[s]") to purchase Rhodium Enterprises' equity.  In particular, the Penny Warrant Holders can cumulatively buy 6,282,963 Class A Common Stock of Rhodium Enterprises, par value $0.0001 per share, at a price of $0.01 per share.  To date, only two Penny Warrant Holders have converted their Penny Warrants into Rhodium Enterprises' Class A Common Stock.

246.     A list of the Penny Warrant Holders is included in **Exhibit 1** (p. 9) to the Complaint.

**D.**     **The LTIPs**

247.     In 2022, the management of Rhodium Enterprises adopted a Long Term Incentive Plan ("LTIP[s]" or "Incentive Plan") in favor of certain of Rhodium's executives and employees (the "LTIP Holder[s]").

248.     Under the Incentive Plan, the LTIP Holders were eligible to cumulatively receive 37,014,440 restricted stock units (the "RSU[s]").  For each vested RSU, a LTIP Holder is entitled to receive one share of Class A Common Stock in Rhodium Enterprises.

249.     A list of the LTIP Holders is included in **Exhibit 1** (p. 7) to the Complaint.

**IV.**     **Rhodium's Litigation with Whinstone**

250.     Starting from 2023, Rhodium and Whinstone engaged in extensive litigation related to the Whinstone Contracts.

251.     Indeed, prior to and after the commencement of the Chapter 11 Cases, Rhodium and Whinstone were parties to various proceedings pending before Texas state courts, this Court,

the U.S. District Court for the Southern District of Texas, and the American Arbitration Association Commercial Arbitration Division.

## V.    Rhodium Commences the Chapter 11 Cases

252.    In August 2024, the Debtors filed the Chapter 11 Cases, which are jointly administered for procedural purposes only.

253.    The Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

254.    In March 2025, the Debtors and Whinstone executed a term sheet (the "Term Sheet") for a proposed transaction (the "Transaction") that (i) provided for Whinstone to acquire certain assets of Rhodium in exchange of $185,000,000 in cash and stocks; and (ii) resolved all disputes between the Debtors and Whinstone.

255.    In early April 2025, this Court approved the Transaction, which closed later that month.

256.    The Transaction provides the Debtors with substantial new assets to be distributed under the *Joint Chapter 11 Plan of Rhodium Encore LLC and Its Affiliated Debtors* (the "Plan"). In particular, for those Defendants whose equity interest in the Plaintiffs is established, the Plan provides that they are entitled to share the "Equity Reserve" that will be distributed through a dividend.[7]

---

[7]    Under the Plan, "Equity Reserve" means "Cash available for distribution to Holders of Interests in the Company after payment in full of all Allowed Claims."  The Debtors currently estimate that the Equity Reserve should amount to approximately $99,791,000, if the Plan is confirmed.

A.      **The Competing Claims Over the Equity Reserve**

257.    Under the Plan, the Plaintiffs are required to distribute the Equity Reserve, via a dividend, to the holders of interests in light of their respective interests.  Defendants, however, have competing views on how and to whom the Plaintiffs should distribute the Equity Reserve. The following are examples of these competing views affecting Defendants' rights to the Equity Reserve:

- The Fairbairn Warrant Holders have alleged that the issuance of the Penny Warrants triggered the Anti-Dilution Clause, with the consequence that the Fairbairn Warrant Holders can convert their warrants into 7,500,000 Class A Common Stock of Rhodium Enterprises for a price of $0.01 per share.  If Rhodium Enterprises were to follow the theory of the Fairbairn Warrant Holders, that would cause a substantial dilution of the current Class A Equity Holders (and possibly to other Defendants to the extent that they own equity in Rhodium Enterprises).

- There have been competing views among Defendants on whether the rights of the LTIP Holders have vested or not in connection with one or more events occurring during the Chapter 11 Cases.  If Rhodium Enterprises were to assume that the LTIP Holders are entitled to Class A Common Stock because of the vesting of the LTIPs, that would be prejudicial to its other equity holders, who would endure a lower dividend under the Plan.  Alternatively, if Rhodium Enterprises were to assume that the LTIPs have not vested, that would be detrimental to the LTIP Holders, who would receive no distribution of the Equity Reserve.

- There have been conflicting views among Defendants on whether the SAFE Agreements now "operate like standard Common Stock" in connection with events leading to, or occurred during, the Chapter 11 Cases.[8]

258.    Considering the foregoing, the Plaintiffs cannot fulfil their obligation to distribute the Equity Reserve because they are unable to determine (i) who are the holders of the equity interests and (ii) the extent of those interests.  Indeed, the current competing claims of Defendants make it impossible for the Plaintiffs to distribute the Equity Reserve without (i) favoring certain

---

[8]     In the past, certain SAFE Holders have also alleged that, under the SAFE Agreements, they are creditors—and not contingent equity holders—of Rhodium Enterprises and are entitled to priority over other groups of Defendants.  *See, e.g.*, ECF No. 1080.  This SAFE Holders' theory appears being detrimental to other Defendants because the priority alleged by certain SAFE Holders would reduce the pool of assets to be distributed to the other holders of interests in Rhodium Enterprises.

Defendants to the detriment of others and (ii) exposing the Plaintiffs to related liability and risk of multiple Defendants' conflicting lawsuits and resulting attorneys' fees and costs.  Facing this deadlock, the Plaintiffs bring this Complaint.

**COUNT I – INTERPLEADER**

259.    The Plaintiffs incorporate by reference all preceding paragraphs.

260.    The Plaintiffs are subject to conflicting demands from Defendants affecting the distribution of the Equity Reserve.  The Plaintiffs are uncertain as to which Defendants are legally entitled to a distribution of the Equity Reserve and the extent of their rights.  Thus, the Plaintiffs are unable, without hazard themselves and at risk of being subject to liability, to make a determination as to how the Equity Reserve should be distributed.

261.    The Plaintiffs are willing, and indeed request the right, to deposit the Equity Reserve into an interest-bearing account belonging to the Court's registry, pursuant to Rule 67.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request the following relief:

a.    the Court authorizes the Plaintiffs to interplead the Equity Reserve into an interest-bearing account belonging to the Court's registry, pursuant to Rule 67;

b.    the Plaintiffs are discharged from all liability to the Defendants arising out of the matters set for herein upon the deposit of the Equity Reserve into an interest-bearing account belonging to the Court's registry;

c.    the Defendants are permanently enjoined from commencing or prosecuting against each of the Plaintiffs any action or proceeding to recover any amount of the Equity Reserve;

d.    the Defendants are required to interplead and settle between themselves their rights to the Equity Reserve;

e.    the Equity Reserve shall pay for all costs and attorney's fees for counsel to the Plaintiffs for services relating to this adversary proceeding; and

f.    award of such other and further relief as the Court deems just and proper.

Respectfully submitted this _____ day of _____, 2025.

> **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
>
> /s/  *[DRAFT]*_____
> Patricia B. Tomasco (SBN 01797600)
> Cameron Kelly (SBN 24120936)
> Alain Jaquet (*pro hac vice*)
> Rachel Harrington (*pro hac vice*)
> 700 Louisiana Street, Suite 3900
> Houston, Texas 77002
> Telephone: 713-221-7000
> Facsimile: 713-221-7100
> Email: pattytomasco@quinnemanuel.com
> Email: cameronkelly@quinnemanuel.com
> Email: alainjaquet@quinnemanuel.com
> Email: rachelharrington@quinnemaneul.com
>
> - and -
>
> Eric Winston (*pro hac vice*)
> Razmig Izakelian (*pro hac vice*)
> Ben Roth (pro hac vice)
> 865 S. Figueroa Street, 10th Floor
> Los Angeles, California 90017
> Telephone: 213-443-3000
> Facsimile: 213-443-3100
> Email: ericwinston@quinnemanuel.com
> Email: razmigizakelian@quinnemanuel.com
> Email: benroth@quinnemanuel.com
>
> Counsel to the Debtors and
> Debtors-In-Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

## NOTICE OF FILING OF THE SECOND AMENDED EQUITY LIST
## OF RHODIUM ENTERPRISES, INC.

**PLEASE TAKE NOTICE** that the voluntary petition for chapter 11 relief of Rhodium

Enterprises, Inc. attached an equity list (Case 24-90454, ECF No. 1) (the "Equity List").

**PLEASE TAKE FURTHER NOTICE** that on September 6, 2025, the Debtors filed their

Notice of Filing of Amended Equity List of Rhodium Enterprises, Inc. (ECF No. 126).

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby submit as **Exhibit A** the

Second Amended Equity List for Rhodium Enterprises, Inc. (the "Second Amended Equity List").

---

[1]     The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511).  The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

Respectfully submitted this 5th day of May, 2025.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/ Patricia B. Tomasco
Patricia B. Tomasco (SBN 01797600)
Cameron Kelly (SBN 24120936)
Alain Jaquet (*pro hac vice*)
Rachel Harrington (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com
Email: cameronkelly@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: rachelharrington@quinnemanuel.com

- and -

Eric Winston (*pro hac vice*)
Razmig Izakelian (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: ericwinston@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com

*Counsel to the Debtors and
Debtors-In-Possession*

## Certificate of Service

I hereby certify that on May 5, 2025, a true and correct copy of the foregoing Notice was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Patricia B. Tomasco*
Patricia B. Tomasco

**Rhodium**
**Class A Equity Shares Summary**

| Name of Holder | Class of Equity | Shares Held |
|---|---|---|
| *Class A Equity Holders* | | |
| Malcolm P And Emily T Fairbairn 2021 Charitable Remainder Unitrust | Class A Equity | 15,064,364 |
| DLT Data Center 1 LLC | Class A Equity | 8,451,513 |
| Private Investor Club Feeder Fund 2020-G LLC | Class A Equity | 6,030,522 |
| Upgradeya Investments LLC | Class A Equity | 5,053,979 |
| Private Investor Club Feeder Fund 2020-H LLC | Class A Equity | 4,771,715 |
| Private Investor Club Feeder Fund 2020-D LLC | Class A Equity | 4,400,736 |
| Ethos Investments X LLC | Class A Equity | 3,269,140 |
| Private Investor Club Feeder Fund 2020-E LLC | Class A Equity | 2,883,811 |
| Ethos Investments XIV LLC | Class A Equity | 2,742,818 |
| Nina C Fairbairn Charitable Remainder Unitrust | Class A Equity | 2,631,209 |
| Proof Proprietary Investment Fund Inc | Class A Equity | 3,109,811 |
| Proof Capital Alternative Income Fund | Class A Equity | 3,862,446 |
| Christopher Blackerby | Class A Equity | 2,447,491 |
| Richard Fullerton | Class A Equity | 2,255,322 |
| Proof Capital Alternative Growth Fund | Class A Equity | 3,335,376 |
| The Kirk A Blackmon 2013 Family Trust | Class A Equity | 2,076,609 |
| Upgradeya LLC | Class A Equity | 1,961,484 |
| Liquid Mining Fund I LLC | Class A Equity | 1,953,108 |
| Jerald And Melody Howe Weintraub Revocable Living Trust Dtd 02/05/98 As Amended | Class A Equity | 1,503,548 |
| Omega Capital Ventures S R L | Class A Equity | 1,380,044 |
| Caleb Vanzoeren | Class A Equity | 1,324,001 |
| Cassandra Mallory | Class A Equity | 1,324,001 |
| John Lewis Zoeckler | Class A Equity | 1,324,001 |
| Marshall Long | Class A Equity | 1,324,001 |
| Prollo Growth Partners LLC | Class A Equity | 1,307,656 |
| Distrubuted Ledger Technologies Ireland Limited | Class A Equity | 1,126,482 |
| Trine Mining LLC | Class A Equity | 1,085,823 |
| Charles Topping | Class A Equity | 1,046,124 |
| Printing Capital I LP | Class A Equity | 1,083,621 |
| Colin Hutchings | Class A Equity | 812,648 |
| Liquid Mining Fund II LLC | Class A Equity | 784,593 |
| KeekBC LLC | Class A Equity | 775,527 |
| RH Fund I A Series Of Telegraph Treehouse LP | Class A Equity | 771,756 |
| GR Fairbairn Family Trust | Class A Equity | 751,774 |
| Grant R Fairbairn Charitable Remainder Unitrust | Class A Equity | 751,774 |
| GRF Tiger Trust | Class A Equity | 751,774 |
| NC Fairbairn Family Trust | Class A Equity | 751,774 |
| NCF Eagle Trust | Class A Equity | 751,774 |
| RKS Investments LLC | Class A Equity | 742,809 |
| Elysium Mining LLC | Class A Equity | 718,456 |
| Plexus Technology Corporation | Class A Equity | 716,429 |
| Stadlin Group Investments Series Rhodium LLC | Class A Equity | 688,319 |
| Vincent Vuong | Class A Equity | 681,345 |
| Wilkins-Duignan 2009 Revocable Trust | Class A Equity | 676,596 |
| Byram River Investments LLC | Class A Equity | 651,299 |
| CHP Capital US Inc | Class A Equity | 651,299 |
| LNW Family II LP | Class A Equity | 624,208 |
| Shane M Blackmon | Class A Equity | 621,144 |
| 2103088 Alberta LTD | Class A Equity | 586,169 |
| Crypto Lotus Fund B Master LTD | Class A Equity | 526,322 |
| RH Fund II A Series Of Telegraph Treehouse LP | Class A Equity | 496,915 |

