**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

**COMPLEX CASE FEE APPLICATION COVER SHEET FOR LEHOTSKY KELLER COHN LLP'S FINAL APPLICATION FOR PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR**
**THE PERIOD AUGUST 28, 2024 THROUGH JUNE 30, 2025**

| | | |
|---|---|---|
| **Name of Applicant:** | Lehotsky Keller Cohn LLP | |
| **Applicant's Role in Case:** | Special Litigation Counsel | |
| **Docket No. of Employment Order(s):** | October 14, 2024 (ECF No. 263); July 8, 2025 (ECF No. 1418) | |
| **Interim Application ( X )    No. 2nd**<br>**Final Application   ( X )** | Second and Final Fee Application | |
| | **Beginning Date** | **End Date** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | December 1, 2024 | June 30, 2025 |
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case?  Yes** | | |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed?  Yes** | | |
| **Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases?  Yes** | | |
| **Do expense reimbursements represent actual and necessary expenses incurred?  Yes** | | |

---

[1] Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

17397734

| COMPENSATION BREAKDOWN FOR TIME PERIOD COVERED BY THIS APPLICATION | |
|---|---|
| **Total professional fees requested in this Application:** | $11,419,448.50 |
| **Total professional hours covered by this Application:** | 2,887.50 |
| **Average hourly rate for professionals:** | $975.00 |
| **Total paraprofessional fees requested in this Application** | N/A |
| **Total paraprofessional hours covered by this Application:** | N/A |
| **Average hourly rate of paraprofessionals:** | N/A |
| **Total fees requested on a final basis in this Application:** | $11,419,448.50 |
| **Total expense reimbursements requested on a final basis in this Application:** | $252,545.83 |
| **Total fees and expenses requested in this Application:** | $11,671,994.33 |
| **Total interim fees and expenses awarded in all Prior Applications:** | $1,986,727.00 |
| Plan Status:  The Debtors filed an amended chapter 11 plan on June 18, 2025 (ECF No. 1297). | |
| Primary Benefits:  During the Application Period, LKC represented the Debtors in connection with their Motion to Assume Certain Executory Contracts with Whinstone US, Inc. (ECF No. 7) and Supplemental Motion to Assume Certain Executory Contracts with Whinstone US, Inc. (ECF No. 32), and in pursuing affirmative claims against Whinstone and Riot (*See* ECF No. 770), including by preparing filings, participating in mediation (*See* ECF No. 767), and appearing at hearings on the Debtors′ behalf.  LKC′s services resulted in the successful prosecution of the Debtors′ Motion to Assume Certain Executory Contracts with Whinstone US, Inc. and the settlement of litigation involving Whinstone US, Inc. and Riot Platforms, Inc. (*See* ECF No. 921). | |

17397734

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[2] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

**LEHOTSKY KELLER COHN LLP'S SECOND AND FINAL APPLICATION FOR
PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
THE PERIOD AUGUST 28, 2024 THROUGH JUNE 30, 2025**

**If you object to the relief requested, you must respond in writing. Unless
otherwise directed by the Court, you must file your response electronically at
https://ecf.txsb.uscourts.gov/ within twenty-one from the date this motion was
filed. If you do not have electronic filing privileges, you must file a written
objection that is actually received by the clerk within twenty-one days from
the date this motion was filed. Otherwise, the Court may treat the pleading as
unopposed and grant the relief requested.**

TO THE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Lehotsky Keller Cohn LLP ("**LKC**") and files its *Second and Final*

*Application for Payment of Compensation and Reimbursement of Expenses for the Period August*

*28 through June 30, 2025* (the "**Application**"), for final allowance of compensation for

professional services provided in the amount of $11,419,448.50[3] and reimbursement of actual and

---

[2] Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

[3] LKC has agreed to discount its hourly fees in this matter according to the following formula on a monthly basis: 20% discount for the first $250,000 of time at standard rates; 25% discount for the next $250,000 of time at standard rates, and a 30% discount for all additional time. Each monthly invoice reflects this discount, as does this Application, except where undiscounted fees are noted. These discounts are provided to the Debtors in exchange for a success fee, which is set forth in the Application for Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel (ECF No. 173), the Application for an Updated Order Authorizing

necessary expenses in the amount of $252,545.83 that LKC incurred from August 28, 2024 through June 30, 2025 (the "**Application Period**"), as special litigation counsel to Rhodium Encore LLC, et al. (the "**Debtors**") in the above-captioned case and respectfully represents as follows:

## JURISDICTION

1.      LKC submits this Application pursuant to sections 330 and 331 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rule 2016 of the Bankruptcy Local Rules (the "**Local Rules**"), the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case  Procedures**") and in recognition of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "**US Trustee Guidelines**").

