IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br>RHODIUM ENCORE, LLC, et al.,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 24-90448 (ARP)<br>)<br>) Jointly Administered |

**CHASE BLACKMON, CAMERON BLACKMON, NATHAN NICHOLS, AND NICHOLAS CERASUOLO'S *CORRECTED*[2] REPLY REGARDING MOTION FOR AN ORDER (A) MODIFYING THE AUTOMATIC STAY TO ALLOW THE ADVANCEMENT OF DEFENSE COSTS UNDER THE DEBTORS' D&O INSURANCE AND (B) GRANTING RELATED RELIEF**

Chase Blackmon, Cameron Blackmon, Nathan Nichols and Nicholas Cerasuolo (together, the "Founders"), hereby reply to the objection [ECF No. 1546] (the "Objection") by the Ad Hoc Group of SAFE Parties (the "SAFE AHG") to the Founders' motion [ECF No. 1509] (the "Motion"),[3] for the entry of an order (a) modifying the automatic stay to allow the Founders to request the Insurers under the D&O Policies to pay or advance covered Defense Costs on behalf of the Founders as follows:

---

[1] The debtors and debtors-in-possession in these chapter 11 cases (the "Debtors") and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

[2] This reply reflects a correction to footnote 8 of the reply filed at ECF No. 1570 (now footnote 9). The relevant entity was debtor Rhodium Technologies LLC, rather than Imperium Investments Holdings LLC. The SAFE AHG's characterization of the transaction as involving the Debtors was accurate.

[3] Capitalized terms used but used in this reply have the meanings ascribed to such terms in the Motion.

**PRELIMINARY STATEMENT**

1. The SAFE AHG is the only party to object to the Motion. Neither the Debtors, Special Committee, remaining creditors, nor other equity holders formally or informally objected to the relief requested in the Motion. The Official Committee of Unsecured Creditors (the "UCC") sought additional information from the Founders and the incorporation of certain provisions into the Proposed Order. The Founders agreed to the language requested by the UCC, as reflected in the redline attached as Exhibit A hereto.[4]

2. The SAFE AHG raises four (4) issues with the relief requested in the Motion. Each of these fails to controvert the cause to modify the stay to allow the Founders to request the Insurers to pay Defense Costs according to the terms of the D&O Policies set out in the Motion. As more fully set out below:

   a. First, the SAFE AHG argues that the payment of Defense Costs will reduce the proceeds available to the Debtors' estates under the D&O Policies. Ample case law holds that this does not rebut or prevent cause to modify the stay. The insurance that the SAFE AHG is concerned about covers the Founders' losses, not the Debtors, such that any shortfall would affect primarily the Founders.[5] Further, advancement of Defense Costs by the insurers results in an attendant reduction in the Debtors' obligations to the Founders.

   b. Second, the SAFE AHG asserts that the Order of Payments provision is only triggered if there is insufficient coverage. But if there is sufficient insurance to cover the Defense Costs and all other covered claims there is *undeniably* cause to modify the stay. The priority of payments is only material if there is insufficient coverage. The result is the same either way.

   c. Third, the SAFE AHG argues that it is premature to lift the stay to pay Defense Costs until there are adequate provisions to recover amounts advanced. But the Insureds are already *severally* required to repay these amounts under the D&O Policies—meaning that it would be the Founders' obligation—and the insurance at issue covers losses incurred by the Founders. Failure to repay the advanced amounts, assuming insufficient insurance, would result in a reduction of available

---

[4] The Founders do not oppose giving the same information to the SAFE AHG.

[5] To the extent that the Debtors would receive insurance proceeds on account of the claims asserted against the Founders, the insurance would be covering the *Founders'* losses. The Founders would be the beneficiary of the proceeds, not the Debtors or their estates.

        insurance to cover the Founders' other losses. Thus, the Founders would have the same out of pocket obligation either way.

    d.    Fourth, the SAFE AHG asserts that there is no urgency or immediate need for relief from stay because the Founders' past income was sufficient to enable them to pay legal expenses and the claims for which Defense Costs are sought have settled. But even if the Founders could conceivably afford to fund their defense, payment out of pocket rather than the bargained for advance nevertheless constitutes hardship. For the avoidance of doubt, the undersigned are not representing the Founders on a pro bono basis. Moreover, the SAFE AHG opposes the foundations upon which those settlements are based and have continued to seek information from the Founders related to covered estate claims.

