IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | Chapter 11 |
| § | |
| RHODIUM ENCORE LLC, *et al.*,[1] § | Case No. 24-90448 (ARP) |
| § | |
| Debtors. § | |
| § | (Jointly Administered) |
| § | |

**DEBTORS' MOTION FOR SANCTIONS RELATING TO CLAIM
NUMBERS 004, 062, AND 068-072 FILED BY MIDAS GREEN TECHNOLOGIES LLC**
(Relates to ECF Nos. 953, 954, 1069, 1413)

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.**

Pursuant to rule 11 of the Federal Rules of Civil Procedure, rule 9011 of the Federal Rules of Bankruptcy Procedure and 35 U.S. Code § 285, Rhodium Encore LLC and its affiliates, as debtors and debtors in possession (collectively, the "Debtors" or "Rhodium") in the above-captioned chapter 11 cases, hereby file this motion for sanctions against Midas Green

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

Technologies LLC and its counsel, and move for reimbursement of all fees and expenses associated with filing *Debtors' Amended Omnibus Objection To Claim Numbers 004, 062, and 068-072 Filed by Midas Green Technologies LLC* (the "Objection") and all briefs in support thereof. Sanctions are warranted because claim numbers 004, 062, and 068-072 filed by Midas Green Technologies (the "Midas Claims") were filed for an improper purpose, based upon legal contentions not warranted by existing law, and based upon factual contentions that are without evidentiary support.[2] In support of this motion, the Debtors respectfully state as follows:

## INTRODUCTION

1. Midas Green Technologies, LLC ("Midas Green," or "Midas") filed **seven** proofs of claim seeking damages of $25-43 million, based on alleged patent infringement at Debtors' former Temple and Rockdale locations. As explained more fully in *Debtors' Summary Judgment Motion In Support Of Amended Omnibus Objection To Claim Numbers 004, 062, and 068-072 filed by Midas Green Technologies LLC* (ECF No. 1486) (the "Summary Judgment Motion"), which Debtors incorporate herein by reference along with all supporting papers, Midas's claims are utterly without merit. Midas's claims for patent infringement were previously dismissed on summary judgment by the United States District Court for the Western District of Texas or dropped by Midas. Midas interposed its objections for the improper purpose of delaying a bankruptcy proceeding in which time is of the essence for confirming a plan. Midas hopes, by holding the estate and its creditors hostage, to force a favorable settlement of claims it has already lost or withdrawn, and that it knows are baseless. Because its contentions lack support under either law or evidence, and because its conduct reveals a purpose to delay and to leverage the parties' need to make distributions in this case, Debtors should be awarded their reasonable attorneys' fees and

---

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Objection.

expenses incurred in opposing Midas's proofs of claim.  Bankruptcy Rule 9011(b)(1)-(3); 28 U.S.C. § 1927; 35 U.S.C. § 285.[3]

## BACKGROUND

2.      Midas already litigated these same patent claims and lost.  It first asserted the patent infringement claims on which its proofs of claim are based in a complaint it filed on January 13, 2022, in the U.S. District Court for the Western District of Texas.  Over the course of two-plus years of litigation, Midas dropped one of the asserted patents entirely (U.S. Patent No. 10,820,446, "the '446 Patent") and withdrew all but two claims of the other (U.S. Patent No. 10,405,457, "the '457 Patent").  At the final pretrial conference on April 9, 2024, after fulsome discovery, numerous expert reports, and nearly all pretrial procedures were complete, the district court granted summary judgment of noninfringement, dismissing Midas's last two patent claims, and canceled the impending trial.  Apr. 9 Hrg. Tr. at 54:10-16.

3.      Midas asked the district court if it would be possible to re-address the summary judgment ruling after amending its expert report, and in response, the court said, "you've had your chance" and that it "d[id]n't think it [an amendment] would" benefit it, but would let the parties know if that changed.  *Id.* at 54-55.  The District Court never sought any further expert submissions from the parties.

4.      After this Court partially lifted the automatic stay for the limited purpose of allowing the district court to issue a written ruling memorializing the summary judgment grant, the district court asked the parties to submit a proposed form of written order "reflecting those

---

[3] *See In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 373 (B.A.P. 6th Cir. 2015), *aff'd*, 652 F. App'x 330 (6th Cir. 2016) (awarding sanctions for dilatory filing of proofs of claim seeking "to lever the collective desire for efficient administration that bankruptcy seeks to afford claim holders to gain recognition of a claim that had no merit" and noting that "[i]t appears that [Claimant] thought his blockades to distribution might substitute for the lack of merit of the claims that he advanced.").

rulings,"—confirming its intent to memorialize the ruling it had already made, not to revisit it. Jan. 30, 2025, Email.

