## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

## EMERGENCY MOTION OF THE SPECIAL COMMITTEE TO STRIKE PRIVILEGED INFORMATION FROM LEHOTSKY KELLER COHN LLP'S SECOND AND FINAL APPLICATION FOR PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF AUGUST 28, 2024 THROUGH JUNE 30, 2025 [ECF NOS. 1560-1561]

> **Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. Relief is requested not later than 9:00 a.m. (Prevailing Central Time) on October 2, 2025. If you object to the relief requested or you believe that emergency consideration is not warranted, you should file an immediate response. You must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested. A hearing will be requested on this matter on October 2, 2025 at 9:00 a.m. (Central Prevailing Time).**

---

[1]  Debtors in these Chapter 11 Cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of Debtors in these Chapter 11 Cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

The Special Committee of the Board of Directors of Debtor Rhodium Enterprises, Inc. (the "Special Committee") respectfully submits this Emergency Motion (the "Motion") to strike privileged information from Lehotsky Keller Cohn LLP's ("LKC") Second and Final Fee Application for Payment of Compensation and Reimbursement of Expenses for the Period August 28, 2024, Through June 30, 2025 (the "Fee Application") [ECF Nos. 1560-1561].

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334; this matter is a core proceeding under 28 U.S.C. § 157(b).

2.      Pursuant to 28 U.S.C. §§ 1408 and 1409, venue in this district is proper.

3.      The bases for the relief are Section 105(a) of the Bankruptcy Code, Rules 2016 and 9006(b) of the Federal Rules of Bankruptcy Procedure, and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

4.      Between February 19 and March 18, 2025, the Debtors and Whinstone, US, Inc. ("Whinstone") engaged in a mediation relating to disputes between the Debtors and Whinstone (the "Mediation") before Judge Mark X. Mullin, United States Bankruptcy Judge for the Northern District of Texas. [Declaration of Charles Topping in Support of Special Committee's Objection to LKC's Fee Application (Topping Decl.) ¶ 4.]

5.      In connection with preparations for the Mediation, the Board of Directors of Rhodium Enterprises, Inc. ("REI"), together with those of its officers

and professional advisors who routinely attend Board meetings, discussed strategy for the mediation and possible outcomes. [Topping Decl. ¶ 5.]

6.      Those discussions, and the information shared during those discussions, were for the purpose of providing legal advice and formulating litigation strategy, including strategy for potentially settling the litigation. [Topping Decl. ¶ 7.]

7.      LKC participated in preparing the information for the Debtors relating to settlement strategy and rough numbers estimating the potential settlement amounts. [Topping Decl. ¶ 6.]

8.      Portions of that privileged information can be found at paragraphs 29-32 of the Fee application. [ECF Nos. 1560-1561.]

9.      LKC disclosed the privileged information in its sealed Fee Application without obtaining permission from the Debtors. [Topping Decl. ¶ 8.]

## BASIS FOR RELIEF

10.      In its Fee Application, LKC filed with this Court information protected by Debtors' attorney-client privilege and the work product doctrine with LKC as their counsel

11.      Before the Court can consider the Fee Application, the Court must determine whether paragraphs 29-32 contain privileged information that should be stricken from the Fee Application such that LKC is barred from relying on it.  The Special Committee previously indicated on behalf of Debtors that Debtors did not waive the privilege with respect to this information, nor did Debtors authorize LKC to do so. [ECF No. 1665.]

3

12.     Privileged information includes "a confidential communication between client and counsel . . . generated for the purpose of obtaining or providing legal assistance . . . ." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017) (quoting *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)); *see also Wells v. Rushing*, 755 F.2d 376, 379 (5th Cir. 1985).

13.     The purpose of the attorney-client privilege is "to protect confidential communications and to protect the attorney-client relationship." *Shields v. Sturm, Ruger & Company*, 864 F.2d 379, 382 (5th Cir.1989).

14.     Information protected by the work product doctrine includes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

15.     The work product doctrine insulates an attorney's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395, 400 (1981)).

