# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

## DEBTORS' SECOND OMNIBUS OBJECTION TO CERTAIN CLAIMS PURSUANT TO BANKRUPTCY CODE SECTIONS 502(B), BANKRUPTCY RULE 3007, AND LOCAL RULE 3007-1 BECAUSE CLAIMS HAVE BEEN SATISFIED AND BASED ON OTHER SUBSTANTIVE GROUNDS

> **This is an objection to your claim. This objection asks the Court to disallow the claim that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claim may be disallowed without a hearing.**

Pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule[s]"), and rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rule[s]"), Rhodium Encore LLC, and its affiliates, as debtors and debtors in possession (collectively, the "Debtors" or "Rhodium") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this objection (the "Objection") seeking disallowance of the Proofs of Claim Nos. 54, 66, 73, 78, 85, 86, 87, 88, 90, 91, 92, 93, 104, 105, 106, 108, 110, 112, 114, 118, 120, 121, 125, 127, 129, 130,

---

[1]   The Debtors in these Chapter 11 Cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these Chapter 11 Cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

131, 132, 133, 134, 135, 137, 138, 140, 141, 142, 144, 145, 146, 147, 148, 150, 153, 156, 160, 163, and 219 (the "Claims").  In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1.      The majority of these Claimants, in addition to seeking payment of the Rhodium 2.0 and Rhodium Encore Notes—now paid in full—assert a wide range of derivative claims.  But those claims should be disallowed, because they belong exclusively to the Debtors' estates.

2.      Claimants also assert damages arising from their ownership of Class A shares in Rhodium Enterprises that must be subordinated to the level of common stock under section 510(b) of the Bankruptcy Code.  Finally, certain warrant claims should be disallowed because the instruments upon which they are based were redeemed/terminated for value by the Debtors in 2022.  Accordingly, the Debtors respectfully request that the Court disallow the Claims in their entirety, or if and to the extent allowed, provide for their subordination *pari passu* with Rhodium Enterprises' Class A shares.

## RELIEF REQUESTED

3.      By this Objection, the Debtors seek entry of an order disallowing in their entirety the Claims identified on **Schedule 1** to the Order.

4.      In support of this Objection, the Debtors submit the *Declaration of Andrew Popescu in Support Of Debtors' Second Omnibus Objection To Claims Pursuant To Bankruptcy Code Section 502(b), Bankruptcy Rule 3007, And Local Rule 3007-1 Because Claims Have Been Satisfied And Based On Other Substantive Grounds* (the "Popescu Declaration"), attached hereto as **Exhibit A**.

---

[2]     Capitalized terms not otherwise defined in this section are defined in other sections of this Objection.

## JURISDICTION

5.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Objection.

6.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested are section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## BACKGROUND

**A.      General Background of The Chapter 11 Cases**

8.      On August 24 and August 29, 2024 (the "Petition Dates"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The cases are jointly administered.

9.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 22, 2024, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").  No trustee or examiner has been appointed in these Chapter 11 Cases.

10.      On October 15, 2024, the Debtors filed the *Emergency Motion Of Debtors For Entry Of An Order (I) Setting Bar Dates For Filing Proofs Of Claim, (II) Approving The Form Of Proofs Of Claim And The Manner Of Filing, (III) Approving Notice Of Bar Dates, And (IV) Granting Related Relief* (ECF No. 269), which the Court granted by entering the relating order on October 18, 2024 (the "Bar Date Order"), setting November 22, 2024, as the general bar date for filing proofs of claim.  The Debtors promptly served notice of the bar date on all creditors.  *See* ECF No. 284.

11.     Further details of the Debtors' business, capital structure, governing bodies, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration Of David M. Dunn In Support Of Chapter 11 Petitions And First Day Relief* (ECF No. 35).

**B.     Events Prior To The Chapter 11 Cases**

    i.     <u>Claimants Invest In Certain Debtors' Notes And Equity</u>

12.     Rhodium is a technology company that mined Bitcoin and was founded by Nathan Nichols, Chase Blackmon, Cameron Blackmon, and Nicholas Cerasuolo (the "Founders"). The Debtors operated out of a facility located in Rockdale, Texas (the "Rockdale Site") as well as a site in Temple, Texas (the "Temple Site").

13.     In April 2020, the Founders initially incorporated Rhodium 30MW LLC ("Rhodium 30MW") in Delaware. Between October 2020 and January 2021, the Founders incorporated Jordan HPC LLC ("Jordan"), Rhodium 2.0 LLC ("Rhodium 2.0"), and Rhodium Encore LLC ("Rhodium Encore") in Delaware for the purpose of operating Debtors' Bitcoin mining business.[3] Initially, (i) Rhodium JV LLC ("Rhodium JV") was the only equity holder of Rhodium 2.0, Rhodium 30MW, and Rhodium Encore; while (ii) Air HPC LLC ("Air") was the sole equity holder of Jordan.

14.     Between January 20, 2021, and February 4, 2021, certain Debtors raised capital to fund the development of the Rockdale Site. The Claimants invested in Rhodium 2.0 and Rhodium Encore by acquiring equity and subscribing certain secured promissory notes (the "Note[s]"), as detailed in Table 1 below:

---

[3]     Debtors Jordan, Rhodium 2.0, Rhodium 30MW and Rhodium Encore—along with Debtor Rhodium 10MW LLC ("Rhodium 10MW"), which was incorporated in Delaware in March 2021—are collectively defined as the "Operating Companies."

| Table 1:  Claimants' 2020-2021 Investments In The Operating Companies | | | | |
|---|---|---|---|---|
| Claimant Name | Investment Date (Approx.) | Issuing Debtor | Total Investment Amount | Type of Investment |
| **345 Partners SPV2 LLC** | 2/3/2021 | Rhodium Encore | $250,000 | • Class B Non-Voting Units<br>• Note (principal of $175,000) |
| **GR Fairbairn Family Trust** | 2/3/2021 | Rhodium Encore | $1,000,000 | • Class B Non-Voting Units<br>• Note (principal of $700,000) |
| **Grant Fairbairn Revocable Trust** | 2/4/2021 | Rhodium Encore | $1,000,000 | • Class B Non-Voting Units<br>• Note (principal of $700,000) |
| **GRF Tiger Trust** | 2/3/2021 | Rhodium Encore | $1,000,000 | • Class B Non-Voting Units<br>• Note (principal of $700,000) |
| **Jacob Rubin** | 2/2/2021 | Rhodium Encore | $200,000 | • Class B Non-Voting Units<br>• Note (principal of $140,000) |
| **Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended** | 2/3/2021 | Rhodium Encore | $2,000,000 | • Class B Non-Voting Units<br>• Note (principal of $1,400,000) |
| **NC Fairbairn Family Trust** | 2/4/2021 | Rhodium Encore | $1,000,000 | • Class B Non-Voting Units<br>• Note (principal of $700,000) |
| **NCF Eagle Trust** | 2/3/2021 | Rhodium Encore | $1,000,000 | • Class B Non-Voting Units<br>• Note (principal of $700,000) |
| **Nina Claire Fairbairn Revocable Trust** | 2/3/2021 | Rhodium Encore | $1,000,000 | • Class B Non-Voting Units<br>• Note (principal of $700,000) |
| **Private Investor Club Feeder Fund 2020-G LLC** | 1/28/2021 | Rhodium 2.0 | $14,563,094.04 | • Class B Non-Voting Units<br>• Note (principal of $10,194,165.83) |
| **Private Investor Club Feeder** | 1/20/2021 | Rhodium 2.0 | $11,523,204 | • Class B Non-Voting Units<br>• Note (principal of $8,066,242.80) |

