United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 28, 2025

Nathan Ochsner, Clerk

fIN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-90448 |
| RHODIUM ENCORE LLC, *et al.*, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

<u>MEMORANDUM OPINION AND ORDER ON DEBTORS'
AMENDED OMNIBUS OBJECTION TO CLAIM NUMBERS 004,
062, AND 068–072 (ECF NO. 953) AND DEBTORS' MOTION TO
ESTIMATE (ECF NO. 1485)</u>

This matter comes before the Court on Debtors' Omnibus Objection to Claim Numbers 004, 062, and 068−072 Filed by Midas Green Technologies LLC ("Midas Green");[1] Debtors' Motion for Summary Judgment;[2] and Debtors' Motion to Estimate Contingent and Unliquidated Claims of Midas Green Technologies LLC.[3] For the reasons explained below, the Court sustains Debtors' omnibus objection and alternatively estimates the value of Midas Green's contingent and unliquidated claims at $0. Debtors' motion for summary judgment is moot.

## BACKGROUND

On August 24, 2024, Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10MW LLC, and Rhodium 30MW LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Initial Debtors"). The Initial Debtors' cases are jointly administered as *In re Rhodium Encore LLC, et al.*, Case No. 24-90448 (ARP). On August 29, 2024, additional affiliates of the Initial Debtors also filed for chapter 11 relief: Rhodium

---

[1] ECF No. 954.
[2] ECF No. 1484.
[3] ECF No. 1485.

Technologies LLC, Rhodium Enterprises Inc., Rhodium Renewables LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Shared Services LLC, Rhodium Renewables Sub LLC, Rhodium 30MW Sub LLC, Rhodium Encore Sub LLC, Rhodium 10MW Sub LLC, Rhodium 2.0 Sub LLC, Air HPC LLC, and Jordan HPC Sub LLC (these parties together with the Initial Debtors, are the "Debtors" or "Rhodium").

Debtors were previously engaged in an industrial scale Bitcoin mining operation.[4]  Integral to Debtors' operations were immersion-cooled Bitcoin miners located at sites in Rockdale, Texas and Temple, Texas.[5]

In 2022, Midas Green sued multiple Rhodium entities[6] in the U.S. District Court for the Western District of Texas, alleging multiple claims of patent infringement of its immersion cooling systems held under U.S. Patent No. 10,405,457 (the '457 Patent) and U.S. Patent No. 10,820,446 (the '446 Patent).[7]  The case progressed through extensive discovery, including over 130 hours of depositions, 6 expert reports, 699 pages of written discovery, and over 700,000 pages of production documents.[8]  During the course of the litigation, Midas Green dismissed the claims of infringement of the '446 Patent and only continued to pursue two claims of infringement of the '457 Patent.[9]  In March 2024, Rhodium moved for summary judgment on those two claims.[10]

---

[4] ECF No. 1179 at 23.

[5] *Id.*

[6] Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium 10mw LLC, Rhodium 2.0 LLC, Rhodium 30mw LLC, Rhodium Encore LLC, Rhodium Industries LLC, Rhodium JV LLC, Rhodium Renewables LLC, Rhodium Shared Services LLC, and Rhodium Shared Services PR Inc.

[7] Complaint at 1–2, *Midas Green Techs., LLC v. Rhodium Enters. Inc.*, No. 6:22-cv-00050-ADA (W.D. Tex. Jan. 13, 2022), ECF No. 1.

[8] ECF No. 1483 at 6.

[9] Joint Status Report at 2, *Midas Green Techs., LLC v. Rhodium Enters. Inc.,* No. 6:22-cv-00050-ADA (W.D. Tex. Jan. 13, 2022), ECF No. 144.

[10] *See* Motion for Summary Judgment of Noninfringement, *Midas Green Techs., LLC v. Rhodium Enters. Inc.*, No. 6:22-cv-00050-ADA (W.D. Tex. Mar. 1, 2024), ECF No. 155.

On April 9, 2024, the court held a pretrial conference.  During the conference, the court granted Rhodium's *Daubert* motion to exclude portions of Midas Green's expert's testimony.[11]  Regarding Rhodium's motion for summary judgment, the court stated:

> The Court is going to grant the motion for summary judgment of noninfringement. I think that fully takes care of the case for the time being. I'm not going to take up the motions in limine given my ruling on that motion, which I think obviates the need for a trial at this time.[12]

Counsel for Midas Green then asked:

> Your Honor, would we be able to readdress this − after we get Pokharna's report redone, would we be able to readdress this issue on the motion for summary judgment?[13]

The court then stated:

> Well, you know, you have − you've had your chance, but obviously, it's a fairly severe ruling. Let me talk to my clerks and see if they think anything additional that an expert would say might benefit us. And if it is, we'll let you know. As of right now, I don't think it would.[14]

The district court has not issued a written order regarding Rhodium's motion for summary judgment.