EXHIBIT

A

exhibitsticker.com

| Name of Holder | Class of Equity | Shares Held |
|---|---|---|
| Stadlin Group Investments LLC (Series Rockdale) | Class A Equity | 434,801 |
| Infevo Technologies Co LTD | Class A Equity | 417,160 |
| Brennan M Nacol 2015 Irrevocable Trust | Class A Equity | 414,096 |
| Jon Aborn | Class A Equity | 375,887 |
| The JJB 2018 Trust | Class A Equity | 375,442 |
| Dro Ip3 LLC | Class A Equity | 374,514 |
| Vida Kick LLC | Class A Equity | 343,338 |
| GR10X Corp | Class A Equity | 325,649 |
| Hudson Family Holdings Inc | Class A Equity | 325,649 |
| Bartholamew Mallon | Class A Equity | 300,000 |
| James Calvin | Class A Equity | 300,000 |
| Stadlin Group Investments LLC | Class A Equity | 295,689 |
| Jennifer Manz | Class A Equity | 294,222 |
| Mike Burnstein | Class A Equity | 294,222 |
| Pecan Lake Holdings LLC | Class A Equity | 292,004 |
| Morrison Park Capital LLC | Class A Equity | 291,695 |
| Peter Stris | Class A Equity | 263,120 |
| Matt Smith | Class A Equity | 261,531 |
| Stevie Saganski | Class A Equity | 261,531 |
| Zach Kerr | Class A Equity | 261,531 |
| William Brumder | Class A Equity | 261,530 |
| Katherine Plintz | Class A Equity | 260,519 |
| Gaurav Parikh 2020 Revocable Trust | Class A Equity | 256,739 |
| Daniel Chen | Class A Equity | 250,286 |
| K & B Financial Solutions LLC | Class A Equity | 250,286 |
| Midwest Mining Partners LLC | Class A Equity | 250,286 |
| Rhodium TX SPV LLC | Class A Equity | 250,286 |
| Theodore A Goodman MD 401K PSP | Class A Equity | 250,286 |
| Resolutions Real Estate Services LLC | Class A Equity | 249,716 |
| Ryan Nacol 2015 Irrevocable Trust | Class A Equity | 218,639 |
| Jacquelyn B Nacol 2015 Irrevocable Trust | Class A Equity | 207,392 |
| Arctos Credit LLC | Class A Equity | 207,048 |
| Equity Trust Company Custodian Fbo Valentin Angelkov Ira | Class A Equity | 207,048 |
| Renata Szkoda | Class A Equity | 200,000 |
| 345 Partners SPV2 LLC | Class A Equity | 187,943 |
| JBMI LLC | Class A Equity | 169,337 |
| Rossano Wlodawsky | Class A Equity | 166,874 |
| Jacob Rubin | Class A Equity | 150,354 |
| Kintz Family Trust | Class A Equity | 150,354 |
| Paul Schwarz | Class A Equity | 150,354 |
| Cross The River LLC | Class A Equity | 143,285 |
| TZ Solo401K Trust | Class A Equity | 130,259 |
| ERS Capital LLC | Class A Equity | 124,228 |
| Clark And Laurie Kemble | Class A Equity | 103,524 |
| Altoira Empire Trust Custodian FBO Rossano Wlodawsky Traditional IRA | Class A Equity | 83,437 |
| Shen Valley Property Investments LLC | Class A Equity | 83,433 |
| The Goodman Family Trust | Class A Equity | 82,819 |
| The Trudo T M Letschert II Revocable Trust | Class A Equity | 76,628 |
| Brian Cullinan | Class A Equity | 75,177 |
| Moore Revocable Trust Dated July 31 2014 | Class A Equity | 75,177 |
| Rachana Pathak | Class A Equity | 75,177 |
| Victor O'Connell | Class A Equity | 75,177 |
| R2BMI LLC | Class A Equity | 68,325 |
| James M Farrar & Adda B D Farrar | Class A Equity | 62,114 |
| Thomas Lienhart | Class A Equity | 62,114 |
| MSH Trust | Class A Equity | 51,545 |
| Solo Sessions Llc Profit Sharing Plan | Class A Equity | 51,140 |

| Name of Holder | Class of Equity | Shares Held |
|---|---|---|
| AFC Development LLC | Class A Equity | 41,409 |
| Pat C Hawkins | Class A Equity | 41,409 |
| Robert M And Nancy T Spencer | Class A Equity | 41,409 |
| Rossano N Wlodawsky And Marnie S Wlodawsky Joint Revocable Living Trust | Class A Equity | 41,409 |
| Scott A Thurman | Class A Equity | 41,409 |
| Chang Living Trust | Class A Equity | 37,849 |
| Daniel Garrie | Class A Equity | 37,849 |
| WRE Crown Holdings LLC | Class A Equity | 26,152 |
| Real Opportunity Investing Inc | Class A Equity | 16,692 |
| Terry Bennett | Class A Equity | 15,000 |
| Bruce Kutsche | Class A Equity | 10,000 |
| Craig Tarvin | Class A Equity | 7,500 |
| **Total Class A Equity Ownership** | | **117,994,464** |

**Rhodium**
**LTIP Summary**

| Name of Holder | Class of Equity | Time Eligible Vested Shares |
|---|---|---|
| *Active Employee LTIPs* [1] | | |
| Tang, Gavin | LTIP | 474,482 |
| Rice, Becky | LTIP | 82,067 |
| Hall, Jonathan | LTIP | 61,812 |
| Smith, Matt | LTIP | 2,815,782 |
| Kerr, Zach | LTIP | 891,667 |
| Mamidi, Amarnath | LTIP | 530,881 |
| Richison, Peter | LTIP | 769,381 |
| Barreto, Odilton | LTIP | 56,250 |
| Brossia, Kyle | LTIP | 208,636 |
| Scheich, Zachary | LTIP | 662,626 |
| Bartha, Rebecca | LTIP | 268,693 |
| Boardman, William | LTIP | 396,851 |
| Conner, Sean | LTIP | 393,386 |
| Peloubet, Alexander | LTIP | 740,323 |
| Topping, Charles | LTIP | 1,761,290 |
| Soule, Morgan | LTIP | 910,281 |
| Clements, Christopher | LTIP | 20,467 |
| Collier Sr, Billy | LTIP | 4,375 |
| Gonzalez, Adrian | LTIP | 147,654 |
| Hames, Amber | LTIP | 312,066 |
| Jonson, Ashley | LTIP | 468,606 |
| Steffens, Charles | LTIP | 20,467 |
| Stewart, Jackson | LTIP | 137,615 |
| Cottrell, Brendan | LTIP | 301,507 |
| Davenport, Less | LTIP | 25,342 |
| Estes, Jamie | LTIP | 157,155 |
| Najacht, Daniel | LTIP | 137,890 |
| Rogers, Wade | LTIP | 126,952 |
| Catatao, Alicia | LTIP | 241,250 |
| Szkoda, Renata | LTIP | 200,000 |
| Norr, Jonas | LTIP | 200,000 |
| Hays, Kevin | LTIP | 350,000 |
| Vanzooeren, Caleb | LTIP | 5,501,010 |
| Sharp, Zachary | LTIP | 358,996 |
| Sharp, Ethan | LTIP | 20,467 |
| Saganski, Stevie | LTIP | 525,505 |
| Norman, Michael | LTIP | 576,881 |
| Gryzan, Joseph | LTIP | 490,864 |
| Almaraz, Ivan | LTIP | 53,278 |
| Calderon, Jorge | LTIP | 501,629 |
| Gilliland, Spencer | LTIP | 20,467 |
| Pletsch, Johnathan | LTIP | 2,922 |
| **Total Active Employee LTIPs** | | **21,927,773** |
| *Inactive & Terminated Employee LTIPs* [2] | | |
| Rathbun Saganski, Michelle | LTIP | 41,952 |
| Long, Marshall | LTIP | 4,045,000 |
| Mallory, Cassandra | LTIP | 490,606 |
| Ausiello, Anthony | LTIP | 4,850,000 |
| Melillo, Jared | LTIP | 4,850,000 |
| Grider, Michael | LTIP | 22,358 |
| Shafer, David | LTIP | 25,000 |
| Leal, Roberto | LTIP | 10,313 |
| Opoku, Paul | LTIP | 8,438 |
| Sartori, Christian | LTIP | 10,313 |
| Turnipseed, Timothy | LTIP | 9,375 |
| Burnstein, Michael | LTIP | 10,500 |
| Manz, Jennifer | LTIP | 11,250 |
| Zoeckler, John Lewis | LTIP | 650,000 |
| Ramirez, Manuel | LTIP | 9,375 |
| Ramirez Jr, Jose | LTIP | 42,187 |
| **Inactive & Terminated Employee LTIPs** | | **15,086,667** |
| **Total LTIPs** | | **37,014,440** |

(1) Active is defined as employed by Rhodium as of the Petition Date.
(2) Inactive/Terminated is defined as no longer employed by Rhodium on the Petition Date.

**Rhodium**
**SAFE Holders Summary - Contingent**

| Name of Holder | Class of Equity | Investment Amount |
|---|---|---|
| *SAFE Holders - Contingent* | | |
| Celsius Core LLC | SAFE - Contingent | $ 50,000,000 |
| Private Investor Club Feeder Fund 2021-H LLC | SAFE - Contingent | 6,632,341 |
| Pepper Grove Holdings Limited | SAFE - Contingent | 5,000,000 |
| Ranger Private Investment Partners, L.P. | SAFE - Contingent | 3,000,000 |
| Stefkov, Emil | SAFE - Contingent | 3,000,000 |
| Ethos Investments XV, LLC | SAFE - Contingent | 2,550,000 |
| Proof Capital Alternative Growth Fund | SAFE - Contingent | 2,250,000 |
| LIQUID MINING FUND I LLC | SAFE - Contingent | 1,745,000 |
| GenGlobal RIG LLC | SAFE - Contingent | 1,500,000 |
| Winchester Partners, LP | SAFE - Contingent | 1,500,000 |
| Infinite Mining, LLC | SAFE - Contingent | 1,450,000 |
| Abundance 2021, LLC | SAFE - Contingent | 1,185,000 |
| The Kirk A. Blackmon 2013 Family Trust | SAFE - Contingent | 1,000,000 |
| RH Fund I, a series of Permit RH, LP | SAFE - Contingent | 842,000 |
| RH Fund III, a series of Telegraph Treehouse, LP | SAFE - Contingent | 721,000 |
| Permit Ventures, LLC | SAFE - Contingent | 500,000 |
| Smith, Jeffrey | SAFE - Contingent | 300,000 |
| Bullfrog Investment Group Inc. | SAFE - Contingent | 250,000 |
| RKS Investments LLC | SAFE - Contingent | 250,000 |
| Yang, Patty | SAFE - Contingent | 200,000 |
| Infinite Mining, LLC | SAFE - Contingent | 200,000 |
| Jennings, Brett | SAFE - Contingent | 200,000 |
| Lau, James | SAFE - Contingent | 200,000 |
| Proof Capital Alternative Growth Fund | SAFE - Contingent | 175,000 |
| James M. Farrar and Adda B. Delgadillo Farrar | SAFE - Contingent | 160,000 |
| Magic Circle Trust | SAFE - Contingent | 150,000 |
| Weber, Brad | SAFE - Contingent | 140,000 |
| Fellowship Management Group, LLC | SAFE - Contingent | 100,000 |
| Coroneos, Paul A | SAFE - Contingent | 100,000 |
| J. Blue Company, LLC | SAFE - Contingent | 100,000 |
| Kessner, Matthew J | SAFE - Contingent | 100,000 |
| Laczko, Zoltan | SAFE - Contingent | 100,000 |
| Lienhart, Thomas | SAFE - Contingent | 100,000 |
| Mcbee, Christopher | SAFE - Contingent | 100,000 |
| Mettlehead Capital, LLC | SAFE - Contingent | 100,000 |
| JWS QRP HOLDINGS LLC | SAFE - Contingent | 75,000 |
| Brennan M. Nacol 2015 Irrevocable Trust | SAFE - Contingent | 65,000 |
| Alfred Murray Capital, LLC | SAFE - Contingent | 50,000 |
| AnnMarie Fornaro Trust dated January 9, 2017 | SAFE - Contingent | 50,000 |
| Blain, Derek | SAFE - Contingent | 50,000 |
| BT Real Estate LLC | SAFE - Contingent | 50,000 |
| Karl, Philip | SAFE - Contingent | 50,000 |
| Moorhead, Jordan | SAFE - Contingent | 50,000 |
| Noble Crest Capital, LLC | SAFE - Contingent | 50,000 |
| Orr, Douglas | SAFE - Contingent | 50,000 |
| Philip M. Fornaro Trust dated January 9, 2017 | SAFE - Contingent | 50,000 |
| Shoemaker, Robert | SAFE - Contingent | 50,000 |
| Ten R Ten, LLC | SAFE - Contingent | 50,000 |
| Thunder Mountain Holdings LLC | SAFE - Contingent | 50,000 |
| TZ SOLO401K TRUST | SAFE - Contingent | 50,000 |
| Vantage FBO Amber Wimberly IRA | SAFE - Contingent | 50,000 |
| Solo Sessions, LLC Profit Sharing Plan | SAFE - Contingent | 35,000 |
| Brown, Michael | SAFE - Contingent | 25,000 |
| Gilbert, Sean Michael | SAFE - Contingent | 25,000 |
| Hibble, Adam | SAFE - Contingent | 25,000 |
| Precinct Holdings, LLC | SAFE - Contingent | 25,000 |
| Salvadori, Alexander Matthew | SAFE - Contingent | 25,000 |
| Thakur, Neil Kumar | SAFE - Contingent | 25,000 |
| **Total SAFE Investment - Contingent** | | **86,925,341** |