2.      Pursuant to 28 U.S.C. § 1334, jurisdiction lies in this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue properly lies in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

3.      LKC requests that the Court enter an order approving LKC's final compensation for professional services rendered during the Application Period in the amount of $11,419,448.50 and reimbursement of actual and necessary expense incurred by LKC in the amount of $252,545.83. This request includes a request for allowance of the success fee set forth in the March 2025 Engagement Letter (*see* ECF No. 835) in the amount of $8,913,600, which is included in the

---

the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel (ECF No. 835), and the Order Granting Debtors' Application for an Updated Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel (ECF No. 1418).

17397734

requested fees. The unpaid balance of LKC's fees, inclusive of the success fee, and actual and necessary expenses is $9,346,253.33

## BACKGROUND

### A.  General Background

4.     On August 24, 2024, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (ECF No. 1). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Debtors' chapter 11 cases, is set forth in the Declaration of David M. Dunn in Support of the Chapter 11 Petitions and First Day Relief (ECF No. 35).

5.     On August 29, 2024, the Court entered an order jointly administering the bankruptcy cases under the case number 24-90448 (ECF No. 41).

6.      On August 24, 2024, the Debtors filed their motion to assume certain executory contracts (the "***Motion to Assume***") with Whinstone US, Inc. ("***Whinstone***") (ECF No. 7).  Five days later, the Debtors filed a supplemental motion to assume (ECF No. 32). The Court entered interim orders on those motions. ECF Nos. 579 and 763. On February 24, 2025, the Court then entered the *Agreed Order Granting Debtors' Motion and Supplemental Motion to Assume Certain Executory Contracts with Whinstone US, Inc.* ECF No. 800.

7.     On February 11, 2025, the Debtors filed an adversary complaint (ECF No. 770) against Whinstone and Riot Platforms, Inc. ("***Riot***"), seeking more than $300 million in damages plus exemplary damages, attorneys' fees, pre- and post-judgment interest, and an injunction against Whinstone and Riot.

8.     After extensive and hard-fought settlement negotiations, on March 21, 2025, the Debtors filed an emergency motion to approve a settlement (the "***Whinstone Settlement***") between

5

the Debtors and Whinstone, which included the sale of certain property of the Debtors' estate to Whinstone. ECF No. 880. The Whinstone Settlement also resolved Debtors' adversary complaint against Whinstone and Riot and resulted in Debtors receiving $185 million. The Court approved the Whinstone Settlement on April 8, 2025. ECF No. 921.

**B.  Retention and Compensation**

9.      On September 22, 2024, the Debtors filed a Motion of Debtors to Establish Procedures for the Interim Compensation and Reimbursement of Expenses for Professionals (the "***Interim Compensation Motion***") (ECF No. 174), and on October 14, 2024, the Court entered an order approving the Interim Compensation Motion (the "***Interim Compensation Order***") (ECF No. 264).

10.     On September 22, 2024, the Debtors filed an *Application for Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel* (the "***Retention Application***") (ECF No. 173). That filing included the Declarations of Jonathan F. Cohn and Charles Topping in support of the Application for Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel. The nature of LKC's compensation, including the discounted hourly rates and the existence of a success fee were disclosed in the Retention Application. On October 14, 2024, the Court entered an order granting the Retention Application (the "***Retention Order***") (ECF No. 263). The Retention Order states that the "Debtors shall retain and employ Lehotsky Keller Cohn LLP under a general retainer in accordance with Lehotsky Keller Cohn LLP's normal hourly rates and disbursement policies, as contemplated by the Application." *Id*. The Retention Order provided for a contingency fee. (*See* ECF 1418 at 19).

11.     In response to purported issues raised by the Ad Hoc Group of SAFE Parties (the "**SAFE AHG**") at mediation in February 2025 and after discussions between the Debtors and LKC, on March 6, 2025, the Debtors filed the *Application for Updated Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel* (ECF No. 835) (the "**Updated Retention Application**"). The Updated Retention Application included an updated engagement letter dated as of March 4, 2025 (the "**March 2025 Engagement Letter**") specifying the terms of LKC's discounted hourly rates and the terms of the success fee.

12.     The SAFE AHG objected to the Debtors' Updated Retention Application. On July 8, 2025, the Court entered the *Order Granting Debtors' Application for an Updated Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel* (ECF No. 1418) (the "**Updated Retention Order**") according to the terms of the March 2025 Engagement Letter.

13.     On February 10, 2025, LKC filed *Lehotsky Keller Cohn LLP's First Interim Application for Payment of Compensation and Reimbursement of Expenses for the Period August 28, 2024 through November 30, 2024* (ECF No. 765) ("**First Interim Fee Application**"), which the Court approved on March 7, 2025 (ECF No. 836), allowing and approving interim compensation and reimbursement of expenses to LKC in the amount of $1,986,727.00.

14.     During the chapter 11 cases, LKC filed 6 monthly fee statements (ECF Nos. 382, 425, 538, 730, 790, and 847).  LKC has not filed interim fee statements for the dates from March 1, 2025 through June 30, 2025.  The invoices for the period from March 1, 2025 through June 30, 2025 are also attached hereto and summarized below.  The unpaid balance of discounted hourly fees and reimbursable expenses included in this Application is $432,653.33, excluding the Success Fee (defined below).