The other allegations in the Motion are uncontested by the SAFE AHG, and thus deemed admitted under the Bankruptcy Local Rules.[6]

3.    Under Bankruptcy Code § 362(g) the party opposing a request for relief from stay has the burden on all issues other than equity in property. The SAFE AHG cannot meet that burden. There is undeniably "cause" to modify the automatic stay as requested in the Motion, and the arguments asserted by the SAFE AHG, even when they point to anything real or relevant, do not overcome the justification for allowing the Founders to request and the Insurers to pay or advance covered Defense Costs pursuant to the D&O Policies. The Motion should be granted.

## REPLY ARGUMENTS

**A.    That the payment or advancement of Defense Costs will reduce available insurance does not eliminate the cause to modify the automatic stay.**

4.    The SAFE AHG first argues that payment of Defense Costs according to the D&O Policies will reduce the amount of proceeds available to the Debtors' estates. The Objection does not present any basis to determine that there are covered claims beyond those asserted or demanded against the Founders, for which the Debtors would be the beneficiaries. It is mere speculation.

---

[6] Bankruptcy Local Rule 4001-1(a)(10) requires a party objecting to relief from stay to either (a) itemize each disputed issue of law or fact or (b) comply with FED. R. CIV. P. 8 as applied by FED. R. BANKR. P. 7008. Among other uncontested allegations are the relevant insurance documents. These documents are properly before the Court for evaluation.

3

Indeed, the thrust of the SAFE AHG's argument appears to be that payment of losses by the Founders for Defense Costs would leave less coverage for other losses by the Founders, particularly liability on the asserted claims, rather than there being insufficient insurance for covered claims for which the Debtors would be the beneficiary.

5. The SAFE AHG's arguments have been thoroughly rejected by courts considering whether cause exists to grant relief from the automatic stay. Among others:

   a. *In re CyberMedica, Inc.*, 280 B.R. 12 (Bankr. D. Mass. 2002)—In *CyberMedica*, officers and directors sought relief from stay to allow insurers under a directors and officers policy to pay defense costs. *Id.* at 14. The chapter 7 trustee argued that payment of defense costs under the policy would reduce available proceeds for the satisfaction of claims made by other parties. *Id.* at 14-15. The court ruled that there was cause to modify the stay because the harm the trustee asserted was speculative and the amounts paid for defense costs would be among the indemnification claims that could otherwise be paid from proceeds. *Id.* at 18.

   b. *In re SVB Fin. Grp.*, 650 B.R. 790 (Bankr. S.D.N.Y. 2023)—In *SVB*, several of the debtor's former directors sought relief from the automatic stay to permit insurers under relevant directors and officers insurance policies to make payments, including the advancement of defense costs. *Id.* at 792. The official committee of unsecured creditors objected, arguing that "uncontrolled payment of defense costs" had the potential to diminish available proceeds under the "Side C" coverage or fund judgments against the directors. *Id.* at 797. The bankruptcy court rejected these arguments as speculative and granted relief from the stay, to the extent it applied. *Id.* at 801. According to the court, that the policies were "wasting policies" did not contradict the cause to lift the stay and had no import where there existed a payment priority clause. *Id.* at 801-802. Further, the court rejected the committee's request for a "soft cap" on the defense costs advanced, noting that there "was no legal basis" for such a cap. *Id.* at 803. With respect to the information agreed to by the movants, the court indicated that the committee had presented no argument that the oversight was legally required.[7] *Id.* at 803 n.4.

   c. *In re Allied Dig. Techs. Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004)—In *Allied Digital*, officers and directors sued by a chapter 7 trustee filed a motion seeking an order authorizing reimbursement of defense costs under the relevant directors and officers policy. *Id.* at 507-508. The trustee opposed the motion, asserting that there should be a limit on defense costs advanced and such amounts should be subject to further review by the court. *Id.* at 509. The bankruptcy court granted the motion and overruled the trustee's objection. *Id.* at 514. The court reasoned that the trustee's

---

[7] The Founders have agreed to provide similar information to the UCC as agreed to in *SBV* and have offered to include the SAFE AHG on such reports.