5. Undeterred, Midas filed proofs of claim in this bankruptcy proceeding based on its defunct claims of patent infringement. When it filed its proofs of claim, Midas attached the same operative complaint it had previously filed in the district court in March of 2023—without informing this Court that (i) during the prior litigation it had subsequently withdrawn one of the two patents asserted in that complaint (the '446 Patent) entirely and had dropped seven asserted claims of the other asserted patent (the '457 Patent), leaving only two asserted claims; or that (ii) the district court had already considered those two claims, found in Rhodium's favor, and granted summary judgment against Midas.

6. Midas compounded its vexation by mischaracterizing the District Court's ruling, suggesting it was not final when it was.

7. In its prior pleadings in this Court, Midas baldly, impermissibly sought to relitigate its claims, making identical arguments to those the district court had already rejected.

8. Even if Midas were making these arguments for the first time, they would be sanctionably weak. In the first instance, and again here, Midas (i) accused a system whose heat sensors were not installed and thus was not physically capable of taking a temperature and infringing, (ii) accused systems that did not take or use, and were incapable of taking or using, "the temperature of the dielectric fluid in the tank" even though every claim of Midas's patents specifically requires the use of that variable, (iii) abandoned all of its equivalence arguments (which are required if there is no literal infringement) on summary judgment, and (iv) never identified any component that could even arguably "coordinate the operation of the primary and secondary fluid circulation facilities" as the asserted claims require.

9.      The Debtors have informed Midas that its actions are sanctionable, and in compliance with Rule 11's notice requirements, sent Midas a Rule 11 letter and a draft of this Motion.  A copy of that letter is attached hereto as **Exhibit A**.  The Debtors informed Midas that if it did not withdraw its baseless claims, they would pursue sanctions.  Midas refused to do so.

## ARGUMENT

### A.     The Court Should Award Sanctions Pursuant to Bankruptcy Rule 9011

10.     Bankruptcy Rules 9011(b) and (c) allow this Court to sanction parties that submit petitions and pleadings with an improper purpose, assert legal contentions not warranted by existing law (or a non-frivolous argument for the extension of existing law or creation of new law), and/or make factual contentions that are without evidentiary support.  Subparagraphs (b) and (c) of Rule 9011 read as follows (with emphases added):

> (b)     Representations to the Court. By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
>
> (1) *it is not presented for any improper purpose, such as to* harass, *cause unnecessary delay*, or needlessly increase litigation costs;
>
> (2) *the claims, defenses, and other legal contentions are warranted by existing law* or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
>
> (3) *the allegations and factual contentions have evidentiary support*—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c)     Sanctions.
>
> (1) *In General*. If, after notice and a reasonable opportunity to respond, the court determines that (b) has been violated, the court may, subject to the conditions in this subdivision (c), impose an appropriate sanction on any attorney, law firm, or party that committed the violation or is responsible for it. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Bankr. P. 11

11. The Fifth Circuit interprets the rule to impose three affirmative duties that attorneys and litigants certify they have complied with each time they sign a pleading: (i) the attorney has conducted a reasonable inquiry into the facts which support the document; (ii) the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (iii) that the pleading is not filed for purposes of delay, harassment, or increasing the costs of litigation. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023–24 (5th Cir. 1994). In other words, both litigants and their counsel have a duty "to conduct a reasonable inquiry into the facts or law before filing [a] lawsuit" or proof of claim. *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006) (citation omitted); *In re Dansereau*, 274 B.R. 686, 688 (Bankr. W.D. Tex. 2002) ("Rule 9011 applies to proofs of claim filed in bankruptcy cases. Consequently, violations of Rule 11 may be enforced against both attorneys and litigating parties.").

12. Rule 11 sanctions are mandatory, and if the Court finds that Midas violated Rule 11, it must issue appropriate sanctions. *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 876 (5th Cir. 1988) ("There are no longer any 'free passes' for attorneys and litigants who violate Rule 11. Once a violation of Rule 11 is established, the rule mandates the application of sanctions.").