16.     The Texas Rules of Evidence provide that the attorney-client privilege is waived by the client through voluntary disclosure or consent. *Watson v. Payne (In re Veigel)*, No. 4:12-cv-368, 2013 U.S. Dist. LEXIS 40865, at *6 (E.D. Tex. Mar. 24, 2013) (citing Tex. R. Evid. 511); *see also* Texas Disciplinary Rules of Professional Conduct ("DRPC") 1.06 and 1.09.

17.     Filing under seal protects documents from the view of the public, but does not necessarily protect the privilege. *See First Am. CoreLogic, Inc. v. Fiserve, Inc.*, No. 2:10-cv-132-TJW, 2010 WL 4975566, at *3 (E.D. Tex. Dec. 2, 2010) ("Filing under seal is not the same as filing *in camera*.").

18.     LKC is still counsel of record for the Debtors and the representation has not terminated, which prevents LKC's use of privileged information in connection with a fee dispute.  *See* Model Rules of Professional Conduct ("RPC") 1.7, 1.9; DRPC 1.06, 1.09.[2]

19.     Under DRPC 1.05 and 5.03 a lawyer cannot damage his client unnecessarily.

20.     "A lawyer entitled to a fee must be permitted to prove the services rendered in an action to collect it . . . Any disclosure by the lawyer, however, ***should be as protective of the client's interest as possible***." *Judwin Properties, Inc. v. Griggs & Harrison, P.C.*, 981 S.W.2d 868, 869–70 (Tex. App. 1998) (quoting DRPC 1.05 cmt. 15, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp. 1998) (Tex. State Bar R, Art. X, § 9) (emphasis added)).

21.     Under DRPC Rule 503(d), "[t]here is no privilege under this rule: . . . [a]s to a communication ***relevant*** to an issue of breach of duty by the lawyer to his client or by the client to his lawyer." *Judwin*, 981 S.W.2d at 870 (Tex. App. 1998)

---

[2] The RPCs apply in federal court. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (applying RPC in the 5th Circuit).

(emphasis added) (finding no privilege where no dispute that fee statements were related to issue of nonpayment).[3]

22.    Here, the amounts on which LKC relies to calculate its success fee are irrelevant to the calculation—and protected by both the attorney-client privilege and the work product doctrine. The amounts from the pre-mediation estimate are wrong, and therefore such disclosure is and was entirely unnecessary.

23.    Debtors are currently engaged in good faith negotiations with Whinstone to determine the accurate value associated with the assets purchased, the Power Supply Agreements, and the release of claims.  [Declaration of Christopher Wheeler in Support of Special Committee's Objection to LKC's Fee Application (Wheeler Decl.) ¶¶ 22-24, 26.]

24.    Instead of waiting for the accurate allocation to be reached, LKC fabricated a premature fee dispute for the purpose of submitting this incorrect, privileged, and likely higher amount to the Court in pursuit of the highest success fee possible, because it would be unable to submit this higher, incorrect amount if it waited for the accurate allocation.

25.    In fact, this fee dispute puts Debtors in jeopardy by increasing their risk of an audit by the IRS or the State. [Wheeler Decl. ¶¶ 25-27.]

---

[3] LKC's reliance on the case *Carty v. Quarterman*, No. 06–614, 2008 WL 8104283, at *40 (S.D. Tex. Sept. 30, 2008) to support its use of this privileged information is misplaced because it involves a client's dispute of the lawyer's conduct and not a fee dispute, and it focused on the crime-fraud exception or instances of deceitful conduct by an attorney, which do not apply here. The proper analysis begins with analyzing whether the communication is narrowly tailored to the relevant issue.

26.     Additionally, transparency is critical in bankruptcy. *In re Visicon Shareholders Trust*, 478 B.R. 292, 320 (Bkrtcy. S.D. Ohio 2012) ("bankruptcy under any chapter of the Code demands disclosure, transparency and candor."). Other interested parties can and will object to the sealing of information needed to evaluate the fees submitted to this Court for reimbursement by the Estate, because they have the right (and requirement) to object to the Fee Application. Likewise, interested parties have the right to challenge the evidence and cross examine witnesses about evidence supporting the Fee Application at the inevitable evidentiary hearing. Therefore, LKC's submission of and reliance on privileged information in this context means that the privileged information will likely not stay confidential. The privileged information will potentially become unsealed and part of the public record because this is a bankruptcy matter. As a result, LKC's reliance on this privileged information and putting it in issue damages Debtors.