| Table 1:  Claimants' 2020-2021 Investments In The Operating Companies | | | | |
|---|---|---|---|---|
| Claimant Name | Investment Date (Approx.) | Issuing Debtor | Total Investment Amount | Type of Investment |
| **Fund 2020-H LLC** | | | | |
| **Richard Fullerton** | 2/3/2021 | Rhodium Encore | $3,000,000 | • Class B Non-Voting Units<br>• Note (principal of $2,100,000) |
| **Transcend Partners Legend Fund LLC** | 2/3/2021 | Rhodium Encore | $2,500,000 | • Class B Non-Voting Units<br>• Note (principal of $1,750,000) |
| **Valley High LP** | 2/3/2021 | Rhodium Encore | $16,500,000 | • Class B Non-Voting Units<br>• Note (principal of $11,550,000) |
| **Wilkins Duignan 2009 Revocable Trust** | 2/3/2021 | Rhodium Encore | $900,000 | • Class B Non-Voting Units<br>• Note (principal of $630,000) |

15.     The respective equity interests of all investors in the Debtors were subsequently rolled up to Rhodium Enterprises, Inc. ("Rhodium Enterprises") in the June 2021 reorganization (as described in more detail below).

ii.     The Rollup Transaction

16.     In early 2021, Rhodium's corporate structure consisted of the following:

•     Founders' investment vehicle, non-Debtor Imperium Investments Holdings LLC ("Imperium"), owned 99% of Rhodium Technologies LLC ("Rhodium Technologies"),[4] a Delaware limited liability company;

•     Rhodium Technologies was the sole owner of Rhodium JV and Air;

•     Rhodium JV owned various majority equity interests in four Operating Companies: Rhodium 10MW, Rhodium 2.0, Rhodium 30MW and Rhodium Encore; and

•     Air owned 50% of Jordan, the fifth Operating Company.

---

[4]     At that time, Rhodium Technologies was named Rhodium Enterprises LLC.

17.     In April 2021, the Debtors formed Rhodium Enterprises, a Delaware corporation, to be the holding company of Rhodium Technologies and its Debtor subsidiaries upon completion of the "Rollup," a corporate reorganization that closed in late June 2021.  As part of the Rollup, Rhodium completed the execution of its corporate reorganization whereby (i) all non-controlling interest unit holders of Jordan, Rhodium 10MW, Rhodium 30MW, Rhodium 2.0 and Rhodium Encore; and (ii) all non-controlling interest unit holders of Rhodium Technologies (collectively, the "Rollup Participants") entered into a transaction whereby in-kind contributions of the Rollup Participants' ownership in the respective entities (the "Non-Controlling Membership Interests") were made to Rhodium Enterprises in exchange for 110,593,401 shares of Class A common stock, par value $0.0001 per share, of Rhodium Enterprises (the "Class A Common Stock") in the aggregate.  Rhodium Enterprises then transferred the Non-Controlling Membership Interests to Rhodium Technologies in exchange for units of Rhodium Technologies.

18.     In connection with the Rollup: (i) Imperium obtained approximately 62% of the economic interest in Rhodium Technologies; (ii) Rhodium Enterprises acquired approximately 38% of the economic interest in Rhodium Technologies; (iii) Rhodium Enterprises became the sole managing member of Rhodium Technologies; (iv) Rhodium Enterprises issued 100 shares of its Class B common stock to Imperium, which has 100% of the outstanding voting power of Rhodium Enterprises; (v) Rhodium Enterprises issued 110,593,401 shares of Class A Common Stock to the Rollup Participants, including the Claimants; and (vi) Rhodium Technologies directly or indirectly owns all of the outstanding equity interests in the subsidiaries through which Rhodium conducted its mining operations.

19.     Following the Rollup, the Claimants thus became equity holders of Rhodium

Enterprises and secured creditors under the Notes.[5]  As a result, as of the Petition Dates, Claimants'

holdings of Debtors' equity and Notes' debt was the following:

| Table 2: Equity and Pre-Petition Debt Under the Notes Owed To Claimants | | |
|---|---|---|
| **Claimant** | **No. of Shares in Rhodium Enterprises[6]** | **Pre-Petition Debt[7]** |
| **345 Partners SPV2 LLC** | 187,943 (Class A Common Stock) | $174,962 (Rhodium Encore) |
| **GR Fairbairn Family Trust** | 751,774 (Class A Common Stock) | $712,204 (Rhodium Encore) |
| **Grant Fairbairn Revocable Trust** | N/A | $708,184 (Rhodium Encore) |
| **GRF Tiger Trust** | 751,774 (Class A Common Stock) | $706,861 (Rhodium Encore) |
| **Jacob Rubin** | 150,354 (Class A Common Stock) | $140,000 (Rhodium Encore) |
| **Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended** | 1,503,548 (Class A Common Stock) | $1,400,000 (Rhodium Encore) |
| **NC Fairbairn Family Trust** | 751,774 (Class A Common Stock) | $706,861 (Rhodium Encore) |

---

[5]   In or around March 2023, (i) Claimant Valley High LP ("Valley High") transferred all of its Class A Common Stock to one or more individuals or entities belonging to, or associated with, the Fairbairn family (*i.e.*, Emily, Grant, Malcolm, and Nina Claire Fairbairn); (ii) Claimant Grant Fairbairn Revocable Trust ("Grant Trust") transferred all of its Class A Common Stock to Grant R. Fairbairn Charitable Reminder Unitrust; (iii) Claimant Nina Claire Fairbairn Revocable Trust ("Nina Trust") transferred all of its Class A Common Stock to Nina C Fairbairn Charitable Remainder Unitrust; and (iv) Claimant Transcend Partners Legend Fund ("Transcend") transferred all of its Class A Common Stock to Nina Fairbairn Charitable Reminder Unitrust.

Claimants Valley High, Grant Trust, Nina Trust, and Transcend are part of a group of Claimants that are investment vehicles controlled by one or more individuals belonging to the Fairbairn family.  In addition to the abovementioned four entities, this group of Claimants includes (i) GR Fairbairn Family Trust ("GR Family Trust"); (ii) GRF Tiger Trust ("Tiger Trust"); (iii) NC Fairbairn Family Trust ("NC Family Trust"); and (iv) NCF Eagle Trust ("Eagle Trust").

[6]   As reflected in the Second Amended Equity List Of Rhodium Enterprises, Inc. (ECF No. 1054).