After Debtors' bankruptcy proceedings began, the Court set November 22, 2024, as the bar date for filing proofs of claims.[15]  Midas Green timely filed seven proofs of claim numbered 004, 062, and 068−072 against various Rhodium entities asserting damages based on

---

[11] Transcript of Pretrial Conference at 18, *Midas Green Techs., LLC v. Rhodium Enters. Inc.,* No. 6:22-cv-00050-ADA (W.D. Tex. Apr. 9, 2024), ECF No. 187.

[12] *Id.* at 54.

[13] *Id.*

[14] *Id.* at 55.

[15] ECF No. 284.

patent infringement.[16]    Midas Green's claims against Debtors total
$12,306,287.00.

On January 7, 2025, Debtors moved for limited relief from the
automatic stay to allow the district court to issue an order memorializing
its ruling.[17]  The Court granted this motion on January 30, 2025.[18]  That
same day, Judge Albright's law clerk emailed counsel for both Rhodium
and Midas Green requesting a joint proposed order "reflecting the
parties' understanding of Judge Albright's rulings at the 4/9/2024
hearing."[19]   On February 7, 2025, the parties submitted their joint
proposed order which was rife with disputed language.[20]

On April 17, 2025, Debtors filed their omnibus objection to Midas
Green's claims.[21]   In their objection, Debtors assert that (i) Midas
Green's claims are barred by the doctrines of claim and issue preclusion
and (ii) Debtors' immersion cooling systems do not infringe on Midas
Green's patent.[22]   On May 8, 2025, Midas Green filed its response
contending that preclusion did not apply because there was no final
judgment on the merits.[23]

On July 8, 2025, at a hearing regarding Debtors' objections to
Midas Green claims, the Court set an evidentiary hearing for August 22,
2025.[24]  When asked about the matters set for hearing in August, the
Court stated: "I want to address the Proofs of Claim in every respect."[25]
The Court also indicated to the parties that it would consider a motion

---

[16] The Court recently granted Midas Green leave to amend their original proofs
of claim to reflect reasonable royalty amounts for 2020 through 2023 and prejudgment
interest for the time period prior to the bankruptcy.  ECF No. 1695.  The proofs of claim
are now numbered 259−65.
[17] ECF No. 611.
[18] ECF No. 737.
[19] ECF No. 1484-11.
[20] ECF No. 1484-16.
[21] ECF No. 954.
[22] *See id.*
[23] ECF No. 1069.
[24] ECF No. 1479 at 14.
[25] *Id.* at 15.

for estimation and motions for summary judgment.[26]  The Court later issued an order memorializing the events of the July 8 hearing and setting deadlines for Debtors to file a motion for estimation and for the parties to file motions for summary judgment.[27]  Debtors later filed such motions.[28]  Midas Green filed responses to those motions[29] and Debtors filed replies.[30]

In early August, the evidentiary hearing was continued for a month to September 23, 2025.[31]  On August 28, 2025, after the initial hearing date had passed, Midas Green moved to withdraw the reference of the case from this Court.[32]  And on September 18, 2025, Debtors filed their objection.[33]

On September 19, 2025, Debtors filed their witness and exhibit lists for the September 23, 2025 hearing in compliance with Bankruptcy Local Rule 9013-2.[34]  Midas Green did not file any witness or exhibit lists.  At the hearing, Midas Green's counsel described Debtors' compliance with the local rules as "trial by ambush" as it did not receive notice of Debtors' exhibit and witness list until the Friday before the hearing.[35]  During the hearing, Midas Green requested to present evidence, however, the Court enforced the local rules and denied Midas Green's request.[36]  Debtors proceeded to present witness testimony and physical and demonstrative evidence.  Midas Green cross-examined Debtors' witnesses.

---

[26] *Id*. at 14−16.
[27] ECF No. 1427.
[28] ECF Nos. 1483−84.
[29] ECF Nos. 1522−23.
[30] ECF Nos. 1534−35.
[31] ECF No. 1526.
[32] ECF No. 1579.
[33] ECF No. 1655.
[34] ECF Nos. 1659−60.
[35] ECF No. 1806 at 6.
[36] *Id*. at 12.