**Rhodium**
**Unexercised Warrants Summary**

| Name of Holder | Class of Equity | Exercise Price | Warrants Outstanding |
|---|---|---|---|
| ***Unexercised Debt Penny Warrants*** | | | |
| Abundance 2021, LLC | Unexercised Warrant | $  0.01 | 189,209 |
| C5 Capital LLC | Unexercised Warrant | 0.01 | 378,494 |
| Del Papa Ventures Ltd | Unexercised Warrant | 0.01 | 75,698 |
| Garrie, Michael | Unexercised Warrant | 0.01 | 75,698 |
| Imperium Investments Holdings LLC | Unexercised Warrant | 0.01 | 756,988 |
| Limitless Advisors LLC | Unexercised Warrant | 0.01 | 37,849 |
| Proof Capital Alternative Growth Fund | Unexercised Warrant | 0.01 | 719,139 |
| Proof Capital Alternative Income Fund | Unexercised Warrant | 0.01 | 681,289 |
| Proof Proprietary Investment Fund Inc. | Unexercised Warrant | 0.01 | 302,795 |
| SCM Worldwide LLC | Unexercised Warrant | 0.01 | 756,988 |
| Sing Family Enterprise Limited | Unexercised Warrant | 0.01 | 3,027,955 |
| Vesano Ventures LLC | Unexercised Warrant | 0.01 | 37,849 |
| Ausiello, Anthony | Unexercised Warrant | 0.01 | 37,849 |
| **Total Unexercised Debt Penny Warrants** | | | **7,077,800** |

**Rhodium**
**Disputed Unexercised Warrants Summary**

| Name of Holder | Class of Equity | Exercise Price | Warrants Outstanding |
|---|---|---|---|
| ***Disputed Unexercised Warrants*** | | | |
| The Kingdom Trust Company, FBO Malcolm P Fairbairn Roth IRA, 9510281370 | Disputed Unexercised Warrant | 10.29 | 200,000 |
| The Kingdom Trust Company, FBO Emily Fairbairn Roth IRA, 7465812820 | Disputed Unexercised Warrant | 10.29 | 200,000 |
| GRF Tiger Trust | Disputed Unexercised Warrant | 10.29 | 154,432 |
| NCF Eagle Trust | Disputed Unexercised Warrant | 10.29 | 154,432 |
| Kintz Family Trust | Disputed Unexercised Warrant | 10.29 | 20,000 |
| **Total Disputed Unexercised Warrants** | | | **728,864** |

# EXHIBIT B
# TO BE PROVIDED AT A LATER DATE

# EXHIBIT C
# LITIGATION TRUST AGREEMENT

<strong>Draft 5/22/2025</strong>

<strong>LITIGATION TRUST AGREEMENT</strong>

This Litigation Trust Agreement,[1] dated and effective as of [_____], 2025 (the "**Agreement**"), by and among Rhodium Encore LLC; Jordan HPC LLC; Rhodium JV LLC; Rhodium 2.0 LLC; Rhodium 10MW LLC; Rhodium 30MW LLC; Rhodium Enterprises, Inc.; Rhodium Technologies LLC;  Rhodium Renewables LLC; Air HPC LLC; Rhodium Shared Services LLC; Rhodium Ready Ventures LLC; Rhodium Industries LLC; Rhodium Encore Sub LLC; Jordan HPC Sub LLC; Rhodium 2.0 Sub LLC; Rhodium 10MW Sub LLC; Rhodium 30MW Sub LLC; and Rhodium Sub LLC (collectively, the "**Debtors**"), as settlor, and [Trustee], as trustee for the trust established pursuant to this Agreement (the "**Litigation Trustee**"), creates and establishes the litigation trust (the "**Litigation Trust**") referenced herein in connection with the *Joint Chapter 11 Plan Of Rhodium Encore LLC and Its Affiliated Debtors*, dated [_____], 2025 (as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions thereof, the "**Plan**").  Each of Reorganized Debtors, the Litigation Trust Beneficiaries, and the Litigation Trustee are referred to herein individually as a "**Party**" and, collectively, as the "**Parties**."

<strong>RECITALS</strong>

**WHEREAS**, each of the Debtors filed a voluntary petition for relief (collectively, the "**Chapter 11 Cases**"), which cases are jointly administered under Case No. 24-90448 (ARP), under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on August 29, 2024 (the "**Petition Date**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**");

**WHEREAS**, on [_____], the Bankruptcy Court entered its order confirming the Plan (the "**Confirmation Order**");

**WHEREAS**, the Plan provides, among other things, as of the Effective Date of the Plan, for (a) the creation and establishment of the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, (b) the automatic transfer to the Litigation Trust of the Trust Assets, as well as the rights and powers of each Debtor and Trust Beneficiary, as applicable, in such Trust Assets, free and clear of all Claims and Interests, and (c) the prosecution and settlement of the Trust Causes of Action (the "**Litigation Claims**") by the Litigation Trustee and the Litigation Trust Advisory Board (as defined herein) and the distribution of the proceeds therefrom to the Litigation Trust Beneficiaries, as set forth in the Plan, the Confirmation Order, and this Agreement;

**WHEREAS**, the Litigation Trust is intended to qualify as a "liquidating trust" pursuant to the Internal Revenue Code of 1986, as amended (the "**IRC**"), and the regulations promulgated thereunder ("**Treasury Regulations**"), including Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and shall take no action inconsistent with such qualification;

**WHEREAS**, the Litigation Trust shall not be deemed a successor in interest of any of the Debtors for any purpose other than as specifically set forth in the Plan, the Confirmation Order, or this Agreement, and upon the transfer by the Debtors of any Trust Assets to the Litigation Trust,

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

the Debtors will have no reversionary or further interest in or with respect to the Trust Assets or the Litigation Trust; and

**WHEREAS**, the Litigation Trustee shall have all powers necessary to implement the provisions of the Plan, the Confirmation Order, and this Agreement and to administer the Litigation Trust as provided herein.

**NOW**, **THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the mutual agreements of the Parties contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE I
## ESTABLISHMENT OF THE LITIGATION TRUST

1.1     Establishment of the Litigation Trust and Appointment of the Litigation Trustee and the Litigation Trust Advisory Board.

(a)     The Parties, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a trust on behalf of the Litigation Trust Beneficiaries, which shall be known as the "Rhodium Litigation Trust," on the terms set forth herein.  In connection with the exercise of the Litigation Trustee's powers hereunder, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee sees fit.

(b)     The initial members of the Litigation Trust Advisory Board (each, a "**Member**") are identified on Exhibit A hereto.

(c)     The Litigation Trustee agrees to accept and hold the Trust Assets in trust for the Litigation Trust Beneficiaries, subject to the provisions of the Plan, the Confirmation Order, and this Agreement, and shall serve at the express written consent, approval, direction, acceptance, authorization, certification, or affirmation, in each case, by a majority in number of the Members of the Litigation Trust Advisory Board ("**Direction**") as set forth in this Agreement, including Section 5.2 hereof.

(d)     The Litigation Trustee and each successor trustee serving from time to time hereunder shall have all the rights, powers, and duties as set forth herein.

(e)     The Litigation Trustee and the Members shall serve without bond and shall have no obligation to file any accountings with any state court.

(f)     For the avoidance of doubt, neither the Litigation Trustee nor any Member is or shall be deemed an officer, director, or fiduciary of any of the Debtors.

1.2     Transfer of the Trust Assets.

(a)     Pursuant to Section [5.2] of the Plan, on the Effective Date, in  satisfaction of all Allowed Claims and Interests of the Litigation Trust Beneficiaries, the Debtors shall be deemed to transfer all of the Trust Assets (including the rights and powers of the Debtors' Estates applicable to the Trust Assets in accordance with section 1141 of Bankruptcy Code) to the Litigation Trust, including all information necessary to investigate, prosecute, protect, and conserve all Litigation Claims, free and clear of all liens, Claims, encumbrances, and Interests (legal, beneficial, or otherwise) for the benefit of the Litigation Trust Beneficiaries.  For the avoidance of doubt, upon the transfer of the Trust Assets, the Litigation Trust shall succeed to all of the Debtors' rights, title, and interest in the Trust Assets, and the Debtors shall have no further interest in or with respect to the Litigation Trust.  The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief.

(b)     In connection with the vesting and transfer of the Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral, including electronic information) relating to the Trust Assets (collectively, the "**Privileges**") shall vest in the Litigation Trust.  The Debtors, Reorganized Debtors, and the Litigation Trustee shall take all necessary actions to effectuate the transfer of such privileges, protections, and immunities.  The Litigation Trust's, Litigation Trustee's, and the Litigation Trust Advisory Board's receipt of the Privileges shall be without waiver in recognition of the joint/successorship interest in prosecuting claims on behalf of the Debtors' Estates and their stakeholders, where applicable.

(c)     The Litigation Trustee, the Litigation Trust Beneficiaries, and any party under the control of such parties agree to execute any documents or other instruments and take any other steps as necessary to cause title to the Trust Assets to be transferred to the Litigation Trust on the Effective Date.

(d)     To the extent reasonably requested by the Litigation Trustee, Reorganized Debtors and the professionals retained by the Debtors during the Chapter 11 Cases agree, subject to any applicable and non-transferred Privileges, to cooperate with the Litigation Trustee in the prosecution of the Litigation Claims, including by providing access to books, records, documents, materials, and/or information relevant to the Litigation Claims, as well as those attorneys, accountants, and other professionals with knowledge of matters relevant to the Litigation Claims.

(e)     For all federal, state, and local income tax purposes, all relevant parties (including the Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) shall treat the transfer of the Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether the applicable Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as a transfer of the Trust Assets (subject to any obligations relating to such Trust Assets) directly to the Litigation Trust Beneficiaries.

(f)     Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Trust Assets to the Litigation Trust shall not affect the mutuality of obligations that otherwise might have existed prior to the effectuation of such transfer.

Notwithstanding anything in the Plan or in this Agreement to the contrary, the transfer of the Trust Assets to the Litigation Trust does not diminish, and fully preserves, any defenses a defendant would have if such Litigation Claims had been retained by their respective holders.

(g)     The transfer of the Trust Assets to the Litigation Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

1.3     <u>Funding of the Litigation Trust</u>.

(a)     On and after the Effective Date, the Litigation Trust shall be funded by [_____] in the amount of $[_____] (the "**Litigation Trust Fund**"), which shall be used to administer all Trust Assets.  The Litigation Trust Beneficiaries shall have no further obligation to provide any funding with respect to the Litigation Trust.