7

| Period | Expenses Incurred[4] | Hourly Fees Incurred[5] | Total Hourly Fees and Expenses Paid | Amount of Hourly Fees and Expenses Outstanding |
|---|---|---|---|---|
| 08/28/24 – 09/30/24 | $1,755.91 | $382,919.75 | $384,675.66 | $0.00 |
| 10/01/24 – 10/31/24 | $8,182.91 | $847,449.00 | $855,631.91 | $0.00 |
| 11/01/24 – 11/30/24 | $37,290.43 | $709,129.00 | $746,419.43 | $0.00 |
| 12/01/24 – 12/31/24 | $0.00 | $54,820.00 | $43,856.00 | $10,964.00 |
| 01/01/25 – 01/31/25 | $0.00 | $127,140.00 | $101,712.00 | $25,428.00 |
| 02/01/25 – 02/28/25 | $599.00 | $241,058.75 | $193,446.00 | $48,211.75 |
| 03/01/25 – 03/31/25 | $6,843.03 | $36,748.00 | $0.00 | $43,591.03 |
| 04/01/25 – 04/30/25 | $62,894.07 | $40,600.00 | $0.00 | $103,494.07 |
| 05/01/25 – 05/31/25 | $72,841.55 | $36,984.00 | $0.00 | $109,825.55 |
| 06/01/25 – 06/30/25 | $62,138.93 | $29,000.00 | $0.00 | $91,138.93 |
| **Total:** | **$252,545.83** | **$2,505,848.50** | **$2,325,741.00** | **$432,653.33** |

### TERMS AND CONDITIONS OF EMPLOYMENT AND COMPENSATION

15.     The terms and conditions of LKC's employment by the Debtors and compensation to be paid to LKC by the Debtors are outlined in the Updated Retention Application and Updated Retention Order. *See* ECF No. 835 and 1418. As set forth in the Updated Retention Application and Updated Retention Order, LKC's fees and expenses incurred in connection with this representation are to be paid out of the Debtors' estates.  In addition, the Updated Retention Order approved LKC's retention under the terms of the March 2025 Engagement Letter.  The calculation of the success fee set forth in the March 2025 Engagement Letter is as follows (the "***Success Fee***"):

---

[4] Under the March 2025 Engagement Letter, LKC is entitled to the reimbursement of legal expenses related to retention issues.

[5] All hourly fees described in this table include the agreed discount to hourly fees related to the Whinstone dispute set forth in the Retention Application, the Updated Retention Application, and each of LKC's monthly fee statements. The November monthly fee statement erroneously double-counted expenses in fees and expenses, which error was later corrected in the First Interim Fee Application.  The corrected amounts are listed in the summary table.

17397734

(a)     $600,000 if (i) the Bankruptcy Court's order on Debtor's Motion to Assume is upheld in a non-appealable final judgment (or the appeal is dismissed), to be paid 30 days after such non-appealable final judgment (or dismissal) or (ii) you (or all or substantially all of the Rockdale assets) are acquired by Whinstone or an affiliate, to be paid 30 days after the closing of such acquisition;

(b)     5% of any recovered energy credits up to $5 million, and 1% of any additional recovered energy credits, payable 30 days after each monthly utilization by Rhodium and subject to Bankruptcy Court approval; and

(c)     10% of any additional damages not attributable to energy credits that you recover, including, but not limited to, compensatory damages, incidental or consequential damages, punitive or exemplary damages, civil fines, costs, and attorneys' fees, payable 30 days after settlement of the Matter or a non-appealable final judgment and subject to Bankruptcy Court approval, provided, that in the case of a settlement, the amount on which the 10% success fee will be payable will be the amount that is net of any monetary concessions given to Whinstone or its affiliates;

March 2025 Engagement Letter at 2.

## PROFESSIONAL SERVICES PROVIDED BY LKC TO DEBTORS

16.     The following is a summary, by matter, of the significant professional services LKC rendered during the Application Period on a discounted hourly fee basis.

**A.  Litigation**
   **Fees: $3,122,240.00 (with discount: $2,352,697.50,** *see supra* **note 3)**
   **Hours: 2708.20**.

17.     The tasks performed in this category included but were not limited to: (i) regularly meeting with the Debtors and co-counsel related to litigation with Whinstone; (ii) conducting discovery, including preparing, revising and serving requests for production, interrogatories, and requests for admission; (iii) drafting motions and briefing on the Debtors' behalf; (iv) appearing at hearings and status conferences on the Debtors' behalf; (v) preparing for hearings, including witness preparations; (vi) preparing for multiple witness depositions; (vii) filing notice of removal of state court Whinstone lawsuit; (viii) working on expert witness retention and preparation related to the Motion to Assume; (ix) preparing and analyzing issues related to third party subpoenas; (x) addressing remand issues with state court Whinstone litigation; (xi) analyzing legal issues related