concern that payment of defense costs might affect his rights as a plaintiff seeking to *recover from* the policy—rather than as a potential defendant seeking to be *protected by* the policy—was not protected under the law and did not support the request to regulate defense costs contrary to the policy. *Id.* at 513.

d. *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406 (Bankr. D.S.C. 2011)—In *Beach First National*, several former officers and directors of a defunct bank sought relief from the stay to allow the directors and officers insurer to advance defense costs in an action brought by the chapter 7 trustee. *Id.* at 408. The trustee objected, arguing, among other things, that allowing the movants to receive proceeds to pay defense costs would reduce the amount available for recovery by the estate. *Id.* at 411. The bankruptcy court rejected the trustee's argument and granted the motion. *Id.* at 412. Adopting the reasoning of *Allied Digital*, the court noted that the policy should be used for its intended purpose of protecting officers and directors from personal liability for the costs of defending actions. *Id.* at 410-11.

Nothing about the situation here would compel a different result. Nor does the SAFE AHG present any authority to that effect.

6. The Objection also mischaracterizes the issue regarding coverage on claims asserted against the Founders. Neither the Debtors nor their estates are directly entitled to any proceeds under the D&O Policies for claims established against the Founders. The *Founders* are the beneficiaries on whose behalf insurance proceeds are available. The losses covered are those incurred by the *Founders*. Therefore, any dilution harms primarily the Founders, who would be liable for any amount not covered by insurance. As described in *Allied Digital*, 306 B.R. at 513, and *Beach First National*, 451 B.R. at 411, the availability of proceeds under the policies for the estate to recover as a plaintiff—rather than as a beneficiary—is not the kind of interest protected by the automatic stay or other law.

7. Further, as alleged in the Motion and not disputed in the Objection, any Defense Costs advanced or paid by the Insurers would satisfy the Founders' indemnification claims against Debtors under REI's bylaws and other agreements. Each dollar advanced for Defense Costs by the Insurers comes with a concomitant reduction in claims against the Debtors' estates. This concrete

and certain benefit outweighs the speculative and fanciful harm that the SAFE AHG—but not the Debtors, Special Committee, or UCC—have imagined.

**B. If the Order of Payments provision is not triggered because there are no losses exceeding the Limits of Liability, there is clearly cause for relief from the stay.**

8. The SAFE AHG's second argument is that the stay should not be modified because the Founders have not established that the Limits of Liability have been exceeded such that the Order of Payments provisions have been triggered. Its position is that there might be sufficient insurance to pay all covered claims in full.

9. This argument is nonsense. If the Limits of Liability are not met—i.e., the available insurance exceeds claims covered by the insurance—that would be itself cause for relief from the automatic stay. If there is more than enough insurance, there is no *possible* prejudice to the estate even in the absence of the Order of Payments provision. The Order of Payments provision is only material to the modification of the automatic stay if there is insufficient coverage.

10. The SAFE AHG's argument is also flawed because it flips the burden established by the Bankruptcy Code. If the available insurance exceeding covered losses somehow actually *helped* the SAFE AHG's position—and it does not—the SAFE AHG would have the burden to establish that fact under Bankruptcy Code § 362(g).

**C. There are no grounds for imposing extracontractual requirements regarding the repayment of Defense Costs for the benefit of the Insurers.**

11. The SAFE AHG's third argument is that it is premature to lift the stay to allow payment of Defense Costs until there are "adequate" provisions in place to ensure the prompt repayment of Defense Costs should it be ultimately determined that the Defense Costs are not covered. Essentially, the SAFE AHG wants the Court to rewrite the terms of the D&O Policies as between non-debtors.

12. There is no basis in the law for the SAFE AHG's request. The D&O Policies *already require* that the amounts be repaid if it is "finally determined" that the amounts should not have been paid. The obligation to do so is "several," meaning that it is the obligation of beneficiary of the funds—here the Founders—to make the repayment. There are ample remedies for the Insurers to enforce a judgment or order of a court or arbitrator making such final determination. As courts have frequently indicated, there is cause to allow officers and directors what they bargained for with respect to D&O policies. *In re Allied Dig. Techs. Corp.*, 306 B.R. at 513; *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. at 411; *see also In re SVB Fin. Grp.*, 650 B.R. at 801 (reasoning that protecting directors and officers is "precisely why" D&O insurance exists).