13. Midas's violations of Rule 11 are numerous: *First*, even a passing inquiry into the facts underlying Midas's patent infringement claims reveals that they cannot support a claim of patent infringement. As set forth fully in the Summary Judgment Motion, Midas primarily accused a system at Rhodium's former Temple facility that did not have temperature sensors installed and that consequently was not physically capable of measuring a temperature, even though the patent claims require taking a step as "a function of the temperature of the dielectric fluid in the tank."

Summary Judgment Motion ¶ 55. No colorable argument exists for infringement by a system that cannot measure temperature at all.

14. Midas also levied throw-away accusations at systems that did not and could not measure "the temperature of the dielectric fluid in the tank"—only other temperatures—even though every claim of Midas's patents specifically requires the use of that variable. Summary Judgment Motion at ¶¶ 56-57, 60-61, 64. Further, Midas never identified any component that could even arguably meet the "adapted to coordinate the operation of the primary and secondary fluid circulation facilities" claim element—only components that acted upon either the primary or the secondary fluid circulation facility but were not adapted to coordinate both as the asserted claims require. Summary Judgment Motion ¶¶ 58-59, 62, 63. This meant there could not possibly be literal infringement, which requires the accused device to contain every element of the claim exactly. *Id.* at ¶ 57; *Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 457142, at *2 (E.D. Tex. Feb. 5, 2010).[4]

15. *Second*, Midas continues to pursue claims that have already been litigated and found wanting. On the merits, Midas's infringement claims are baseless and were obviously baseless from the beginning of the District Court Litigation. The grant of summary judgment made the obvious inescapable. To make matters worse, in the proofs of claim it filed, Midas did not inform this Court that the District Court had granted summary judgment against it. Summary Judgment Motion, Ex. 11. And Midas attached its operative complaint from 2023 to detail its claims, even though that complaint asserted seven claims of the '457 Patent and six claims of the '446 Patent (i.e., all the claims it had asserted for that patent), which Midas had subsequently

---

[4] The only other path to infringement is the doctrine of equivalents. But Midas abandoned all its equivalence arguments on summary judgment, implicitly conceding those theories to be so weak they were not even worth presenting to a court. Summary Judgment Motion ¶ 65.

dropped in the district court litigation. Summary Judgment Motion, ¶12 (text), 12 n.5. In purporting to revive claims and a patent it had withdrawn, Midas sought to expand a case in this Court that had already been narrowed through a highly contested litigation process.

16. *Third*, Midas advanced unsupported damages claims on a scale of $25-$43M, large enough to ensure its claims would pose an obstacle to plan confirmation and distributions to creditors of the Debtors, force delay, and attempt to give Midas an unwarranted tactical leverage. Midas sought damages considerably larger than the $22M it demanded in the District Court—even though that court had reduced Midas's damages claims by excluding (i) its theory based on projected future profits (which are also unavailable as a matter of law in this Court), (ii) its lost profits theory, and (iii) its reasonable royalty theory that was based on its rejected lost profits theory, fatally speculative, and rife with other errors. Summary Judgment Motion, ¶¶ 66-69. As Midas must know, its damages claims are preposterous.[5] It has nonetheless presented an inflated damages claim, despite the lack of supporting evidence and dramatic reductions by the District Court, for the tactical purpose of attempting to put settlement pressure on Debtors.

17. As further discussed below, Midas's actions could only be motivated by its desire to exert leverage over the Debtors. However, because Rule 11 uses an objective reasonableness standard, the ultimate motive behind Midas's decision to pursue these claims is immaterial to the Rule 11 analysis. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) ("an evaluation of Raylon's litigation motives—whether it brought suit in good faith or to obtain nuisance value settlements—contradicts Fifth Circuit law and has no place in the Rule 11 analysis"); *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007) ("[T]he

---

[5] Conceding this point, Midas recently filed a motion to amend its claims to $12,306,287 in total. ECF No. 1580. The Debtors do not oppose this amendment, however, Midas's motion to amend—filed a week after the originally scheduled hearing—does not resolve the time and resources the Debtors were forced to spend litigating Midas's inflated claims.

standard under which the attorney is measured [under Rule 11] is an *objective, not subjective,* standard of reasonableness under the circumstances.") (emphasis in original) (quotation omitted). Because Midas's claims are objectively unreasonable, this Court must issue appropriate sanctions.