27.     LKC never obtained Debtors' consent to disclose this privileged information, and so there can be no voluntary waiver.  LKC did not have to include this information in the Fee Application—and it should not have because it is irrelevant. LKC could have simply stated an estimate rather than submit information protected by privilege and work product—or waited for the allocation negotiations with Whinstone to complete.

28.     There is no question that the information is privileged pursuant to the application of both the attorney-client privilege and the work product doctrine. LKC admits as much by stating in the Fee Application that "[t]he Debtors' Board,

executives, and outside professionals reviewed and relief on this presentation
information was prepared by the Debtors' litigation counsel for the purpose of
advising the Debtors on what a settlement with Whinstone might look like."  Thus,
by LKC's own description, the information cited is privileged, non-public, and non-
final. Indeed, LKC noted in the Fee Application that it did not attach the
presentation as an exhibit due to the confidential nature of the information and
would only do so if the Court ordered it.  [ECF No. 1561 at ¶¶ 29-32.]

  29. LKC's calculation of its proposed Success Fee is based entirely on this
privileged information, described as "the numbers and analysis in the PowerPoint
presentation that the Debtors prepared for the Debtors' Board of Directors in
advance of the mediation with Whinstone."  [ECF No. 1561 at ¶ 29.]  The
information includes detailed assessments by LKC of possible "Settlement Value,"
"Ongoing Business Value," "Risked Damages" and other components of a possible
settlement with Whinstone.  Those assessments were communicated to the
Rhodium Board by LKC in the days leading up to the February 19, 2025, mediation
with Whinstone.

  30. LKC's inclusion of the privileged information was presumably
motivated by the fact that LKC has no credible basis on which to calculate its
Success Fee because it is premature, since Debtors and Whinstone have not yet
agreed on the Damages Amount.  Motivated by the desire to be paid and unwilling
to wait for the situation to play out appropriately and in accordance with its

agreement with the Debtors, LKC chose to improperly rely on privileged, pre-mediation settlement estimates.

31.     Even though the information was filed under seal, it was nevertheless disclosed to a third party without the consent of Debtors—the holder of the privilege.

32.     As a result, the Special Committee requests that this Court enter an order striking paragraphs 29-32 of the Fee Application, and order LKC re-file its Fee Application without paragraphs 29-32.

## EMERGENCY CONSIDERATION IS WARRANTED

33.     Pursuant to Local Rule 9013-1, the Special Committee respectfully requests emergency consideration of this Motion. Any delay in granting the relief requested would cause irreparable harm to Debtors because it involves privileged information.

## RESERVATION OF RIGHTS

34.     The Special Committee submits this Motion without prejudice to, and with a full reservation of the Special Committee's rights, claims, defenses and remedies, including the right to amend, modify or supplement this Motion to raise additional objections and to object to and introduce evidence at any hearing relating to the Motion, and without in any way limiting any other rights of the Special Committee, as may be appropriate.

9

## <u>CONCLUSION</u>

35.     For the foregoing reasons, the Special Committee respectfully requests

that the Court grant this Motion after consideration at the status conference on

October 2, 2025, and grant such other relief as may be just and proper.


Dated this 1st day of October, 2025.

BARNES & THORNBURG LLP

<u>/s/ Trace Schmeltz</u>
Vincent P. (Trace) Schmeltz III (*pro hac vice*)
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-214-5602
Facsimile: 312-759-5646
Email: tschmeltz@btlaw.com

*Counsel for the Special Committee of the*
*Board of Directors of Rhodium Enterprises,*
*Inc.*

## Certificate of Accuracy

I, Vincent P. (Trace) Schmeltz III, hereby certify that the foregoing statements are true and accurate to the best of my knowledge. The statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ Trace Schmeltz
Vincent P. (Trace) Schmeltz III

## Certificate of Service

I, Vincent P. (Trace) Schmeltz III, hereby certify that on the 1st day of October, 2025, a copy of the foregoing was served via the Clerk of the Court through the ECF system to the parties registered to receive such service.

/s/ Trace Schmeltz
Vincent P. (Trace) Schmeltz III