[7]   As reflected in the Exhibit to the *Order Amending The Final Cash Collateral Order To Authorize Final Payment to Prepetition Secured Lenders* (the "Payment Order") (ECF No. 1197), except for Wilkins Duignan 2009 Revocable Trust ("Wilkins"), for which the pre-petition debt is reflected in the *Stipulated Modification To Order Amending Final Cash Collateral Order Authorizing Final Payment To Prepetition Secured Lender* (ECF No. 1478).  Regarding the Payment Motion and Payment Order, *see infra* Sections D and II.

| Table 2: Equity and Pre-Petition Debt Under the Notes Owed To Claimants | | |
|---|---|---|
| **Claimant** | **No. of Shares in Rhodium Enterprises[6]** | **Pre-Petition Debt[7]** |
| **NCF Eagle Trust** | 751,774 (Class A Common Stock) | $706,861 (Rhodium Encore) |
| **Nina Claire Fairbairn Revocable Trust** | N/A | $708,183 (Rhodium Encore) |
| **Private Investor Club Feeder Fund 2020-G LLC** | 6,030,522 (Class A Common Stock) | $10,193,393 (Rhodium 2.0) |
| **Private Investor Club Feeder Fund 2020-H LLC** | 4,771,715 (Class A Common Stock) | $8,065,631 (Rhodium 2.0) |
| **Richard Fullerton** | 2,255,322 (Class A Common Stock) | $2,100,000 (Rhodium Encore) |
| **Transcend Partners Legend Fund LLC** | N/A | $1,766,168 (Rhodium Encore) |
| **Valley High LP** | N/A | $11,547,468 (Rhodium Encore) |
| **Wilkins Duignan 2009 Revocable Trust** | 676,596 (Class A Common Stock) | $634,313 (Rhodium Encore) |
| **Total Shares: 18,583,096** | | **Total Pre-Petition Debt: $40,273,089** |

### iii.   Rhodium Enterprises Issues Warrants

20.     In or around July 2021, Rhodium Enterprises agreed to sell and issue warrants to four entities controlled by the Fairbairn family—including Claimants Tiger Trust and Eagle Trust (the "Fairbairn Warrants").[8]  Rhodium issued the Fairbairn Warrants for an aggregate price of $88,608 (the "Warrant Price").

21.     Rhodium Enterprises issued the Fairbairn Warrants in October 2021.  The Fairbairn Warrants allowed their holders to cumulatively purchase 708,864 Class A Common Stock of

---

[8]    At that time, Rhodium Enterprises also issued a fifth warrant to an entity named Kintz Family Trust, which paid $2,500 for the warrant.

Rhodium Enterprises at a price of $10.29 (the "Exercise Price") prior to October 1, 2026.  The

Fairbairn Warrants contained a purported anti-dilution clause (the "Adjustment Clause").[9]

22.     In May 2022, Rhodium Enterprises stated in writing to Emily Fairbairn that it

planned to reimburse the Warrant Price, coupled with a 12% interest on such price for the time

that the Fairbairn Warrants had been outstanding.  A few days later, Emily Fairbairn asked

Rhodium Enterprises to provide the status of these payments.  Following Emily Fairbairn's

request, the Debtors returned the Warrant Price, plus the 12% interest, to the Fairbairn Warrants'

holders between early June 2022 and mid-August 2022.  As a result, the Fairbairn Warrants were

redeemed/terminated as of the summer of 2022, and of no further force or effect.

23.     At the end of September 2022, in connection with secured notes newly issued by

Rhodium Technologies, guaranteed by Imperium and secured by stock of Rhodium Enterprises,

Rhodium Enterprises issued additional warrants allowing certain non-Claimant investors to

purchase Class A Common Stock of Rhodium Enterprises at a price of $0.01 per share (the "Penny

Warrants," and together with the Fairbairn Warrants, the "Warrants").  This issuance was the result

of an offer to purchase Penny Warrants that the Debtors had made to all holders of Class A

Common Stock, including Claimants Eagle Trust and Tiger Trust.

## C.     The Claims

24.     Between November 19 and 22, 2024, the Claimants filed 47 Claims against the

Debtors, cumulatively seeking over $137.5 million, as further detailed in the table below:

---

[9]     In addition, each of the Fairbairn Warrants provided: "This Warrant and all actions arising out of or in connection
with this Warrant shall be governed by and construed in accordance with the General Corporation Law of the
State of Delaware as to matters within the scope thereof, and as to all other matters shall be governed by and
construed in accordance with the internal laws of the State of New York, without regard to conflict of law
principles that would result in the application of any law other than the law of the State of New York."

| Table 3: The Claims | | | |
| --- | --- | --- | --- |
| **Claimant** | **Claim Number** | **Asserted Claim Amount** | **Debtor Claim Asserted Against** |
| **345 Partners SPV2 LLC** | 90 | $250,000 | Rhodium Encore |
| **GR Fairbairn Family Trust** | 150; 142; 153; 156 | Not less than $4,048,816.72 (cumulatively) | Rhodium Encore (142); Rhodium Enterprises (156); Rhodium JV (150); Rhodium Technologies (153) |
| **Grant Fairbairn Revocable Trust** | 146; 147; 160; 219 | Not less than $4,032,735.68 (cumulatively) | Rhodium Encore (146); Rhodium Enterprises (219); Rhodium JV (160); Rhodium Technologies (147) |
| **GRF Tiger Trust** | 130; 131; 133; 148 | Not less than $4,027,444.68 (cumulatively) | Rhodium Encore (131); Rhodium Enterprises (130); Rhodium JV (133); Rhodium Technologies (148) |
| **Jacob Rubin** | 104; 105; 106 | Not less than $600,000 (cumulatively) | Rhodium Encore (106); Rhodium Enterprises (104); Rhodium Technologies (105) |
| **Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended** | 85; 86; 87 | Not less than $6,000,000 (cumulatively) | Rhodium Encore (85); Rhodium Enterprises (86); Rhodium Technologies (87) |
| **NC Fairbairn Family Trust** | 134; 135; 137; 145 | Not less than $4,027,444.68 (cumulatively) | Rhodium Encore (135); Rhodium Enterprises (134); Rhodium JV (137); Rhodium Technologies (145) |
| **NCF Eagle Trust** | 121; 127; 132; 140 | Not less than $4,027,444.68 (cumulatively) | Rhodium Encore (140); Rhodium Enterprises (132); Rhodium JV (127); Rhodium Technologies (121) |
| **Nina Claire Fairbairn Revocable Trust** | 138; 141; 144; 163 | Not less than $4,032,731.68 (cumulatively) | Rhodium Encore (138); Rhodium Enterprises (141); Rhodium JV (163); Rhodium Technologies (144) |
| **Private Investor Club Feeder Fund 2020-G LLC** | 88 | $10,193,393.12 | Rhodium 2.0 |
| **Private Investor** | 54 | $8,065,631.38 | Rhodium 2.0 |

| Table 3: The Claims | | | |
|---|---|---|---|
| **Claimant** | **Claim Number** | **Asserted Claim Amount** | **Debtor Claim Asserted Against** |
| **Club Feeder Fund 2020-H LLC** | | | |
| **Richard Fullerton** | 66; 73; 78 | Not less than $9,000,000 (cumulatively) | Rhodium Encore (78); Rhodium Enterprises (66); Rhodium Technologies (73) |
| **Transcend Partners Legend Fund LLC** | 108; 112; 114; 118 | Not less than $10,068,672.84 (cumulatively) | Rhodium Encore (114); Rhodium Enterprises (118); Rhodium JV (108); Rhodium Technologies (112) |
| **Valley High LP** | 110; 120; 125; 129 | Not less than $66,453,240.96 (cumulatively) | Rhodium Encore (110); Rhodium Enterprises (120); Rhodium JV (125); Rhodium Technologies (129) |
| **Wilkins Duignan 2009 Revocable Trust** | 91; 92; 93 | Not less than $2,712,939 (cumulatively) | Rhodium Encore (91); Rhodium Enterprises (92); Rhodium Technologies (93) |
| **Total Claims: $137,540,495** | | | |