A timeline reflecting pertinent dates to the Midas Green claims is included below:

| Date: | Event: |
|---|---|
| 08/24/2024 | Debtors file bankruptcy |
| 11/21/2024 | Midas Green files proofs of claims |
| 04/17/2025 | Debtors file omnibus objection to Midas Green's claims |
| 05/08/2025 | Midas Green files response to Debtors' omnibus objection |
| 07/08/2025 | Hearing held on omnibus objection; Court set evidentiary hearing for 08/22/2025 |
| 07/29/2025 | Debtors filed MSJ on omnibus objection and motion to estimate |
| 08/12/2025 | Court rescheduled 08/22/2025 hearing to 09/23/2025; Midas Green filed responses to Debtors' MSJ and motion to estimate |
| 08/19/2025 | Debtors filed replies to Midas Green's responses |
| 08/28/2025 | Midas Green files motion to withdraw reference |
| 09/18/2025 | Debtors filed objection to Midas Green's motion to withdraw reference |
| 09/23/2025– 09/24/2025 | Evidentiary hearing held |

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### I.     Debtor's Objection to Midas Green's Proofs of Claim

A creditor's claim is allowed unless objected to.  11 U.S.C. § 502. A proof of claim, filed in accordance with the Bankruptcy Rules, is "prima facie evidence of the claim's validity and amount."  FED. R. BANKR. P. 3001(f).  If a debtor objects to a creditor's claim, it is their burden to "present enough evidence to overcome the *prima facie* effect of the claim."  *See McGee v. O'Connor (In re O'Connor)*, 153 F.3d 258, 260 (5th Cir. 1998).  A claimant will prevail unless the objecting party produces sufficient evidence to rebut the claim.  *See In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988); *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2005).

The Sixteenth Edition of *Collier on Bankruptcy* explains the burdens between the claimant and objector:

> The party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. Such evidence must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim. Upon introduction of sufficient evidence by the objecting party, the burden of proof will fall on whichever party would bear that burden outside of bankruptcy. In most cases, the burden of proof will have to be met by the claimant by a preponderance of the evidence. The burdens of proof in bankruptcy cases should be applied in the same manner as they would be under nonbankruptcy law in a nonbankruptcy forum, since the burdens are a substantive aspect of the claim.

*See* 9A COLLIER ON BANKRUPTCY ¶ 3001.09[2] (Richard Levin & Henry J. Sommer eds., 16th ed. 2025).

Therefore, if a Debtor succeeds in overcoming the *prima facie* effect of the claim, then the burden reverts to the creditor to prove the validity of the claim by a preponderance of the evidence.  *See In re Tran*, 351 B.R. 440, 445 (Bankr. S.D. Tex. 2006); *In re All-American Auxiliary*

*Ass'n*, 95 B.R. 540, 545 (Bankr. S.D. Ohio 1989). The claimant always carries with it the ultimate burden of persuasion. *See In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

### A.      **Midas Green's Claims are *Prima Facie* Valid**

A creditor's proof of claim is *prima facie* evidence of the claim's validity. *See* FED. R. BANKR. P. 3001(f). Here, Midas Green filed seven proofs of claim against Debtors in connection with the patent infringement case it filed in the Western District of Texas. In accordance with the Bankruptcy Rules, Midas Green's filed claims are *prima facie* evidence of their validity. *See id.* It is thus Debtors' burden, as the objecting party, to provide sufficient evidence to rebut the presumption of validity in the claims. *See In re O'Connor*, 153 F.3d at 260.

### B.      **Debtors' Rebuttal to the Validity of Midas Green's Claims**

As the objecting party, Debtors must provide sufficient evidence that is equal in probative force to that of Midas Green's claims. *See In re Northbelt, LLC*, 630 B.R. 228, 245 (Bankr. S.D. Tex. 2020). This means:

> The objecting party must produce specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents, or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question.

*Id.* (citation modified).

Midas Green's claims are based on its district court lawsuit against Debtors where Midas Green alleges Debtors' systems infringed upon their '457 patent.[37] Section 271 of Title 35 of the United States

---

[37] *See* Third Amended Complaint for Patent Infringement, *Midas Green Technologies, LLC v. Rhodium Enterprises, Inc.*, Case No. 6:22-cv-00050-ADA (W.D.

Code provides that: "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a).  Courts apply a two-step analysis in determining patent infringement by first (i) construing the claims to determine their scope; and then (ii) comparing the claims to the accused device.  *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1324, 1330 (Fed. Cir. 2001).  Step one is a question of law; step two is a question of fact.  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996).