(b)     As set forth in Section 1.7 of this Agreement, all reasonable fees, expenses, and costs of the Litigation Trust, including fees and expenses incurred by professionals retained by the Litigation Trust, shall be paid first from the Litigation Trust Fund and, to the extent such fees, expenses, and costs exceed the amount of the Litigation Trust Fund, then solely from the proceeds of the Trust Assets; *provided*, *however*, that the Trust Assets may not be used to pay professional fees and expenses other than those of the Litigation Trustee and professionals or vendors retained by the Litigation Trustee or his/her counsel.  The Debtors shall have no obligation to pay, and shall not be required to pay, any of the fees and expenses of the Litigation Trust, including, without limitation, professional fees and expenses incurred in connection with the prosecution of the Litigation Claims (collectively, the "**Litigation Trust Expenses**").

(c)     Any failure or inability of the Litigation Trustee to obtain additional funding for the Litigation Trust will not affect the enforceability of this Agreement.

1.4     <u>Title to the Trust Assets</u>.  The transfer of the Trust Assets to the Litigation Trust pursuant to Section 1.2 hereof is being made for the sole benefit, and on behalf, of the Litigation Trust Beneficiaries.  Upon the transfer of the Trust Assets to the Litigation Trust, the Litigation Trust shall succeed to all of the Debtors' and the Estates' rights, title, and interest in the Trust Assets, and no other Person[2] shall have any interest, legal, beneficial, or otherwise, in the Litigation Trust or the Trust Assets upon the assignment and transfer of such assets to the Litigation Trust (other than as provided in the Plan, the Confirmation Order, or this Agreement).

1.5     <u>Nature and Purpose of the Litigation Trust</u>.

(a)     <u>Purpose</u>.  The Litigation Trust is organized and established as a trust pursuant to which the Litigation Trustee, subject to the terms and conditions of this Agreement and when applicable, upon the Direction of the Litigation Trust Advisory Board, shall act on behalf, and for the benefit, of the Litigation Trust Beneficiaries.  The Litigation Trustee and Litigation Trust Advisory Board shall, consistent with the terms of this Agreement (i) administer the Trust Assets, (ii) prosecute, settle, adjust, retain, and enforce any Litigation Claims, (iii) make

---

[2]     As used in this Agreement, the term "<u>Person</u>" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

any distributions as provided for under the Plan and this Agreement, and (iv) liquidate the Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or any other business, except to the extent reasonably necessary to, and consistent with, the purpose of the Litigation Trust. The Litigation Trustee shall have the responsibility for the pursuit and settlement of the Litigation Claims and the power and authority to allow or settle and compromise any Claims related to the Trust Assets, in each case, upon the Direction of the Litigation Trust Advisory Board, and in accordance with this Agreement, including Sections 3.2 and 3.3(b). The primary purpose of the Litigation Trust is to, in an expeditious and orderly manner, monetize and convert the Trust Assets to Cash and make timely distributions to holders of Allowed Claims in accordance with the Plan with no objective to continue or engage in the conduct of, or to further, any trade or business. In executing its duties under the Litigation Trust Advisory Board's Direction, the Litigation Trustee shall be obligated to make continuing reasonable efforts to timely resolve the Litigation Claims and not unreasonably prolong the duration of the Litigation Trust. The liquidation of the Litigation Claims may be accomplished either through the prosecution, compromise and settlement, abandonment, or dismissal thereof, in accordance with the Plan, the Confirmation Order, and this Agreement.

(b)     <u>Relationship</u>. This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The Litigation Trust is not intended to be, and shall not be deemed to be, or be treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company, or association, nor shall the Litigation Trustee, the Litigation Trust Advisory Board (or any Member), or the Litigation Trust Beneficiaries for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Litigation Trust Beneficiaries, on the one hand, to the Litigation Trustee and the Litigation Trust Advisory Board, on the other hand, shall be solely that of a beneficiary of a trust and shall not be deemed a principal and agency relationship, and their rights shall be limited to those conferred upon them by the Plan, the Confirmation Order, and this Agreement.

(c)     <u>No Waiver of Claims</u>. Except as provided in, and unless expressly released, compromised, or settled in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement entered into or delivered in connection with the Plan, the Litigation Trustee, upon the Direction of the Litigation Trust Advisory Board, shall enforce the Litigation Claims, in accordance with sections 1123(a)(5)(A) and 1123(b)(3) of the Bankruptcy Code. For the avoidance of doubt, any Direction of the Litigation Trust Advisory Board to release, compromise, or settle a Litigation Claim must be consistent with the Advisory Board's fiduciary obligations to the Litigation Trust Beneficiaries pursuant to Section 5.3 of this Agreement. No preclusion doctrine, including  the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, (judicial, equitable, or otherwise), or laches shall apply to the Litigation Trust, the Litigation Trustee, or the Litigation Trust Advisory Board by virtue of or in connection with the confirmation, consummation, or effectiveness of the Plan. No Person or entity may rely on the absence of a specific reference in the Plan to any claim against them as any indication that the Litigation Trustee will not pursue any and all available Litigation Claims against them. Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim

preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation Order.

(d)    Relationship to and Incorporation of the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order, and therefore this Agreement incorporates the provisions thereof by reference; *provided*, *however*, that if any provisions of this Agreement are found to be inconsistent with the provisions in Section [5.2] of the Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order:  this Agreement, the Confirmation Order, and the Plan.  In connection with the administration of the Litigation Trust, the Litigation Trustee shall have all powers necessary to implement the provisions of the Plan relating to the Litigation Trust, within the bounds of the Plan, this Agreement, and applicable law.

1.6    Appointment as Representative.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Litigation Trustee shall be the duly appointed representative of the Debtors' Estates for certain limited purposes and, as such, to the extent provided herein, the Litigation Trustee succeeds to the rights and powers of a trustee in bankruptcy solely with respect to prosecution of the Litigation Claims.  To the extent that any of the Litigation Claims cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Trust Assets shall be deemed to have been retained by the Debtors (other than for tax purposes), and the Litigation Trustee shall be deemed to have been designated as a representative of the Debtors' Estates to the extent provided herein pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely to enforce and pursue such Litigation Claims on behalf of the Debtors' Estates.  Notwithstanding the foregoing, all net proceeds of the Trust Assets shall be distributed to the Litigation Trust Beneficiaries consistent with the provisions of the Plan and Confirmation Order.  For the avoidance of doubt, any of the Litigation Claims subject to this Section 1.6 shall be treated by the Parties for U.S. federal, state, and local income tax purposes as a disposition of the Litigation Claims by the Debtors as described in Section 1.2 herein.

1.7    Litigation Trust Fees and Expenses.  The Litigation Trustee and the Litigation Trust Advisory Board may incur any reasonable and necessary expenses in connection with the performance of their respective duties under the Plan, the Confirmation Order, and this Agreement, including in connection with retaining professionals and/or entering into agreements pursuant to Sections 3.6, 3.7, and 3.8 herein.  Counsel expenses of the Litigation Trust Advisory Board reimbursable under this provision shall be limited to fees and expenses paid to a single law firm representing the entire Litigation Trust Advisory Board (rather than some or all of its Members) where that law firm does not also represent the Litigation Trustee or any of the Litigation Trust Beneficiaries in connection with any matter relating to any of the Debtors.  The Litigation Trustee's and the Litigation Trust Advisory Board's fees and expenses and the fees and expenses of their respective professionals retained pursuant to this Agreement shall be paid first from the Litigation Trust Fund and, to the extent such fees, expenses, and costs exceed the amount of the Litigation Trust Fund, then solely from the proceeds of the Trust Assets.  The Litigation Trust Expenses, on or after the Effective Date, shall be paid in accordance with the Plan and this Agreement without further order of the Bankruptcy Court.  For the avoidance of doubt, (i) the Trust Assets may not be used to pay professional fees and expenses other than those of the Litigation Trustee, the Litigation Trust Advisory Board, and professionals, vendors, or counsel retained by the Litigation

Trustee or the Litigation Trust Advisory Board and (ii) the Debtors and Litigation Trust Beneficiaries shall not have any obligation, or be required, to pay any of the Litigation Trust Expenses, other than the Litigation Trust Fund.

1.8     Valuation of the Trust Assets.  As soon as reasonably practicable following the Effective Date, but in no event later than sixty (60) days thereafter, the Litigation Trustee shall inform, in writing, the Litigation Trust Advisory Board and the Litigation Trust Beneficiaries of the value of the non-contingent Trust Assets, based on the good-faith determination of the Litigation Trustee.  In connection with the preparation of the valuation contemplated hereby and by the Plan, the Litigation Trustee shall be entitled to retain such professionals and advisors as the Litigation Trustee shall determine to be appropriate or necessary, and the Litigation Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary. The Litigation Trust shall bear all of the reasonable costs and expenses incurred in connection with determining such value, including the fees and expenses of any professionals retained in connection therewith.

# ARTICLE II
# LITIGATION TRUST INTERESTS

2.1     Litigation Trust Interests.  The beneficial interests in the Litigation Trust and the right to receive certain distributions therefrom in accordance with this Agreement (the "**Litigation Trust Interests**") will be represented by book entries on the books and records of the Litigation Trust.  The Litigation Trustee will not issue any certificate or certificates to evidence any beneficial interests in the Litigation Trust.

2.2     Interests Beneficial Only.  The ownership of the Litigation Trust Interests shall not entitle the Litigation Trust Beneficiaries to any title in or to the Trust Assets as such (which title shall be vested in the Litigation Trust) or to any right to call for a partition or division of the Trust Assets or to require an accounting.

2.3     Transferability of Litigation Trust Interests.

(a)     The Litigation Trust Interests shall be freely transferable; *provided*, *however*, that the transfer of the Litigation Trust Interests will be prohibited to the extent such transfer would subject the Debtors to the registration and reporting requirements of the Securities Act or the Securities Exchange Act of 1934, as amended.

2.4     Registry of Beneficial Interests.

(a)     The Litigation Trustee shall appoint a registrar, which may be the Litigation Trustee (the "**Registrar**") for the purpose of recording ownership of the Litigation Trust Interests. The Registrar, if other than the Litigation Trustee, shall be a third-party institution selected upon the Direction of the Litigation Trust Advisory Board.  For its services hereunder, the Registrar, unless it is the Litigation Trustee, shall be entitled to receive reasonable compensation from the Litigation Trust Fund as an expense of the Litigation Trust.

(b)     The Litigation Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by them from time to time, a registry of the

Litigation Trust Beneficiaries of the Litigation Trust (the "**Trust Register**") and their respective holdings of Litigation Trust Interests, which shall be maintained pursuant to such reasonable regulations as the Litigation Trustee and the Registrar may prescribe.

2.5 <u>Exemption from Registration</u>. The Parties hereto intend that the rights of the Litigation Trust Beneficiaries arising under this Litigation Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the Parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities Act of 1933, as amended (the "**Securities Act**"), the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), the Trust Indenture Act of 1939, as amended (the "**Trust Indenture Act**") or the Investment Company Act of 1940, as amended (the "**Investment Company Act**"), then the Litigation Trustee shall take commercially reasonable efforts to comply with such registration and reporting requirements to the extent required by applicable law. Notwithstanding the foregoing procedure, the Litigation Trustee may amend this Agreement in accordance with Article IX hereof, to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act, or the Investment Company Act.

2.6 <u>Effect of Death, Incapacity, or Bankruptcy</u>. The death, incapacity, or bankruptcy of any Litigation Trust Beneficiary during the term of the Litigation Trust shall not (i) operate to terminate the Litigation Trust; (ii) entitle the representatives or creditors of the deceased party to an accounting; (iii) entitle the representatives or creditors of the deceased party to take any action in the Bankruptcy Court or elsewhere for the distribution of the Trust Assets or for a partition thereof; or (iv) otherwise affect the rights and obligations of any of the Litigation Trust Beneficiaries under this Agreement.

2.7 <u>Change of Address</u>. Any Litigation Trust Beneficiaries may, after the Effective Date, select an alternative distribution address by providing notice to the Litigation Trustee identifying such alternative distribution address. Such notification shall be effective only upon receipt by the Litigation Trustee. Absent actual receipt of such notice by the Litigation Trustee, the Litigation Trustee shall not recognize any such change of distribution address.