to the assumption of executory contracts; (xii) drafting and serving deficiency letters regarding document production; (xiii) analyzing and responding to Whinstone sanctions threats; (xiv) outlining legal arguments for proceedings related to the Motion to Assume; (xv) coordinating and organizing extensive and expedited document review; (xvi) attending to issues regarding protective order; (xvii) analyzing Whinstone's response to the Debtors' Motion to Assume; (xviii) drafting a protective order in the Whinstone dispute; (xix) drafting notices of deposition and preparing for same; (xx) drafting deposition outlines; (xxi) drafting and revising the Debtors' motion for summary judgment (ECF No. 271 & 272); (xxii) preparing for and attending Rockdale site visits; (xxiii) analyzing and revising motion to remand related to Whinstone; (xxiv) analyzing Whinstone's motion for summary judgment (ECF No. 207) and related legal issues; (xxv) reviewing and revising expert report in Whinstone dispute; (xxvi) reviewing Whinstone expert reports and developing responses to same; (xxvii) reviewing and revising expert rebuttal report; (xxviii) drafting and revising response to Whinstone motion for summary judgment (ECF No. 331); (xxix)  preparing and revising witness and trial outlines; (xxx) preparing pretrial motions; (xxxi) preparing for and attending trial on Motion to Assume; (xxxii) analyzing and discussing damages issues; and (xxxiii) ongoing strategizing and coordinating of bankruptcy cases and related litigation.

18.    In addition, tasks performed and services provided by LKC included but were not limited to: (i) strategizing regarding the damages case against Whinstone; (ii) coordinating, drafting and revising the damages complaint against Whinstone (ECF No. 770); (iii) coordinating expert retention and preparation in damages dispute; (iv) analyzing the impact of the Court's interim contract assumption orders on the Debtors' potential damages suit (ECF No. 579 & 763); (v) strategizing for and analyzing legal issues regarding the second phase of proceedings related

10

17397734

to the Motion to Assume; (vi) analyzing and preparing potential witnesses for the second phase of proceedings related to the Motion to Assume; (vii) analyzing and revising damages models; (viii) reviewing discovery and documents related to claims against Whinstone; (ix) preparing for and attending mediation with Whinstone and other parties; (x) ongoing legal research and analysis of potential claims against Whinstone and defenses; (xi) preparing for and communicating regarding bankruptcy appeal; (xii) drafting and revising appellate brief; (xiii) conferencing with co-counsel regarding issues with SAFE Ad Hoc Group; (xiv) analyzing issues regarding Riot Platforms, Inc. and Whinstone's motion to withdraw the reference and motion to dismiss; (xv) analyzing settlement agreement with Whinstone; (xvi) drafting, revising, and filing motion and proposed order related to Milam County bond; (xvii) reviewing and revising settlement agreement with Whinstone; and (xviii) finalizing Milam County dismissal papers.

## B.  Fee Applications
**Fees: $195,600.00 (with discount: $153,151.00, *see supra* note 3)**
**Hours: 179.30**

19.     Tasks performed in this category included, but were not limited to: (i) drafting, reviewing, and filing the monthly fee statements on behalf of LKC; (ii) drafting and revising the First Interim Fee Application and supporting exhibits; (iii) communicating regarding the First Interim Fee Application and fee statements; (iv) drafting and filing updated declarations in support of retention; (v) drafting and revising the Updated Retention Application; (vi) analyzing and communicating about contingency fee issues and retention; (vii) conferencing with parties regarding March 2025 Engagement Letter and the Updated Retention Application; (viii) conferencing regarding in Ad Hoc Group's objection to the Updated Retention Application; (ix) reviewing and revising brief in support of Updated Retention Application; (x) attending status conference related to Updated Retention Application; (xi) researching legal issues related to the

Updated Retention Application; (xii) preparing for and attending hearing on objection to the Updated Retention Application; (xiii) drafting second interim fee application; (xiv) drafting and revising requests for production and interrogatories related to objection to the Updated Retention Application; (xv) ongoing conferences with co-counsel regarding the Updated Retention Application and related issues; (xvi) attending the deposition of Chuck Topping related to the Updated Retention Application; (xvii) preparing for and attending hearing on the Updated Retention Application; (xviii) researching and analyzing arguments in post-hearing brief related to the Updated Retention Application; and (xix) revising post-hearing brief related to the Updated Retention Application.

## CALCULATION OF SUCCESS FEE

20.    The Success Fee comprises three components related to: (1) the Court's order granting the Debtors' Motion to Assume; (2) the energy credits recovered; and (3) the damages not attributable to the energy credits.

21.    As for the first component, there is no dispute that LKC is entitled to **$600,000**. Whinstone has dismissed its appeal of the Court's order, triggering the $600,000 fee under paragraph (a) of the March 2025 Engagement Letter.

22.    As for the other two components, the March 2025 Engagement Letter and the Updated Retention Order require that the Debtors and LKC "determine in good faith the portion of transaction value … allocable to energy credits and damages."  The "transaction value" is the $185 million that the Debtors received from Whinstone resolving their dispute.