13. Moreover, again, what the SAFE AHG is actually concerned about is that payments of Defense Costs would reduce the amount available to satisfy other claims against the Founders if there is insufficient insurance available. The Founders, not the estate or any other plaintiffs, are the beneficiaries of the insurance in that situation. The Founders would need to come out of pocket the same amount in either situation.[8] The estate does not have a privileged position with respect to recovery from insurance proceeds for the benefit of another party. The automatic stay protects the estate's interest in property of the estate, not that availability of property of non-debtors to satisfy claims held by the estate.

**D.      Payment of Defense Costs is necessary for the Founders to continue to have representation with respect to the claims against them.**

---

[8] If the Founders were unable to pay the full amount because of lack of funds, that would merely highlight the importance that Defense Costs were advanced in order for the Founders to present a sufficient defense. The SAFE AHG implies in its fourth point that the Founders have sufficient resources and that paying Defense Costs would not be a significant burden on them. If that were true, there would be no concern about repayment of advanced Defense Costs.

14. Fourth, the SAFE AHG asserts that there is no urgency or immediate need for relief from stay because the Founders' past income[9] was sufficient to enable them to pay legal expenses and the claims for which Defense Costs are sought have settled. The asserted conclusion is that the payment of Defense costs is not vital to the continued representation of the Founders.

15. Even if the Founders are technically able to afford a competent defense of the claims without the advancement of Defense Costs, coming out of pocket for such amounts would require difficult financial decisions and involve tradeoffs. As recognized by the court in *Beach First National*, 451 B.R. at 410, the purpose of D&O policies is to insulate directors and officers from personal liability for the costs incurred in defending actions. There is attendant harm in eliminating that protection. Counsel to the Founders are not working for free.

16. The argument that additional Defense Costs are unlikely or minimal because the claims for which Defense Costs are sought have settled is contradicted by the positions taken by the SAFE AHG in these cases. The settlements are predicated on a plan of reorganization proposed by the Debtors that the SAFE AHG opposes. Further, the SAFE AHG continues to seek information from the Founders in connection with potential estate claims against the Founders. If the SAFE AHG did not oppose those settlements, there would not be even a speculative effect on the estate from relief from stay.

## CONCLUSION

17. The Court can decide the Motion based on the uncontested allegations of the Motion. The SAFE AHG did not dispute the validity of the D&O Policies attached to the Motion. Nor did it dispute the critical allegations in the Motion demonstrating cause for modification of

---

[9] The SAFE AHG state that there was a $35 million transaction involving the Debtors. In early 2021, the Founders sold equity interests in the entity that would become Rhodium Technologies LLC prior to the roll up of the interests in various separate entities into a unified corporate structure. Those interests were later rolled up into REI.

the automatic stay as required to create a disputed issue of fact under Bankruptcy Local Rule 4001-1(a)(10). Indeed, the SAFE AHG *acknowledges* that either (a) there will be sufficient insurance to cover all covered claims or (b) the Order of Payments provision will require payment of the Founders' claims, including the Defense Costs, before any proceeds will be available for the Debtors' estates. None of the arguments raised by the Objection rebut the cause demonstrated. Therefore, the Court should grant the Motion and enter the Proposed Order with the modifications agreed upon between the UCC and the Founders.

Dated: August 27, 2025

Respectfully submitted,

SHANNON & LEE LLP

*/s/R. J. Shannon*
Kyung S. Lee
State Bar No. 12128400
R. J. Shannon
State Bar No. 24108062
2100 Travis Street, STE 1525
Houston, Texas 77002
Email:  klee@shannonleellp.com
           rshannon@shannonleellp.com
Phone: (713) 714-5770

*Counsel to Nicholas Cerasoulo*

-and-

STREUSAND, LANDON, OZBURN & LEMMON, LLP

*/s/Rhonda Mates*
Stephen W. Lemmon
State Bar No. 12194500
Rhonda Mates
State Bar No. 24040491
1801 S. Mopac Expressway, Ste. 320
Austin, Texas 78746
Email: lemmon@slollp.com
        mates@slollp.com
Phone: (512) 236-9900

*Counsel to Chase Blackmon, Cameron Blackmon, and Nathan Nichols*

### CERTIFICATE OF SERVICE

    I hereby certify that the forgoing document was served by the Court's CM/ECF System on all parties registered to receive such service at the time of filing.

        */s/R. J. Shannon*
        R. J. Shannon