### B. The Court Should Award Sanctions Pursuant to Section 105 of the Bankruptcy Code

18. Midas's actions represent such an egregious disregard for law and fact that Rule 11's twin goals of compensation and deterrence can only be satisfied by full payment of all fees and expenses incurred defending its claims. However, to the extent that the Court believes that the scope of Midas's bad faith does not fit neatly into Rule 11's requirements, this Court should award sanctions pursuant to its inherent authority, as memorialized in section 105 of the Bankruptcy Code. Section 105 authorizes a bankruptcy court to issue orders as necessary to further the purposes of the Bankruptcy Code. *In re Dansereau*, 274 B.R. 686, 689 (Bankr. W.D. Tex. 2002). A bankruptcy court's authority to issue sanctions under § 105 comports with its inherent power to sanction. *In re Brown*, 444 B.R. 691, 694 (Bankr. E.D. Tex. 2009).

19. To support sanctions under section 105, the Court must find that Midas filed its claims in bad faith. *In re Rodriguez*, 652 B.R. 750, 760 (Bankr. S.D. Tex. 2023). Bad faith conduct may be established if a court finds that the party "deliberately abused the judicial process." *Id.* Intentional deceit also shows bad faith warranting sanctions. *In re Paige*, 365 B.R. 632, 639 (Bankr. N.D. Tex. 2007).

20. Midas's attempt to relitigate claims that it has already lost or abandoned and to seek an enormous sum it could never hope to prove is wasteful. They bespeak that its motive is to churn proceedings, cause delays that hold up the Debtors' plan process, and, by doing so, gives itself leverage using claims it knows (and was told by the Western District) have no merit.

21. In these proceedings, Midas has presented the Court with an array of contradictory and untimely arguments. It has: (i) filed a proof of claim, voluntarily submitting itself to this Court's jurisdiction; (ii) argued that the Claim Objection be stayed pending a written order by the District Court, which already found noninfringement and has paid Midas's Claims no attention in over a year; (iii) argued, for the first time, at the July 8 hearing that this Court lacks jurisdiction; and (iv) moved to withdraw the reference *four months* after the Debtors filed their Objection, after requiring the parties to file numerous pleadings in this Court regarding the Midas Claims. These tactics only make sense in the context of a litigant that has accepted the futility of its claims but believes it can still benefit by draining estate resources and holding these cases hostage until the debtors accede to its demands. Midas knows that it has forced the Debtors to expend significant estate resources on its claims, while putting forth a series of truncated and slapdash pleadings that support its ultimate goal of imposing maximum delay on the Debtors in exchange for Midas's lowest investment of time and cost. Advancing these numerous meritless arguments undermines the integrity of the bankruptcy system and clearly demonstrates bad faith. *In re Rodriguez*, 652 B.R. 750, 761 (Bankr. S.D. Tex. 2023).

22. Moreover, Midas's misrepresentations regarding the posture of the District Court litigation warrant sanctions. In its initial response to the Court's claim objection, Midas misleadingly stated that there is uncertainty regarding the finality of the District Court's ruling, and it has repeated that argument in each of its pleadings since. *See* ECF No. 1069. As the Debtors have explained, an oral ruling can be final. *Ueckert v. Guerra*, 38 F.4th 446, 449, 450 (5th Cir. 2022) ("A bench ruling can be effective without a written order … if it is final" and it is final if the district court "intended that its order be effective immediately."). Even if Midas could plausibly disagree that the District Court's ruling has a preclusive effect, practically, Midas knows

that the case is over. Shortly after the District Court's Ruling, that court canceled the forthcoming trial as well as all scheduled proceedings. In a case that has been stagnant for a year and a half, Midas cannot reasonably believe that the District Court intends to allow further briefing or an amendment to Midas' expert report, which it excluded even before reaching its summary judgment ruling of noninfringement. *C.F. Ginther v. Texas Com. Bank*, N.A., 111 F.R.D. 615, 621 (S.D. Tex. 1986) ("Even without the existence of the May 16, 1985, order, it should have been obvious to an attorney that the matters alleged in the present complaint have all been previously litigated, and on such a finding a Court will impose sanctions under Rule 11…Ginther and his attorney must reimburse the Defendants for the costs, expenses and attorneys' fees incurred in connection with responding to the instant suit."); *McGregor v. Bd. of Comm'rs of Palm Beach Cnty*., 956 F.2d 1017, 1022–23 (11th Cir. 1992) ("By dismissing Count I, the county prevailed upon that issue in the district court under § 1988. Therefore, McGregor is liable for the county's costs and attorney's fees incurred in litigating that count."); *Meyers v. Textron Fin. Corp.,* 609 F. App'x 775, 780–81 (5th Cir. 2015) ("upholding sanctions when plaintiff's statement of facts was "mostly copied *verbatim* from a brief filed previously with this court, rehashing their already-rejected fraud claims without a single citation to the record, and is largely irrelevant to this appeal.") (emphasis in original). But despite knowing its infringement claims to be futile, Midas seeks to calculatedly use the judicial process to hold up the Debtors' plan process in the hope of extracting a payment for meritless, worthless claims.