25. In addition to seeking—where applicable—payment under the Rhodium 2.0 and Rhodium Encore Notes that the Debtors have now paid in full (*see* Section D below), the majority of the Claimants assert a mixture of "litigation claims" that (i) arise from their investments in various Rhodium entities; and (ii) aim to recover not less than the full amounts invested in those Rhodium entities. Additional details for the Claims can be found in the chart attached hereto as **Exhibit B** as well as Schedule 1 to the Order.

**D.     Debtors Paid Claimants' Secured Claims**

26. On May 5, 2025, the Debtors filed the *Debtors' Motion For Entry Of An Order Authorizing The Debtors To Amend The Final Cash Collateral Order To Provide For Payment To Prepetition Secured Lenders* ("the Payment Motion") (ECF No. 1056). Through the Payment Motion, the Debtors sought the Court's authorization to pay approximately $50.96 million to the

Debtors' prepetition secured lenders.  ECF No. 1056 ¶ 1.  The Payment Motion listed the secured creditors (including all Claimants) and the amounts to be paid to them.  *Id.*, Ex. A.  None of the Claimants holding secured debt under the Rhodium 2.0 and Rhodium Encore Notes objected to the Payment Motion.

27.     On May 28, 2025, the Court entered the Payment Order, which the Court amended on July 25, 2025.  Under the Payment Order (as amended), on May 29, 2025, and July 28, 2025, the Debtors paid amounts due under the Rhodium 2.0 and Rhodium Encore Notes in full satisfaction of Claimants' secured claims (*see infra* Section II).

## BASIS FOR RELIEF

### I.     General Standard

28.     Section 502 of the Bankruptcy Code provides that: "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects."  *See* 11 U.S.C. §502(a).  The proper filing of a proof of claim constitutes prima facie evidence of the claim's validity and amount.  *In re O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998) (citing Bankruptcy Rule 3001(f)).  A proof of claim loses the presumption of prima facie validity under Bankruptcy Rule 3001(f) if an objecting party refutes at least one of the allegations that are essential to the claim's legal sufficiency.  *See In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988) (holding "[if] evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence'" (citation omitted)).  Once such an allegation is refuted, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence.  *Id.*  Despite this shifting burden during the claim objection process, "[t]he ultimate burden of proof always rests upon the claimant."  *Id.*

## II.    To The Extent Claimants Had Secured Claims, Those Claims Have Been Satisfied By the Debtors

29.    Under the Payment Order, the Debtors paid off the Rhodium 2.0 and Rhodium Encore Notes issued to the Claimants identified in the table below in full satisfaction of the related debt under those Notes.  Thus, none of these Claimants has secured claims relating to the Notes against any of the Debtors.

| Table 4: Debtors' Payment Under The Rhodium 2.0 And Rhodium Encore Notes | | | |
|---|---|---|---|
| **Claimant** | **Pre-Petition Debt[10]** | **Payment Date** | **Payment Amount** |
| **345 Partners SPV2 LLC** | $174,962 (Rhodium Encore) | 5/29/2025 | $177,891 |
| **GR Fairbairn Family Trust** | $712,204 (Rhodium Encore) | 5/29/2025 | $724,130 |
| **Grant Fairbairn Revocable Trust** | $708,184 (Rhodium Encore) | 5/29/2025 | $720,042 |
| **GRF Tiger Trust** | $706,861 (Rhodium Encore) | 5/29/2025 | $718,697 |
| **Jacob Rubin** | $140,000 (Rhodium Encore) | 5/29/2025 | $142,344 |
| **Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended** | $1,400,000 (Rhodium Encore) | 5/29/2025 | $1,423,442 |
| **NC Fairbairn Family Trust** | $706,861 (Rhodium Encore) | 5/29/2025 | $718,697 |
| **NCF Eagle Trust** | $706,861 (Rhodium Encore) | 5/29/2025 | $718,697 |
| **Nina Claire Fairbairn Revocable Trust** | $708,183 (Rhodium Encore) | 5/29/2025 | $720,041 |
| **Private Investor Club Feeder Fund 2020-G LLC** | $10,193,393 (Rhodium 2.0) | 5/29/2025 | $10,364,076 |
| **Private Investor Club Feeder Fund 2020-H LLC** | $8,065,631 (Rhodium 2.0) | 5/29/2025 | $8,200,686 |
| **Richard Fullerton** | $2,100,000 (Rhodium Encore) | 5/29/2025 | $2,135,163 |

---

10    *See* n.7 above.

| Table 4: Debtors' Payment Under The Rhodium 2.0 And Rhodium Encore Notes | | | |
|---|---|---|---|
| **Claimant** | **Pre-Petition Debt[10]** | **Payment Date** | **Payment Amount** |
| **Transcend Partners Legend Fund LLC** | $1,766,168 (Rhodium Encore) | 5/29/2025 | $1,795,742 |
| **Valley High LP** | $11,547,468 (Rhodium Encore) | 5/29/2025 | $11,740,824 |
| **Wilkins Duignan 2009 Revocable Trust** | $634,313 (Rhodium Encore) | 7/28/2025 | $646,910.68 |
| **Payments' Total: $40,947,383.87** | | | |

### III. For Claims Unrelated To The Payment Of The Notes, Claimants Have No Standing Because These Claims Are Property Of The Debtors' Estates

30.     The filing of a chapter 11 petition creates an estate comprised of all the debtor's property, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts "interpret all legal or equitable interests broadly: The estate includes causes of action belonging to the debtor." *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009) (citation and internal marks omitted); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983).

31.     To set out an individual action, each Claimant must "demonstrate[] that [it] can prevail without showing an injury to the corporation," and courts evaluate the foregoing by "[l]ooking at the body of the complaint and considering the nature of the wrong alleged and the relief requested." *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 696 (Bankr. S.D. Tex. 2007) (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004)). Indeed, if a debtor raises a claim for its direct injury under the applicable law, then the cause of action belongs to the estate, not to a single creditor. *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate."); *In re Dexterity*, 365 B.R. at 699 (citing *In re E.F. Hutton*, 103 B.R. at 812).