"To find literal infringement, each limitation of the claim must be present in the accused device. Any deviation from the claim precludes such a finding." *Telemac Cellular Corp.*, 247 F.3d at 1330.  Words of a claim are generally given their ordinary and customary meaning—which is the meaning that the term would have to a person of ordinary skill in the art in question at the effective filing date of the patent application.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

In their objection, Debtors raised several arguments against the validity of Midas Green's claims.[38]  They argued their systems did not infringe Midas Green's patent—namely because the systems lacked key claim limitations.[39]  During the evidentiary hearing, Debtors provided evidence to support their rebuttal through the witness testimony of both their CEO and founder, Chase Blackmon, who designed their tanks, and expert witness, Dr. Alfonso Ortega, Ph.D.[40]

Debtors alleged Midas Green's claims were invalid because their systems did not have a primary and a secondary circulation facility as

Tex. Mar. 29, 2023), ECF No. 106 (Midas Green's complaint in the district court litigation).
    [38] *See* ECF No. 953 at 7–12.
    [39] *See id.* at 11–12.
    [40] *See generally* ECF No. 1806; ECF No. 1719 (transcripts of the two-day evidentiary hearing).

required by Midas Green's claims.[41]  The claim language provides for "a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted."[42]  Debtors alleged their systems did not have a primary and secondary circulation facility, but instead only used a single loop from the tanks, through multiple structures, to distant coolers, and back to the tanks.[43]  At the evidentiary hearing Mr. Blackmon testified:

> [Mr. Blackmon:]  It's a single-loop, single-phase liquid cooling system.
>
> [Debtors' Counsel:]  What makes it a single-loop system?
>
> [Mr. Blackmon:]  It has one pump . . . The whole thing is one big loop, right, with the same fluid. It doesn't ever change. The same fluid that flows through the miner flows through the pump, flows through the cooler, and back around to the miner. Miner, pump, cooler, miner, pump, cooler.[44]

Dr. Ortega also testified as to Debtors' single-loop system:

> [Debtors' Counsel:]  Can you tell us whether you concluded if Rhodium's Temple and Rockdale facilities had a secondary fluid circulation facility?
>
> [Dr. Ortega:]  So I visited the Rhodium facility, and this is what I saw . . . the Rhodium facility has one large loop. They circulate the fluid from the immersion tanks . . ., all the way outside the building, all the way to the cooling tower, the second heat rejector, the heat exchanger, which we call a cooling tower. So it's got one single loop. There is no secondary water loop. There is no secondary loop here. I must say that I was a little bit surprised when I saw the Rhodium system, because it didn't have a secondary loop.

---

[41] *See* ECF No. 953 at 11; ECF No. 1806 at 28.
[42] A copy of Midas Green's patent is filed under seal at ECF No. 954-2 at 14.
[43] ECF No. 1757 at 6.
[44] ECF No. 1806 at 76.

> It had just this one loop, taking the oil all the way outside
> to the cooling tower, as shown here.[45]

Both witnesses contended Debtors' systems did not have the secondary
circulation facility that Midas Green's claims required.[46]

Furthermore, Debtors allege their systems did not infringe
because their systems did not have the claimed "control facility."[47]
Midas Green's claim requires "a control facility adapted to coordinate
the operation of the primary and secondary fluid circulation facilities as
a function of the temperature of the dielectric fluid in the tank."[48]
Debtors argued their systems did not have sensors or any other means
of measuring the temperature of the dielectric fluid in the tank,
therefore, they did not have an ability to use that temperature
to coordinate the primary circulation facility with a non-existent secondary
circulation facility.[49]   In support of their rebuttal, Mr. Blackmon
testified:

> [Debtors' Counsel:] [I]n the R30 and R70 tanks that you
> had at Temple and Rockdale, were there any sensors in
> that tank, any temperature sensors for the liquid, for the
> fluid?
>
> [Mr. Blackmon:] No, ma'am.
>
> [Debtors' Counsel :] And was there anything designed
> anywhere in the system to approximate the temperature of
> the dielectric fluid in these tanks?
>
> [Mr. Blackmon:] No, ma'am.[50]

Further, when Debtors' counsel asked Dr. Ortega if he "[found] anything
at either facility that coordinated anything based on the temperature of