**ARTICLE III**
**RIGHTS, POWERS, AND DUTIES OF LITIGATION TRUSTEE**

3.1 <u>Role of the Litigation Trustee</u>. In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, subject to the terms and conditions contained in the Plan, the Confirmation Order, and this Agreement, the Litigation Trustee shall: (i) receive, manage, supervise, and protect the Trust Assets upon its receipt of same on behalf of and for the benefit of the Litigation Trust Beneficiaries; (ii) at the Direction of the Litigation Trust Advisory Board, investigate, analyze, commence, prosecute, and, if necessary and appropriate, release, settle, and compromise the Litigation Claims and any objections to Claims related to the Litigation Claims;

(iii) prepare and file all required tax returns, information returns, and other documents, and pay taxes and all other obligations of the Litigation Trust; (iv) liquidate and convert the Trust Assets to cash and make timely distributions to the Litigation Trust Beneficiaries in accordance with Section 3.5 herein; and (v) have all such other powers and responsibilities as may be vested in the Litigation Trustee pursuant to, or as may be necessary and proper to carry out the provisions of, the Plan, the Confirmation Order, this Agreement, and all other orders of the Bankruptcy Court. In all circumstances, the Litigation Trustee shall act in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust, and shall use commercially reasonable efforts to resolve the Litigation Claims and to make timely distributions of any proceeds therefrom and to otherwise monetize the Trust Assets and not unreasonably prolong the duration of the Litigation Trust.

3.2    <u>Fiduciary Duties</u>.   The Litigation Trustee shall have fiduciary duties to the Litigation Trust and the Litigation Trust Beneficiaries to the same extent that a director or officer of a Delaware corporation owes fiduciary duties to such corporation.  The Litigation Trustee shall act in good faith and in consideration of (i) the best interests of the Litigation Trust Beneficiaries, and (ii) the fiduciary obligations the Litigation Trustee owes the Litigation Trust Beneficiaries.

3.3    <u>Prosecution of Litigation Claims</u>.

(a)    The Litigation Trust Advisory Board shall have the absolute right to provide Direction to the Litigation Trustee to prosecute, pursue, commence, object to, seek to estimate, seek to subordinate, compromise, settle, or take any other action concerning any and all Litigation Claims as it determines in good faith to be in the best interests of the Litigation Trust Beneficiaries, and consistent with (i) the Members' fiduciary obligations to the Litigation Trust Beneficiaries pursuant to Section 5.3 of this Agreement; and (ii) the purposes of the Litigation Trust.

(b)    Any determinations by the Litigation Trust Advisory Board with regard to the amount or timing of settlement or other disposition of any Litigation Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Trust Beneficiaries and all other parties in interest.

(c)    The Litigation Trustee will prepare and make available to Litigation Trust Beneficiaries and the Litigation Trust Advisory Board, on an annual basis, a written report detailing, among other things, the litigation status of the Litigation Claims, any settlements entered into by the Litigation Trust, the proceeds recovered to date from the Trust Assets, and the distributions made by the Litigation Trust.  Such report shall be posted on a website maintained by the Litigation Trustee.

(d)    The Litigation Trustee shall, upon the Direction of the Litigation Trust Advisory Board, take any and all actions necessary or prudent to intervene as plaintiff, movant, or additional party, as appropriate, in any applicable Litigation Claim.  For purposes of exercising its powers, the Litigation Trustee shall be deemed to be a representative of the Debtors' Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

3.4    <u>Liquidation of Trust Assets</u>.  The Litigation Trustee shall, upon the Direction of the Litigation Trust Advisory Board, in an expeditious but orderly manner, and subject to the other

provisions of the Plan, the Confirmation Order, and this Agreement, liquidate and convert to Cash the Trust Assets, make timely distributions, and not unduly prolong the duration of the Litigation Trust.  The Litigation Trust Advisory Board shall take into consideration the Members' fiduciary obligations pursuant to Section 5.3 of this Agreement and the likelihood of success, risks, timing, and costs of potential actions in exercising its reasonable business judgment to maximize net recoveries to the Litigation Trust Beneficiaries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment, or dismissal of any or all Litigation Claims or otherwise or through the sale or other disposition of the Trust Assets (in whole or in combination).  Consistent with an agreed-upon budget in accordance with Section 3.12(b) of this Agreement, if any, the Litigation Trustee may incur any reasonable and necessary expenses in connection with liquidating and converting the Trust Assets to Cash and distribution of the proceeds thereof.

       3.5      <u>Distributions</u>.

       (a)      The Litigation Trustee shall make distributions on account of Litigation Trust Interests in accordance with the terms of this Agreement.  The net proceeds of the Litigation Claims available for distribution shall be allocated on a *pro rata* basis to the holders of Litigation Trust Interests.

       (b)      The Litigation Trustee shall distribute or cause to be distributed to each Litigation Trust Beneficiary its share of any proceeds of the Trust Assets semi-annually, or more frequently as otherwise determined upon the Direction of the Litigation Trust Advisory Board (any such date, a "**Distribution Date**"), until such time as there are no longer any proceeds to distribute; *provided*, *however*, that the Litigation Trustee may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Trust Assets during liquidation; (ii) to pay or reserve for reasonable administrative expenses (including the costs and expenses of the Litigation Trust and the Litigation Trustee and the fees, costs, and expenses of all professionals retained by the Litigation Trustee, and any taxes imposed on the Litigation Trust or in respect of the assets of the Litigation Trust); and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement.

       (c)      Except as otherwise provided pursuant to a Final Order, the Litigation Trustee shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as reasonably practicable after the Initial Distribution.  Distributions of Cash on account of the Litigation Trust Interests shall, to the extent reasonably practicable, be made on the Distribution Date after the net proceeds of the Litigation Claims are received by the Litigation Trust.

       (d)      Subject to the requirements of Revenue Procedure 94-45, 1994-2 C.B. 684, the Litigation Trustee shall distribute all Cash on hand (including the net income and net proceeds, if any, from any disposition of Trust Assets, any Cash received on account of or representing proceeds, and treating as Cash for purposes of this Section 3.5 and any permitted investments under Section 3.9 below).

(e)     The Litigation Trustee shall make distributions to each Litigation Trust Beneficiary (i) through its authorized designee for purposes of distributions to be made under the Plan; or (ii) at its last-known address, as indicated on the Debtors' or Litigation Trust's records as of the applicable Distribution Date (which, subject to Section 2.7 hereof, for each holder of an Allowed Claim shall be deemed to be the address set forth on any ballot filed by that holder).

(f)     The Litigation Trustee shall, upon the Direction of the Litigation Trust Advisory Board, have the authority to enter into agreements with one or more entities to make or facilitate distributions required by the Plan and this Agreement (the "**Distribution Agent**").  The Litigation Trustee may pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents.  For the avoidance of doubt, the reasonable and documented fees of the Distribution Agents will be paid from the Litigation Trust Fund and will not be deducted from distributions to be made under the Plan to holders of Allowed Claims receiving distributions from the Distribution Agent.

(g)     In the event that any distribution to any Litigation Trust Beneficiary is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Trustee has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property at the expiration of one year from date of the attempted undeliverable payment.  After such date, all unclaimed distributions shall be distributed on a *pro rata* basis to all Litigation Trust Beneficiaries whose initial distributions were not returned as undeliverable.  Nothing contained herein shall require the Litigation Trustee to attempt to locate any holder of an Allowed Claim.

(h)     The Litigation Trustee may, in its reasonable discretion, withhold from amounts otherwise distributable to any Person any and all amounts required to be withheld by any law, regulation, rule, ruling, directive, treaty, or other governmental requirement.  Any party issuing any instrument or making any distribution under this Agreement shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state, or local tax law or taxing authority, and all distributions under this Agreement shall be subject to any such withholding or reporting requirements.

(i)     Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any income taxes imposed on such holder by any governmental unit on account of such distribution.  Any party issuing any instrument or making any distribution under this Agreement has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Litigation Trustee may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within one-hundred eighty (180) days, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section [6.9] of the Plan.

(j)     Notwithstanding anything herein to the contrary, the Litigation Trustee shall not be required to make on account of an Allowed Claim (i) partial distributions or payments of

fractions of dollars; (ii) partial distributions or payments of fractions of Litigation Trust Interests; or (iii) a distribution if the amount to be distributed is or has an economic value of less than $100.00. Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent distributions. Notwithstanding the foregoing, all Cash shall be distributed in the final distribution of the Litigation Trust.

(k)     Any check issued by the Litigation Trust on account of an Allowed Claim shall be null and void if not negotiated within one-hundred twenty (120) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Litigation Trustee by the holder of the relevant Allowed Claim with respect to which such check originally was issued. If any holder of an Allowed Claim holding an un-negotiated check does not request reissuance of that check within one year after the date the check was mailed or otherwise delivered to the holder, such holder's claim to such particular check/distribution shall be released, and the holder thereof shall be forever barred, estopped, and enjoined from asserting any Claim against any of the Debtors, the Litigation Trust, or the Litigation Trustee for such particular check/distribution. In such cases, any Cash or Litigation Trust Interests held for payment on account of such Claims shall be property of the Litigation Trust, free of any Claims of such holder with respect thereto. Nothing contained herein shall require the Litigation Trustee to attempt to locate any holder of an Allowed Claim.

(l)     For the avoidance of doubt, the Litigation Trust shall have no obligation to pay any amounts in respect of prepetition deductibles or self-insured retention amounts with respect to Claims covered by the Debtors' insurance policies.

3.6     Retention of Counsel and Other Professionals. The Litigation Trustee may, without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various professionals, including, but not limited to, counsel, experts, consultants, and financial advisors, as needed to assist the Litigation Trustee in fulfilling its obligations under the Plan. Such employment agreements shall be approved by a majority of the Litigation Trust Advisory Board. Professionals engaged by the Litigation Trustee shall not be required to file applications in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred. For the avoidance of doubt, unless an alternative fee arrangement has been agreed to by the Litigation Trustee upon the Direction of the Litigation Trust Advisory Board, professionals retained by the Litigation Trustee shall be compensated solely by the Litigation Trust Fund. Any and all proceeds generated from the Trust Assets shall be the property of the Litigation Trust.

3.7     Agreements. The Litigation Trustee may enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order, or this Agreement and perform all of the Debtors' and Litigation Trust's obligations thereunder.

3.8     Expense Reserve. The Litigation Trustee shall establish a segregated account, maintained by the Litigation Trustee, to be funded initially by the Litigation Trust Fund and thereafter by such amounts as reasonably estimated from time to time by the Litigation Trustee as being necessary to assure payment when due of all expenses that the Litigation Trustee anticipates will be incurred in connection with carrying out the provisions of the Plan, this Agreement, and applicable law, which amounts are to be reserved from distributions to Litigation Trust Beneficiaries.

3.9    <u>Investment of Cash</u>.  The right and power of the Litigation Trustee to invest Trust Assets, the proceeds thereof, or any income earned by the Litigation Trust shall be limited to the right and power to invest such Trust Assets only in Cash and U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act; *provided*, *however*, that (a) the scope of any such permissible investments shall be further limited to include only those investments that a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise; (b) the Litigation Trustee may retain any Litigation Trust proceeds received that are not Cash only for so long as may be required for the prompt and orderly liquidation of such assets; and (c) the Litigation Trustee may expend the assets of the Litigation Trust (i) as reasonably necessary to meet contingent liabilities and maintain the value of the assets of the Litigation Trust during liquidation; (ii) to pay reasonable administrative expenses (including any taxes imposed on the Litigation Trust or reasonable fees and expenses in connection with litigation); and (iii) to satisfy other liabilities incurred or assumed by the Litigation Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement.

3.10    <u>Limitations on Power and Authority of the Litigation Trustee</u>.  Notwithstanding anything in this Agreement to the contrary, the Litigation Trustee will not have the authority to do any of the following:

(a)    take any action in contravention of the Plan, the Confirmation Order, or this Agreement;

(b)    take any action that would make it impossible to carry on the activities of the Litigation Trust;

(c)    possess property of the Litigation Trust or assign the Litigation Trust's rights in specific property for any purpose other than as provided herein;

(d)    cause or permit the Litigation Trust to engage in any trade or business;

(e)    permit the Litigation Trust to receive or retain Cash or Cash equivalents in excess of a reasonable amount necessary to meet claims and contingent liabilities (including expected expenses) or to maintain the value of the Trust Assets during liquidation;

(f)    receive transfers of any listed stocks or securities or any readily marketable assets or any operating assets of a going business, except as is necessary or required under the Plan, the Confirmation Order, or this Agreement; *provided, however*, that in no event shall the Litigation Trustee receive any such investment that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof;

(g)    exercise investment power beyond what is provided in Section 3.9 hereof;

(h)    receive or retain any operating assets of an operating business, a partnership interest in a partnership that holds operating assets or 50% or more of the stock of a corporation with operating assets, except as is necessary or required under the Plan, the Confirmation Order,

or this Agreement; *provided, however*, that in no event shall the Litigation Trustee receive or retain any such asset or interest that would jeopardize treatment of the Litigation Trust as a "liquidating trust" for federal income tax purposes under Treasury Regulation section 301.7701-4(d) or any successor provision thereof; or

(i)     take any other action or engage in any investments or activities that would jeopardize treatment of the Litigation Trust as a liquidating trust for federal income tax purposes under Treasury Regulation section 301.7701-4(d), or any successor provision thereof.