23.    To that end, shortly after entry of the LKC Updated Order on July 11, 2025, LKC's counsel sent email correspondence to Barnes & Thornburg setting forth LKC's proposed allocation

and contingency fee calculation and inviting further discussion.   Barnes & Thornburg never responded to the July 11 email correspondence.

24.     Thereafter, in late July, LKC's counsel reached out to Ms. Tomasco at Quinn Emanuel inquiring as to whether Barnes & Thornburg was the right Debtor "representative" to engage with on the allocation/contingency fee calculation, given the lack of response.

25.     In late July and early August, LKC's counsel had limited discussions with Ms. Tomasco about the Whinstone settlement allocation and LKC fee calculation but, other than stating that the Debtors "disagreed" with LKC's calculation, Ms. Tomasco was unwilling to share the Debtors' proposed allocation or calculation of LKC's contingency fee or otherwise respond to LKC's July 11 proposal. Ms. Tomasco did not provide a counter-offer or explain why the Debtors disagreed with LKC's calculation— ██████████████████████████████████
████████████████████████.

26.     Over a month since the Updated Retention Order was entered and five months since the Whinstone litigation settled, the Debtors appear unwilling to engage in good faith discussions about the Success Fee, as required by the Updated Retention Order.   On August 7, 2025, LKC issued Rule 2004 requests to the Debtors seeking targeted information related to the Whinstone settlement allocation and LKC Success Fee calculation. Debtors had already shared some of this information with other parties to this bankruptcy, including the SAFE Ad Hoc Group, but refused to share the materials with LKC.   LKC was simply trying to understand the Debtors' "disagreement" and their position on the allocation to inform LKC's calculation of the contingency fee and the firm's final fee application. But Debtors refused to produce any discovery responses or any documents—not even the ones it had previously shared with third parties including the SAFE Ad Hoc Group. Instead, on Barnes & Thornburg sent LKC a letter late at night, at 10:05 p.m., on

August 13, 2025 demanding withdrawal of the Rule 2004 requests by 1:30 pm the next day and threatening sanctions.

27.     The next day, LKC requested a status conference, and Barnes & Thornburg, on behalf of the Special Committee, filed a motion to quash the Rule 2004 requests. The motion argued that LKC is not entitled to any success fee at all until the Debtors ***and Whinstone*** agree on the proper allocation of settlement value to energy credits and damages. Although the Updated Retention Application and the Updated Retention Order expressly state that the Debtors ***and LKC*** are supposed to negotiate the allocation in good faith (subject to this Court's review and approval), the Special Committee contended that the Debtors and Whinstone determine the allocation and that LKC cannot receive any amount "inconsistent" with that determination. ECF No. 1530 at 6–10. Unsurprisingly, the Special Committee cites nothing for this proposition, which would allow LKC's and the Debtors' former adversary, Whinstone, to dictate the LKC Success Fee.  Needless to say, LKC and the Debtors never contemplated that Whinstone would effectively determine LKC's fee for prevailing against Whinstone.

28.     The Special Committee's motion also baselessly accused LKC of misconduct for seeking discovery and contended that discovery somehow violated a "stay" on matters unrelated to LKC.  *See* ECF No. 1530.  Debtors still have not produced any documents; thus, LKC has filed this Application and calculated the Success Fee based on the information LKC has in its possession.

29.     ███████████████████████████████████
███████████████████████████████████████

██████████████████ ██████████████████████████████

████████████████████████████████████████████████

█████

30. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

31. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

32. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

33. ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[6] LKC has not attached the ████████ to this Application in the interest of including only the minimal amount of confidential information necessary to establish the Success Fee.  Should the Court order, or the Debtors agree, the ████████ should be filed under seal, LKC will do so at the appropriate time.

17397734

██████████████████████████████████████████████████ ████████████████

████████

34.   ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ ████████████████████████████████████

██████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

35.   **Energy Credits.**  ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[7] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████
[8] ████████████████████████████████████████████████████████████
████████████████████████████████████████████

16

17397734

████████████████████████████████████████████████████

█████████████████████████████████████████

36.     **Additional Damages.**  █████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

37.     Together, LKC's Success Fee is **$8,913,600**, which is the sum of:

$600,000 under paragraph (a)

████████████████████████████████████

████████████████████████████████████

## COMPENSATION REQUESTED

38.     In this Application, LKC seeks final approval of $11,419,448.50 in fees,[9] inclusive of the Success Fee, and $252,545.83 in expenses incurred from August 28, 2024 through June 30, 2025. Attached as **Exhibit A** is the *Certification of William T. Thompson in Support of Lehotsky Keller Cohn LLP's Second Interim and Final Application for Payment of Compensation and Reimbursement of Expenses for the Period August 28, 2024 through June 30, 2025* (the "***Thompson Certification***").  Pursuant to the US Trustee Guidelines, **Exhibit B** is a table reflecting customary and comparable compensation disclosures with the Application. **Exhibit C** is a table summarizing the timekeepers included in this Application. **Exhibit D** addresses the budget, and **Exhibit E** is a table with a summary of compensation requested by task category. The blended rate

---

[9] $8,913,600.00 (Success Fee) + $2,505,848.50 (Discounted Hourly Fees) = $11,419,448.50 (Total Requested Fees)

17397734

for LKC timekeepers is $975.00 (applying the agreed upon discount, *see supra* note 3).  **Exhibit F** is a table summarizing the reimbursable expenses of LKC in these chapter 11 cases.