    **C.**    **The Court Should Award Sanctions Pursuant to the Patent Act**

23. The Patent Act provides yet another basis for the Court to grant appropriate sanctions against Midas and its counsel. Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

A bankruptcy court hearing a patent claim is empowered to apply section 285. *Id.* ("The court … may award…"); *see, e.g., In re Roeder*, 2009 WL 4907014, at *13 (Bankr. N.D. Iowa Dec. 14, 2009) (finding case exceptional and awarding attorney fees under § 285); *In re AI Realty Mktg. of New York, Inc.*, 293 B.R. 586, 620 (Bankr. S.D.N.Y. 2003), *adhered to on reconsideration*, 304 B.R. 622 (Bankr. S.D.N.Y. 2004), and *aff'd in part, rev'd in part sub nom. Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378 (S.D.N.Y. 2004), *aff'd*, 153 F. App'x 703 (Fed. Cir. 2005) (recognizing authority to award fees under § 285 but declining on the merits to award them).

24. The awarding of attorney fees pursuant to 35 U.S.C. § 285 is an issue unique to patent law that is subject to Federal Circuit law." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001). Under Federal Circuit law, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position ... or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Bases for exceptionality can include a clear weakness of the infringement claims on the merits, public availability of information demonstrating noninfringement before the infringement suit was filed, notice of noninfringement after the complaint was filed, or the continuation of litigation after it was apparent claims were objectively baseless. *Dragon Intell. Prop. LLC v. DISH Network L.L.C.*, 101 F.4th 1366, 1370, 1371 (Fed. Cir. 2024) (affirming exceptional case finding and decision to award attorney fees, citing these factors); *see Octane Fitness, LLC*, 572 U.S. at 554 ("courts determine whether a case was exceptional in the "exercise of their discretion, considering the totality of the circumstances").

25. All of those factors are present in Midas's proofs of claim. While a reasonable litigant would have recognized the obvious flaws in Midas's infringement case long before the summary judgment stage, the weakness of Midas's case became undeniable—even to an

unreasonable litigant—when the District Court rejected it on summary judgment. The summary judgment ruling constituted a substantive judicial determination (on a full record) that Midas's claims lacked evidentiary support, and that decision has preclusive effect in this Court. Summary Judgment Motion ¶¶ 29-47. But Midas pressed those claims in this Court anyway, even though it was intimately familiar with both the evidentiary record and the District Court's ruling before it filed its proof of claim. *See Dragon*, 101 F.4th at 1370 (continuing litigation after it is apparent claims are baseless contributes to exceptional case finding).

        **D.**    **The Court Should Order Midas to Pay All Attorneys' Fees and Expenses That the Debtors Incurred Litigating the Midas Claims**

26.    Rule 11 expressly authorizes courts to order parties that violate Rule 11 to pay their opponent "the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, district including a reasonable attorney's fee." Fed. R. Civ. P. 11; Fed. R. Bankr. 9011. Courts have discretion to fashion appropriate sanctions, and the payment of attorney's fees and expenses, in addition to being expressly contemplated in the Rule, specifically addresses the sanctionable conduct that the rule seeks to deter. It ensures that "victims of frivolous lawsuits do not pay the expensive legal fees associated with defending such lawsuits" and that litigants do not maintain baseless legal arguments. *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988). When imposed against litigants, "financial penalties have been characterized as perhaps 'the most effective way to deter a powerful and wealthy party from bringing frivolous or vexatious litigation." *Id*; *see Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987) ("Imposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits.). Similarly, courts have found reason to require an offending party to pay attorney's fees pursuant to section 105, *In re Paige*, 365 B.R. 632, 640 (Bankr. N.D. Tex. 2007), and the Patent Act, *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1277 (Fed. Cir. 2018).