32.     Here, the bulk of the causes of action at issue rely on the allegations that certain of Rhodium's officers (i) mismanaged the Debtors causing an erosion of Claimants' investments in the Debtors; and (ii) used Rhodium as a tool to advance their personal interests, disregarding the corporate form, giving rise to an alter ego or veil piercing theory.[11]  *See* Ex. B.

33.     The Claims' alleged causes of action for mismanagement, diversion of corporate opportunities, self-dealing, and related breaches of fiduciary duties by certain of Rhodium's officers rely on harm that is common to Debtors' investors and creditors and therefore belong to the estate.  *See In re NC12, Inc.*, 478 B.R. 820, 835 (Bankr. S.D. Tex. 2012) ("Any claim for damages due to stripping or misappropriation of corporate assets belongs to the estate and may be asserted only by the Trustee."); *id.* at 836 ("The [fiduciary duty claims] are fundamentally derivative, predicated on injury to NC12, not on injury to individual Plaintiffs or Intervenors."); *Mitchell Excavators, Inc. by Mitchell v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) (the right to prosecute an action against a corporation's officers and directors "pass[es] to the estate created by the commencement of the bankruptcy proceeding.").[12]   In Delaware, such derivative claims

---

[11]   *In re Garza*, 605 B.R. 817, 825 (Bankr. S.D. Tex. 2019) ("alter ego remedy applies when there is such an identity between a corporation and an individual that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust.").

[12]   In any event, the Debtors themselves do not owe any fiduciary duties to the Claimants.  *See, e.g.*, *In re Wayport, Inc. Litig.*, 76 A.3d 296, 322-23 (Del. Ch. 2013) ("Wayport is not liable for breach of fiduciary duty. As a corporate entity, Wayport did not owe fiduciary duties to its stockholders."); *Emerald Partners v. Berlin*, 1995 WL 600881, at *8 (Del. Ch. Sept. 22, 1995) (a corporation "owes no fiduciary duties to shareholders independently from its agents, and the corporation itself is not liable for a breach of fiduciary duties by its directors") (collecting cases), *aff'd in part, rev'd in part on other grounds*, 726 A.2d 1215 (Del. 1999).

Further, any hypothetical cause of action against any of the Debtors for aiding and abetting a breach of fiduciary duty by their principals is a derivative claim.  *See Feldman v. Cutaia*, 956 A.2d 644, 662 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008) ("Prior decisions of this court have validated the unsurprising proposition that an aiding and abetting claim premised on a derivative cause of action is necessarily derivative itself." (collecting cases)); *In re Jevic Holding Corp.*, 2011 WL 4345204, at *13 (Bankr. D. Del. Sept. 15, 2011) ("As with a claim for the breach of a fiduciary duty, the internal affairs doctrine compels the Court to also apply Delaware law to a claim for aiding and abetting the breach of a fiduciary duty ….").

Also, Claimants Grant Trust, Nina Trust, Transcend, and Valley High transferred their Rhodium Enterprises' Class A shares to other entities in 2023, with the consequence that they lack standing to bring related derivate claims.  *See, e.g.*, *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 935 (Del. Ch. 2008) ("Thus, to

include claims based on intercompany transactions and dilution of shareholders' economic and voting powers. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 438 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (finding shareholders' claims based on a repositioning of assets between affiliates to be derivative because such conduct harmed the corporation that transferred the assets); *Weinberger v. Lorenzo*, 1990 WL 156529, at *3-4 (Del. Ch. Oct. 12, 1990) (finding that intercompany transfers caused harm to the corporation in which plaintiffs were shareholders and related claim was derivative); *Brookfield Asset Mgmt., Inc. v. Rosson,* 261 A.3d 1251, 1266 (Del. 2021) ("[T]o plead a direct claim under *Tooley*, a 'stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.' We do not think Plaintiffs can prevail without showing an injury to the corporation. The claim is derivative because [plaintiffs] allege an overpayment (or over-issuance) of shares to the controlling stockholder constituting harm to the corporation for which it has a claim to compel the restoration of the value of the overpayment." (citation omitted)).[13]

34.     Courts in this Circuit further hold that any cause of action based on alter ego or veil piercing theories belong to the Debtors and, as such, are "property of the estate" within the meaning of section 541(a)(1) of the Bankruptcy Code. *In re S.I. Acquisition, Inc*., 817 F.2d 1142, 1153 (5th

---

have standing a derivative plaintiff must satisfy two tests: 1) the contemporaneous ownership test, which requires stockholders to have owned stock at the time of the wrong complained of, and 2) the continuous ownership rule requiring stockholders to maintain their shareholder status throughout the litigation.") (citations omitted); *Strategic Asset Mgmt., Inc. v. Nicholson*, 2004 WL 2847875, at *3 (Del. Ch. Nov. 30, 2004) ("[O]nce [plaintiff] ceased to be a shareholder in [the corporation] while it was pursuing a derivate action, it lost its standing as a derivative plaintiff and must be dismissed from the case."); *In re New Valley Corp. Derivative Litig.*, 2004 WL 1700530, at *4 (Del. Ch. June 28, 2004) ("Here, [lead plaintiff] voluntarily sold his shares…. [O]nce he did so, he lost standing to pursue this derivative litigation as lead plaintiff.").

[13]     In *Brookfield*, the Supreme Court of Delaware further noted: "The gravamen of Plaintiffs' Complaint is that the Private Placement allegedly harmed the Company by issuing shares to [controlling shareholder] for an unfairly low price and harmed the stockholders indirectly through economic and voting power dilution proportional to their shareholdings. Thus, the harm to the stockholders was not *independent* of the harm to the Company, but rather flowed indirectly to them in proportion to, and via their shares in, [the Company]. We agree with the Vice Chancellor that under *Tooley*, this alleged corporate overpayment in stock and consequent dilution of minority interest falls 'neatly' into *Tooley*'s derivative category." 261 A.3d at 1268.

Cir. 1987); *In re Packer*, 816 F.3d 87, 92 (5th Cir. 2016); *In re Moore*, 608 F.3d 253, 258-59 (5th Cir. 2010), *accord In re Schimmelpenninck*, 183 F.3d 347, 358 (5th Cir. 1999).   Claimants' attempts to disguise their allegations otherwise cannot change the essence of their claim.  *See*, *e.g.*, *In re SemCrude L.P.*, 796 F.3d 310, 318 (3d Cir. 2015) ("[T]o the extent … Plaintiffs' [fraudulent inducement] claims are masked claims for a diminution in value of their … units as a result of [company's co-founder and executive]'s mismanagement, their claims are derivative of the claims released by the Litigation Trust." (citations omitted)); *Arent v. Distribution Scis., Inc.*, 975 F.2d 1370, 1373 (8th Cir. 1992) ("[T]he fact that plaintiffs framed the harm as a direct fraud did not permit them to go forward on a claim that was, at its core, derivative").[14]

35.     Because, on the face of the Claims, Claimants assert causes of action that belong to the Debtors' estates, Claimants lack standing to assert them.  *See In re MortgageAmerica Corp.*, 714 F.2d at 1277; *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 315–16 (S.D. Tex. 2008) ("[D]ebtors in possession use § 544(b) as a conduit to assert state-law-based fraudulent transfer claims in bankruptcy.  In bringing the fraudulent transfer claims, the … debtor in possession is given the same avoiding powers that an unsecured creditor with an allowable claim might have under applicable law."); *Torch Liquidating*, 561 F.3d at 386.