---

[45] ECF No. 1806 at 154.
[46] *See id.*; ECF No. 1806 at 76.
[47] ECF No.1757 at 7.
[48] ECF No. 954-2 at 14.
[49] ECF No.1757 at 7–9.
[50] ECF No. 1806 at 69–70, 155 ("There was nothing in the Rhodium tanks that
measured the temperature of the dielectric fluid in the tank").

the dielectric fluid in the tank that contained the miners," he testified, "[n]o, I did not.  I just did not."[51]

Additionally, Debtors argued that since the Temple facility had a partially installed, inoperable system, it was incapable of measuring temperature let alone controlling anything as a function of that temperature.[52]  When asked by Midas Green's counsel, Dr. Ortega testified that the Prime Control system was not installed and therefore could not infringe because there was no control facility.[53]  Furthermore, Mr. Blackmon stated that there was still a remaining "90% of work needed to be done in order to get the system . . . into a fully functional state."[54]

In addition to lacking a secondary circulation facility, and a control facility to coordinate a primary and secondary circulation facility, Debtors provided testimonial evidence of two other claim limitations their systems lacked.  Debtors alleged that their systems did not have the claimed "appliance slots" nor did their tanks dispense dielectric fluid "substantially uniformly upwardly through each appliance slot."[55]

Midas Green's claims require "a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank."[56]  Debtors argue their tanks had no such appliance slots where the miners were placed.[57]  Mr. Blackmon testified that there was nothing that held the miners in the tank.[58]  On cross, Midas Green questioned Dr. Ortega on whether an appliance slot was

---

[51] *Id.* at 156.
[52] ECF No. 1757 at 8.
[53] ECF No. 1719 at 58.
[54] ECF No. 1806 at 95.
[55] ECF No. 1757 at 4–6.
[56] ECF No. 954-2 at 14.
[57] *See* ECF No. 1757 at 4–5.
[58] *See* ECF No. 1806 at 68.

more like a "parking space" rather than a physical component, but Dr. Ortega disagreed.  He testified in response:

> [A]s a person of skill in the art, I know what an appliance slot is. I work with data center equipment in my work, and I have been doing that for a very long time. An equipment slot for an electronic appliance is a physical thing, typically in an equipment rank, or in this case a tank. It's a physical device, it is designed to allow the appliance to slide in or slip in or slot into a very particular place. It is designed to hold the appliance in place. It's designed to secure it. It's designed, basically, to keep it from moving, or also to keep it from in any way being moved. So it's typically secured, for example, with bolts or other things that secure the appliance into its respective slot.[59]

Lastly, Debtors argued their systems did not infringe because they lacked the ability to dispense dielectric fluid "substantially uniformly upwardly through each appliance slot"—as required by Midas Green's claims.[60]  Mr. Blackmon testified that the base plate he designed instead had distinct hole patterns that were to direct fluid in a non-uniform manner, to the most heat generating components of the machines.[61]

Considering the witnesses' testimony, this Court holds that Debtors have brought forth sufficient evidence to rebut the presumption of validity in Midas Green's claims.  As discussed above, Midas Green's claims are based on their allegations that Debtors' systems infringed their '457 patent.  In analyzing whether a patent has been infringed courts compare the claim to the accused device, and any deviation from the claim precludes a finding of infringement.  *See Telemac Cellular Corp.*, 247 F.3d at 1324, 1330.  Debtors have proffered sufficient evidence to support their argument that their systems did not infringe

---

[59] ECF No. 1806 at 145.
[60] *See* ECF No. 1757 at 5; ECF No. 954-2 at 14.
[61] ECF No. 1806 at 73–74 (explaining his design choice by stating: "I wanted to make sure that the fluid got specifically to the places where it needed to go, and didn't go in other places where we definitely did not want it to go").

because they lacked four claim limitations—an "appliance slot", a "control facility", a "secondary circulation facility", and the ability to dispense dielectric fluid "substantially uniformly upwardly through each appliance slot." Based upon the evidence, Debtors have "produce[d] specific and detailed allegations that place the claim into dispute" through evidence that "bring[s] the validity of the claim into question." *See In re Northbelt, LLC*, 630 B.R. at 245.

Further in support of their position, Debtors allege the claims are not valid because the district court has already found no-infringement at an April 2024 pre-trial hearing.[62] The parties disagree on the finality of the district court's summary judgment ruling.[63] Debtors allege that the district court made a final bench ruling in their favor when the court stated it was "going to grant the motion for summary judgement of noninfringement."[64] Debtors argue that because the district court's ruling is final, Midas Green's claims are precluded in this bankruptcy case.[65]

In response, Midas Green argues Judge Albright did not conclusively rule against Midas Green's claims, and the case is still pending.[66] After stating he would grant summary judgment, Midas Green asked Judge Albright whether he would readdress his ruling if it amended their experts report.[67] Judge Albright indicated he would talk to his clerks to see if there was anything additional an expert might say

---

[62] *See* ECF No. 953 at 4–5.