3.11    Books and Records.   The Litigation Trustee shall maintain good and sufficient books and records of account relating to the Trust Assets, the management thereof, all transactions undertaken by the Litigation Trustee, all expenses incurred by or on behalf of the Litigation Trustee, and all distributions to Litigation Trust Beneficiaries contemplated or effectuated under the Plan, in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof and in accordance with Delaware law.  The Litigation Trustee shall also maintain separate books and records for the Trust Assets of each Debtor.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Trust.  Nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust or as a condition for managing any payment or distribution out of the Trust Assets.

3.12    Reports.

(a)     Financial and Status Reports.   The fiscal year of the Litigation Trust shall be the calendar year.  Within ninety (90) days after the end of each calendar year during the term of the Litigation Trust, and within forty-five (45) days after the end of each calendar quarter during the term of the Litigation Trust and as soon as practicable upon termination of the Litigation Trust, the Litigation Trustee shall make available upon request to the Litigation Trust Beneficiaries appearing on its records as of the end of such period or such date of termination a written report including:  (i) financial statements of the Litigation Trust for such period, and, if the end of a calendar year, a report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Trust and of which notice has not previously been given to the Litigation Trust Beneficiaries; and (iii) a description of the progress of liquidating Trust Assets and making distributions to the Litigation Trust Beneficiaries and any other material information relating to the Trust Assets and the administration of the Litigation Trust.   In addition, the Litigation Trustee shall provide unaudited financial statements to each Litigation Trust Beneficiary on a quarterly basis.  The Litigation Trustee may post any such report on a website maintained by the Litigation Trustee in lieu of actual notice to each Litigation Trust Beneficiary.  The United States Trustee reserves the right to request a list of the disbursements made by the Litigation Trust prior to the closing of the Debtors' Chapter 11 Cases.

(b)    Annual Plan and Budget.  Upon Direction by the Litigation Trust Advisory Board, the Litigation Trustee shall prepare and submit to the Litigation Trust Advisory Board for approval a plan and budget in such detail as is reasonably requested.

## ARTICLE IV
## THE LITIGATION TRUSTEE GENERALLY

4.1    Independent Litigation Trustee.  The Litigation Trustee may not be a Member of the Litigation Trust Advisory Board.

4.2    Litigation Trustee's Compensation and Reimbursement.

(a)    Compensation.    The  Litigation  Trustee  shall  receive  reasonable compensation from the Litigation Trust as provided on Exhibit B hereto even if that amount exceeds  the  compensation  that  otherwise  would  be  payable  under  applicable  law.    The compensation of the Litigation Trustee may be modified from time to time by the Litigation Trust Advisory Board; provided, however, that during the period from delivery of notice of resignation by the Litigation Trustee or delivery of notice of removal of the Litigation Trustee by the Litigation Trust Advisory Board until the effective date of any such resignation or removal, as applicable, the compensation of the Litigation Trustee may not be decreased from the compensation in effect at the time such notice of resignation or removal is delivered.  Notice of any modification of the Litigation Trustee's compensation shall be filed with the Bankruptcy Court promptly.

(b)    Expenses.  In addition, the Litigation Trustee will reimburse itself from the Litigation Trust Fund for all actual, reasonable, and documented out-of-pocket expenses incurred by the Litigation Trustee in connection with the performance of its duties hereunder or under the Confirmation Order or the Plan, including reasonable fees and disbursements of the Litigation Trustee's legal counsel incurred in connection with the preparation, execution, and delivery of this Agreement and related documents.

(c)    Payment.  The fees and expenses payable to the Litigation Trustee shall be paid to the Litigation Trustee upon the Direction of the Litigation Trust Advisory Board without necessity for review or approval by the Bankruptcy Court or any other Person.  The reasonable costs and expenses incurred by the Litigation Trustee in performing the duties set forth in the Plan shall be paid first from the Litigation Trust Fund and, to the extent such fees, expenses, and costs exceed the amount of the Litigation Trust Fund, then solely from the proceeds of the Trust Assets as set forth in Section 1.7 hereof.  All costs, expenses, and obligations incurred by the Litigation Trustee in administering the Plan, or in any manner connected, incidental, or related thereto, including those of attorneys, accountants, and other persons employed to assist in the administration and distribution of the Trust Assets, shall be a charge against the Litigation Trust Fund.

4.3    Resignation.  The Litigation Trustee may resign by giving not less than ninety (90) days' prior written notice thereof to the Litigation Trust Advisory Board.  Such resignation shall become effective on the later to occur of:  (a) the day specified in such notice; and (b) the appointment of a successor by the Litigation Trust Advisory Board and the acceptance by such successor of such appointment.  If a successor Litigation Trustee is not appointed or does not

accept its appointment within ninety (90) days following delivery of notice of resignation, the Litigation Trustee may file a motion with the Bankruptcy Court, upon notice and a hearing, for the appointment of a successor Litigation Trustee, during which time the Litigation Trustee shall be entitled to receive the fees provided for in Section 4.2(a) hereof. Notwithstanding the foregoing, upon the Termination Date (as defined in Section 8.1 below), the Litigation Trustee shall be deemed to have resigned, except as otherwise provided for in Section 8.2 herein.

4.4     Removal.

(a)     The Litigation Trustee may be removed by the Litigation Trust Advisory Board, for Cause (as defined in Section 5.8 herein), immediately upon notice thereof, or without Cause, upon ninety (90) days' prior written notice.

(b)     The United States Trustee shall have standing to seek removal of the Litigation Trustee for cause, after notice and a hearing; *provided*, *however*, that the United States Trustee shall have no oversight responsibility with respect to the Litigation Trustee or the Litigation Trustee's exercise of his duties and obligations under this Agreement.

(c)     Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when appointment of a successor Litigation Trustee becomes effective in accordance with Section 4.5 of this Agreement; or (ii) such date as the Bankruptcy Court otherwise orders.

4.5     Appointment of Successor Litigation Trustee. In the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of the Litigation Trustee that is not a natural person), resignation, incompetency, or removal of the Litigation Trustee, the Litigation Trust Advisory Board shall designate a successor Litigation Trustee by majority vote. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Trust Advisory Board an instrument accepting the appointment under this Agreement and agreeing to be bound as Litigation Trustee thereto, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Litigation Trustee and the successor Litigation Trustee shall not be personally liable for any act or omission of the predecessor Litigation Trustee; *provided, however*, that a removed or resigning Litigation Trustee shall, nevertheless, when requested in writing by the successor Litigation Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Litigation Trustee under the Litigation Trust all the estates, properties, rights, powers, and trusts of such predecessor Litigation Trustee and otherwise assist and cooperate, without cost or expense to the predecessor Litigation Trustee, in effectuating the assumption of its obligations and functions by the successor Litigation Trustee.

4.6     Effect of Resignation or Removal. The death, dissolution, bankruptcy, resignation, incompetency, incapacity, or removal of the Litigation Trustee, as applicable, shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee or any prior Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, such Litigation Trustee will promptly (a) execute and deliver such documents, instruments, and other writings as may be reasonably requested by Litigation Trust

Advisory Board or the successor Litigation Trustee to effect the termination of such Litigation Trustee's capacity under this Agreement; (b) deliver to the Litigation Trust Advisory Board and/or the successor Litigation Trustee all documents, instruments, records, and other writings related to the Litigation Trust as may be in the possession of such Litigation Trustee (*provided*, *however*, that such Litigation Trustee may retain one copy of such documents for archival purposes); and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

4.7     <u>Confidentiality</u>.  The Litigation Trustee shall, during the period that the Litigation Trustee serves as Litigation Trustee under this Agreement and following the termination of this Agreement or following such Litigation Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain any non-public information of or pertaining to any Person to which any of the Trust Assets relates or of which the Litigation Trustee has become aware in the Litigation Trustee's capacity as Litigation Trustee, except as otherwise required by law.

## ARTICLE V
## LITIGATION TRUST ADVISORY BOARD

5.1     <u>Litigation Trust Advisory Board</u>.   The Litigation Trust Advisory Board shall consist of three Members, who initially shall be those individuals set forth on Exhibit A.  Except as set forth in Section 1.1(f) hereof, the Litigation Trustee shall not be a Member.  Each Member may designate an alternate representative to attend meetings and participate in other activities of the Litigation Trust Advisory Board when the corresponding Member is unavailable to participate in such meetings and activities.  With the express written consent of a majority in number of the Members, the Litigation Trust Advisory Board may appoint *ex officio* members.  Such *ex officio* members shall not be entitled to vote.

5.2     <u>Authority and Responsibilities.</u>

(a)     The Litigation Trust Advisory Board shall, as and when requested by the Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Litigation Trustee as to the administration and management of the Litigation Trust in accordance with (i) the Plan, the Confirmation Order, and this Agreement, and (ii) the Litigation Trustee's and the Litigation Trust Advisory Board's fiduciary duties, and shall have the other responsibilities and powers as set forth herein.  The Litigation Trust Advisory Board shall have the authority and responsibility to provide Direction with respect to the activities of the Litigation Trust and the performance of the Litigation Trustee and shall have the authority to remove the Litigation Trustee in accordance with Section 4.4 hereof; *provided, however,* that the Litigation Trust Advisory Board may not provide Direction to the Litigation Trustee or the Members to act inconsistently with their duties under the Plan, the Confirmation Order, this Agreement, or their fiduciary obligations to the Litigation Trust Beneficiaries.

(b)     The Litigation Trustee shall consult with and provide information to the Litigation Trust Advisory Board in accordance with and pursuant to the terms of the Plan, the

Confirmation Order, and this Agreement to enable the Litigation Trust Advisory Board to meet its obligations hereunder.

(c)     Notwithstanding any provision of this Agreement to the contrary, the Litigation Trustee shall not be required to (i) obtain the Direction of the Litigation Trust Advisory Board to the extent that the Litigation Trust Advisory Board has not provided Direction to the Litigation Trustee to take any action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is required to be taken by applicable law; or (ii) follow the Direction of the Litigation Trust Advisory Board to the extent that the Litigation Trust Advisory Board provides Direction to the Litigation Trustee to take action that the Litigation Trustee, in good faith, reasonably determines, based on the advice of legal counsel, is prohibited by applicable law or by the Litigation Trustee's fiduciary obligations.  Subject to the provisions in this Section 5.2(c) and the other terms and conditions contained in this Agreement, the Litigation Trustee shall be required to follow the Direction of the Litigation Trust Advisory Board.

5.3     <u>Fiduciary Duties</u>.  The Members shall have fiduciary duties to the Litigation Trust and the Litigation Trust Beneficiaries to the same extent that a director or officer of a Delaware corporation owes fiduciary duties to such corporation.  In all circumstances, the Litigation Trust Advisory Board shall act in good faith and in the best interests of the Litigation Trust Beneficiaries and in furtherance of the purpose of the Litigation Trust.

5.4     <u>Meetings of the Litigation Trust Advisory Board</u>.  Meetings of the Litigation Trust Advisory Board are to be held not less often than quarterly.  Special meetings of the Litigation Trust Advisory Board may be held whenever and wherever called for by the Litigation Trustee or any Member; <u>*provided*</u>, <u>*however*</u>, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice being subject to waiver by the Members). Any action required or permitted to be taken by the Litigation Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Litigation Trust Advisory Board as evidenced by one or more writings describing the action taken, signed by all Members and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Litigation Trust Advisory Board.  Unless the Litigation Trust Advisory Board decides otherwise (which decision shall rest in the reasonable discretion of the Litigation Trust Advisory Board), the Litigation Trustee and the Litigation Trustee's advisors may, but are not required to, attend meetings of the Litigation Trust Advisory Board.

5.5     <u>Manner of Acting</u>.

(a)     All meetings of the Litigation Trust Advisory Board shall consist of all Members.  The affirmative vote of a majority of the Members present at a duly called meeting at which all Members are present throughout shall be the act of the Litigation Trust Advisory Board except as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or video or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any Member participating in a meeting by these means is deemed to be present in person at the meeting.  Voting

(including on negative notice) may, if approved by the Members at a meeting, be conducted by electronic mail or individual communications by the Litigation Trustee and each Member.

(b)     Notwithstanding anything to the contrary herein, if a Member lacks authority to provide Direction to the Litigation Trustee pursuant to Section 5.2(a) of this Agreement, a meeting of the Litigation Trust Advisory Board may be held with a quorum consisting of those Members who have authority to provide Direction pursuant to Section 5.2(a); *provided*, *however*, that all Members must be provided notice of and a reasonable opportunity to attend all meetings of the Litigation Trust Advisory Board.