I.      **LKC is entitled to the Success Fee pursuant to section 328(a) of the Bankruptcy Code.**

39.     LKC is entitled to the Success Fee, which was approved by the Court pursuant to section 328(a) of the Bankruptcy Code.

40.     Section 328(a) allows counsel to avoid the uncertainty of what constitutes reasonable compensation under section 330 of the Bankruptcy Code.  The Fifth Circuit has recognized the logic behind section 328(a): "able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 . . . " *In re National Gypsum Co.*, 123 F.3d 861, 862 (5th Cir. 1997). "Under Section 328, an attorney . . . may avoid that uncertainty by obtaining court approval of her representation and fee arrangement prior to performing the contemplated services." *Daniels v. Barron (In re Barron)*, 325 F.3d 690, 693 (5th Cir. 2003).  The Fifth Circuit has "repeatedly interpreted § 328(a) as meaning precisely what it says: A professional may be retained on any reasonable terms; but, once those terms have been approved pursuant to § 328(a), the court may not stray from them at the end of the engagement unless developments subsequent to the original approval that were incapable of being anticipated render the terms improvident." *Asarco, L.L.C. v. Barclays Capital, Inc. (In re Asarco, L.L.C.)*, 702 F.3d 250, 257 (5th Cir. 2012).  A court can only depart from the contingency fee arrangement approved under section 328(a) if there are intervening circumstances that were incapable of anticipation by the bankruptcy court at the time it approved the award.  *See Barron*, 325 F.3d at 694. "[T]he intervening circumstances must have been incapable of anticipation, not merely unanticipated." *Id.* at 693.

41.     The Updated Retention Application sought approval of LKC's Success Fee under section 328(a) of the Bankruptcy Code.  *See* ECF Nos. 835, ¶ 2 and 835-1, ¶¶ 1–2.  The Court approved the Updated Retention Application pursuant to Bankruptcy Code sections 327(e) and 328(a).  *See* Updated Retention Order at 12–13, 19 ("Given the contributions by LKC to the Whinstone matter, it would be unreasonable for this Court to hold that LKC cannot receive a contingent fee").

42.     LKC is unquestionably entitled to its Success Fee, and there are no intervening circumstances in these cases that were incapable of anticipation by the Court at the time of approval that would render the award of the Success Fee improvident.  As Debtors' General Counsel stated: "LKC has represented Rhodium for two years through multiple periods of time when ***the survival of Rhodium's business was on the line***." ECF No. 1111-1, ¶ 16. "Together with Stris & Maher LLP, ***LKC obtained exceptional results*** for Rhodium and doing so often meant meeting imminent, after-hours needs and taking on emergency filings and emergency hearings on short notice." *Id.* "LKC helped save Rhodium from going out of business multiple times and paved the way for a settlement with Whinstone." *Id.* ¶ 13.

43.     "***The value of LKC's services includes the affirmative claims against Whinstone*** that LKC helped develop and pursue in both the arbitration and the bankruptcy proceeding."  In the Debtors' view, "[a]fter the bankruptcy petitions were filed, LKC continued to deliver exceptional results for Debtors."  ECF No. 1111 at 3.  In particular:

> ***LKC provided enormous value to the estate. …***  Following a lengthy hearing, this Court ruled in Rhodium's favor on every key issue of contract interpretation and alleged termination. … ***That win is what brought Whinstone to the table and facilitated the $185 million settlement***—the settlement fund that is central to formulating a plan resolving the bankruptcy. …  LKC's contributions were substantial and critical to the value of the estate.

ECF No. 1111 at 10–11.

44.    LKC accordingly requests approval of the Success Fee.

**II.    LKC is entitled to hourly fees and reimbursement of expenses pursuant to section 330(a)(1) of the Bankruptcy Code.**

45.    LKC submitted fee statements for the months of August, September, October, November, December, January, and February during the Application Period. Each monthly fee statement was served pursuant to the Interim Compensation Order. The monthly invoices, including those attached to each fee statement and invoices for March, April, May, and June 2025, are attached as **Exhibit G**.

46.    Section 330 of the Bankruptcy Code authorizes the Court to award LKC reasonable compensation for its actual and necessary services rendered and reimbursement of its actual and necessary expenses incurred in rendering of services as special counsel to the Debtors for LKC's hourly compensation.  *See* 11 U.S.C. § 330(a)(1).