27. In this case, monetary sanctions provide the only means to address Midas's decision to leverage settlement from the Debtors through its continued pursuit of baseless claims. Midas has known that no Court will find infringement for its claims at least since the District Court's summary judgment ruling, before it filed its proofs of claim. Therefore, the Debtors request that the Court order Midas to reimburse all fees that the Debtors have accrued in these cases litigating the Midas Claims.

28. Midas should never have filed its proofs of claim, and when they signed the proofs of claim, Midas's counsel knew that their signatures violated Rule 11 by propounding meritless, vexatious litigation. *See Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991) ("The reasonableness of the conduct involved is to be viewed at the time counsel or the party signed the document alleged to be the basis for the Rule 11 violation. In this case, that conduct consists of signing the complaint without making a reasonable inquiry into the law underlying the claim."); *Donaldson v. Clark,* 819 F.2d 1551, 1559–60 (11th Cir.1987) ("This court has held that the language of Rule 11 is sufficient notice to exact a duty on counsel to inquire whether the complaint has a sufficient basis in law and fact.). The Debtors have made every effort to mitigate the costs associated with the Midas Claims, first by seeking to lift the stay to allow a written order in district court, and then by attempting to avoid protracted litigation through the Motion to Estimate and the Summary Judgement Motion. *See Jennings v. Joshua Indep. Sch. Dist*., 948 F.2d 194, 198 (5th Cir. 1991) ("[T]he district court held that the defendants met their duty to mitigate their costs by filing motions for summary judgment. We agree."). In these circumstances, an award of all fees in this action is the minimal amount to appropriately compensate the Debtors and deter similar tactics. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 56–57, 111 S. Ct. 2123, 2139, 115 L. Ed. 2d 27 (1991) ("the District Court concluded that full attorney's fees were warranted due to the

frequency and severity of Chambers' abuses of the judicial system and the resulting need to ensure that such abuses were not repeated. Indeed, the court found Chambers' actions were 'part of [a] sordid scheme of deliberate misuse of the judicial process' designed 'to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources.'").

## CONCLUSION

Debtors respectfully request that the Court issue an order (i) finding that Midas and its counsel's conduct warrants sanctions under Bankruptcy Rule 9011(b)(1)-(3), 35 U.S.C. § 285, and 11 U.S.C. 105; (ii) awarding the Debtors sanctions in such amount as will compensate them for their damages and expenses caused by the filing of Midas's proofs of claim, as well as deter conduct of this type in the future; and (iii) granting such other and further relief as the Court may deem just and appropriate.

## RESERVATION OF RIGHTS

29. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

Respectfully submitted this 4th day of September, 2025.

      QUINN EMANUEL URQUHART & SULLIVAN, LLP

      */s/  Patricia B. Tomasco*
      Patricia B. Tomasco (SBN 01797600)
      Cameron Kelly (SBN 24120936)
      Alain Jaquet (*pro hac vice*)
      Rachel Harrington (*pro hac vice*)
      700 Louisiana Street, Suite 3900
      Houston, Texas 77002
      Telephone: 713-221-7000
      Facsimile: 713-221-7100
      Email: pattytomasco@quinnemanuel.com
      Email: cameronkelly@quinnemanuel.com
      Email: alainjaquet@quinnemanuel.com
      Email: rachelharrington@quinnemanuel.com

      - and -

      Eric Winston (*pro hac vice*)
      Razmig Izakelian (*pro hac vice*)
      Ben Roth (*pro hac vice*)
      865 S. Figueroa Street, 10th Floor
      Los Angeles, California 90017
      Telephone: 213-443-3000
      Facsimile: 213-443-3100
      Email: ericwinston@quinnemanuel.com
      Email: razmigizakelian@quinnemanuel.com
      Email: benroth@quinnemanuel.com

      - and –

      STRIS & MAHER LLP
      Peter K. Stris
      Elizabeth Brannen
      17785 Center Court Dr N., Suite 600
      Cerritos, CA 90703
      Phone: (213) 995-6800
      Fax: (213) 261-0299
      pstris@stris.com
      ebrannen@stris.com

      *Counsel to the Debtors and Debtors-In-Possession*

## Certificate of Service

I, Patricia B. Tomasco, hereby certify that on the 4th day of September, 2025, a copy of the foregoing Motion was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and to Midas Green Technologies, LLC, c/o Joseph Thomas, 18101 Von Karman Avenue, Suite 230, Irvine, CA 92612, email jthomas@twtlaw.com.

*/s/ Patricia B. Tomasco*
Patricia B. Tomasco