## IV.   No Causes Of Action Based On the Fairbairn Warrants

36.     To the extent that the issuance of the Penny Warrants is the "Dilutive Transaction" referred to in the Claims, the Debtors maintain that Eagle Trust and Tiger Trust[15] have no causes

---

[14]   *See also In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 91-92 (2d Cir. 2014) ("We are nonetheless wary of placing too much significance on the labels appellants attach to their complaints, lest they circumvent the Net Equity Decision by "pleading around" the automatic stay").

[15]   None of the other Claimants entered the Fairbairn Warrants.  In addition, the two other holders of the Fairbairn Warrants—i.e., The Kingdom Trust Company, FBO Malcolm P Fairbairn Roth IRA, 9510281370 and The Kingdom Trust Company, FBO Emily Fairbairn Roth IRA, 7465812820—did not file proofs of claim.  Likewise, the Kintz Family Trust (which invested in the fifth warrant in or July 2021 (*see supra* n.15) did not file a proof of claim.

of action in relation to it and deny owing any damages to these Claimants.[16] Even if these claims were actionable, any damages would be subject to subordination under section 510(b) of the Bankruptcy Code.

## V. The Debtors Reserve All Rights And Defenses And Do Not Waive Additional Grounds For Holding Claims Defective

37.    The Debtors reserve all rights and defenses, and do not waive any arguments in this or other proceedings, regarding Claims being defective on additional grounds, including, *inter alia*, statutes of limitation,[17] failure to comply with Fed. R. Civ. P. 9, or any other applicable standard regarding the dismissal of claims.

---

[16]    *See*, *e.g.*, Claim 142 at 8 ("Before the Petition Date, certain Debtors entered into debt or equity transactions (the 'Dilutive Transactions') without regard to the anti-dilution provisions of certain agreements with Creditor. Creditor asserts damages in connection with the Dilutive Transactions.").

In view of the vagueness of these allegations (based on which it is not even clear whether the Claimants assert a breach of the Fairbairn Warrants or other agreements) the Debtors reserve all rights and defenses, including (but not limited to) elimination of the Fairbairn Warrants in connection with the Debtors' return of the Warrant Price (plus a 12% interest on such price) in 2022.

Even if the Fairbairn Warrants were valid and enforceable—and they are not—the Debtors specifically deny that the issuance of the Penny Warrants would entail a breach of the Fairbairn Warrants and/or trigger the Adjustment Clause included in the Fairbairn Warrants (with the consequence that the related Exercise Price would remain $10.29 per share of Class A Common Stock).

Moreover, the Fairbairn Warrants' holders would be barred from exercising the Fairbairn Warrants at 0.01$ per share under several equitable doctrines, including estoppel and quasi-estoppel, waiver and acquiescence.  *See*, *e.g.*, *In re Coinmint, LLC*, 261 A.3d 867, 892 (Del. Ch. 2021) ("Any one may forego a right intended for his own benefit in the absence of some rule of public policy.  Inaction or silence on the part of a plaintiff, in certain circumstances, can bar a plaintiff from relief both equitable and legal. Delaware has implemented this umbrella rule through the doctrines of waiver, estoppel, and acquiescence." (cleaned up)) (applying Delaware law and holding that, in view of plaintiff's conduct, plaintiff was estopped from challenging a dilution of its stake in a limited liability company, acquiesced to the dilution, and waived rights in connection with it); *Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008), *aff'd*, 970 A.2d 256 (Del. 2009) (The quasi-estoppel doctrine "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken.' Quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." (cleaned-up) (holding that applying quasi-equitable estoppel and noting that party's "self-interested 180 degree turn [was] graceless").  If New York law were applicable, the latter also recognizes equitable defenses like estoppel, waiver, and acquiescence.  *See*, *e.g.*, *Nassau Tr. Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184-5 (N.Y. 1982); *Pollitz v. Wabash R. Co.*, 207 N.Y. 113, 129 (N.Y. 1912).

[17]    For reasons the Debtors have previously argued, these claims are barred by the applicable statute of limitations.

38.     In particular, to the extent that Claimants allege breaches of contract (*e.g.*, the operating Agreements of the Operating Companies) in relation to the Rollup (*see* Exhibit B) or prior investments in the Debtors, the period to bring those claims expired well before the petition dates in the Chapter 11 Cases.[18]

39.     Further, to the extent that Claimants asserted causes of action for fraud, these must be disallowed as facially defective.[19]   Fraud claims, even in the context of the claim allowance process, fall under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule[s]"), which requires that pleadings asserting fraudulent conduct "state with particularity the circumstances constituting the fraud."  Fed. R. Bankr. P. 9014 and 7009; Fed. R. Civ. P. 9(b); *In re GDC Technics, LLC*, 643 B.R. 417, 427 (Bankr. W. D. Tex. 2022) (applying Civil Rule 9(b) in connection with a claim objection and noting that, "[while] Rules 8(a)(2), 9(b), and 12(b)(6) are most commonly associated with federal civil procedure, they can apply in the bankruptcy claims allowance process").[20]   Here, Claimants' allegations do not support any claims

---

[18]   For reasons the Debtors have previously argued, these claims are barred by the applicable statute of limitations.

[19]   In a boilerplate fashion, several Claims repeat the following vague allegations, which might refer to alleged fraudulent conduct: "Creditor asserts damages in connection with the Rollup including, but not limited to, an incorrect allocation of equity ownership in Enterprises and inflated control premium…. [T]he Debtors caused one or more amendments to the Operating Agreement for Rhodium Technologies … [which] were for the benefit of Imperium and other insiders, and … were not disclosed to Creditor."  *See, e.g.*, Claim 85 at 8.  To the extent that other vague allegations included in the Claims refer to alleged fraudulent conduct, the related causes of action are—without limitations—equally defective for the reasons explained in this Objection.