[63] *Compare id.* (alleging the district court's summary judgement ruling was final)*, with* ECF No. 1069 at 7 (contending "no final ruling has been issued by the district court").

[64] ECF No. 1660-13 at 54. In addition to its statements on the bench, Debtors argue that the finality of the district court's ruling is supported by the fact that the court cancelled the upcoming trial, declined to hear the motions *in limine* and did nothing to indicate it would allow further briefing or an amendment to Midas Green's expert report. ECF No. 1413 at 2.

[65] Debtors argue that because the district court's ruling is final, the doctrines of claim preclusion, issue preclusion, law of the case, and the *Kessler* doctrine all support preclusion of Midas Green's claims in this case. ECF No. 1413 at 3–6.

[66] ECF 1069 at 7.

[67] ECF No. 1660-13 at 54–55.

to benefit the court and if it would, he would let Midas Green know.[68] Additionally, the courtroom minutes indicated a written order was forthcoming and an email to the parties from the district court's law clerk asked the parties to submit a joint proposed order reflecting the parties' understanding of Judge Albright's rulings at the April hearing.[69] Midas Green interprets Judge Albright's statements after his ruling, the courtroom minutes, and the law clerk's email as evidence the district court is still considering its summary judgement ruling.[70]

This Court does not base its decision today on the finality of the district court's ruling. However, it does find that Judge Albright's statements at a minimum support Debtors rebuttal and a finding that Debtors have met their burden of rebutting the presumption of validity in Midas Green's claims.

Because Debtors have rebutted Midas Green's claims, the burden shifted to Midas Green to produce sufficient evidence to support the validity of its claims by a preponderance of the evidence. *See In re Tran*, 351 B.R. at 445. By coming to the evidentiary hearing empty-handed, it failed to do so.

## C.    Midas Green Failed to Meet its Burden

"Upon introduction of sufficient evidence by the objecting party, the burden of proof will fall on whichever party would bear that burden outside of bankruptcy. In most cases, the burden of proof will have to be met by the claimant by a preponderance of the evidence." *See* 9A Collier on Bankruptcy ¶ 3001.09[2]. Because "bankruptcy does not alter the burden imposed by substantive law," the burden imposed by patent law will apply. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15,

---

[68] *Id.* ("MR. KOLEGRAFF: Your Honor, would we be able to readdress this -- after we get Pokharna's report redone, would we be able to readdress this issue on the motion for summary judgment? THE COURT: Well, you know, you have – you've had your chance, but obviously, it's a fairly severe ruling. Let me talk to my clerks and see if they think anything additional that an expert would say might benefit us. And if it is, we'll let you know. As of right now, I don't think it would.").

[69] ECF No. 1522 at 12–13.

[70] ECF No. 1758 at 8.

17 (2000). In a patent infringement case, a patentee has the burden to prove infringement by a preponderance of the evidence. *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997). Therefore, Midas Green had the burden of proving the validity of their claim by a preponderance of the evidence, however, it failed to do so because it failed to provide any evidence at the evidentiary hearing.

An objection to a proof of claim initiates a contested matter. FED. R. BANKR. P. 9014 advisory committee notes. Rule 9014 sets forth the procedures for contested matters. *See id.* The statute provides: "[t]he court must provide procedures that allow parties—at a reasonable time before a scheduled hearing—to determine whether it will be an evidentiary hearing at which witnesses may testify." *See* FED. R. BANKR. P. 9014(e). The purpose of subsection (e) is so that courts provide a mechanism to allow attorneys to know ahead of a scheduled hearing whether it will be necessary for witnesses to appear on that date. FED. R. BANKR. P. 9014 advisory committee's note to 2002 amendments.