(c)     Any Member who is present and entitled to vote at a meeting of the Litigation Trust Advisory Board (including any meeting of the Litigation Trustee and the Litigation Trust Advisory Board) when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Litigation Trust Advisory Board, unless: (i) such Member of the Litigation Trust Advisory Board objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Litigation Trust Advisory Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Litigation Trust Advisory Board who votes in favor of the action taken.

(d)     Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Litigation Trust Advisory Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Litigation Trust Interests).  With respect to a Member who, has or may have a conflict of interest whereby such Member's interests are adverse to the interests of the Litigation Trust (a "**Conflicted Member**"):  (i) such Member shall not be entitled to vote or take part in any action with respect to such matter or issue; (ii) the vote or action with respect to such matter or issue shall be undertaken only by Members of the Litigation Trust Advisory Board who are not Conflicted Members; and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Litigation Trust Advisory Board; *provided*, *however*, that a conflict or potential conflict will not exist merely because     (i) a Member has an economic interest in, or business or commercial relationship with, the party who appointed that Member, or has an economic interest in the outcome of such matter or issue; or (ii) a Member, or a party who appoints a Member (or one of their affiliates, units, groups, divisions, or desks), in the ordinary course of business has trading, lending, commercial banking, investment banking, asset management, brokerage activities, or other similar relationships with parties who may be the subject of Litigation Claims, provided that appropriate barriers are put in place to protect against the sharing of confidential information and potential conflicts of interest, and to maintain compliance with any applicable securities laws.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, nothing in this Agreement shall impose any obligations on any affiliate, unit, group, division or desk of a Member or a party who appoints a Member.

5.6     Tenure of the Members of the Litigation Trust Advisory Board.  The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 8.1 hereof.  Each Member will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 5.7 below, or removal pursuant to Section 5.8 below.

5.7     Resignation.  A Member may resign by giving not less than ninety (90) days' prior written notice thereof to the Litigation Trustee and the other Members.  Such resignation shall become effective on the later to occur of:  (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with Section 5.9 below.

5.8     Removal.  A majority of the Litigation Trust Advisory Board may remove any Member for Cause.  Notwithstanding the foregoing, upon the occurrence of the Termination Date (as defined in Section 8.1 below), any or all of the Members shall be deemed to have resigned.  For purposes of Section 4.4 and this Section 5.8, "**Cause**" shall mean (i) a Person's willful failure to perform his material duties hereunder (including with respect to a Member or, to the extent applicable, the Litigation Trustee, regular attendance at meetings of the Litigation Trust Advisory Board) that is not remedied within thirty (30) days' notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

5.9     Appointment of a Successor Member.

(a)     In the event of a vacancy on the Litigation Trust Advisory Board (whether by removal, death or resignation), a new Member may be appointed to fill such position by a simple majority of the holders of Litigation Trust Interests participating in such vote.  The appointment of a successor Member will be further evidenced by the Litigation Trustee's posting on the Litigation Trustee's website of a notice of appointment, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, all rights, powers, duties, authority, and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act, and such successor Member will not be liable personally for any act or omission of the predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge and deliver to the Litigation Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Member.

5.10    Compensation and Reimbursement of Expenses.  Each Member shall be compensated from the Litigation Trust Fund for his or her time expended in Litigation Trust matters as provided on Exhibit C.  The Litigation Trustee will reimburse the Members from the

Litigation Trust Fund for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties hereunder.

5.11   <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member, except as otherwise required by law.

5.12   <u>Common Interest</u>.  The Litigation Trustee and the Litigation Trust Advisory Board have a "common legal interest" in the Litigation Claims and their successful prosecution, this Agreement, and any discussion, evaluation, or other communications and exchanges of information relating thereto and shall at all times remain subject to all applicable privileges and protections from disclosure.  It is the express intent of the Litigation Trustee and the Litigation Trust Advisory Board to preserve intact to the fullest extent applicable, and not to waive, by virtue of this Agreement or otherwise, in whole or in part, any and all privileges and immunities.

## ARTICLE VI
## LIABILITY AND INDEMNIFICATION

6.1   <u>No Further Liability</u>.  Each of the Litigation Trustee, the Members, and their representatives shall have no liability for any actions or omissions in accordance with this Agreement or with respect to the Litigation Trust unless arising out of each such Person's own fraud, self-dealing, intentional misrepresentation, willful misconduct, breach of the fiduciary duty of loyalty, or gross negligence as found in a final, non-appealable order of a court of competent jurisdiction.  In no event shall the Litigation Trustee, the Litigation Trust Advisory Board, or any Member be liable for indirect, punitive, special, incidental, or consequential damages or loss (including but limited to lost profits) whatsoever.  In performing its duties under this Agreement, the Litigation Trustee, the Members and their representatives (as applicable) shall have no liability for any action taken by each such Person in accordance with the advice of counsel, accountants, appraisers, and/or other professionals retained by the Members or the Litigation Trustee.  Without limiting the generality of the foregoing, the Litigation Trustee, the Members and their representatives may rely without independent investigation on copies of orders of the Bankruptcy Court reasonably believed by such Person to be genuine and shall have no liability for actions taken in reliance thereon.  Notwithstanding anything else, the Litigation Trustee shall have no liability as a result of following any Direction of the Litigation Trust Advisory Board as long as the Litigation Trustee has (a) consulted with any dissenting Member who has notified the Litigation Trustee in writing of such dissent prior to such action being taken and (b) considered that dissenting Member's position and the interests of the Litigation Trust Beneficiaries that appointed that Member before taking the action directed by the Litigation Trust Advisory Board.  None of the provisions of this Agreement shall require the Litigation Trustee, the Members, or their representatives to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.  Each of the Litigation Trustee, the Members, and their representatives may rely without inquiry upon writings delivered to such Person pursuant to the Plan or the Confirmation Order that such Person reasonably believes to be genuine and to have been properly given.

Notwithstanding the foregoing, nothing in this Section 6.1 shall relieve the Litigation Trustee, the Members, or their representatives from any liability for any actions or omissions arising out of such Person's fraud, self-dealing, intentional misrepresentation, willful misconduct, breach of the fiduciary duty of loyalty, or gross negligence.  Any action taken or omitted to be taken in the case of the Litigation Trustee or the Litigation Trust Advisory Board with the express approval of the Bankruptcy Court and, in the case of the Litigation Trustee, with the prior written consent or Direction of the Litigation Trust Advisory Board, will conclusively be deemed not to constitute fraud, self-dealing, intentional misrepresentation, willful misconduct, breach of fiduciary duty, or gross negligence.  No termination of this Agreement or amendment, modification, or repeal of this Section 6.1 shall adversely affect any right or protection of the Litigation Trustee, the Members of the Litigation Trust Advisory Board, or their respective designees, professional agents, or representatives that exist at the time of such amendment, modification, or repeal.

      6.2   <u>Indemnification of the Litigation Trustee and Litigation Trust Advisory Board</u>.

      (a)   From and after the Effective Date, each of the Litigation Trustee, the Litigation Trust, the Litigation Trust Advisory Board, and each of their respective professionals and representatives (each, a "**Litigation Trust Indemnified Party**" and collectively, the "**Litigation Trust Indemnified Parties**") shall be, and hereby is, indemnified and held harmless by the Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all Claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Litigation Trust Indemnified Party's exercise of what such Litigation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Litigation Trust Indemnified Party reasonably understands to be its duties conferred by the Plan, the Confirmation Order, or this Agreement, any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent ultimately determined by a Final Order to be due to such Litigation Trust Indemnified Party's own fraud, self-dealing, intentional misrepresentation, willful misconduct, gross negligence, or breach of the fiduciary duty of loyalty on and after the Effective Date).  The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to: (i) this Agreement; (ii) the services to be rendered pursuant to this Agreement; (iii) any document or information, whether oral or written, referred to herein or supplied to the Litigation Trustee; or (iv) proceedings against any Trust Assets by or on behalf of any creditor. The Litigation Trustee shall, on demand, advance or pay promptly, at the election of the Litigation Trust Indemnified Party, solely out of the Trust Assets, on behalf of each Litigation Trust Indemnified Party, attorneys' fees and other expenses and disbursements to which such Litigation Trust Indemnified Party would be entitled pursuant to the foregoing indemnification provision; *provided, however*, that any Litigation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines, by Final Order, that such Litigation Trust Indemnified Party is not entitled to indemnification hereunder due to such Person's own fraud, self-dealing, intentional misrepresentation, willful misconduct, gross negligence, or breach of the fiduciary duty of loyalty. Any indemnification Claim of a Litigation Trust Indemnified Party shall be entitled to a priority distribution from the Trust Assets, ahead of the Litigation Trust Interests and any other Claim to or Interest in such assets.  In any matter covered by the first two sentences of this subsection, any party entitled to indemnification shall have the right to employ such party's own separate counsel,

at the Litigation Trust's expense, subject to the foregoing terms and conditions. In addition, the Litigation Trustee shall purchase, using funds from the Trust Assets for the benefit of the Litigation Trustee and the Members, insurance coverage, including, without limitation, liability insurance covering the Litigation Trustee and the Members and any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses the Litigation Trustee or the Members may incur, including, but not limited to, attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions with respect to the implementation and administration of the Plan or this Agreement. The indemnification provided under this Section 6.2 shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Litigation Trustee, the Litigation Trust Advisory Board, any Member, or any other Litigation Trust Indemnified Party and shall inure to the benefit of the Litigation Trustee's, each Member's, and each other Litigation Trust Indemnified Party's respective heirs, successors, and assigns.

(b)     The foregoing indemnity in respect of any Litigation Trust Indemnified Party shall survive the termination of such Litigation Trust Indemnified Party from the capacity for which such party is indemnified. Termination or modification of this Agreement shall not affect any indemnification rights or obligations set forth herein.

(c)     The Litigation Trustee may, at the Direction of the Litigation Trust Advisory Board, indemnify any Person who is not a Litigation Trust Indemnified Party for any loss, cost, damage, expense, or liability for which a Litigation Trust Indemnified Party would be entitled to mandatory indemnification under this Section 6.2.

(d)     Any Litigation Trust Indemnified Party may waive the benefits of indemnification under this Section 6.2, but only by an instrument in writing executed by such Litigation Trust Indemnified Party.

(e)     The rights to indemnification under this Section 6.2 are not exclusive of other rights which any Litigation Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution. Nothing in this Section 6.2 will affect the rights or obligations of any Person (or the limitations on those rights or obligations) under any other agreement or instrument to which that Person is a party. For the avoidance of doubt, each Litigation Trust Indemnified Party shall be entitled, subject to the terms hereof, to indemnification for any costs and attorneys' fees such Litigation Trust Indemnified Party may incur in connection with enforcing any of its rights under this Article VI.

6.3     <u>Litigation Trust Liabilities</u>.     All liabilities of the Litigation Trust, including indemnity obligations under Section 6.2 of this Agreement, will be liabilities of the Litigation Trust as an Entity and will be paid or satisfied from the Trust Assets and paid on a priority basis. No liability of the Litigation Trust will be payable in whole or in part by any Litigation Trust Beneficiary individually or in the Litigation Trust Beneficiary's capacity as a Litigation Trust Beneficiary, by the Litigation Trustee individually or in the Litigation Trustee's capacity as Litigation Trustee, by any Member individually or in the Member's capacity as Member, or by any representative, member, partner, shareholder, director, officer, professional, employees, agent, affiliate, or advisor of any Litigation Trust Beneficiary, any Member, the Litigation Trustee, or their respective affiliates.

6.4     Limitation of Liability.  None of the Litigation Trust Indemnified Parties shall be liable for indirect, punitive, exemplary, consequential, special, or other damages for a breach of this Agreement under any circumstances.

6.5     Burden of Proof.  In making a determination with respect to entitlement to exculpation or indemnification hereunder, the court, Person, or Entity making such determination shall presume that any Litigation Trust Indemnified Party is entitled to exculpation and indemnification under this Agreement and any Person seeking to overcome such presumption shall have the burden of proof to overcome that presumption.