47.    This Application meets the standards of section 331, Bankruptcy Rule 2016, and applicable case law for compensation for services rendered on behalf of Debtors' estates and for expenses incurred. The Fifth Circuit articulated the requirements for allowance of compensation under section 330 of the Bankruptcy Code in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015). In *Woerner*, the Fifth Circuit held that compensation is allowable for services that are "reasonably likely to benefit" the estate and that a court should adjudge the reasonableness of the requested compensation "at the time at which the service was rendered." *Id.* at 273-74. All of the compensation requested in the Application meets the requirements of section 331 as delineated by the Fifth Circuit and should be approved.

48.    LKC provided necessary and beneficial services to the Debtors during the Application Period.  The time LKC spent on services rendered and the rates charged for such services were reasonable and necessary to fully protect the Debtors' estates consistent with LKC's

17397734

role as special litigation counsel and to maximize the dividend to creditors, in line with the *Johnson* factors adopted by the Fifth Circuit in *In re First Colonial Corp.*, 544 F.2d 1291, 1299 (5th Cir. 1977) (following *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)), as follows:

### a. The Time and Labor Required

49.     As further illustrated by the fee breakdown in the Summary Cover Sheet, the amount of time spent by LKC professionals on this case for the Application Period is 2,887.50 hours.

### b. The Novelty and Difficulty of the Questions Presented by the Case

50.     The first *Johnson* factor examines the degree of novelty and difficulty of the issues encountered by LKC. This case has presented difficult and complex questions of fact and law relevant to both bankruptcy and applicable nonbankruptcy law. These issues required the knowledge and skills of LKC to address.

### c. The Skill Requisite to Perform the Legal Services Properly

51.     LKC's attorneys, with varying levels of experience and seniority, have been used effectively and efficiently to perform the tasks assigned to them and have provided valuable and effective assistance to the Debtors. LKC possesses the skill required to properly perform the legal services involved, including trial expertise and experience with high-stakes commercial litigation in this Circuit. The issues presented in this case required a high degree of skill and expertise.

### d. The Preclusion of Other Employment by the Attorneys due to Acceptance of this Case

52.     Attorneys at LKC were not necessarily precluded from employment on other cases by the size and exigency of these cases, but these cases have required a substantial amount of time

17397734

and attention of several LKC attorneys in providing services to the Debtors, including on expedited timeframes.

### e. The Customary Fee for Similar Work in the Community

53. The fees charged by LKC compare favorably with the fees charged by other counsel in similar cases in this jurisdiction. LKC sets its fees consistent with available market data for similarly situated firms given the years of experience of each attorney. LKC's blended rate of $975.00 compares favorably with hourly rates charged by practitioners in cases of this size, complexity, and significance.  The discounted hourly rates charged by LKC are consistent with the amount involved in these cases, the results obtained by LKC, and the level of skill necessary to perform the work. Accordingly, the hourly billing rates charged by LKC are reasonable.

54. With respect to LKC's Success Fee, LKC uses hybrid fee structures with a number of clients in complex commercial litigation. Such an arrangement made sense in this context because the Debtors were locked in an existential conflict with Whinstone and subject to significant liquidity constraints.

### f. Whether the Fees are Fixed or Contingent

55. LKC's attorneys in this case are compensated on an hourly basis, plus the Success Fee depending on the outcome of the litigation. *See* ECF Nos. 173, 835, and 1418. LKC's fees have been discounted in exchange for the Success Fee. As the Court noted in the Updated Retention Order, "Given the contributions by LKC to the Whinstone matter, it would be unreasonable for this Court to hold that LKC cannot receive a contingent fee, especially when one considers that the initial application mentioned a contingency fee numerous times."  Updated Retention Order at 19.

17397734

### g.  Time Pressures Imposed by the Client or Circumstances

56.     The circumstances of the bankruptcy case imposed time pressures due to the expedited discovery and briefing schedule for the court's hearing on Debtors' Motion to Assume (ECF No. 7) in addition to developing the affirmative case for damages against Whinstone and Riot within a short timeframe.  The Debtors recognized that "[f]ighting off Whinstone's tactics often required meeting imminent, after-hours needs and taking on emergency filings and emergency hearings on short notice," and "without those injunctions, Rhodium would likely have been forced out of business."  ECF No. 1111 at 3; ECF No. 1111-1, ¶ 16.

### h.  The Amount Involved and Results Obtained as a Result of the Attorney Services

57.     As a result of LKC's services, strategy, and efficiency as special litigation counsel to the Debtors during the Application Period, the Court granted Debtors' Motion to Assume (ECF No. 800), and the parties reached a favorable settlement (ECF No. 921) that resulted in bringing in $185 million in value to the Debtors' bankruptcy estates, allowing the Debtors to pay their creditors in full and returning a dividend to equity holders.