[20]   Courts also extend the requirements of Rule 9(b) beyond common law fraud claims to "claims sounding in fraud," including claims for breach of fiduciary duty that are "based on the same allegations as a fraud claim. See *Ingalls v. Edgewater Priv. Equity Fund III, L.P.*, 2005 WL 2647962, at *3-5 (S.D. Tex. Oct. 17, 2005) (noting that "[t]he Federal Rules of Civil Procedure require a plaintiff alleging fraud, or claims sounding in fraud, to comply with a heightened pleading standard," and applying Rule 9(b) to plaintiff's "breach of fiduciary duty claim [that] rest[ed] on an allegation of fraud" considering that plaintiff "contend[ed] that Defendants breached their fiduciary duty to [the company that went bankrupt] by defrauding it of money and business opportunities." (cleaned up)); *Neukranz v. Conestoga Settlement Servs., LLC*, 2022 WL 19518462, at *17 (N.D. Tex. Nov. 23, 2022), *report and recommendation adopted sub nom. Neukranz v. Conestoga Settlement, LLC*, 2023 WL 2555551 (N.D. Tex. Mar. 16, 2023) ("Courts in this circuit have applied the heightened pleading requirements of Rule 9(b) when the claim for breach of fiduciary duty is based on the same allegations as a fraud claim." (cleaned up)).

for fraud and breach of fiduciary duty under Rule 9 or any other applicable standards related to the dismissal of claims.[21]   First, the Claims fail to tie any specific Debtors (or other non-Debtor individual or corporate entities) to any alleged false statement regarding material information or failure to disclose it.  *See* Exhibit B at 1-3, 5-6, 8-9, 11-18, 20-21, 23-24, 27-28, 30-31, 33-34, 36-37.  Further, the Claims do not identify what specific statements they allege to be fraudulent, how those statements were false, and what specific facts should have been disclosed.  *See id*.; *see also Steel Dust Recycling, LLC v. Robinson*, 667 F. Supp. 3d 511, 515 (S.D. Tex. 2023) ("Defendants do not identify any specific representations made by Plaintiffs or explain why they were known to be false at the time they were made."); *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 975 (N.D. Tex. 2014) ("Without … more specificity as to the circumstances surrounding the purported omissions, the Court cannot reasonably find that Defendants were legally obligated to disclose.").[22]

---

Based on the foregoing, to the extent that Claimants asserted breaches of fiduciary duty in relation to conduct that Claimants allege to be fraudulent, those claims are subject to Rule 9.  *See, e.g.*, Claims 66, 104 and 110, where the same factual allegations serve as a basis for one or more undisclosed causes of action.

[21]   The Claims do not explicitly identify the specific causes of action under which one or more Debtors should allegedly be liable for various "damages" asserted by Claimants.  *See, e.g.*, Claim 66 at 8.  That said, the Debtors deny all liability in relation to the speculative, conclusory, unsubstantiated and unproven allegations that the Claimants list in their Claims.  In that respect, the Debtors reserve all rights and defenses.

Under Delaware law, "the elements of common law fraud are (1) a false representation of material fact made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or the representation was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiffs action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance."  *In re OSC 1 Liquidating Corp.*, 529 B.R. 825, 832 (Bankr. D. Del. 2015).  A fraud by non-disclosure cause of action requires showing an omission of a material fact in light of a duty to disclose; however, the claimant must still prove all the elements of fraud by affirmative misrepresentation, including fraudulent intent.  In re Am. Bus. Fin. Servs., Inc., 471 B.R. 354, 373 (Bankr. D. Del. 2012).  To plead fraudulent inducement, Claimant must allege the same elements as for a claim of fraud by misrepresentation or omission.  *See E.I. DuPont de Nemours & Co. v. Fl. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999).  Arguendo, if Texas law were to apply, the elements for fraud under Texas and Delaware laws appear to be substantially the same.  *See In re Legendary Field Exhibitions, LLC*, 2023 WL 7852657, at *25 (Bankr. W.D. Tex. Nov. 13, 2023) ("[T]he elements of fraudulent inducement are virtually the same. To prove fraudulent inducement in Delaware, just as in Texas, Plaintiffs must first properly allege all the elements of fraud …. [A] plaintiff must [further] demonstrate that they were deceived into entering a contract.").

[22]   In addition, causes of action based on alleged misrepresentations and omissions relating to investments in the Operating Companies and the Rollup transaction are also precluded by the anti-reliance clauses in the subscription agreement, the operating agreements, exchange agreement and warrant purchase agreements entered (as applicable) by the Claimants, who are sophisticated parties.  See, e.g., Purple Innovation, LLC v. Photon Interactive UK Ltd., 2025 WL 522464, at *3 (D. Del. Feb. 18, 2025); In re Neighbors Legacy Holdings, Inc., 645

## VI.    Claimants Assert Damages That Must Be Subordinated Under Section 510(b)

40.    The Claims assert damages arising from their investment in the Class A shares of Rhodium Enterprises mandating subordination under section 510(b) of the Bankruptcy Code.

41.    Through section 510(b), Congress envisioned "str[iking] [a balance] between the concerns of the average investor and the unsecured trade creditor who provides products and services necessary for the business to succeed and for the investor to earn profits." *In re PT-1 Commc'ns, Inc.*, 304 B.R. 601, 610 (Bankr. E.D.N.Y. 2004). Accordingly, section 510(b) provides mandatory subordination for "damages arising from the purchase or sale of … a security" of the debtor or one of its affiliates. *See In re SeaQuest Diving, LP*, 579 F.3d 411, 417-18 (5th Cir. 2009); *In re Del Biaggio*, 2013 WL 6073367, at *6 (N.D. Cal. Nov. 18, 2013), *aff'd,* 834 F.3d 1003 (9th Cir. 2016) ("The statute covers claims arising from the purchase or sale of a security of the debtor or of an affiliate of the debtor.") (citation and internal marks omitted); *In re VF Brands, Inc.*, 275 B.R. 725, 727 (Bankr. D. Del. 2002) (holding that "the language of section 510(b) applie[d] equally to claims arising from the purchase of the stock of an affiliate … of the debtor as it does to the purchase of stock of the debtor itself.").

42.    Under section 510(b), "the term 'security,' which is defined in section 101(49) of the Bankruptcy Code … include[s] stocks, bonds, and notes, among other instruments." *In re Lehman Bros. Inc.*, 519 B.R. 434, 442–43 (S.D.N.Y. 2014), *aff'd,* 808 F.3d 942 (2d Cir. 2015) (affirming subordination of various claims under the plain language of section 510(b)); 11 U.S.C. § 101(49); *see also In re Patriot Aviation Servs.*, Inc., 396 B.R. 780, 787 (Bankr. S.D. Fla. 2008) ("The unambiguous language of the statute specifically includes debt securities such as promissory

_____

B.R. 864, 890 (Bankr. S.D. Tex. 2022). In addition, in connection with the Rollup transaction, the Claimants agreed to be bound by the waiver included in the exchange agreement.

notes.") (citations omitted); *In re Del Biaggio*, 2012 WL 5467754, at *3 (Bankr. N.D. Cal. Nov. 8, 2012), *aff'd*, 2013 WL 6073367 (N.D. Cal. Nov. 18, 2013), *aff'd*, 834 F.3d 1003 (9th Cir. 2016) ("[S]ection 510(a) applies to claims arising from the purchase or sale of …. a promissory note of the debtor or its affiliate.").

43.     For section 510(b) to apply, the claimant "need not to be an actual security holder." *In re Lehman Bros. Inc.*, 519 B.R. at 443; *see also In re Caprock Oil Tools, Inc.*, 585 B.R. 823, 828 (Bankr. S.D. Tex. 2018) (subordinating a former shareholder's claim for payments due under a shareholder agreement because the claim "arose from" debtor's prior election to redeem claimant's shares pursuant to the shareholder agreement). Further, for the purpose of this statute, an exchange of securities constitutes a "sale or purchase." *See*, *e.g.*, *In re Baldwin United Corporation*, 52 B.R. 539, 540 n.1 (Bankr. S.D. Ohio 1985) (noting that an exchange of shares of debtor for shares of another company is a "sale or purchase" under section 510(b)).

44.     In the Fifth Circuit, "[a] claim (no matter how it is characterized by the claimant) arises from a securities transaction so long as the transaction is part of the causal link leading to the alleged injury." *In re Linn Energy, L.L.C.*, 936 F.3d 334, 344 (5th Cir. 2019) (quoting *In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 478 (2d Cir. 2017)) (internal marks omitted); *see also In re Med Diversified, Inc.*, 461 F.3d 251, 257-59 (2d Cir. 2006) (Section 510(b) applies to a claim that arises from a failed securities transaction even if the claimant never received stocks. Moreover, in this Circuit, claims subject to subordination may also be "predicated on post-issuance conduct." *Linn Energy,* 936 F.3d at 344 (citation and internal marks omitted) (holding that a security transaction presents a casual nexus to the alleged injuries, regardless of whether the claims are based on conduct that took place prior or after the security transaction).

45.     Section 510(b) of the Bankruptcy Code "contains no restrictions limiting its application to certain types of claims."  *In re Kaiser Grp. Int'l, Inc.*, 2001 WL 34368405, at *4 (D. Del. Nov. 29, 2001 (rejecting a construction of section 510(b) that disregarded the definition of "claim" under 11 U.S.C. § 101(5) and narrowed the express language of section 510(b)).  Indeed, courts have "applied [section 510(b)] broadly to subordinate claims arising in a "variety of contexts," encompassing claims that are based on "torts or breach of contract claims."  *See Lehman Bros. Inc.*, 519 B.R. at 442 (collecting cases).  "Claims seeking compensation for fraud or breach of fiduciary duty are claims for damages and [also] fall within [section 510(b)]'s scope," including those claims that are "predicated on post-issuance conduct."  *Linn Energy*, 936 F.3d at 342 (citations and internal marks omitted)*; see also In re Mid–Am. Waste Sys., Inc.*, 228 B.R. 816, 825 n.5 (Bankr. D. Del. 1999) (noting that section 510(b) covers securities law claims, but also claims that can "be based on other case law and statutory law dealing with fraudulent conduct generally, breach of fiduciary duty and similar types of misconduct.").  Further, claims alleging waste and mismanagement are subordinated under section 510(b).  *See In re Energy Conversion Devices, Inc.*, 528 B.R. 697, 705-06 (Bankr. E.D. Mich.), *aff'd sub nom. Murphy v. Madden*, 532 B.R. 286 (E.D. Mich. 2015), *aff'd* (Feb. 19, 2016).  Moreover, courts have subordinated (i) claims based on alleged stock dilution—*see, e.g.*, *In re Pre-Press Graphics Co., Inc.*, 307 B.R. 65, 79 (N.D. Ill. 2004); as well as (ii) claims asserting a diminution or destruction of the value of the investment—*see, e.g.*, *In re Energy Conversion Devices, Inc.*, 528 B.R. at 705 (noting, *inter alia*, that "[f]rom the perspective of Section 510(b), it makes no difference whether the stockholder's loss in the value of his stock was caused by a pre-purchase fraud which induced his purchase, or a post-purchase fraud, embezzlement, looting, or other corporate misconduct which undermined the value of his stock.").

46.     Here, as shown in Exhibit B, section 510(b) requires mandatory subordination of the Claims.  Indeed, the damages asserted by (i) GR Family Trust; (ii) Grant Trust; (iii) Tiger Trust; (iv) Jacob Rubin; (v) Jerald and Melody Howe Weintraub Revocable Living Trust DTD 02/05/98, as amended; (vi) NC Family Trust; (vii) Eagle Trust; (viii) Nina Trust; (ix) Richard Fullerton; (x)Transcend; (xi)Valley High; and (xii) Wilkins:

- Relate to Claimants' initial "invest[ments] in one or more of the Debtors."

- Derive from the "Rollup," where "[Claimants'] equity investment[s] in Rhodium Encore [were] converted to shares in Rhodium Enterprises."

- Arise from other alleged misconduct of the Debtors like (i) certain unidentified "transfers" that "the Debtors made … to other Debtors"; (ii) "one or more amendments to the Operating Agreement for Rhodium Technologies … [that] were for the benefit of Imperium and other insiders, and … were not disclosed to [the Claimants]"; (iii) "certain Debtors enter[ing] into debt or equity transactions … without regard to the anti-dilution provisions of certain [unspecified investment] agreements."

- Consist of an amount that is not less than Claimants' initial "invest[ments] in one or more of the Debtors," plus certain alleged interests and "other [unspecific] damages to which the [Claimants are allegedly] entitled."

47.     *See* Ex. B at 1-3, 5-6, 8-9, 11-18, 20-21, 23-24, 27-28, 30-31, 33-34, 36-37.[23]

## VII.  Separate Contested Matters

48.     To the extent that a response is filed regarding any Claim identified in this Objection and the Debtors are unable to resolve the response, the objection by the Debtors to each such Claim asserted herein shall constitute a separate contested matter as contemplated by

---

[23]     In connection with Claim 90 submitted by 345 Partners SPV2 LLC, the claim amount corresponds to the total of Claimant's equity and Note investment in Rhodium Encore.  However, the Claimant does not specify why it sought the full value of its investment, which is approximately $72,000 higher than the prepetition amount owed to the Claimant under the Rhodium Encore Note.  *See* Claim 90 at 2.  Regarding Claims 54 and 88, it appears that Claimants Private Investor Club Feeder Fund 2020-G LLC and Private Investor Club Feeder Fund 2020-H LLC are not asserting litigation claims against Rhodium 2.0 but seeking payment under the Rhodium 2.0 Note (which the Debtors made on May 29, 2025 in full satisfaction of the related Claims).

Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each such Claim.

## VIII.  Notice

49.     Notice of this Objection will be provided to (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the SAFE AHG; (iv) all parties identified as notice parties in the Claims; (v) any other party that has requested notice pursuant to Bankruptcy Rule 2002; and (vi) any other party entitled to notice pursuant to Local Rule 9013-1(d).

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Respectfully submitted this 9th day of October, 2025.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Patricia B. Tomasco*
Patricia B. Tomasco (SBN 01797600)
Cameron Kelly (SBN 24120936)
Alain Jaquet (*pro hac vice*)
Rachel Harrington (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com
Email: cameronkelly@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: rachelharrington@quinnemanuel.com

- and -

Eric Winston (*pro hac vice*)
Razmig Izakelian (*pro hac vice*)
Ben Roth (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: ericwinston@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: benroth@quinnemanuel.com

*Counsel to the Debtors and*
*Debtors-In-Possession*

**<u>Certificate of Service</u>**

I, Patricia B. Tomasco, hereby certify that on the 9th day of October, 2025, a copy of the foregoing Claim Objection was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/  *Patricia B. Tomasco*
Patricia B. Tomasco