The Advisory Committee notes acknowledge local procedures for hearings in a contested matter vary from district to district. *See id.* Local Rule 9013-2 sets forth the procedures for exchanging exhibits, exhibit lists, and witness lists *ahead* of a hearing in a contested matter. *See* BLR 9013-2. Notably, the rule provides that a "failure to timely comply with this rule may be grounds for the denial of the admission of any or all exhibits and the exclusion of witness testimony." *Id.*

In accordance with the letter and spirit of Rule 9014, Midas Green had 11 weeks' notice of the evidentiary hearing in connection with Debtors' claim objection. On July 8th, the Court held a hearing on the omnibus objection at which point the Court gave the parties notice that there would be an evidentiary hearing on the matter on August 22nd.[71] On August 12th, the Court rescheduled that hearing to September 23rd. Midas Green had reasonable notice and opportunity to come to the September hearing prepared to present evidence, and for reasons

---

[71] ECF No. 1479 at 15–16.

unclear to this Court, chose not to.[72]  Because it did not provide a witness or exhibit list ahead of the hearing, this Court—in accordance with the local rules—denied Midas Green's request to present evidence at the hearing or at a later date.  *See* BLR 9013-2.

After Debtors successfully rebutted the presumption of validity in Midas Green's claims, the burden shifted to Midas Green to prove its claim.  Because Midas Green did not present any evidence, it could not meet its burden of proving the validity of its claims by a preponderance of the evidence.  *See In re Northbelt, LLC*, 630 B.R. at 245.  Therefore, the Court sustains Debtors' omnibus objection to Midas Green's claims.  Given the Court's ruling on the claim objection, it will not consider Debtors' Motion for Summary Judgment because it is now moot.

## II.   Estimation of Midas Green's Claims Under 11 U.S.C. § 502(c)

In the alternative, Debtors have moved for estimation of Midas Green's claims under section 502(c) of the Bankruptcy Code.[73]  Debtors contend that Midas Green's claims are contingent and unliquidated and that estimation will avoid undue delay in the administration of this case.[74]  In line with their preclusion arguments, Debtors contend that Midas Green's claims should be valued at $0.[75]  Debtors also argue that Midas Green's failure to show infringement or damages supports estimation at $0.[76]

---

[72] At the September 24th evidentiary hearing, Midas Green's counsel renewed their request to present evidence and argued: "We think it's highly prejudicial, to be put in this position where we're objecting to the jurisdiction of the Court in so far as hearing evidence, and hearing the motion for summary judgment and the motion to estimate, and you know, not having a ruling on that yet, and putting us in this very difficult position." To the extent Midas Green is arguing that their motion to withdraw the reference stayed all other proceedings related to their claims, the Bankruptcy Rules state otherwise. Rule 5011(c) provides that a motion to withdraw "does not stay proceedings in a case or affect its administration."  FED. R. BANKR. P. 5011(c).

[73] *See* ECF No. 1485.

[74] *Id.* at 13–17.

[75] *Id.* at 17–18.

[76] ECF No. 1757 at 9–10.

Midas Green's response largely restates its arguments in its motion to withdraw the reference, which contend that this matter is not properly before this Court.[77]  Alternatively, it argues that its claims are liquidated and that the Court should estimate the value of their claims at $12,306,278 based on the expert report of J. Duross O'Bryan filed in the proceedings before the district court.[78]

Section 502(c) of the Bankruptcy Code provides: "[t]here shall be estimated for purpose of allowance under this section—(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c)(1).  The Court has an affirmative duty to estimate such claims in order to facilitate the administration of the case.  *In re Perry*, 425 B.R. 323, 342 n.11 (Bankr. S.D. Tex. 2010).

A claim is contingent "as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor."  *In re Ford*, 967 F.2d 1047, 1051 (5th Cir. 1992).  Here, Midas Green's claims against Debtors are contingent.  Debtors will only be liable for monetary damages if it is determined that Debtor's immersion-cooling systems infringed on Midas Green's '457 Patent.

A claim is unliquidated "when the finder of fact must rely upon its judgment to establish an appropriate amount to compensate for past and future injury."  *In re Horne*, 277 B.R. 712, 717 (Bankr. E.D. Tex. 2002).  A claim is liquidated when judgment or discretion is not required. *Id.*  Midas Green's claims against Debtors are unliquidated.  35 U.S.C. § 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use

---

[77] ECF No. 1523.  The Court issued its report and recommendation to the district court regarding Midas Green's motion to withdraw the reference concurrently with its issuance of this opinion.

[78] *Id.* at 18−19.  This report, however, is hearsay not admitted in this case.  *See* FED. R. EVID. 801.

made of the invention by the infringer, together with interest and costs as fixed by the court."  Here, Midas Green's amended claims only seek the reasonable royalty.[79]

The calculation of a reasonable royalty is inherently discretionary as there are multiple accepted methods of calculating a reasonable royalty that require factfinders to weigh various factors and use their judgment to determine an appropriate royalty amount.  *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1324−25 (Fed. Cir. 2009).  One method focuses on the infringer's projections of profit for the infringing product.  *Id*. at 1324 (citing *TWM Mfg. Co. v. Dura Corp*., 789 F.2d 895, 899 (Fed. Cir. 1986)).  Another more common method, the "hypothetical negotiation approach," attempts to ascertain the royalty the parties would have agreed upon had they negotiated an agreement just before infringement began.  *Id*. (citing *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

As the court in *Lucent Technologies* explained, "[t]he hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement.  In other words, if infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme."  *Id*. at 1325.  Indeed, courts often consider fifteen factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.* but are not "constrained" by the *Georgia-Pacific* factors and need not consider inapposite or inconclusive factors, highlighting the discretion involved in reasonable royalty calculations.  *SecurityPoint Holdings, Inc. v. United States*, 156 Fed. Cl. 750, 782 (2021).

Additionally, the fixing or liquidation of the Midas Green claims would unduly delay the administration of the case.  This case has been pending since August 2024.  This particular dispute has been ongoing since January 2022, and it has been nine months since this Court lifted

---

[79] ECF No. 1580 at 13.

the stay in the underlying litigation.[80]   While the outer limit of the amount of Midas Green's claims has been reduced from $43 million to $12.3 million, still the uncertainty surrounding a potential multi-million-dollar claim is prohibiting the parties from proposing a meaningful plan of reorganization.  *In re Mud King Products, Inc*, No. H–14–2316, 2015 WL 862319, at *4 (S.D. Tex. Feb. 27, 2015).  This case has made significant progress and is proceeding toward a December 3, 2025 confirmation hearing.  However, continuing to wait indefinitely for a final resolution of the dispute will inevitably dissipate estate resources and possibly result in smaller distributions to stakeholders.  Such an outcome is exactly what Congress intended to prevent when it promulgated section 502(c) of the Bankruptcy Code.

In a claims estimation proceeding under 11 U.S.C. § 502(c), the Court has much latitude in the method it chooses to evaluate a claim. *In re Perry*, 425 B.R. at 342.  "Generally, the Court may estimate claims by 'whatever method is best suited to the particular contingencies at issue,' so long as the underlying purposes of the Code are not contravened."  *Id.* (quoting *Bittner v. Borne Chem. Co., Inc.,* 691 F.2d 134, 135 (3d Cir. 1982)).  And the Court is required to evaluate claims using the legal rules that ultimately govern the claims. *Id.* at 442.

As noted in the preceding discussion, Midas Green's claims stem from allegations of patent infringement in violation of 35 U.S.C. § 271. In patent infringement actions, the patentee bears the burden of proving infringement by a preponderance of the evidence.  *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).  Similarly, if the patentee establishes infringement, it also bears the burden of proving damages.  *Lucent Techs.*, 580 F.3d at 1324.

In this case, the Court determined that a full evidentiary hearing was best suited to address "every respect" of Midas Green's claims.[81] The Court held a two-day evidentiary hearing where the parties were

---

[80] ECF No. 737.
[81] ECF No. 1479 at 15.

permitted to offer any and all evidence regarding Midas Green's claims. As noted, Midas Green showed up to this evidentiary hearing empty-handed.[82] And, as discussed above, Midas Green has offered no evidence of infringement of its '457 patent or its damages *in this case*—only its contentions in the complaint filed in the district court that was attached to its proofs of claim.

Accordingly, because Midas Green did not meet its burden of proving infringement by a preponderance of the evidence in accordance with 35 U.S.C. § 271, the Court alternatively values its claims at $0. This Court has held that estimation at $0 is appropriate where a claimant fails to meet its burden under controlling law. *In re Mud King Prods., Inc,* 514 B.R. 496 (Bankr. S.D. Tex. 2014), *aff'd,* No. H-14-2316, 2015 WL 862319 (S.D. Tex. Feb. 27, 2015). Here, given the record before the Court, estimation at $0 is similarly appropriate.

## CONCLUSION

For the reasons described above, the Court sustains Debtors' Amended Omnibus Objection to Claim Numbers 004, 062, and 068-072 Filed by Midas Green Technologies LLC and, alternatively, estimates Midas Green's claims at $0. Debtors' Motion for Summary Judgment is moot. To the extent the District Court determines the reference should be withdrawn, this Memorandum Opinion will serve as a Report and Recommendation. A separate order will issue.

SIGNED 10/28/2025

Alfredo R Pérez
United States Bankruptcy Judge

---

[82] ECF No. 1806 at 4–7; 12.