# ARTICLE VII
# TAX MATTERS

7.1     Treatment of Trust Assets Transfer.  Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by such Litigation Trustee) for all U.S. federal income tax purposes, all parties (including the Debtors, the Litigation Trustee, and the Litigation Trust Beneficiaries) shall treat the transfer of the Trust Assets to the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, including any amounts or other assets subsequently transferred to the Litigation Trust (but only at such time as actually transferred) as (i) a transfer of the Trust Assets (subject to any obligations relating to such Trust Assets) directly to the Litigation Trust Beneficiaries; followed by (ii) the transfer by the Litigation Trust Beneficiaries to the Litigation Trust of the Trust Assets in exchange for Litigation Trust Interests.  Accordingly, except in the event of contrary definitive guidance, the Litigation Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

7.2     Tax Reporting.

(a)     The "taxable year" of the Litigation Trust shall be the "calendar year" as such terms are defined in section 441 of the IRC.  The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 7.2.  The Litigation Trustee also will annually send to each Litigation Trust Beneficiary a separate statement setting forth such holder's share of items of income, gain, loss, deduction, or credit (including the receipts and expenditures of the Litigation Trust) as relevant for U.S. federal income tax purposes and will instruct all such Litigation Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such Litigation Trust Beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.  The Litigation Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating to the Litigation Trust that is required by any governmental unit.

(b)     Allocations of Litigation Trust taxable income among the Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time,

and without regard to any restrictions on distributions set forth in the Plan or this Agreement) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all its assets (valued at their tax book value) to the Litigation Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Trust Assets. The tax book value of the Trust Assets for purposes of this Section 7.2(b) shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)     The Litigation Trustee shall be responsible for payment, out of the Trust Assets, of any Taxes imposed on the Litigation Trust or the Trust Assets.

7.3     <u>Withholding of Taxes</u>.  The Litigation Trustee shall withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the Litigation Trust Beneficiaries.  All such amounts withheld and paid to the appropriate Tax Authority shall be treated as amounts distributed to such Litigation Trust Beneficiaries for all purposes of this Agreement.  The Litigation Trustee shall be authorized to collect such tax information from the Litigation Trust Beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and this Agreement.  In order to receive distributions under the Plan, all Litigation Trust Beneficiaries will need to identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee deems appropriate, including a taxpayer identification number ("**TIN**") as assigned by the Internal Revenue Service or, in the case of Litigation Trust Beneficiaries that are not United States persons for federal income tax purposes, certification of foreign status on Internal Revenue Service Form W-8BEN, W-8BEN-E, or W-8ECI. This identification requirement may, in certain cases, extend to holders who hold their securities in street name. The Litigation Trustee may refuse to make a distribution to any Litigation Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; *provided*, *however*, that, upon the delivery of such information by a Litigation Trust Beneficiary, the Litigation Trustee shall make such distribution to which the Litigation Trust Beneficiary is entitled, without interest.

7.4     <u>Valuation</u>.  The valuation of the Trust Assets prepared pursuant to Section 1.8 of this Agreement shall be used consistently by all parties (including the Litigation Trust) for all federal income tax purposes.  The Litigation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any governmental unit.

7.5     <u>Expedited Determination of Taxes</u>.  The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the termination of the Litigation Trust.

7.6     Foreign Tax Matters.  The Litigation Trustee shall duly comply on a timely basis with all obligations, and satisfy all liabilities, imposed on the Litigation Trustee or the Litigation Trust under non-United States law relating to Taxes.  The Litigation Trustee, or any other legal representative of the Litigation Trust, shall not distribute the Trust Assets or proceeds thereof without having first obtained all certificates required to have been obtained under applicable non-United States law relating to Taxes.

## ARTICLE VIII
## TERMINATION OF LITIGATION TRUST

8.1     Termination.  The Litigation Trust Advisory Board and the Litigation Trust shall be dissolved at such time as (i) all of the Trust Assets have been distributed pursuant to the Plan and this Agreement; or (ii) the Litigation Trust Advisory Board determines that the administration of any remaining Trust Assets is not likely to yield sufficient additional Litigation Trust proceeds to justify further pursuit; *provided*, *however*, that in no event shall the Litigation Trust be dissolved later than five years from the Effective Date unless the Litigation Trust Advisory Board determines that a fixed period extension (not to exceed three years, including any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Litigation Trust Advisory Board that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Trust Assets.  If at any time the Litigation Trust Advisory Board determines, in reliance upon such professionals as the Litigation Trust Advisory Board may retain, that the expense of administering the Litigation Trust so as to make a final distribution to the Litigation Trust Beneficiaries is likely to exceed the value of the assets remaining in the Litigation Trust, the Litigation Trustee, at the Direction of the Litigation Trust Advisory Board, may (i) reserve any amount necessary to dissolve the Litigation Trust; (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from U.S. federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, the Litigation Trust, and any insider of the Litigation Trustee; and (iii) dissolve the Litigation Trust. Such date upon which the Litigation Trust shall finally be dissolved shall be referred to herein as the "**Termination Date**."

(a)     Notwithstanding the foregoing, multiple extensions can be effectuated as long as the Litigation Trust Advisory Board determines that each such extension is necessary at least ninety (90) days prior to the expiration of each extended term; *provided*, *however*, that in no event shall the term of the Litigation Trust extend past ten years from the Effective Date.

(b)     In the event a Cash balance exists in the Litigation Trust Fund upon termination of the Litigation Trust, any remaining balance shall be shared *pro rata* by holders of the Litigation Trust Interests.

8.2     Continuance of Litigation Trust for Winding Up.  After the termination of the Litigation Trust and solely for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until its duties have been fully performed and shall continue to be entitled to receive the fees called for by Section 4.2(a) hereof. Upon distribution of all the Trust Assets, the Litigation Trustee shall retain the books, records, and

files that shall have been delivered or created by the Litigation Trustee.  At the Litigation Trust Advisory Board's discretion, all of such records and documents may be destroyed no earlier than two years following the date of final distribution of Trust Assets as the Litigation Trust Advisory Board deems appropriate (unless such records and documents are necessary to fulfill the Litigation Trustee's obligations hereunder) subject to the terms of any joint prosecution and common interest agreement(s) to which the Litigation Trustee may be a party.  Except as otherwise specifically provided herein, upon the final distribution of Trust Assets, the Litigation Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Litigation Trust Beneficiaries as provided herein, the Litigation Trust Interests shall be cancelled, and the Litigation Trust will be deemed to have dissolved.

## ARTICLE IX
## AMENDMENT AND WAIVER

9.1     Subject to Sections 9.2, 9.3, and 9.4 of this Agreement, the Litigation Trustee, at the Direction of the Litigation Trust Advisory Board, may seek Bankruptcy Court approval of any amendment, supplement, or waiver with respect to any provision of this Agreement; *provided*, *however*, that any such amendment, supplement, or waiver shall not be inconsistent with the terms of the Plan or the Confirmation Order.

9.2     If the Litigation Trustee desires to amend or waive any substantive provision of this Agreement but has not received the Direction of the Litigation Trust Advisory Board to do so, the Litigation Trustee may file a motion with the Bankruptcy Court that sets forth the Litigation Trustee's basis for why such amendment or waiver is necessary and identifies those Member(s) of the Litigation Trust Advisory Board who oppose such amendment or waiver and such Member's asserted reason for opposing such amendment or waiver.  Any Member who opposes such amendment or waiver may file an objection with the Bankruptcy Court setting forth why such amendment or waiver should not be approved and, if the Bankruptcy Court denies the Litigation Trustee's request for such amendment or waiver based in whole or in part on such Member's objection, such Member shall be reimbursed by the Litigation Trust for its expenses, including professional fees, incurred in connection with such opposition.

9.3     Notwithstanding Section 9.1 of this Agreement, no amendment, supplement or waiver of or to this Agreement shall (a) adversely affect the payments and/or distributions to be made under the Plan or this Agreement; (b) adversely affect the U.S. federal income tax status of the Litigation Trust as a "liquidating trust"; (c) be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury Regulation section 301.7701-4(d); or (d) negate the fiduciary obligations established in Sections 3.2 and 5.3 of this Agreement or the provision in Section 3.5(a) regarding the causes of action that do not belong solely to the Debtors.

9.4     One additional trustee may be appointed by the Litigation Trustee, and this Trust Agreement may be amended to the extent necessary to effectuate such appointment, at the Direction of the Litigation Trust Advisory Board, without Bankruptcy Court approval, for the sole purpose of administering the Litigation Trust in the state of Delaware pursuant to Section 3340 of Title 12 of the Delaware Code.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to principles of conflicts of law thereof that would result in the application of law of another jurisdiction).

10.2     Jurisdiction.  Subject to the proviso below, the Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over disputes arising out of the formation or initial implementation of the Litigation Trust Agreement or the transfer of the Trust Assets to the Litigation Trust on the Effective Date; provided, however, notwithstanding the foregoing, the Bankruptcy Court shall not have jurisdiction to hear disputes regarding the removal of the Litigation Trustee; provided, further, that notwithstanding the foregoing, the Litigation Trustee, at the Direction of the Litigation Trust Advisory Board, shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any of the Litigation Claims.  For the avoidance of doubt, nothing the Plan shall be deemed to confer a broader grant of jurisdiction on the Bankruptcy Court than that set forth in this Section 10.2.

10.3     Severability.  In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

10.4     Notices.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by facsimile, by electronic communication, or by nationally recognized overnight delivery service or mailed by first-class mail.  The date of receipt of such notice shall be the earliest of (a) the date of actual receipt by the receiving party; (b) the date of personal delivery (or refusal upon presentation for delivery); (c) the date of the transmission confirmation; or (d) three Business Days after service by first-class mail, to the receiving party's below address(es):

(i)     if to the Litigation Trustee, to:

[Address]
Attn:  [_____]
E-mail Address:  [_____]

(ii)     if to any Litigation Trust Beneficiary, (i) to its authorized designee for purposes of distributions to be made under the Plan; or (ii) to its last-known address according to the Litigation Trustee's records;

(iii) if to a Member of the Litigation Trust Advisory Board, to the applicable address(es) set forth on Exhibit A.

(iv) if to the Debtors, to:

Rhodium Encore LLC
2617 Bissonnet St, Ste 234
Houston, TX 77005
Attention: Chuck Topping and Morgan Soule
Email: ChuckTopping@RHDM.com
        MorganSoule@RHDM.com

With a copy to:

Quinn Emanuel Urquhart & Sullivan, LLP
700 Louisiana Street, Suite 3900
Houston, TX 77002
Attention: Patty Tomasco
Email: pattytomasco@quinnemanuel.com

10.5     Headings.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

10.6     Plan and Confirmation Order.  The terms of this Agreement are intended to supplement the terms provided by Section [5.2] of the Plan and the Confirmation Order. Accordingly, in the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of Section [5.2] of the Plan and the Confirmation Order, on the other hand, the provisions of this Agreement, as applicable, shall govern and control.

10.7     Entire Agreement.  This Agreement and the exhibits attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

10.8     Meanings of Other Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations, corporations, and other entities.  All references herein to Articles, Sections, and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute, or regulation, refer to the corresponding Articles, Sections, and other subdivisions of this Agreement, and the words "herein," "hereof," or "herewith" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

10.9     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute one and

the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives, or agents, effective as of the date first above written.

**DEBTORS AND REORGANIZED DEBTORS**

RHODIUM ENCORE LLC
JORDAN HPC LLC
RHODIUM JV LLC
RHODIUM 2.0 LLC
RHODIUM 10MW LLC
RHODIUM 30MW LLC
RHODIUM ENTERPRISES, INC.
RHODIUM TECHNOLOGIES LLC
RHODIUM RENEWABLES LLC
AIR HPC LLC
RHODIUM SHARED SERVICES LLC
RHODIUM READY VENTURES LLC
RHODIUM INDUSTRIES LLC
RHODIUM ENCORE SUB LLC
JORDAN HPC SUB LLC
RHODIUM 2.0 SUB LLC
RHODIUM 10MW SUB LLC
RHODIUM 30MW SUB LLC
RHODIUM SUB LLC

By: _____
    Name:
    Title:

**LITIGATION TRUSTEE**

[TRUSTEE], as Litigation Trustee

By: _____
    Name:
    Title:

12875-00001/15887548.1

## EXHIBIT A

**Initial Members of the Litigation Trust Advisory Board**

| Name and Address | Organization | Title |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

## EXHIBIT B

### Compensation of Litigation Trustee

| Professional | Compensation |
|---|---|
|  |  |

## EXHIBIT C

**Compensation and Reimbursement of Expenses
of Litigation Trust Advisory Board**

**Fees**

At the Direction of the Litigation Trust Advisory Board, each Member shall receive nominal annual compensation, which may include paying his or her standard hourly rate, from the Litigation Trust Fund in connection with the performance of such Member's duties under this Agreement.

**Expenses**

The Litigation Trustee will reimburse the Members from the Litigation Trust Fund for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of each of their duties under this Agreement.