58.     The Court has also recognized that the updates to the contingency fee in the March 2025 Engagement Letter reflected "the original intentions of LKC and the Debtors, especially when the Court considers LKC's contributions to the Whinstone dispute, as well as the outcome LKC helped provide."  Updated Retention Order at 18. It is undisputed that LKC "performed valuable services to the debtor[s'] estate that have increased the common funds available for distribution to the creditors" and that LKC's services benefitted the Debtors' estates in a "significant manner."  ECF No. 1261 at 3 (citations omitted).  To summarize,

> Rhodium fully recognizes the value of the services that LKC provided over the past two years and also recognizes that LKC provided those services at a discounted rate in reliance on the potential success fee. LKC helped save Rhodium from going out of business multiple times and paved the way for a settlement with Whinstone. The

23

17397734

value of LKC's services includes the affirmative claims against Whinstone that LKC helped develop and pursue in both the arbitration and the bankruptcy proceeding.

ECF No. 1111-1, ¶ 13.

### i.  The Experience, Reputation, and Ability of the Attorneys

59.     The LKC attorneys involved in the work on behalf of the Debtors have decades of experience in high-stakes litigation and extensive knowledge of Debtors' business, corporate structure, and the legal issues and relevant evidence at issue in this matter.  As the Debtors' General Counsel recognized, "LKC had stellar credentials, an incredible track record of success, very highly skilled attorneys.  And so they were sophisticated counsel."  Hrg. Tr. (June 4, 2025), 38:25–39:6.

### j.  The Undesirability of the Cases

60.     Every bankruptcy case carries some risks due to the uncertainty of payment stemming from the relatively unknown value of the debtors' principal assets and the debtors' ability to pay administrative fees and costs. These bankruptcy cases involved a significant risk that the Debtors would not recover from Whinstone, which is one of the reasons LKC and the Debtors agreed to a Success Fee in this matter. These cases presented no additional undesirable elements. However, the events in these bankruptcy cases confirm the significant risks posed to LKC in taking on this engagement, including the opposition to LKC's updated retention and the treatment of LKC's Success Fee.

### k.  The Nature and Length of the Professional Relationship with the Client

61.     As stated in the Retention Application and Updated Retention Application, ECF Nos. 173 and 835, the Debtors selected LKC as special litigation counsel based on LKC's work on Debtors' behalf in pre-petition proceedings in state court and arbitration. LKC's work on Debtors' behalf in pre-petition proceedings began in May 2023.

17397734

### l.  Awards in Similar Cases

62.     The fees herein requested are in line with fee awards approved in similar cases by counsel with similar sophistication and experience.   *See In re Hornblower Holdings LLC,* Case No. 24-90155(MI), ECF No. 24 (Bankr. S.D. Tex. Sept. 11, 2024) (authorizing final compensation and reimbursement to special litigation counsel at significantly higher hourly rates); *In re National Cinemedia, LLC*, Case No. 23-90291(MI), ECF No. 590 (Bankr. S.D. Tex. Oct. 16, 2023) (authorizing final compensation and reimbursement to special litigation, tax, and corporate counsel at significantly higher hourly rates); *In re Ligado Networks LLC*, Case No. 25-10006, ECF No. 685 (Bankr. D. Del., June 20, 2025) (granting interim compensation to special litigation counsel at significantly higher hourly rates). In these bankruptcy cases, Stris & Maher LLP has received interim compensation at higher hourly rates than LKC (under LKC's hourly fee discount) in the amount of $6,114,879.46. See ECF Nos. 1423 and 1502.

63.     In conclusion, the services provided by LKC have been necessary to the administration of the Debtors' estates and beneficial at the time at which services were rendered. Further, LKC performed services within a reasonable amount of time commensurate with the complexity, importance, nature of the problems, issues, and tasks addressed on behalf of the Debtors. Finally, the compensation sought is reasonable based on the customary compensation charged by comparably skilled practitioners in cases under chapter 11 in this district. LKC requests that the Court determine that the nature, extent, and value of these services were appropriate under the circumstances at the time the services were rendered.

WHEREFORE, PREMISES CONSIDERED, Lehotsky Keller Cohn LLP requests that this Court enter an order (i) granting final approval of fees incurred during the Application Period in the amount of $11,419,448.50 and reimbursement of actual and necessary expenses incurred by

Lehotsky Keller Cohn LLP during the Application Period in the amount of $252,545.83, (iii) authorizing and directing the Debtors to pay $9,346,253.33 to LKC, which represents the unpaid amount of LKC's fees and actual and necessary expenses, and (iii) granting such other and further relief as is just and proper.

Respectfully submitted this 22nd day of August 2025.

By: ___*/s/ William T. Thompson*_____
LEHOTSKY KELLER COHN LLP
William T. Thompson
Todd Disher
Alexis Swartz
Lehotsky Keller Cohn LLP
408 W. 11th Street, Fifth Floor
Austin, TX 78701
Email: will@lkcfirm.com
Email: todd@lkcfirm.com
Email: alexis@lkcfirm.com

and

Joshua W. Wolfshohl (TX Bar No. 24038592)
Michael B. Dearman (TX Bar No. 24116270)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
mdearman@porterhedges.com

*Counsel to Lehotsky Keller Cohn LLP*

26

17397734

**CERTIFICATE OF SERVICE**

I certify that, on August 22, 2025, a true and correct copy of the foregoing document was served through the Court's Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl