**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448(ARP) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR**
**RHODIUM ENCORE LLC AND ITS AFFILIATED DEBTORS**
**PROPOSED BY DEBTORS AND AD HOC GROUP OF SAFE PARTIES**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Patricia B. Tomasco (SBN 01797600)
Cameron Kelly (SBN 24120936)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100

Eric D. Winston (*pro hac vice*)
Razmig Izakelian (*pro hac vice*)
Benjamin Roth (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100

Lindsay M. Weber
Alain Jaquet (*pro hac vice*)
Rachel Harrington (*pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Telephone: 212-849-7000
Facsimile: 212-849-7100

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (SBN 24033047;
S.D. Tex. 30555)
Elizabeth D. Scott (SBN 24059699;
S.D. Tex. 2255287)
Samantha Baham (SBN 24141349)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone:  (214) 969-2800
Email:  sschultz@akingump.com
Email:  edscott@akingump.com

Mitchell P. Hurley (admitted *pro hac vice*)
Kaila Zaharis
One Bryant Park
New York, NY 10036-6745
Telephone:  (212) 872-1000
Email:  mhurley@akingump.com
        kzaharis@akingump.com

*Attorneys for the Ad Hoc Group of SAFE Parties*

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

*Attorneys for the Debtors and Debtors-In-Possession*

**BARNES & THORNBURG LLP**
Vincent P. (Trace) Schmeltz III (*pro hac vice*)
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-214-5602
Facsimile: 312-759-5646
Email: tschmeltz@btlaw.com

*Counsel for Special Committee of the Board of Directors of Rhodium Enterprises, Inc.*

Dated:  November 30, 2025
   Houston, Texas

**TABLE OF CONTENTS**

                                                                                            Page

ARTICLE I.          DEFINITIONS AND INTERPRETATION. ..................................................... 1

ARTICLE II.         ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS,
                    AND PRIORITY TAX CLAIMS. ................................................................... 16

ARTICLE I.          DEFINITIONS AND INTERPRETATION. ..................................................... 1

ARTICLE II.         ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS,
                    AND PRIORITY TAX CLAIMS. ................................................................... 16

    2.1.    Administrative Expense Claims. ................................................................. 16

    2.2.    Professional Fee Claims. ............................................................................ 16

    2.3.    Priority Tax Claims. ................................................................................... 16

    2.4.    Professional Fee Escrow. ........................................................................... 17

    2.5.    Professional Fee Claims Estimate. ............................................................. 17

    2.6.    Post-Effective Date Fees and Expenses. .................................................... 17

    2.7.    SAFE AHG Substantial Contribution Claim. ............................................ 18

ARTICLE III.        CLASSIFICATION OF CLAIMS AND INTERESTS. ................................ 18

    3.1.    Classification in General. ........................................................................... 18

    3.2.    Summary of Classification of Claims and Interests. ................................... 18

    3.3.    Special Provision Governing Unimpaired Claims. ..................................... 19

    3.4.    Elimination of Vacant Classes. .................................................................. 19

    3.5.    No Waiver. .................................................................................................. 20

    3.6.    Voting Classes; Presumed Acceptance by Non-Voting Classes. ................ 20

    3.7.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ......... 20

ARTICLE IV.         TREATMENT OF CLAIMS AND INTERESTS. ......................................... 20

    4.1.    Rhodium 2.0 Secured Notes Claims (Class 1). ........................................... 20

    4.2.    Rhodium Encore Secured Notes Claims (Class 2). ..................................... 20

    4.3.    Rhodium Technologies Secured Notes Claims (Class 3). ........................... 21

    4.4.    Priority Non-Tax Claims (Class 4). ............................................................ 21

    4.5.    Guaranteed Unsecured Claims (Class 5a). ................................................. 22

    4.6.    General Unsecured Claims (Class 5b). ....................................................... 22

    4.7.    SAFE Claims (Class 6). .............................................................................. 23

    4.8.    Late Filed Claims (Class 7). ....................................................................... 23

    4.9.    Intercompany Claims (Class 8). .................................................................. 23

    4.10.   Section 510(b) Claims (Class 9). ................................................................ 24

4.11.    Common Interests (Class 10). ..................................................................... 24

4.12.    Imperium Interests (Class 11). .................................................................... 24

4.13.    Intercompany Interests (Class 12). .............................................................. 25

ARTICLE V.        MEANS FOR IMPLEMENTATION. ............................................... 25

5.1.    Compromise and Settlement of Claims, Interests, and Controversies. ............... 25

5.2.    D&O Insurance Settlement ......................................................................... 25

5.3.    Effectuating    Documents;    Corporate    Action;    Restructuring/Liquidation
Transactions. ............................................................................................ 25

5.4.    Exemption from Securities Laws. ................................................................ 26

5.5.    Cancellation of Liens and Debt Instruments. ................................................ 26

5.6.    Officers and Boards of Directors; Management of Wind Down Debtor. ............ 27

5.7.    Nonconsensual Confirmation. ..................................................................... 27

5.8.    Closing of the Chapter 11 Cases. ................................................................ 27

5.9.    Redemption of Rhodium Technologies Interests. ........................................... 27

5.10.    Liquidation of Remaining Assets. ............................................................... 28

5.11.    Mobile Mining Unit. .................................................................................. 28

5.12.    Notice of Effective Date. ............................................................................ 28

5.13.    Treatment of Transcend Group Claims and Interests. .................................... 28

ARTICLE VI.        DISTRIBUTIONS. ...................................................................... 29

6.1.    Distributions Generally. ............................................................................. 29

6.2.    Distribution Record Date. .......................................................................... 29

6.3.    Date of Distributions. ................................................................................ 29

6.4.    Disbursing Agent. ..................................................................................... 30

6.5.    Rights and Powers of Disbursing Agent. ...................................................... 30

6.6.    No Postpetition Interest on Claims. ............................................................. 30

6.7.    Delivery of Plan Distributions. ................................................................... 30

6.8.    Plan Distributions after Effective Date. ....................................................... 31

6.9.    Unclaimed Property. .................................................................................. 31

6.10.    Time Bar to Cash Payments. ...................................................................... 31

6.11.    Manner of Payment under Plan. .................................................................. 31

6.12.    Satisfaction of Claims and Interests. ........................................................... 31

6.13.    Minimum Cash Distributions. ..................................................................... 32

6.14.    Setoffs and Recoupments. .......................................................................... 32

6.15.    Allocation of Distributions between Principal and Interest. ............................ 32

6.16.    No Distribution in Excess of Amount of Allowed Claim. ................................ 32

| | | |
|---|---|---|
| 6.17. | [Reserved.] | 32 |
| 6.18. | Special Provisions Relating to Proofs of Claim Filed by Imperium and the Founders | 32 |
| 6.19. | Withholding and Reporting Requirements. | 33 |

ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS AND INTERESTS. ............... 34

| | | |
|---|---|---|
| 7.1. | Disputed Claims and Interests Generally. | 34 |
| 7.2. | Objections to Claims and Interests. | 34 |
| 7.3. | Estimation of Claims. | 34 |
| 7.4. | Adjustment to Claims Register Without Objection. | 35 |
| 7.5. | Disallowance of Claims. | 35 |
| 7.6. | No Distributions Pending Allowance. | 35 |
| 7.7. | Distributions after Allowance. | 35 |
| 7.8. | Claim Resolution Procedures Cumulative. | 35 |
| 7.9. | Amendments to Claims or Interests. | 36 |

ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ..................... 36

| | | |
|---|---|---|
| 8.1. | General Treatment. | 36 |
| 8.2. | Determination of Assumption and Cure Disputes and Deemed Consent. | 37 |
| 8.3. | Rejection Claims. | 38 |
| 8.4. | Debtors' Indemnification Obligations. | 38 |
| 8.5. | Employee Arrangements and Employee Obligations. | 38 |
| 8.6. | Insurance Policies/Claims Payable by Third Parties. | 40 |
| 8.7. | Intellectual Property Licenses and Agreements. | 40 |
| 8.8. | Assignment. | 41 |
| 8.9. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 41 |
| 8.10. | Reservation of Rights. | 41 |

ARTICLE IX.    CONDITIONS PRECEDENT TO EFFECTIVE DATE. ............................. 42

| | | |
|---|---|---|
| 9.1. | Conditions Precedent to the Effective Date. | 42 |
| 9.2. | Timing of Conditions Precedent. | 42 |
| 9.3. | Waiver of Conditions Precedent. | 43 |
| 9.4. | Effect of Failure of a Condition. | 43 |

ARTICLE X.    EFFECT OF CONFIRMATION OF PLAN. .......................................... 43

| | | |
|---|---|---|
| 10.1. | Vesting of Assets in the Wind Down Debtor. | 43 |
| 10.2. | Binding Effect. | 43 |
| 10.3. | Term of Injunctions or Stays. | 43 |

| | | |
|---|---|---|
| 10.4. | Injunction. | 44 |
| 10.5. | Releases. | 45 |
| 10.6. | Exculpation. | 47 |
| 10.7. | Gatekeeper Injunction. | 48 |
| 10.8. | Retention of Causes of Action/Transfer of Causes of Action and Reservation of Rights. | 48 |
| 10.9. | Ipso Facto and Similar Provisions Ineffective. | 48 |
| 10.10. | Solicitation of Plan. | 49 |
| 10.11. | Corporate and Limited Liability Company Action. | 49 |
| ARTICLE XI. | RETENTION OF JURISDICTION. | 49 |
| 11.1. | Retention of Jurisdiction. | 49 |
| 11.2. | Courts of Competent Jurisdiction. | 51 |
| ARTICLE XII. | MISCELLANEOUS PROVISIONS. | 51 |
| 12.1. | Payment of Statutory Fees. | 51 |
| 12.2. | Substantial Consummation of the Plan. | 51 |
| 12.3. | Request for Expedited Determination of Taxes. | 51 |
| 12.4. | Exemption from Certain Transfer Taxes. | 51 |
| 12.5. | Amendments. | 52 |
| 12.6. | Effectuating Documents and Further Transactions. | 52 |
| 12.7. | Revocation or Withdrawal of the Plan. | 52 |
| 12.8. | Severability of Plan Provisions. | 52 |
| 12.9. | Governing Law. | 53 |
| 12.10. | Time. | 53 |
| 12.11. | Dates of Actions to Implement the Plan. | 53 |
| 12.12. | Immediate Binding Effect. | 53 |
| 12.13. | Deemed Acts. | 53 |
| 12.14. | Successors and Assigns. | 54 |
| 12.15. | Entire Agreement. | 54 |
| 12.16. | Exhibits to Plan. | 54 |
| 12.17. | Dissolution of Creditors' Committee. | 54 |
| 12.18. | Special Committee. | 54 |
| 12.19. | Notices. | 54 |

Each of Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511) (each, a "**_Debtor_**" and, collectively, the "**_Debtors_**"), together with the Ad Hoc Group of SAFE Parties (as described herein, the "**_SAFE AHG_**"), propose the following first amended joint chapter 11 plan of liquidation (the "**_Plan_**") pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in <u>Article I.A.</u> Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan, the settlements and transactions contemplated thereby, and certain related matters. The Debtors and the SAFE AHG are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code (in such capacity, collectively, the "**_Plan Proponents_**").

The Plan Proponents have proposed the Plan in light of the Bankruptcy Court's _Memorandum Opinion Overruling Debtors' Omnibus Objection at ECF No. 1126 to the SAFE Proofs of Claim_ (Docket No. 1592) and accompanying Order (Docket No. 1593). Pursuant to that Opinion and accompanying Order, the Bankruptcy Court held that obligations arising under the SAFE Agreements (as defined herein) are Claims under the Bankruptcy Code. Accordingly, such SAFE obligations have a recovery priority superior to that of Common Interests in the Debtors. The Plan therefore directs the majority of the value of the Debtors' Estates to be distributed under the Plan to the Holders of SAFE Claims.

Pursuant to the Payment Orders (as defined herein), the Debtors obtained Bankruptcy Court authorization to, among other things, make distributions to Holders of certain Secured Claims, General Unsecured Claims, and Guaranteed Unsecured Claims in accordance with the terms of the Payment Orders. For the avoidance of doubt, all distributions made pursuant to the Payment Orders shall be in lieu of any payments due on account of such Claims under this Plan, and all such Claims shall be extinguished in the same manner as though the distributions had been made pursuant to this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.  DEFINITIONS AND INTERPRETATION.

A.  Definitions.

The following terms shall have the respective meanings specified below:

*1.1 "Administrative Expense Claim"* means any Claim against any Debtor for a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for good and other services and leased premises) and (ii) Professional Fee Claims.  Administrative Expense Claims shall include, without limitation, the SAFE AHG Substantial Contribution Claim.

*1.2 "Affiliate"* shall, with respect to an Entity, have the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

*1.3 "Allowed"* means, with respect to any Claim or Interest, except as otherwise provided herein: (i) a Claim (or any portion thereof) that is evidenced by a Proof of Claim Filed by the applicable Bar Date established in the Chapter 11 Cases or any Late Filed Claim accepted by Final Order of the Bankruptcy Court or deemed timely filed by Final Order of the Bankruptcy Court; (ii) an Interest (or any portion thereof) that is evidenced by a Proof of Interest Filed by the applicable Bar Date established in the Chapter 11 Cases; (iii) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim or Proof of Interest has been timely Filed that asserts a Claim or Interest different in amount or priority from that listed in the Schedules (unless otherwise agreed by stipulation between the Debtors and the applicable Holder); or (iv) a Claim or Interest Allowed pursuant to the Plan, including as settled or compromised pursuant to section 7.2 hereof, or a Final Order; *provided that* with respect to a Claim or Interest described in clauses (i) and (ii) above, such Claim or Interest shall be considered Allowed only if and to the extent that (A) with respect to such Claim or Interest, no objection to the allowance thereof, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn by the Claim Objection Deadline, (B) an objection to such Claim or Interest is asserted and such Claim or Interest is subsequently allowed pursuant to a Final Order, or (C) such Claim or Interest is settled pursuant to a Final Order; *provided, further that* notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims and Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502, 503, 506 or 507 of the Bankruptcy Code, to the extent applicable, and (y) the Debtors and the Wind Down Debtor, as applicable, shall retain all claims and defenses with respect to Allowed Claims or Interests that are Reinstated or otherwise Unimpaired pursuant to the Plan. If a Claim or Interest is Allowed only in part, any provisions hereunder with respect to Allowed Claims or Interests are applicable solely to the Allowed portion of such Claim or Interest. For the avoidance of doubt, a Proof of Claim or a Proof of Interest Filed after the applicable Bar Date shall not be Allowed for any purpose whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest and a Claim or Interest that has been Disallowed by a Final Order or settlement shall not be Allowed for any purpose whatsoever. "Allow," "Allowing," and "Allowance," shall have correlative meanings.

*1.4 "Asset"* means all of the rights, title, and interests of any Debtor in, and to property of, whatever type or nature, including real, personal, mixed, intellectual, tangible, and intangible property.

1

*1.5 "Assumption Dispute"* means an unresolved objection regarding assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other issue relating to assumption of an Executory Contract or Unexpired Lease.

*1.6 "Avoidance Actions"* means any and all actual or potential Claims and Causes of Action to avoid or recover a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code and applicable non-bankruptcy law.

*1.7 "Ballot"* means the form distributed to each Holder of a Claim or Interest in a Class entitled to vote on the Plan (as set forth herein), on which it is to be indicated, among other things, acceptance or rejection of the Plan.

*1.8 "Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

*1.9 "Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of Texas, Houston Division having jurisdiction over the Chapter 11 Cases, and to the extent of any reference made under section 157 of title 28 of the United States Code or if the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

*1.10 "Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

*1.11 "Bar Date"* means, collectively, the General Bar Date, the Governmental Bar Date, the Equity Interests Bar Date, the Rejection Damages Bar Date, and the Amended Schedules Bar Date.

*1.12 "Bar Date Order"* means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving the Form of Proofs of Claim and the Manner of Filing, (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* (Docket No. 284).

*1.13 "Business Day"* means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in New York, New York are authorized or required by law or other governmental action to close.

*1.14 "Cash"* means the legal tender of the United States of America.

*1.15 "Causes of Action"* means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, proceeding, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), choate or inchoate, reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal

securities laws). Causes of Action also includes: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any claim pursuant to section 362 of the Bankruptcy Code; (iv) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (v) any state law fraudulent transfers; and (vi) any Avoidance Actions.

*1.16* ***"Chapter 11 Cases"*** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

*1.17* ***"Claim"*** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

*1.18* ***"Claim/Interest Objection Deadline"*** means the deadline for objecting to Filed Proofs of Claim or Proofs of Interest or scheduled Claims or Interests, which shall be, unless otherwise extended pursuant to the Plan, (i) the one-hundred eightieth (180th) day following the later of (a) the Effective Date and (b) the date that a Proof of Claim or Proof of Interest is Filed or amended or a Claim or Interest is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim or Interest; or (ii) such later date as may be fixed by the Bankruptcy Court; ***provided, however, that*** the Wind Down Debtor may extend the Claim/Interest Objection Deadline for an additional ninety (90) days in its sole discretion upon the filing of a notice with the Bankruptcy Court, with further extensions thereafter permitted after notice and a hearing.

*1.19* ***"Claims and Noticing Agent"*** means Kurtzman Carson Consultants, LLC dba Verita Global, the claims, noticing, and solicitation agent retained by the Debtors pursuant to the *Order Authorizing the Employment and Retention of Kurtzman Carson Consultants, LLC dba Verita Global as Claims, Noticing, and Solicitation Agent* (Docket No. 43).

*1.20* ***"Class"*** means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

*1.21* ***"Collateral"*** means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid and has not been avoided under the Bankruptcy Code or applicable nonbankruptcy law.

*1.22* ***"Common Interest"*** means, collectively, (i) Rhodium Enterprises Class A Interests, (ii) LTIP Interests, and (iii) Warrants.

*1.23* ***"Company"*** means, collectively, the Debtors and their non-Debtor Affiliates.

*1.24* ***"Confirmation"*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

*1.25* ***"Confirmation Date"*** means the date on which the Bankruptcy Court enters the Confirmation Order.

*1.26* ***"Confirmation Hearing"*** means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.27 **"Confirmation Order"** means the order of the Bankruptcy Court confirming the pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Plan Proponents.

1.28 **"Covered Claim"** means any Claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing of the Plan Support Agreement (including the Term Sheet) and related transactions, the Disclosure Statement, the Plan, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan Support Agreement (including the Term Sheet) and related transactions, the Disclosure Statement, the Plan Supplement, the Chapter 11 Cases, the commencement of the Chapter 11 Cases, the marketing process for the sale of any of the Debtors' assets, the solicitation of votes on the Plan, the negotiation and settlement of claims, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or after the Petition Date and on or before the Effective Date.

1.29 **"Creditors' Committee"** means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on November 22, 2024 (Docket No. 488), as the membership of which has been and may be reconstituted from time to time.

1.30 **"Cure Amount"** means, as applicable, (i) the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (b) permit the Debtors to assume such Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code, or (ii) the payment of Cash by the Debtors in an amount required by section 1124(2) of the Bankruptcy Code to Reinstate a Claim.

1.31 **"D&O Insurance Settlement"** means the settlement of the Rhodium D&O Claims between the Founders, the Debtors, and the carriers that underwrote the first two layers of D&O Policies that is described in more detail in section 5.2 of the Plan.

1.32 "**D&O Policy**" means, collectively, all insurance policies (including any "tail policy") issued or providing coverage to any of the Debtors for current or former directors', managers', and officers' liability, and all agreements, documents, or instruments related thereto, including the policies extended through January 1, 2026.

1.33 **"Debtor"** or **"Debtors"** has the meaning set forth in the introductory paragraph of this Plan.

1.34 **"Debtors in Possession"** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.35 **"Disallowed**" means any Claim or Interest, or any portion thereof, that (i) has been disallowed by the Plan, Final Order, or settlement; (ii) is scheduled at zero, or as contingent, disputed, or unliquidated on the Schedules and as to which no Proof of Claim or Proof of Interest has either been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including any claims or interests bar date order, or otherwise deemed timely Filed under applicable law; (iii) is not scheduled on the Schedules and as to which no Proof of Claim or Proof of Interest has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under

4

applicable law; (iv) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (v) has been withdrawn by the Holder thereof. "Disallow" and "Disallowance" shall have correlative meanings.

1.36 **"Disbursing Agent"** means any Entity (including any applicable Debtor or the Wind Down Debtor) in its capacity as a disbursing agent under Article VI of the Plan.

1.37 **"Disclosure Statement"** means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

1.38 "**Disclosure Statement Approval Order**" means the *Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation Procedures and Solicitation Packages, (C) Scheduling Confirmation Hearing, (D) Establishing Procedures For Objecting to the Plan and Disclosure Statement, (E) Approving the Form, Manner, and Sufficiency of Notice of the Hearings, and (F) Granting Related Relief*, which may be amended or modified.

1.39 **"Disputed"** means, with respect to a Claim or Interest, (i) any Claim or Interest, which Claim or Interest is disputed under section 7.1 of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (ii) any Claim or Interest, proof of which was required to be Filed by order of the Bankruptcy Court but as to which a Proof of Claim or Proof of Interest was not timely or properly Filed by the applicable Bar Date; (iii) any Claim or Interest that is listed in the Schedules as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim or Proof of Interest has been Filed by the applicable Bar Date; or (iv) any Claim or Interest that is otherwise disputed by any of the Debtors or the Wind Down Debtor, as applicable, in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order. To the extent only the amount of a Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount the Debtors do not dispute, if any, and distribute as to the balance of such Claim or Interest.

1.40 **"Distributable Cash"** means the amount of the Cash held by the Debtors, which they shall cause to reside at Debtor REI, on the Effective Date after the satisfaction of or establishing an appropriate reserve for: (a) the Wind Down Budget; and (b) the payment of all administrative and priority claims, including, for the avoidance of doubt, the Substantial Contribution Claim and the establishment of a Professional Fee Escrow.

1.41 **"Distribution Record Date"** means the record date for purposes of determining which:

(i)      Holders of Allowed Claims are eligible to receive distributions under the Plan, which, unless otherwise specified, shall be the earlier of (a) the date that is two (2) Business Days before the Effective Date or such other date as is designated by the Plan Proponents, and (b) the date such Claim becomes Allowed, and

(ii)      Holders of Allowed Interests are eligible to receive distributions under the Plan, which, unless otherwise specified, shall be the Effective Date.

1.42 **"Effective Date"** means, with respect to the Plan, the date that is a Business Day selected by the Plan Proponents on which: (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent specified in section 9.1 of the Plan have been satisfied or waived (in accordance with section 9.3). Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

1.43 **"Employee"** means any person employed by the Company before or after the Petition Date, although for the avoidance of doubt, any post-Effective Date employment by the Wind Down Debtor will be through a 1099 contractor status.

1.44 **"Employee Arrangements"** means all employment or employee-related arrangements, agreements, programs, and policies, and all compensation and benefits plans, policies, award letters, key employee retention agreements, and programs of the Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all agreements with professional employer organizations, savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, life and accidental death and dismemberment insurance plans.

1.45 **"Entity"** means an individual, corporation, partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or other Person or other entity.

1.46 **"Equity Interests Bar Date"** means June 20, 2025, at 5:00 p.m. (Prevailing Central Time) as established by the *Corrected Order (I) Setting Bar Date for Filing Proofs of Interest, (II) Approving the Form of Proofs of Interest and the Manner of Filing, (III) Approving Notice of Bar Date, and (IV) Granting Related Relief* entered on May 14, 2025 (Docket No. 1100).

1.47 **"Estate"** or **"Estates"** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code upon the commencement of each Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by each Debtor after the Petition Date and before the Effective Date.

1.48 **"Exculpated Parties"** means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: (i) the Debtors; (ii) the Creditors' Committee and each of its present and former members, each solely in its capacity as such (and as it relates to former members, solely with regard to the time period for which they served on the Creditors' Committee); and (iii) the Independent Directors.

1.49 **"Executory Contract"** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.50 **"Federal Judgment Rate"** means the interest rate of 4.00% per annum as provided under 28 U.S.C. § 1961(a), calculated as of the Petition Date.

1.51 **"File, Filed, or Filing"** means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, with the Claims and Noticing Agent.

1.52 **"Final Order"** means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, with respect to the relevant subject matter, which (a) has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, reconsideration or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, reconsideration or rehearing has been timely taken, or (b) as to which any appeal that has been taken or any petition for certiorari or motion for reargument, reconsideration or rehearing that has been or may be Filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for

6

new trial, reargument, reconsideration or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; ***provided that*** no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be Filed with respect to such order or judgment.

*1.53 **"Founders"*** means, collectively, Cameron Blackmon, Chase Blackmon, Nicholas Cerasuolo, and Nathan Nichols and any of their owned affiliates.

*1.54 **"General Bar Date"*** means November 22, 2024, at 5:00 p.m. (prevailing Central Time), which was the deadline by which all Persons, except Governmental Units, were required to have Filed Proofs of Claim against the Debtors as established by the Bar Date Order.

*1.55 **"General Unsecured Claim"*** means any Claim that is not a Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Professional Fee Claim, Guaranteed Unsecured Claim, SAFE Claim, Intercompany Claim, Late Filed Claim, Section 510(b) Claim, or an Administrative Expense Claim. Except as otherwise agreed upon pursuant to a settlement with the Debtors, any interest accruing on General Unsecured Claims from the Petition Date through the Effective Date shall accrue at the Federal Judgment Rate.

*1.56 **"Governmental Bar Date"*** means February 20, 2025, at 5:00 p.m. (prevailing Central Time), which was the deadline by which all Governmental Units were required to have Filed Proofs of Claim against the Debtors, as established by Local Rule 3003-1 and ratified by the Bar Date Order.

*1.57 **"Governmental Unit"*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

*1.58 **"Guaranteed Unsecured Claim"*** means any Claim arising under or related to those certain secured promissory notes between Rhodium Technologies and the counterparties thereto, which are secured by a pledge by Imperium of certain of its Class A units in Rhodium Technologies, as set forth in the pledge agreements related to those secured promissory notes. Except as otherwise agreed upon pursuant to a settlement with the Debtors, any interest accruing on Guaranteed Unsecured Claims from the Petition Date through the Effective Date shall accrue at 3.05%.

*1.59 **"Holder"*** means any Person holding (including as successor or assignee pursuant to a valid succession or assignment) a Claim or an Interest, as applicable, solely in its capacity as such.

*1.60 **"Impaired"*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

*1.61 **"Imperium"*** means Imperium Investments Holdings, LLC.

*1.62 **"Imperium Interests"*** means (i) the Class B Common Stock in Rhodium Enterprises owned by Imperium, (ii) the units in Rhodium Technologies owned by Imperium, (iii) the so-called "penny warrants" issued by Rhodium Enterprises to Imperium on or about September 29, 2022, and (iv) any other equity interests in the Debtors that may be asserted by the Founders and/or the members of Imperium.

*1.63 **"Imperium Parties"*** means Imperium, each of Imperium's members, Imperium's wholly-owned affiliates other than the Debtors, and the Founders.

1.64 ***"Indemnification Obligation"*** means any existing or future obligation of any Debtor or the Wind Down Debtor to indemnify current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective memoranda, articles or certificates of incorporation or formation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date, excluding any obligation to indemnify any of the foregoing parties with respect to any act or omission for or on behalf of the Debtors arising out of any act or omission determined by a Final Order to constitute actual fraud, willful misconduct, or gross negligence. For the avoidance of doubt, any party to whom an Indemnification Obligation is owed will be required to make a claim for Side A coverage under the D&O Policies that have been extended through January 1, 2026.

1.65 ***"Independent Directors"*** means David Eaton and Spencer Wells in their capacities as independent directors of Rhodium Enterprises, Inc.

1.66 ***"Insured Litigation Claims"*** means any insured claims constituting Guaranteed Unsecured Claims, General Unsecured Claims, or Late Filed Claims, as applicable.

1.67 ***"Intercompany Claim"*** means any Claim against a Debtor held by another Debtor.

1.68 ***"Intercompany Interest"*** means an Interest in a Debtor held by another Debtor.

1.69 ***"Interests"*** means any equity in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instruments evidencing an ownership interest, or equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, whether or not transferable, and any restricted stock, warrant or right, contractual or otherwise, including, without limitation, equity-based employee incentives, grants, stock appreciation rights, performance shares/units, incentive awards, or other instruments issued to employees of the Debtors, to acquire any such interests in a Debtor that existed immediately before the Effective Date (in each case whether or not arising under or in connection with any employment agreement). For the avoidance of doubt, Interests, as used herein, includes, without limitation, (i) Rhodium Enterprises Class A Interests, (ii) Imperium Interests, (iii) LTIP Interests, (iv) Intercompany Interests (including Rhodium Technologies Interests), and (v) Warrants.

1.70 ***"Late Filed Claim"*** means a Claim Filed after the applicable Bar Date.

1.71 ***"Lien"*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.72 ***"Local Rules"*** means the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

1.73 ***"LTIP Interests"*** means Interests held by participants in the Debtors' Long-Term Incentive Plan in any of the Debtors.

1.74 ***"Mobile Mining Unit"*** means that certain mobile mining unit purchased by Debtor Rhodium Industries from Blackmon Holdings, LLC for $1,000,000 on or about June 30, 2022.

1.75 ***"Person"*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

*1.76* **"Petition Date"** means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

*1.77* **"Payment Orders"** means, collectively, the (a) *Order Amending the Final Cash Collateral Order to Authorize Final Payment to Prepetition Secured Lenders* (Docket No. 1197); and (b) *Order Granting Debtors' Motion for Entry of an Order (I) Approving the Accelerated Payment Procedures; and (II) Granting Related Relief* (Docket No. 1198).

*1.78* **"Plan"** means this amended joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

*1.79* **"Plan Distribution"** means the payment or distribution of consideration to Holders of Allowed Claims and Interests under the Plan.

*1.80* **"Plan Documents"** means any of the documents, other than the Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

*1.81* **"Plan Proponents"** has the meaning set forth in the introductory paragraph of this Plan.

*1.82* **"Plan Supplement"** means a supplemental appendix to the Plan, to be filed no later than ten (10) Business Days prior to the deadline to vote to accept or reject the Plan, containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules, which may include, but not be limited to: (i) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (ii) the Schedule of Retained Causes of Action; (iii) the Schedule of Rejected Contracts; (iv) the Schedule of Assumed Contracts, and (v) the post-Effective Date management of the Wind Down Debtor (which shall be selected in the first instance by the SAFE AHG in consultation with the Special Committee, as provided below); ***provided that*** through the Effective Date, the Plan Proponents shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan.

*1.83* **"Plan Support Agreement"** shall mean that certain Plan Support Agreement dated as of October 7, 2025 by and among the Debtors, acting through the Special Committee, the SAFE AHG, and the Imperium Parties, including all exhibits thereto.

*1.84* **"Prerequisite Condition"** shall have the meaning ascribed to such term in section 9.2 of the Plan.

*1.85* **"Priority Non-Tax Claim"** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

*1.86* **"Priority Tax Claim"** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority of payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*1.87* **"Pro Rata Share"** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in that Class and other Classes entitled to share in the same recovery as such Class under the Plan.

*1.88* **"Professional"** means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered on or after the Petition Date and before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

*1.89* **"Professional Fee Claims"** means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date and before or on the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. Notwithstanding anything to the contrary in this Plan, Professional Fee Claims shall not include the SAFE AHG Substantial Contribution Claim.

*1.90* **"Professional Fee Claims Estimate"** means the aggregate unpaid Professional Fee Claims through the Effective Date as estimated in accordance with section 2.5 of the Plan.

*1.91* **"Professional Fee Escrow"** means an escrow account established and funded pursuant to section 2.4 of the Plan.

*1.92* **"Proof of Claim"** means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

*1.93* **"Proof of Interest"** means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

*1.94* **"Reinstate, Reinstated, or Reinstatement"** means, with respect to Claims and Interests, the treatment provided for in section 1124(2) of the Bankruptcy Code.

*1.95* **"Related Parties"** means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such, and any and all other Persons or Entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities.

*1.96* **"Released Parties"** means, collectively: (i) the Debtors; (ii) the Wind Down Debtor; (iii) the co-Chief Restructuring Officers of the Debtors; (iv) the present and former directors, officers, and management of the Debtors, other than Imperium and the Founders; (v) the Creditors' Committee; (vi) the present and former members of the Creditors' Committee, solely in their capacities as such; (vii) the SAFE AHG; (viii) the present and former members of the SAFE AHG, including, without limitation, the Blockchain Recovery Investment Consortium ("**BRIC**"), solely in their capacities as such; (ix) the Independent Directors; and (x) with respect to each of the foregoing Entities in clauses (ii) through (ix), all Related Parties; provided, however, that such Related Parties shall be Released Parties solely to the extent

10

that any Claims or Causes of Action are asserted against them derivatively through the Entities described in clauses (i) through (ix) of the definition of Releasing Parties, below.

*1.97* ***"Releasing Parties"*** means collectively, and in each case solely in their capacity as such, (i) the Debtors; (ii) the Wind Down Debtor; (iii) the Creditors' Committee and its members (solely in their capacity as such); (iv) the Holders of all Claims or Interests that vote, or are deemed, to accept the Plan and do not affirmatively opt out of granting the releases set forth herein; (v) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not affirmatively opt out of granting the releases set forth herein; (vi) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan and do not affirmatively opt out of granting the releases set forth herein; (vii) the Holders of all Claims and Interests whose votes to accept or reject the Plan were not solicited but were given notice of the opportunity to opt out of granting the releases set forth herein and did not opt out; (viii) current and former Affiliates of the Entities set forth in clauses (i) through (vii) of this definition, and (ix) all Related Parties of the Entities set forth in this definition, solely to the extent such Related Party (a) would be obligated to grant a release under the principles of agency if it were so directed by an entity in clauses (i) through (ix), and (ii) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an entity in clauses (i) through (ix). For the avoidance of doubt, no Entity shall be a Releasing Party if it affirmatively elects to opt out of the releases set forth in section 10.5(c) of the Plan.

*1.98* ***"Remaining Assets"*** means all real and personal property of the Debtors held as of the Effective Date, other than (a) Cash and (b) Retained Causes of Action.

*1.99* ***"Restructuring/Liquidation Transactions"*** means one or more transactions to occur on or prior to the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including: (i) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, amalgamation, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) such other transactions that are required to effectuate the Plan in the most tax efficient manner for the Debtors or the Wind Down Debtor, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (v) any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations necessary or appropriate to simplify or otherwise optimize the Debtors' organizational structure; and (vi) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

*1.100* ***"Restructuring/Liquidation Transactions Exhibit"*** means a memorandum setting forth the transactions that are required to effectuate the Restructuring/Liquidation Transactions contemplated by the Plan, which will be included in the Plan Supplement.

*1.101* ***"Retained Causes of Action"*** means Causes of Action to be retained by the Wind Down Debtor on and after the Effective Date.

*1.102* ***"Rhodium 2.0 Secured Notes"*** means the secured notes issued by Debtor Rhodium 2.0 LLC.

*1.103* ***"Rhodium 2.0 Secured Notes Claim"*** means any Claim arising under or related to the Rhodium 2.0 Secured Notes.

*1.104* ***"Rhodium D&O Claims"*** means the claims or Causes of Action that have been or could have been asserted by any of the Debtors against any of the Founders and/or Imperium.

*1.105* "***Rhodium D&O Proceeds***" means the proceeds of the D&O Insurance Settlement, in the amount of at least $8.5 million.

*1.106* ***"Rhodium Encore Secured Notes"*** means the secured notes issued by Debtor Rhodium Encore LLC.

*1.107* ***"Rhodium Encore Secured Notes Claim"*** means any Claim arising under or related to the Rhodium Encore Secured Notes.

*1.108* ***"Rhodium Enterprises"*** means Rhodium Enterprises, Inc.

*1.109* ***"Rhodium Enterprises Class A Interests"*** means all Class A Common Stock in Rhodium Enterprises, Inc.

*1.110* ***"Rhodium Technologies"*** means Rhodium Technologies LLC.

*1.111* ***"Rhodium Technologies Interests"*** means Interests in Rhodium Technologies.

*1.112* ***"Rhodium Technologies Secured Notes"*** means the secured notes issued by Debtor Rhodium Technologies that are secured by certain property of Rhodium 30 MW LLC, as set forth in the security agreements related to the Rhodium Technologies Secured Notes.

*1.113* ***"Rhodium Technologies Secured Notes Claim"*** means any Claim arising under or related to the Rhodium Technologies Secured Notes.

*1.114* ***"SAFE Agreement(s)"*** means Simple Agreements for Future Equity between Debtor Rhodium Enterprises, Inc., on the one hand, and certain investors, on the other hand, as set forth in the SAFE Agreements.

*1.115* ***"SAFE AHG"*** means the Ad Hoc Group of SAFE Parties, comprised of those SAFE Holders identified on Exhibit A to the *Third Supplemental Verified Statement of Ad Hoc Group of SAFE Parties Pursuant to Bankruptcy Rule 2019* (Docket No. 1346), as such list of Holders may be amended from time to time.

*1.116* ***"SAFE AHG Substantial Contribution Claim"*** shall have the meaning ascribed to such term in section 2.7(a) of this Plan.

*1.117* ***"SAFE Claim"*** means any Claim arising under or related to a SAFE held by a Person that is a party to any SAFE Agreement.

*1.118* ***"SAFE Contribution Agreements"*** means (i) that certain contribution agreement dated June 30, 2021 by and between Rhodium Enterprises and Rhodium Technologies, as amended from time to time, and (ii) that certain contribution agreement dated December 1, 2021 by and between Rhodium Enterprises and Rhodium Technologies, as amended from time to time.

*1.119* ***"SAFE Holder"*** means any non-Debtor counterparty to a SAFE Agreement.

*1.120* **"SAFE Objection Order"** means, collectively, that *Memorandum Opinion Overruling Debtors' Omnibus Objection at ECF No. 1126 to the SAFE Proofs of Claim* and that *Order Overruling Debtors' Omnibus Objection at ECF No. 1126 to the SAFE Proofs of Claim* (Docket Nos. 1592, 1593).

*1.121* **"Schedule of Assumed Contracts"** means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which is to be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

*1.122* **"Schedule of Rejected Contracts"** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, if any, which is to be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

*1.123* **"Schedule of Retained Causes of Action"** means the schedule of Causes of Action to be retained by the Wind Down Debtor, which will be included in the Plan Supplement.

*1.124* **"Schedules"** means any schedules of Assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as the same may have been amended, modified, or supplemented from time to time (including, without limitation, the amendment to Rhodium Enterprises' schedules of liabilities on October 10, 2025 to identify the SAFE Claims as unsecured Claims).

*1.125* **"Section 510(b) Claim"** means any Claim against any Debtor (i) arising from the rescission of a purchase or sale of an Interest of any Debtor or an Affiliate of any Debtor; (ii) for damages arising from the purchase or sale of such Interest; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

*1.126* **"Secured Claim"** means a Claim (i) secured by a Lien on Collateral to the extent of the value of such Collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code exceeds the value of the Claim, or (ii) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

*1.127* **"Security"** means any Security, as such term is defined in section 101(49) of the Bankruptcy Code.

*1.128* **"Severance Period"** shall be a maximum period of 12 months.

*1.129* **"SIR"** means self-insured retention or similar deductible.

*1.130* **"Solicitation Materials"** means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, the Disclosure Statement Approval Order, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

*1.131* **"Special Committee"** means the Special Committee of the Board of Directors of Rhodium Enterprises, Inc., which is comprised of the Independent Directors.

*1.132* *"Term Sheet"* means the term sheet attached as exhibits to the Plan Support Agreement.

*1.133* **"Transcend Group"** means Transcend Partners Legend Fund LLC; Valley High LP; GR Fairbairn Family Trust; Grant Fairbairn Family Trust; Nina Claire Fairbairn Revocable Trust; NCF Eagle Trust; GRF Tiger Trust; NC Fairbairn Family Trust; Malcolm P and Emily T. Fairbairn 2021 Charitable

Remainder Unitrust; Grant R. Fairbairn Charitable Remainder Unitrust; Kintz Family Trust; Kingdom Trust, FBO Emily Fairbairn; Kingdom Trust FBO Malcolm Fairbairn; Malcolm Fairbairn, Emily Fairbairn; Nina Fairbairn; Grant Fairbairn; and Scott Kintz.  As used in this Plan, Transcend Group shall refer to the members of the Transcend Group collectively, and each member of the Transcend Group individually.

1.134 **"U.S. Trustee"** means the United States Trustee for Region 7.

1.135 **"Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.136 **"Unimpaired"** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.137 **"Voting Deadline"** means the date and time as may be set by the Bankruptcy Court pursuant to the Solicitation Materials for the Holders of Claims and Interests to vote to accept or reject the Plan.

1.138 **"Warrants"** means all warrants to purchase equity in any Debtor.

1.139 **"Whinstone Settlement"** means the settlement approved by the Bankruptcy Court pursuant to the Whinstone Settlement Approval Order.

1.140 **"Whinstone Settlement Approval Order"** means that certain *Order (I) Approving Emergency Motion for a Settlement and Compromise Between Debtors and Whinstone US, Inc. Pursuant to Bankruptcy Rule 9019; (II) Authorizing the Use, Sale, or Lease of Certain Property of the Debtors' Estate Pursuant to 11 U.S.C. § 363; and (III) Granting Related Relief* entered by the Bankruptcy Court on April 8, 2025 (Docket No. 921).

1.141 **"Wind Down Budget"** means the budget for the Wind Down Debtor to conclude and wind down the Debtors' businesses and perform the tasks necessary to implement the Plan, which shall be subject to approval by the SAFE AHG and filed with the Plan Supplement.

1.142 **"Wind Down Debtor"** means a Debtor entity to be identified in the Plan Supplement, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on or after the Effective Date.

1.143 **"Workers' Compensation Programs"** has the meaning as set forth in the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs, and (B) Pay Certain Obligations with Respect Thereto; and (II) Granting Related Relief* (Docket No. 75).

B.     **Interpretation; Application of Definitions and Rules of Construction.**

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan and/or the Confirmation Order, as applicable; (iv) unless otherwise

specified herein, all references herein to "Articles" are references to Articles of the Plan; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xii) except as otherwise provided herein, any reference to a document or agreement that is to be issued or entered into that is dependent on an election to be made pursuant to the Plan or an event occurring shall be deemed to be followed by the words "if applicable"; (xiii) any immaterial effectuating provisions may be interpreted by the Plan Proponents or, after the Effective Date, the Wind Down Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; *provided that* any effectuating provision that has an economic impact will not be considered "immaterial;" and (xiv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. To the extent that the treatment, Allowance, or Disallowance of any Claim herein is interpreted as a claim objection, the Plan shall be deemed a Claim objection to such Claim. For the avoidance of doubt, all deadlines contained herein may be extended by Order of the Bankruptcy Court.

C.      **Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

D.      **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

E.      **Controlling Document.**

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such document or the Confirmation Order). In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided that* if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

## ARTICLE II.     ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims (including Professional Fee Claims, Priority Tax Claims, and post-petition Intercompany Claims) have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in Article III.

### 2.1.     *Administrative Expense Claims.*

*(a)*     Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment, each Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, (i) Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; ***provided, however, that*** Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Wind Down Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders, course of dealing or agreements governing, instruments evidencing, or other documents relating to, such transactions.

*(b)*     Notwithstanding the foregoing, the provisions of section 2.1(a) shall not apply to the SAFE AHG Substantial Contribution Claim, which shall be governed solely by section 2.7 of this Plan.

### 2.2.     *Professional Fee Claims.*

*(a)*     All Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims shall (i) File, on or before (and no later than) the date that is forty-five (45) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claims.

*(b)*     The Wind Down Debtor is authorized, consistent with the Wind Down Budget, to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.     *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Plan Proponents or the Wind Down Debtor, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or (ii) such other treatment reasonably acceptable to the Plan Proponents or the Wind Down Debtor, as applicable, and consistent with the provisions of section 1129(a)(9) of the

16

Bankruptcy Code; *provided that* the Plan Proponents or the Wind Down Debtor, as applicable, are authorized in their absolute discretion, but not directed, to prepay all or a portion of any such amounts at any time without penalty or premium. For the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

2.4.     *Professional Fee Escrow.*

*(a)*     As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way. The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors, the Debtors' Estates, or the Wind Down Debtor, and (ii) shall be held in trust for the Professionals; *provided that* funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Wind Down Debtor and shall become Distributable Cash. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; and *provided further* that the Debtors' obligations with respect to the Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow, but subject to any Order of the Bankruptcy Court capping the amount of any such fees.

*(b)*     Any objections to Professional Fee Claims shall be served and Filed no later than twenty-one (21) days after Filing of the final applications for compensation or reimbursement.

2.5.     *Professional Fee Claims Estimate.*

Each Professional shall estimate in good faith its unpaid Professional Fee Claim and other unpaid fees and expenses incurred in rendering services to the Debtors, the Special Committee, or the Creditors' Committee, as applicable, before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date, *provided that* such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

2.6.     *Post-Effective Date Fees and Expenses.*

*(a)*     Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtors or the Wind Down Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash all reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Debtors or the Wind Down Debtor, as applicable.

*(b)*     Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Wind Down Debtor may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

2.7.     ***SAFE AHG Substantial Contribution Claim.***

(a)     Subject to the provisions of section 5.13 of this Plan, an Allowed Administrative Expense Claim shall be paid in the amount of $8.5 million for reasonable and documented fees and expenses incurred by counsel to the SAFE AHG in connection with the Debtors' Chapter 11 Cases, including, without limitation, investigating the Rhodium D&O Claims, participating in the Whinstone mediation, participating in the Plan mediation, appearing in connection with Estate professional fee matters, contributing to the proper allocation of the Debtors' value amongst stakeholders (including in connection with the Debtors' Omnibus Objection to Claims Nos. 11, 13, 18, 19, 20, 25, 26, 28, 32, 34, 35, 41, 42, 45, 51, 83, 94, 102, 107, 111, 149, 152, 183, 197, 198, 223, 224, and 231 (ECF No. 1126)) and negotiating and developing the Plan and related documentation (the "***SAFE AHG Substantial Contribution Claim***"), subject to the Special Committee's receipt and review of invoices demonstrating at least $8.5 million in fees incurred by counsel to the SAFE AHG in connection with the Chapter 11 Cases. Such invoices shall be provided in a manner that protects all applicable privileges. Further statements or evidence may be submitted in support of the SAFE AHG Substantial Contribution Claim prior to the Confirmation Hearing.

(b)     The Allowance of the SAFE AHG Substantial Contribution Claim described in this section 2.7 (and all provisions of the Plan) shall be subject to review and approval by the Bankruptcy Court, and the terms of the Plan Support Agreement (including, without limitation, Section 9 of the Plan Support Agreement).

(c)     Subject to the provisions of section 5.13 of this Plan, the SAFE AHG Substantial Contribution Claim shall be paid in full in Cash on the Effective Date, or as soon thereafter as practicable, without the need for the filing of any additional application for Allowance of such Claim.

## ARTICLE III.     CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1.     ***Classification in General.***

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code, ***provided that*** a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Common Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth below.

3.2.     ***Summary of Classification of Claims and Interests.***

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Rhodium 2.0 Secured Notes Claims | Unimpaired | No (Presumed to Accept) |

| 2 | Rhodium Encore Secured Notes Claims | Unimpaired | No (Presumed to Accept) |
|---|---|---|---|
| 3 | Rhodium Technologies Secured Notes Claims | Unimpaired | No (Presumed to Accept) |
| 4 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 5a | Guaranteed Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 5b | General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 6 | SAFE Claims | Impaired | Yes (Entitled to Vote) |
| 7 | Late Filed Claims | Unimpaired | No (Presumed to Accept) |
| 8 | Intercompany Claims | Unimpaired | No (Presumed to Accept) |
| 9 | Section 510(b) Claims | Unimpaired | No (Presumed to Accept) |
| 10 | Common Interests | Impaired | Yes (Entitled to Vote) |
| 11 | Imperium Interests | Impaired | Yes (Entitled to Vote) (Presumed to Accept by Virtue of the Plan Support Agreement) |
| 12 | Intercompany Interests | Impaired | No (Deemed to Reject) |

### 3.3. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Wind Down Debtor in respect of any Unimpaired Claims or Reinstated Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims or Reinstated Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired (including, for the avoidance of doubt, any Claim that is Reinstated) by the Plan. Except as otherwise specifically provided in the Plan, the Wind Down Debtor shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim that is Unimpaired by this Plan may be asserted by the Wind Down Debtor after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 3.4. *Elimination of Vacant Classes.*

Any Class of Claims against, or Interests in, a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such

Debtor for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.5.    *No Waiver.*

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

### 3.6.    *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

### 3.7.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

The Plan Proponents shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponents reserve the right to modify the Plan to the extent, if any, confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including to implement a merger of two or more Debtors, the assignment of Assets from one Debtor to one or more other Debtors, and/or other transactions.

## ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS.

### 4.1.    *Rhodium 2.0 Secured Notes Claims (Class 1).*

*(a)    Classification*: Class 1 consists of the Rhodium 2.0 Secured Notes Claims.

*(b)    Treatment*: Except to the extent that a Holder of an Allowed Rhodium 2.0 Secured Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Rhodium 2.0 Secured Notes Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Rhodium 2.0 Secured Notes Claim, plus applicable post-petition interest.

*provided that* the aggregate amount of all Allowed Rhodium 2.0 Secured Notes Claims shall be reduced by (i) the amount of Cash received by Holders of such Claims as adequate protection and (ii) the amount of Cash received by Holders of such Claims in accordance with the Payment Orders.

*(c)    Impairment and Voting*: Class 1 is Unimpaired, and the Holders of Rhodium 2.0 Secured Notes Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Rhodium 2.0 Secured Notes Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Rhodium 2.0 Secured Notes Claims.

### 4.2.    *Rhodium Encore Secured Notes Claims (Class 2).*

*(a)    Classification*: Class 2 consists of Rhodium Encore Secured Notes Claims.

*(b)    Treatment*: Except to the extent that a Holder of an Allowed Rhodium Encore Secured Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Rhodium Encore Secured Notes Claim, on the Effective Date, or as soon as

reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Rhodium Encore Secured Notes Claim, plus applicable post-petition interest.

*provided that* the aggregate amount of all Allowed Rhodium Encore Secured Notes Claims shall be reduced by (i) the amount of Cash received by Holders of such Claims as adequate protection and (ii) the amount of Cash received by Holders of such Claims in accordance with the Payment Orders.

(c)     *Impairment and Voting*: Class 2 is Unimpaired, and the Holders of Rhodium Encore Secured Notes Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Rhodium Encore Secured Notes Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Rhodium Encore Secured Notes Claims.

4.3.     ***Rhodium Technologies Secured Notes Claims (Class 3).***

(a)     *Classification*: Class 3 consists of Rhodium Technologies Secured Notes Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Rhodium Technologies Secured Notes Claim agrees to a less favorable treatment (including, without limitation, the agreement by the Founders to accept solely the distributions on account of their Allowed Rhodium Technologies Secured Notes Claims specified in section 6.18 of this Plan in lieu of the treatment that would otherwise be afforded to those claims pursuant to this section 4.3), in full and final satisfaction, settlement, release, and discharge of such Allowed Rhodium Technologies Secured Notes Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Rhodium Technologies Secured Notes Claim, plus applicable post-petition interest.

*provided that* the aggregate amount of all Allowed Rhodium Technologies Secured Notes Claims shall be reduced by the amount of Cash received by Holders of such Claims in accordance with the Payment Orders.

(c)     *Impairment and Voting*: Class 3 is Unimpaired, and the Holders of Rhodium Technologies Secured Notes Claims in Class 3 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Rhodium Technologies Secured Notes Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Rhodium Technologies Secured Notes Claims.

4.4.     ***Priority Non-Tax Claims (Class 4).***

(a)     *Classification*: Class 4 consists of Priority Non-Tax Claims.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive payment in Cash in an amount equal to such Allowed Priority Non-Tax Claim, plus applicable post-petition interest.

(c)     *Impairment and Voting*: Class 4 is Unimpaired, and the Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Priority Non-Tax Claims.

4.5.     ***Guaranteed Unsecured Claims (Class 5a).***

(a)     *Classification*: Class 5a consists of Guaranteed Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Guaranteed Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the later of (as applicable) (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) on or before the first Business Day after the date that is thirty (30) calendar days after the date such Guaranteed Unsecured Claim becomes an Allowed Guaranteed Unsecured Claim, payment in Cash in an amount equal to such Allowed Guaranteed Unsecured Claim; ***provided that*** to the extent that a Holder of an Allowed Guaranteed Unsecured Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtors arising from or relating to the same obligations or liability as such Guaranteed Unsecured Claim, such Holder shall only be entitled to a distribution on one Guaranteed Unsecured Claim against the Debtors in full and final satisfaction of all such Claims; ***provided, further, that*** the aggregate amount of all Allowed Guaranteed Unsecured Claims shall be reduced by the amount of Cash received by Holders of such Claims in accordance with the Payment Orders.

For purposes of this section 4.5, except as otherwise agreed upon pursuant to a settlement with the Debtors, the Allowed amount of any Guaranteed Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at 3.05%.

(c)     *Impairment and Voting*: Class 5a is Unimpaired, and the Holders of Guaranteed Unsecured Claims in Class 5a are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Guaranteed Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Guaranteed Unsecured Claims.

4.6.     ***General Unsecured Claims (Class 5b).***

(a)     *Classification*: Class 5b consists of General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, on the later of (as applicable) (i) the Effective Date or as soon as reasonably practicable thereafter and (ii) on or before the first Business Day after the date that is thirty (30) calendar days after the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, payment in Cash in an amount equal to such Allowed General Unsecured Claim, ***provided that*** to the extent that a Holder of an Allowed General Unsecured Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtors arising from or relating to the same obligations or liability as such General Unsecured Claim, such Holder shall only be entitled to a distribution on one General Unsecured Claim against the Debtors in full and final satisfaction of all such Claims; ***provided, further***, *that* the aggregate amount of all Allowed General Unsecured Claims shall be reduced by the amount of Cash received by Holders of such Claims in accordance with the Payment Orders.

For purposes of this section 4.6, except as otherwise agreed upon pursuant to a settlement with the Debtors, including, for the avoidance of doubt, in connection with the Payment Orders, the Allowed amount of any General Unsecured Claim shall include all interest accrued from the Petition Date through the date of distribution at the Federal Judgment Rate.

Notwithstanding the foregoing, the Proof of Claim filed by Blackmon Holdings LLC in the amount of $750,000 shall receive the treatment set forth in section 5.11 of the Plan in lieu of the treatment provided for other General Unsecured Claims.

(c)     *Impairment and Voting*: Class 5b is Unimpaired, and the Holders of General Unsecured Claims in Class 5b are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such General Unsecured Claims.

### 4.7.     *SAFE Claims (Class 6).*

(a)     *Classification:* Class 6 consists of SAFE Claims.

(b)     *Treatment*:  Each SAFE Claim shall be Allowed in an amount equal to (i) the Purchase Amount (as identified in the applicable SAFE Agreement), which in the aggregate is approximately $86.9 million, plus (ii) applicable interest thereon.  Except to the extent a Holder of an Allowed SAFE Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of the Allowed SAFE Claims, each Holder of an Allowed SAFE Claim shall receive its Pro Rata Share of (x) $84.0 million from the Debtors' Distributable Cash, to be paid on or as soon as practicable after the Effective Date, and (y) post-petition interest of $1.25 million.

(c)     *Impairment and Voting*: Class 6 is Impaired and the Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

### 4.8.     *Late Filed Claims (Class 7).*

(a)     *Classification:* Class 7 consists of Late Filed Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Late Filed Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Late Filed Claim, on the Effective Date, or as soon as reasonably practicable thereafter, each such Holder shall receive the treatment specified under this Plan for the Class of Claims into which such Allowed Late Filed Claim falls or, if the Allowed Late Filed Claim in question does not fall into any other Class hereunder, payment in Cash in an amount equal to the amount of such Allowed Late Filed Claim.

(c)     *Impairment and Voting*: Class 7 is Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Late Filed Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Late Filed Claims.

### 4.9.     *Intercompany Claims (Class 8).*

(a)     *Classification:* Class 8 consists of Intercompany Claims.

(b)     *Treatment*: Except to the extent a Holder of an Allowed Intercompany Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of the Allowed Intercompany Claims, each Holder of an Allowed Intercompany Claim shall receive payment in Cash in an amount equal to such Allowed Intercompany Claim on the Effective Date, or as soon as reasonably practicable thereafter.  For the avoidance of doubt, such Intercompany Claims shall be satisfied by "book entry."

(c)     *Impairment and Voting*: Class 8 is Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

### 4.10.   *Section 510(b) Claims (Class 9).*

(a)     *Classification:*  Class 9 consists of Section 510(b) Claims.

(b)     *Treatment:*  Except to the extent that a Holder of an Allowed Section 510(b) Claims agrees to a less favorable treatment of such Claim, all Holders of Allowed Section 510(b) Claims shall receive the same treatment under the Plan as afforded to them on account of their Common Interests, as applicable.

(c)     *Impairment and Voting*: Class 9 is Unimpaired and such Holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Section 510(b) Claims.

### 4.11.   *Common Interests (Class 10).*

(a)     *Classification:* Class 10 consists of Common Interests.

(b)     *Treatment*: Except to the extent a Holder of an Allowed Common Interest agrees to a less favorable treatment of such Interest, in full and final satisfaction, settlement, release, and discharge of such Allowed Common Interest, its Pro Rata Share of Distributable Cash available after the satisfaction in full and/or the establishment of a reserve for Claims in Classes 1 through 8.

(c)     *Impairment and Voting*: Class 10 is Impaired and the Holders of Common Interests in Class 10 are entitled to vote to accept or reject the Plan.

### 4.12.   *Imperium Interests (Class 11).*

(a)     *Classification:* Class 11 consists of Imperium Interests.

(b)     *Treatment*:

  i.   Following the Confirmation Date but prior to the Effective Date, the Interests held by Imperium in Rhodium Technologies shall be redeemed in accordance with the provisions of section 5.9 of this Plan, before any distributions are paid to and received by Rhodium Technologies, for no consideration other than that described in section 6.18 of this Plan.

  ii.  All Interests held by Imperium or the Founders in Rhodium Enterprises shall receive no distribution and shall be cancelled, released, and extinguished.

(c)     *Impairment and Voting*: Class 11 is Impaired and such Holders of Imperium Interests are entitled to vote to accept or reject the Plan. The Holders of Imperium Interests have agreed, pursuant to the Plan Support Agreement, to vote to accept the Plan.

4.13.  *Intercompany Interests (Class 12).*

(a)  *Classification*: Class 12 consists of Intercompany Interests.

(b)  *Treatment*:  Intercompany Interests shall be fully reconciled before each entity that holds such interests is dissolved as further described in section 5.9 of the Plan.

(c)  *Impairment and Voting*: Class 12 is Impaired and such Holders of Intercompany Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Interests.

## ARTICLE V.    MEANS FOR IMPLEMENTATION.

5.1.  *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, including, for the avoidance of doubt, the compromise of the SAFE Claims, the D&O Insurance Settlement, and the redemption of Rhodium Technologies Interests described in section 5.9 of this Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Claim Holder or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement, and transactions are in the best interests of the Debtors, their Estates, and Holders of Allowed Claims and Interests, and are fair, equitable, and within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

5.2.  *D&O Insurance Settlement*

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Debtors settle through this Plan all Claims, whether known or unknown, held by the Debtors against the Founders as of the Effective Date. Such D&O Insurance Settlement shall be in exchange for, among other consideration, the payment of the Rhodium D&O Proceeds no more than twelve (12) days after Confirmation of the Plan and, in any event, prior to the Effective Date.  The Confirmation Order shall include provisions providing for approval of the D&O Insurance Settlement by the Bankruptcy Court.

5.3.  *Effectuating Documents; Corporate Action; Restructuring/Liquidation Transactions.*

(a)  Notwithstanding anything herein to the contrary, on or about the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind Down Debtor, as applicable, shall take all actions set forth in and contemplated by the Restructuring/Liquidation Transactions Exhibit, and enter into any transaction and may take all actions as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including the Restructuring/Liquidation Transactions.

(b)        Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) any assumption of Executory Contracts and Unexpired Leases as provided herein, and (ii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.

(c)        The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize and direct parties, as applicable, among other things, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to, effectuate the Plan, including the Restructuring/Liquidation Transactions.

(d)        Each officer, member of the board of directors, or manager of the Debtors is (and the Wind Down Debtor shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors (or the Wind Down Debtor), all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the equity holders or directors or managers of the Debtors) except for those expressly required pursuant to the Plan.

(e)        All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors and any corporate or limited liability company action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors by any other stakeholder, and with like effect as though such action had been taken unanimously by the equity holders, directors, managers, or officers, as applicable, of the Debtors.

5.4.        ***Exemption from Securities Laws.***

The Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the validity of any transaction contemplated by the Plan or the Confirmation Order. Notwithstanding anything to the contrary in the Plan or otherwise, no Person or Entity may require from the Debtors or the Wind Down Debtor a legal opinion regarding the validity of any transaction contemplated by the Plan.

5.5.        ***Cancellation of Liens and Debt Instruments.***

(a)        Except as otherwise specifically provided herein, all notes, instruments, certificates evidencing debt of the Debtors will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable Persons to receive distributions under the Plan and to make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

(b)        After the Effective Date, the Debtors (or the Wind Down Debtor), at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Holders of Claims or Interests including, without limitation, UCC-3 termination statements, in accordance with the Plan.

5.6. ***Officers and Boards of Directors; Management of Wind Down Debtor.***

The Plan Supplement shall identify the post-Effective Date management of the Wind Down Debtor (the "***Plan Administrator***").  The Plan Administrator shall direct the affairs of the Wind Down Debtor and the Plan Administrator's engagement shall commence no earlier than the Effective Date.  The SAFE AHG shall select the Plan Administrator in consultation with the Special Committee; ***provided, however***, that after the SAFE AHG Substantial Contribution Claim and all amounts due to SAFE Claims pursuant to section 4.7 have been paid in full, the Holders of Common Interests may select a new Plan Administrator.  For the avoidance of doubt, all Employees of the Debtors shall be terminated no later than immediately prior to the Effective Date.  The members of the board of directors or managers of each Debtor prior to the Effective Date (including, without limitation, the Independent Directors), in their capacities as such, shall have no continuing obligations to the Debtors on or after the Effective Date and each such director or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.

5.7. ***Nonconsensual Confirmation.***

The Plan Proponents intend to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.8. ***Closing of the Chapter 11 Cases.***

After the Effective Date, the Wind Down Debtor shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance reasonably acceptable to the U.S. Trustee and Wind Down Debtor, that closes and issues a final decree for each of the Chapter 11 Cases.

5.9. ***Redemption of Rhodium Technologies Interests.***

*(a)*     Following the Confirmation Date but prior to the Effective Date, Rhodium Technologies, a partnership for U.S. federal income tax purposes, shall redeem 100% of Imperium's Interests in Rhodium Technologies for the consideration contemplated by this Section 5.9(a) of the Plan and without the requirement to pay any Cash payment or other Cash consideration.  Effective upon such redemption and as Rhodium Enterprises will be the only remaining equity owner in Rhodium Technologies following such redemption, Rhodium Technologies will be disregarded as an entity separate from its owner for U.S. federal tax purposes.

*(b)*     Following completion of the redemption in Section 5.9(a) above, Debtors Jordan HPC LLC, Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium 2.0 LLC, and Rhodium Encore LLC, together with Rhodium Enterprises, shall reconcile any and all remaining Intercompany Interests or Intercompany Claims.  Each Debtor shall be authorized to distribute Cash and any other assets to any other Debtor as needed to resolve Intercompany Interests and Intercompany Claims.

*(c)*     For the avoidance of doubt when reconciling Intercompany Interests or Intercompany Claims, the Whinstone Settlement shall be deemed to be a Liquidity Event within the meaning of the SAFE Agreements and a liquidation within the meaning of the SAFE Contribution Agreements, and Rhodium Enterprises shall be entitled to payment in full of its Intercompany Claims against Rhodium Technologies, including, without limitation, Rhodium Enterprises' Claim to return the full amount of proceeds of the SAFE Agreements in the approximate purchase amount of $86.9 million.

27

(d)      Once Intercompany Interests and Claims are reconciled, all of the Debtors except for the Wind Down Debtor shall be dissolved or merged into other Debtors (and, to the extent necessary, shall be permitted to be liquidated or merged for tax purposes by legal dissolution or merger).  The Wind Down Debtor shall remain in being for as long as necessary or beneficial for tax or other purposes.

(e)      The Founders and Imperium shall be permitted to review the draft or final Forms K-1 to be issued to them for tax year 2025. The Founders and Imperium acknowledge and agree that they are not entitled to any distribution, redemption, or indemnification for any tax liability they actually incur for 2024 and 2025.

### 5.10.   *Liquidation of Remaining Assets.*

On the Effective Date, all Remaining Assets and Retained Causes of Action shall vest in the Wind Down Debtor. The Wind Down Debtor shall promptly liquidate all Remaining Assets and Retained Causes of Action following the Effective Date. The proceeds from the liquidation of the Remaining Assets and Retained Causes of Action shall become Distributable Cash and shall be distributed in accordance with this Plan.

### 5.11.   *Mobile Mining Unit.*

Following the Effective Date, Blackmon Holdings, LLC shall be entitled to receive the Mobile Mining Unit. On the Effective Date, the Proof of Claim filed by Blackmon Holdings, LLC in the amount of $750,000, representing the unpaid balance on the promissory note relating to the purchase of the Mobile Mining Unit, shall be Disallowed without further action by the Debtors or any other Person or Entity.

### 5.12.   *Notice of Effective Date.*

As soon as practicable, the Plan Proponents shall File a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### 5.13.   *Treatment of Transcend Group Claims and Interests.*

(a)      Notwithstanding any other provision of this Plan to the contrary, the Transcend Group shall have under this Plan an Allowed General Unsecured Claim in Class 5b in the amount of $10 million (the "***Transcend Claim***").  Such Claim is expressly subordinated to payment of the SAFE Claims (and, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim).

(b)      Notwithstanding the provisions of section 2.7 of this Plan, to the extent the full amount (i.e., $8.5 million) of the SAFE AHG Substantial Contribution Claim is Allowed under the Plan, $6.0 million of the SAFE AHG Substantial Contribution Claim shall be paid directly to the SAFE AHG upon emergence.  The remaining $2.5 million shall be deposited in a segregated account controlled by the Plan Administrator (the "***Escrowed Fees***").  If the SAFE AHG Substantial Contribution Claim is Allowed in an amount less than $8.5 million, the Escrowed Fees shall be lowered by the amount of such reduction.

(c)      To the extent that Distributable Cash and the proceeds of Remaining Assets are insufficient, after payment of all senior Claims, to provide a recovery of at least $6.6 million (the "***Targeted Recovery***") on the Transcend Claim, the Escrowed Fees shall be released to the Transcend Group in respect of the Transcend Claim, except to the extent a lesser amount of Escrowed Fees, plus the remaining Distributable Cash and proceeds of Remaining Assets, are sufficient to provide for the Targeted Recovery, in which case only such lesser amount of the Escrowed Fees shall be released to the Transcend Group, with the balance released to the SAFE AHG.  For the avoidance of doubt, to the extent that the Distributable

Cash plus proceeds of the Remaining Assets after distributions to senior Claims (the "**Residual Amounts**"), together with the full amount of the Escrowed Fees, are insufficient to provide for the Targeted Recovery, the Transcend Group, or any individual members thereof, shall not be entitled to any further Distributions under the Plan.

(d)      The amount, if any, by which the Escrowed Fees plus Residual Amounts exceeds the Targeted Recovery shall be released to the SAFE AHG, up to the full amount of the Escrowed Fees.

(e)      All Claims against or Interests in the Debtors held or asserted by the Transcend Group against the Debtors other than the Claim Allowed pursuant to section 5.13(a) of this Plan shall be Disallowed by operation of this Plan.  Neither the Transcend Group nor any individual member thereof shall be entitled to receive any Distributions under the Plan other than on account of the Claim Allowed pursuant to section 5.13(a) of the Plan; provided, however, that the Transcend Group, and the individual members thereof, shall be entitled to retain any and all amounts previously paid or otherwise disbursed to the Transcend Group in accordance with any proof of claim filed thereby.

(f)      Nothing in this Plan shall affect any right of the Transcend Group to recover amounts from the Founders and/or Imperium in the adversary proceeding styled *345 Partners SPV2 LLC, et al. v. Nathan Nichols, et al.*, Adv. No 25-03413, currently pending in the Bankruptcy Court.

## ARTICLE VI.      DISTRIBUTIONS.

### 6.1.      *Distributions Generally.*

Except as otherwise provided in the Plan, the Wind Down Debtor (acting as Disbursing Agent) shall make all applicable Plan Distributions to the appropriate Holders of Allowed Claims and Interests in accordance with the terms of the Plan. The Wind Down Debtor shall be authorized to cause partial distributions to be made on account of Allowed Claims and Interests before all Claims and/or Interests are Allowed.

### 6.2.      *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Debtors and the Wind Down Debtor shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the applicable Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.3.      *Date of Distributions.*

Except as otherwise provided in the Plan (including payments made in the ordinary course of the Debtors' business) or as paid pursuant to a prior Bankruptcy Court order, on the Effective Date or, if a Claim or Interest is not Allowed on the Effective Date, on the date that such Claim or Interest becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, or as otherwise determined in accordance with the Plan and Confirmation Order, including, without limitation, the treatment provisions of Article IV of the Plan, each Holder of an Allowed Claim shall receive the full amount of the distributions

that the Plan provides for Allowed Claims in the applicable Class; ***provided that*** the Wind Down Debtor may implement periodic distribution dates to the extent it determines them to be appropriate.

### 6.4. *Disbursing Agent.*

All Plan Distributions shall be made by the Wind Down Debtor as Disbursing Agent on or after the Effective Date or as otherwise provided herein. The Wind Down Debtor shall be entitled to retain Distributable Cash as necessary to satisfy all expenses incurred in acting as Disbursing Agent in accordance with the Wind Down Budget.

### 6.5. *Rights and Powers of Disbursing Agent.*

*(a)*      *General.*  From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, Holders of Claims against and Interests in the Debtors and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No Holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action vested in a Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by such Disbursing Agent to be necessary and proper to implement the provisions hereof.

*(b)*      *Powers of Disbursing Agent.* The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in such Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to the Plan or (B) as deemed by such Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

*(c)*      *Expenses Incurred on or After the Effective Date.* Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Wind Down Debtor, the amount of any reasonable fees and expenses incurred by a Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Wind Down Debtor in the ordinary course of business.

### 6.6. *No Postpetition Interest on Claims.*

Except as otherwise specifically provided for or limited by the Plan (including, without limitation, with respect to Allowed Claims in Classes 1-4, 5a, 5b, and 6), the Confirmation Order, or another order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 6.7. *Delivery of Plan Distributions.*

Subject to Bankruptcy Rule 9010, all Plan Distributions to any Holder of an Allowed Claim or Interest shall be made to a Disbursing Agent, which shall transmit such Plan Distribution to the applicable Holders of Allowed Claims as and when required by the Plan at (i) the address of such Holder on the books and records of the Debtors or their agents or (ii) at the address in any written notice of address change

delivered to the Debtors or the Disbursing Agent, including any addresses included on any transfers of Claim Filed pursuant to Bankruptcy Rule 3001. In the event any Plan Distribution to any Holder is returned as undeliverable, no further Plan Distributions shall be made to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then-current address, at which time, or as soon thereafter as reasonably practicable, all currently due, missed Plan Distributions shall be made to such Holder without interest. Nothing herein shall require any Disbursing Agent to attempt to locate Holders of undeliverable Plan Distributions and, if located, assist such Holders in complying with section 6.19 of the Plan.

### 6.8. *Plan Distributions after Effective Date.*

Plan Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.

### 6.9. *Unclaimed Property.*

One year from the later of (i) the Effective Date and (ii) the date that is ten (10) Business Days after the date of a distribution on an Allowed Claim or Interest, all Plan Distributions payable on account of such Claims that are undeliverable or otherwise unclaimed shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Wind Down Debtor, and all claims of any other Person (including the Holder of a Claim or Interest in the same Class) to such Plan Distribution shall be discharged and forever barred. The Wind Down Debtor and/or the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim or Interest other than by reviewing the Debtors' books and records, including the records of the Debtors' transfer agent(s), and the Bankruptcy Court's Filings.

### 6.10. *Time Bar to Cash Payments.*

Checks issued by a Disbursing Agent in respect of Allowed Claims or Interests shall be null and void if not negotiated within ninety (90) days after the date of first issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Wind Down Debtor and any Claim or Interest in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the applicable Disbursing Agent by the Holder of the Allowed Claim or Interest to which such check was originally issued, prior to the expiration of the ninety (90) day period.

### 6.11. *Manner of Payment under Plan.*

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the Wind Down Debtor, as applicable, any Cash payment to be made hereunder by the Debtors or the Wind Down Debtor may be made by ACH or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.12. *Satisfaction of Claims and Interests.*

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims and Interests under the Plan shall be in complete and final satisfaction, release, settlement, and discharge of, and exchange for, such Allowed Claims and Interests.

31

6.13.     ***Minimum Cash Distributions.***

A Disbursing Agent shall not be required to make any distribution of Cash less than one hundred dollars ($100) to any Holder of an Allowed Claim or Interest; ***provided, however***, that if any distribution is not made pursuant to this section 6.13, such distribution shall be added to any subsequent distribution to be made on behalf of such Holder's Allowed Claim or Interest.

6.14.     ***Setoffs and Recoupments.***

(a)     Each of the Debtors or the Wind Down Debtor, or any designee of any such entities, may, but shall not be required to, set off or recoup against any Claim or Interest, and any distribution to be made pursuant to the Plan on account of such Claim or Interest, any and all claims, rights, and Causes of Action of any nature whatsoever that a Debtor or its successors may have against the Holder of such Claim or Interest; ***provided, however***, that neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by a Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or its successor or assign (including the Wind Down Debtor) may possess against the Holder of such Claim or Interest.

(b)     In no event shall any Holder of a Claim or Interest be entitled to set off any such Claim or Interest against any claim, right, or Cause of Action of the Debtors (or the Wind Down Debtor), unless (i) the Plan Proponents or the Wind Down Debtor have consented or (ii) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and such motion has been granted by the Bankruptcy Court, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, this paragraph does not create any new rights to setoff or recoupment that did not exist under any applicable law or agreement in existence prior to the Effective Date.

6.15.     ***Allocation of Distributions between Principal and Interest.***

Except as otherwise provided in the Plan and subject to section 6.6 of the Plan or as otherwise required by law (as reasonably determined by the Wind Down Debtor, distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any, including accrued but unpaid interest.

6.16.     ***No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything in the Plan to the contrary, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim (plus any postpetition interest on such Claim solely to the extent provided for in the Plan).

6.17.     ***[Reserved.]***

6.18.     ***Special Provisions Relating to Proofs of Claim Filed by Imperium and the Founders.***

(a)     The following Proofs of Claim filed by Imperium and certain of the Founders shall be Allowed under this Plan and shall receive payment in full of the amounts set forth below on such Proofs of Claim:

       i.      Proof of Claim No. 210, asserted by Cameron Blackmon in the amount of $128,333.34 against Rhodium Technologies;

      ii.     Proof of Claim No. 209, asserted by Nathan Nichols in the amount of $128,913.47 against Rhodium Technologies;

     iii.    Proof of Claim No. 208, asserted by Chase Blackmon in the amount of $128,913.47 against Rhodium Technologies; and

     iv.    Proof of Claim No. 213, asserted by Imperium in the amount of $1,452,970 against Rhodium Technologies.

The Founders shall also be entitled to receive post-petition interest on the above amounts not to exceed $71,321.92 in the aggregate.

Additionally, proof of claim number 12 of Morrison Park Capital LLC shall be Allowed and paid in the amount of $70,140.00, plus post-petition interests accruing at 0.20% per annum.

Notwithstanding any other provision of this Plan to the contrary, the Founders shall receive no post-petition interest or other amounts on account of the Proofs of Claim listed in this section 6.18(a).

     *(b)*     Neither Imperium nor any of the Founders shall receive any Distributions under this Plan nor any other Distribution, indemnification, or other value of any kind from the Debtors' Estates save for (i) Distributions on the Proofs of Claim set forth in section 6.18(a) and (ii) the release of Claims against Imperium and the Founders under this Plan upon consummation of the D&O Insurance Settlement.   All other Proofs of Claim submitted by Imperium or the Founders shall be deemed Disallowed without the need for further action by the Debtors, the Wind Down Debtor, or any other Person or Entity.  Except for the release of claims against Imperium and the Founders to be granted by the Debtors and their Estates under the Plan upon consummation of the D&O Insurance Settlement, none of the Imperium Parties shall receive any other distribution, indemnification, assets or other value of any kind from the Estates.

     *(c)*     Nothing in the Plan shall be deemed to be a waiver of any rights of the Founders to seek indemnification of legal fees and expenses from insurance carriers under the D&O Policies.

     6.19.    ***Withholding and Reporting Requirements.***

     *(a)*     *Withholding Rights*. In connection with the Plan, any Person issuing any instrument or making any distribution described in the Plan (or any other related agreement) or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local or non-U.S. taxing authority, and, notwithstanding any provision in the Plan to the contrary, any such Person shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any distribution or payment to be made under or in connection with the Plan (or any other related agreement) to generate sufficient funds to pay applicable withholding taxes, using its own funds to pay any applicable withholding taxes and retaining a portion of the applicable distribution, withholding distributions pending receipt of information necessary or appropriate to facilitate such distributions or establishing any other mechanisms it believes are reasonable and appropriate. Any amounts withheld shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each Holder of an Allowed Claim or Interest or any other Person that receives a distribution pursuant to the Plan or payment in connection therewith shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including, without limitation, income, withholding,

and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations. The Debtors and the Wind Down Debtor reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

(b)     *Forms.* Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent or such other Person designated by the Wind Down Debtor (which Person shall subsequently deliver to the applicable Disbursing Agent any applicable Internal Revenue Service ("**IRS**") Form W-8 or Form W-9 received) an appropriate IRS Form W-9 or an appropriate IRS Form W-8 and any other forms or documents reasonably requested by the Wind Down Debtor to reduce or eliminate any withholding required by any federal, state, or local taxing authority. If such request is made, and such party fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Wind Down Debtor, and any Claim or Interest in respect of such distribution shall be discharged and forever barred from assertion against the Wind Down Debtor or its property.

## ARTICLE VII.     PROCEDURES FOR DISPUTED CLAIMS AND INTERESTS.

### 7.1.     *Disputed Claims and Interests Generally.*

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or Final Order, including the Confirmation Order (when it becomes a Final Order), Allowing such Claim or Interest. Except insofar as a Claim or Interest is Allowed under the Plan or was Allowed prior to the Effective Date, the Wind Down Debtor shall have and retain any and all rights and defenses that the Debtors have with respect to any Disputed Claim or Interest. Any objections to Claims or Interests shall be served and Filed on or before the Claim/Interest Objection Deadline. All Disputed Claims or Interests not objected to by the end of such period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.

### 7.2.     *Objections to Claims and Interests.*

Except insofar as a Claim or Interest is Allowed under the Plan, the Debtors (and, after the Effective Date, the Wind Down Debtor) shall be entitled to object to Claims and Interests. Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date the Wind Down Debtor shall have the authority to (i) file, withdraw, or litigate to judgment objections to Claims and Interests, (ii) settle or compromise any Disputed Claim or Interest without any further notice to, or action, order, or approval by, the Bankruptcy Court, and (iii) administer and adjust the Debtors' claims register to reflect any such settlements or compromises without any further notice to, or action, order, or approval by, the Bankruptcy Court.

### 7.3.     *Estimation of Claims.*

The Plan Proponents (or the Wind Down Debtor) may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to

estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.

### 7.4.    *Adjustment to Claims Register Without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register or register of interests by the Debtors (or, after the Effective Date, by the Wind Down Debtor) upon stipulation or any agreement in writing, including, without limitation, email correspondence, between the parties in interest without an objection having to be Filed and without any further notice or action, order, or approval of the Bankruptcy Court.

### 7.5.    *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors (or, after the Effective Date, to the Wind Down Debtor).

Except as otherwise provided herein, ordered by the Bankruptcy Court or otherwise agreed by the Plan Proponents (or, after the Effective Date, by the Wind Down Debtor), any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice or action, order, or approval of the Bankruptcy Court, and Holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests, unless the Bankruptcy Court shall have determined by a Final Order, on or before the Confirmation Hearing, that cause exists to extend the Bar Date as to such Proof of Claim on the basis of excusable neglect.

### 7.6.    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim or Interest is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until (and only to the extent that) such Disputed Claim or Interest becomes an Allowed Claim or Allowed Interest.

### 7.7.    *Distributions after Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the Final Order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Interest becomes a Final Order, the Wind Down Debtor shall provide to the Holder of such Claim or Interest the distribution to which such Holder is entitled under the Plan as of the Effective Date.

### 7.8.    *Claim Resolution Procedures Cumulative.*

All of the Claims, objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled,

compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

### 7.9. *Amendments to Claims or Interests.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of (i) the Bankruptcy Court or (ii) the Wind Down Debtor, and any other new or amended Claim or Interest or Proof of Claim or Proof of Interest Filed after the Effective Date shall be deemed Disallowed in full and expunged without any further action of or notice to the Bankruptcy Court.

## ARTICLE VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1. *General Treatment.*

*(a)* As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to section 8.5 of the Plan, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed by the Debtors, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts.

*(b)* Subject to (i) resolution of any disputes in accordance with section 8.2 of the Plan with respect to the Executory Contracts or Unexpired Leases subject to such disputes, and (ii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any Executory Contracts and Unexpired Leases assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Wind Down Debtor or its assignee(s) in accordance with its terms, except as modified by any provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

*(c)* To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

*(d)* The Debtors reserve the right, subject to the consent of the SAFE AHG, such consent not to be unreasonably withheld, conditioned, or delayed, on or before the Effective Date, to amend the Schedule of Rejected Contracts or the Schedule of Assumed Contracts, to add or remove any Executory Contract or Unexpired Lease; *provided that* the Debtors or the Wind Down Debtor may amend the Schedule of Rejected Contracts or Schedule of Assumed Contracts to add or delete any Executory Contracts or Unexpired Leases after such date to the extent agreed with the relevant counterparties or authorized by the Bankruptcy Court.

8.2.    ***Determination of Assumption and Cure Disputes and Deemed Consent.***

    *(a)*    The Plan Proponents shall File, as part of the Plan Supplement, the Schedule of Rejected Contracts and the Schedule of Assumed Contracts. At least ten (10) days before the deadline to object to Confirmation of the Plan, the Plan Proponents shall serve a notice on parties to Executory Contracts or Unexpired Leases to be assumed, assumed and assigned, or rejected, reflecting the Debtors' intention to potentially assume, assume and assign, or reject, the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any). If a counterparty to any Executory Contract or Unexpired Lease that the Debtors intend to assume or assume and assign is not listed on such a notice, the proposed Cure Amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0). **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Amount must be Filed, served, and actually received by the Debtors within fourteen (14) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease shall be deemed to have assented to assumption or assumption and assignment of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor under such Executory Contract or Unexpired Lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor. Each such provision shall be deemed not to apply to the assumption or assumption and assignment of such Executory Contract or Unexpired Lease pursuant to the Plan, and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in this section 8.2(a) shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

    *(b)*    If there is an Assumption Dispute pertaining to assumption of an Executory Contract or Unexpired Lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to such assumption being effective; ***provided that*** the Debtors or the Wind Down Debtor may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

    *(c)*    To the extent an Assumption Dispute relates solely to the Cure Amount, the Debtors may assume or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Assumption Dispute; ***provided that*** the Debtors (or the Wind Down Debtor) reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure Amount by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the Wind Down Debtor).

    *(d)*    Subject to resolution of any dispute regarding any Cure Amount, all Cure Amounts shall be satisfied promptly, or otherwise as soon as practicable, by the Debtors or the Wind Down Debtor upon assumption or assumption and assignment, as applicable, of the underlying Executory Contracts and Unexpired Leases. Assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full and final satisfaction, settlement,

37

release, and discharge of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, as applicable, shall be deemed disallowed and expunged, without further notice to, or action, order or approval of, the Bankruptcy Court or any other Entity, upon the deemed assumption of such Executory Contract or Unexpired Lease.

### 8.3.    *Rejection Claims.*

Unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be Disallowed pursuant to the Confirmation Order or such other order of the Bankruptcy Court, as applicable, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors or the Wind Down Debtor, or their property, without the need for any objection by the Debtors or the Wind Down Debtor, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**. Claims arising from the rejection of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and may be objected to in accordance with the provisions of section 7.2 of the Plan and applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

### 8.4.    *Debtors' Indemnification Obligations.*

All Indemnification Obligations of the Debtors shall be deemed and treated as Executory Contracts to be rejected under the Plan. For the avoidance of doubt, any party to whom an Indemnification Obligation is owed will be required to make a claim for Side A coverage under the D&O Policies that have been extended through January 1, 2026.

### 8.5.    *Employee Arrangements and Employee Obligations.*

*(a)*    Immediately prior to the Effective Date, all Employees' employment with the Debtors shall be terminated.  At that time, Employees shall be entitled to the Severance Benefits set forth in their applicable Employee Agreements or, to the extent no Employee Agreement exists, consistent with the Debtors' prepetition severance policy (as set forth below).   The Debtors' calculation of Employee Severance Benefits are set forth on the attached **Exhibit A**; ***provided, however***, that the Severance Benefits shall be payable only if the Employee executes, and fails to revoke within the statutory revocation period, a release to the Plan Proponents which, for the avoidance of doubt, shall include the applicable amount of Severance Benefits for such Employee, following termination of employment which is, in form and substance, satisfactory to the Plan Proponents.  For the avoidance of doubt, the Employee and the Company may agree to an alternative payment schedule, ***provided, however***, any such amounts will not exceed those provided for in the Plan.

*(b)*    Unless otherwise listed on the Schedule of Assumed Contracts, all Employment Agreements and offer letters shall be deemed rejected on the Effective Date as Executory Contracts

pursuant to sections 365 and 1123 of the Bankruptcy Code (which rejection shall include any modifications to such employment agreements).

(c)    As of the Effective Date, the Debtors and the Wind Down Debtor shall continue to honor their obligations under all applicable Workers' Compensation Programs and in accordance with all applicable workers' compensation laws in states in which the Debtors operated. Any Claims arising under Workers' Compensation Programs shall be deemed withdrawn once satisfied without any further notice to, or action, order, or approval of, the Bankruptcy Court; *provided that* nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' defenses, Causes of Action, or other rights under applicable law, including non-bankruptcy law, with respect to any such Workers' Compensation Programs; *provided, further, that* nothing herein shall be deemed to impose any obligations on the Debtors or the Wind Down Debtor in addition to what is provided for under applicable state law.

(d)    Severance Benefits shall be as follows:

i.    In exchange for executing and not revoking a release of claims against the Debtors, for Employees who do not have an Employment Agreement that prescribes severance benefits, the Company (or the Wind Down Debtor, as the case may be) shall pay severance in an amount equal to two (2) weeks of the Employee's base salary for each full year of completed service with the Company, calculated at the rate in effect as of the Employee's termination date. Such severance shall be paid in accordance with the Company's normal payroll practices and schedules, unless otherwise required by applicable law.

ii.    To the extent the Company (or the Wind Down Debtor, as the case may be) continues to maintain such health and dental benefit plans, former employees shall be eligible to elect continuation coverage under COBRA (or any applicable state continuation law) at their own expense, subject to the terms and conditions of such plans and applicable law. For employees or executives whose employment agreements do not expressly provide for COBRA premium contributions, the Company will continue active coverage under its group health insurance plans through the last day of the calendar month in which the employee's termination occurs. Thereafter, any continuation of coverage shall be at the employee's sole expense under COBRA, to the extent the Company (or the Wind Down Debtor, as the case may be) continued to maintain such health and dental benefit plans. For executives whose employment agreements specifically provide for COBRA premium contributions as part of their severance benefits, the Company (or the Wind Down Debtor, as the case may be) will continue to cover the Employee and his or her dependents under, or provide such Employee and his or her dependents with insurance coverage no less favorable than, the Company's health and dental benefit plans or programs (as in effect on the day immediately preceding the date of termination of employment) for a period equal to the Severance Period; to the extent the Company (or the Wind Down Debtor, as the case may be) continues to maintain such health and dental benefit. To the extent any such benefits cannot be provided under the benefit plans or programs of the Company or any of its subsidiaries, the Employee will be entitled to receive, on a monthly basis following termination, cash payments in an amount equal to the monthly cost of such benefits.

8.6.     ***Insurance Policies/Claims Payable by Third Parties.***

*(a)*     All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be assumed by the applicable Debtors and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall vest in the Wind Down Debtor. Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured Persons" in any D&O Policy.

*(b)*     In addition, after the Effective Date, any party to whom an Indemnification Obligation is owed will have the right to seek recovery solely and only from any D&O Policy (including any "tail" policy) for the full term of such policy, regardless of whether any such person remains employed by (or seated as a director of) the Debtors.

*(c)*     In addition, after the Effective Date, the Wind Down Debtor shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current and former directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

*(d)*     In the event that the Debtors determine that an Allowed Claim is covered in full or in part under one of the Debtors' insurance policies, no distributions under the Plan shall be made on account of such Allowed Claim unless and until, and solely to the extent that, (i) the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) an insurer authorized to issue a coverage position under such insurance policy, or the agent of such insurer, issues a formal determination, which the Debtors in their sole discretion do not contest, that coverage under such insurance policy is excluded or otherwise unavailable for losses arising from such Allowed Claim. Any proceeds available pursuant to one of the Debtors' insurance policies shall reduce the Allowed amount of a Claim on a dollar-for-dollar basis. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court. If an applicable insurance policy has a SIR, the Holder of an Insured Litigation Claim shall have an Allowed General Unsecured Claim against the applicable Debtor's Estate solely up to the amount of the SIR that may be established upon the liquidation of the Insured Litigation Claim. Such SIR shall be considered satisfied pursuant to the Plan through allowance of the General Unsecured Claim solely in the amount of the applicable SIR, if any; ***provided, however,*** that nothing herein obligates the Debtors or the Wind Down Debtor to otherwise satisfy any SIR under any insurance policy. Any recovery on account of the Insured Litigation Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof. Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy. Nothing herein relieves any Entity from the requirement to timely File a Proof of Claim by the applicable Bar Date.

8.7.     ***Intellectual Property Licenses and Agreements.***

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the Confirmation Date shall be deemed and treated as

Executory Contracts and shall be assumed by the respective Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion Filed by the Debtors in accordance with the Plan. Unless otherwise noted hereunder, all intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Wind Down Debtor and the Wind Down Debtor may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.8. *Assignment.*

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease assumed and assigned hereunder shall remain in full force and effect for the benefit of the assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including, without limitation, those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

8.9. *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed in the Schedule of Assumed Contracts.

8.10. *Reservation of Rights.*

(a)      Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors or their respective Affiliates has any liability thereunder.

(b)      Except as otherwise provided in the Plan, nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors or the Wind Down Debtor under any Executory Contract or non-executory contract or any Unexpired Lease or expired lease.

(c)      Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any Executory Contract or non-executory contract or any Unexpired Lease or expired lease.

(d)      If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or the Wind Down Debtor shall have sixty (60) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment.

## ARTICLE IX.      CONDITIONS PRECEDENT TO EFFECTIVE DATE.

### 9.1.      *Conditions Precedent to the Effective Date.*

The following are conditions precedent to the Effective Date of the Plan:

(a)      the Plan Support Agreement shall remain in full force and effect;

(b)      no breach or failure to comply with the terms of the Plan Support Agreement, the Confirmation Order, or any other material final order of the Bankruptcy Court shall have occurred and be continuing;

(c)      the Debtors' estates shall have received the Rhodium D&O Proceeds;

(d)      no circumstance, event and/or the entry of any order by the Bankruptcy Court that causes the SAFE AHG to reasonably believe that Distributable Cash will be insufficient to satisfy in full the Substantial Contribution Claim, and the SAFE Claims in the amounts provided for in this Plan and the Term Sheet shall have occurred;

(e)      the Definitive Documents shall have been filed in substantially final form in a form acceptable to the Plan Proponents;

(f)      the Plan, as confirmed by the Confirmation Order, shall be in form and substance acceptable to the Plan Proponents;

(g)      the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Plan Proponents, and (ii) solely to the extent it materially affects the treatment of Imperium and/or the Founders, Imperium and/or the Founders;

(h)      the Confirmation Order shall not have been reversed, stayed, amended, modified, dismissed, vacated or reconsidered;

(i)      the Professional Fee Escrow shall have been established and funded in Cash; and

(j)      no court of competent jurisdiction (including the Bankruptcy Court) or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, prohibiting, or materially affecting the consummation of any of the transactions contemplated under the Plan.

### 9.2.      *Timing of Conditions Precedent.*

Notwithstanding when a condition precedent to the Effective Date occurs, unless otherwise specified in the Plan or any Plan Supplement document, for the purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the applicable conditions precedent to the Effective Date; ***provided that*** to the extent a condition precedent (the "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the applicable Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

9.3.    ***Waiver of Conditions Precedent.***

*(a)*     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Each of the conditions precedent of the Plan may be waived by with the consent of both Plan Proponents without notice to, leave from, or order of, the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*(b)*     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4.    ***Effect of Failure of a Condition.***

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors, (ii) prejudice in any manner the rights of any Person, or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Person.

## ARTICLE X.    EFFECT OF CONFIRMATION OF PLAN.

10.1.    ***Vesting of Assets in the Wind Down Debtor.***

*(a)*     Except as otherwise provided in the Plan, any Plan Document, or the Confirmation Order on the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Remaining Assets and Retained Causes of Action, including any property acquired by the Debtors under or in connection with the Plan, shall vest in the Wind Down Debtor free and clear of all Liens, Claims, charges, or other interests or encumbrances. From and after the Effective Date, the Wind Down Debtor shall promptly liquidate all of the Remaining Assets and Retained Causes of Action.

*(b)*     Except as otherwise provided herein, the Wind Down Debtor may use, acquire, or dispose of property and pursue, compromise or settle any Claims (including any Administrative Expense Claims), Interests, and Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting the foregoing, the Wind Down Debtor may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.2.    ***Binding Effect.***

As of the Effective Date, the Plan shall bind all Holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such Holders were (a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

10.3.    ***Term of Injunctions or Stays.***

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.4. *Injunction.*

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released by the Debtors pursuant to section 10.5(a) or section 10.5(b), or by the Releasing Parties pursuant to section 10.5(c), or are subject to exculpation pursuant to section 10.6, and all other parties in interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind Down Debtor, the Released Parties, Imperium and/or the Founders (solely with respect to the extent of the release provided in section 10.5(b) with respect to Imperium and/or the Founders). and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to section 10.6 with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests, unless (x) such Entity has timely asserted such setoff right either in a Filed Proof of Claim or Proof of Interest, or in another document Filed with the Bankruptcy Court explicitly preserving such setoff or that otherwise indicates that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise or (y) such right to setoff arises under a postpetition agreement with the Debtors or an Executory Contract that has been assumed by the Debtors as of the Effective Date; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such persons who have held, hold, or may hold Claims against, or Interests in, a Debtor or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to section 11.1, no entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any Restructuring/Liquidation Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or the Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any

such Released Party or Exculpated Party. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in section 11.1, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

10.5. **_Releases._**

(a) <u>**Releases by the Debtors**</u>.

    i.    **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties shall be conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, their Estates, and the Wind Down Debtor from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, the Wind Down Debtor, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.**

    ii.    **Notwithstanding anything to the contrary in the foregoing, the releases set forth in this section 10.5(a) shall not be construed as releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring/Liquidation Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

(b) **Releases by the Debtors of Imperium/Founders in Connection with D&O Insurance Settlement.**

    i.    **Except to the extent these releases were procured by fraud, notwithstanding anything contained in the Plan to the contrary, upon consummation of the D&O Insurance Settlement in accordance with the terms of this Plan (including, without limitation, payment of the Rhodium D&O Proceeds by the insurance carriers that issued the D&O Policies to the Debtors' Estates) and provided that Imperium and the Founders have not breached their obligations under the Plan Support Agreement, Imperium and the Founders shall be conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, their Estates, and the Wind Down Debtor from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, the Wind Down Debtor, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.**

    ii.    **Notwithstanding anything to the contrary in the foregoing the releases set forth in this section 10.5(b) shall not be construed as releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring/Liquidation Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

    iii.    **In the event the D&O Insurance Settlement is not consummated as set forth in this Plan, or Imperium and/or the Founders breach their obligations under the Plan Support Agreement (including, without limitation, their obligations to vote to accept the Plan and to grant the releases set forth in section 10.5(c) of the Plan in favor of the Released Parties), the releases provided in this section 10.5(b) shall not be granted by the Debtors, their Estates, and the Wind Down Debtor.**

(c)     **Releases by Holders of Claims and Interests.**

i.      **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, any Covered Claim.**

ii.     **Notwithstanding anything to the contrary in the foregoing, the releases set forth in this section 10.5(c) do not release (1) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Causes of Action included as a Retained Cause of Action; or (3) actual fraud (provided that actual fraud shall not exempt from the scope of these third-party releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence as determined by a Final Order.**

iii.    **In accordance with the Plan Support Agreement, Imperium and the Founders shall elect to grant, and shall not opt out of, the releases set forth in this section 10.5(c).  Notwithstanding that fact, and for the avoidance of doubt, Imperium and the Founders are carved out of the definition of Released Parties in section 1.96 of the Plan and thus are not subject to receiving the benefits of the releases set forth in this section 10.5(c).**

10.6.   *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim, whether direct or derivative, related to any act or omission in connection with, relating to, or arising out of, in whole or in part, any Covered Claim, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the Confirmation Order.

**The Exculpated Parties have, and upon Confirmation of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

### 10.7. *Gatekeeper Injunction.*

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Claim or Cause of Action of any kind against any of the Exculpated Parties that arose or arises from or is related to any applicable Covered Claim without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim against an Exculpated Party and is not a Claim that was exculpated under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party, and (2) obtaining from the Bankruptcy Court, in the form of a Final Order, specific authorization for such party to bring such Claim or Cause of Action against an Exculpated Party. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

### 10.8. *Retention of Causes of Action/Transfer of Causes of Action and Reservation of Rights.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article X, the Wind Down Debtor shall have, retain, reserve and be entitled to assert, and may enforce all rights to commence and pursue, as appropriate, any and all claims or Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than Causes of Action released by the Debtors pursuant to the releases and exculpations contained in this Plan, including in Article X of the Plan, which shall be deemed released and waived by the Debtors as of the Effective Date. The Wind Down Debtor shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. **The Debtors and the Wind Down Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity not released pursuant to the Plan.**

### 10.9. *Ipso Facto and Similar Provisions Ineffective.*

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Entity based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; (c) the Confirmation or consummation of the

Plan, including any change of control that shall occur as a result of such consummation; or (d) the liquidation of the Debtors.

### 10.10.  *Solicitation of Plan.*

As of the Confirmation Date, the Plan Proponents shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

### 10.11.  *Corporate and Limited Liability Company Action.*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the selection of management of the Wind Down Debtor in accordance with the term of the Plan Support Agreement, and (ii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors and any corporate or limited liability company action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity holders, directors, managers, or officers of the Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors (or representatives of the Wind Down Debtor), shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this section 10.11 shall be effective notwithstanding any requirements under non-bankruptcy law.

## ARTICLE XI.      RETENTION OF JURISDICTION.

### 11.1.  *Retention of Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

*(a)*      to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases, including Assumption Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

*(b)*      to determine any motion, adversary proceeding, proceeding, application, contested matter, and/or other litigated matter pending on or commenced after the Confirmation Date;

*(c)*      to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

*(d)*      to ensure that distributions to Holders of Allowed Claims and Interests are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)      to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or any counterclaim related thereto;

(f)      to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)      to hear and determine all Professional Fee Claims;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)      to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(o)      to resolve disputes concerning Disputed Claims or the administration thereof;

(p)      to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any Claims Bar Date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purposes;

(q)      to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(r)      to enter a final decree closing the Chapter 11 Cases;

*(s)*      to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located; and

*(t)*      to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

### 11.2.  *Courts of Competent Jurisdiction.*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### ARTICLE XII.    MISCELLANEOUS PROVISIONS.

### 12.1.  *Payment of Statutory Fees.*

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall File all monthly operating reports through the Effective Date. On and after the Effective Date, the Wind Down Debtor or any Disbursing Agent shall pay any and all such fees in full in Cash when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor (or the Wind Down Debtor) shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to File a Proof of Claim or any other request for payment of quarterly fees.

### 12.2.  *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.  *Request for Expedited Determination of Taxes.*

The Debtors and the Wind Down Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 12.4.  *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146 of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments or documents, (ii) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (iii) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan, and (iv) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall

not be subject to, or taxed under, any law imposing any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

### 12.5. *Amendments.*

    *(a)*    *Plan Modifications.* The Plan may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of Holders of Allowed Claims or Interests pursuant to the Plan, the Plan Proponents may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

    *(b)*    *Other Amendments.* Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

### 12.6. *Effectuating Documents and Further Transactions.*

The administrator of the Wind Down Debtor is authorized, in accordance with his or her authority under the resolutions of the applicable member(s), board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.7. *Revocation or Withdrawal of the Plan.*

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors. If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by any Debtor or any other Person.

### 12.8. *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan

Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted, ***provided that*** any such alteration or interpretation shall be acceptable to the Plan Proponents. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms, (ii) integral to the Plan and may not be deleted or modified without the consent of the Plan Proponents (or the Wind Down Debtor), and (iii) nonseverable and mutually dependent.

### 12.9.    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### 12.10.    *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.11.    *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.12.    *Immediate Binding Effect.*

Notwithstanding any Bankruptcy Rule providing for a stay of the Confirmation Order or the Plan, including Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Holders of Claims and Interests, the Released Parties, each of their respective successors and assigns, including, without limitation, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or debt has voted on the Plan.

### 12.13.    *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.14. ***Successors and Assigns.***

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.15. ***Entire Agreement.***

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.16. ***Exhibits to Plan.***

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.17. ***Dissolution of Creditors' Committee.***

On the Effective Date, any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve; ***provided that*** following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purposes of (i) filing and prosecuting applications for allowance of Professional Fee Claims and (ii) seeking removal of the committee as a party in interest in any proceeding on appeal. Upon the dissolution of any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; ***provided that*** for the avoidance of doubt, any Claims or Causes of Action asserted by the Creditors' Committee, whether direct or derivative (including any Claims seeking declaratory judgments) shall be withdrawn with prejudice and/or vest in the Debtors' Estates, to be immediately fully and indefensibly released in accordance with section 10.5 of the Plan.

12.18. ***Special Committee.***

On the Effective Date, the Independent Directors shall resign as directors of Rhodium Enterprises and the Special Committee shall dissolve; provided that following the Effective Date, the Special Committee shall continue in existence solely for the purposes of filing and prosecuting applications for allowance of Professional Fee Claims. Nothing in this section 12.18 shall detract from or otherwise affect the releases and exculpations provided to the Independent Directors and, where applicable, their Related Parties, under this Plan.

12.19. ***Notices.***

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

(a)      if to the Debtors:

Rhodium Encore LLC
Attn: Charles Topping

Morgan Soule
2617 Bissonnet Street, Suite 234
Houston, Texas 77005
Email: chucktopping@rhdm.com
Email: morgansoule@rhdm.com

- and -

Quinn Emanuel Urquhart & Sullivan, LLP
Attn: Patricia B. Tomasco
700 Louisiana, Suite 3700
Houston, Texas 77002
Email: pattytomasco@quinnemanuel.com

(b)     if to the Special Committee:

Barnes & Thornburg LLP
Attn:  Vincent P. (Trace) Schmeltz III
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-214-5602
Facsimile: 312-759-5646
Email: tschmeltz@btlaw.com

(c)     if to the SAFE AHG:

Akin Gump Strauss Hauer & Feld LLP
Attn: Sarah Link Schultz
Elizabeth D. Scott
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Email:  sschultz@akingump.com
Email:  edscott@akingump.com

-and-

Mitchell P. Hurley (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036-6745
Email:  mhurley@akingump.com

(d)     if to the Counsel to the Official Committee of Unsecured Creditors:

McDermott Will & Schulte LLP
Attn: Charles R. Gibbs
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201-1664
Email: crgibbs@mwe.com

(e)     if to the U.S. Trustee:

United States Trustee
Attn: Ha Minh Nguyen

515 Rusk, Suite 3516
Houston, Texas 77002
Email: ha.nguyen@usdoj.gov

After the Effective Date, the Wind Down Debtor has authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Wind Down Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 30, 2025

Respectfully submitted,

*s/ Michael Robinson*
_____
By:  Michael Robinson
Co-Chief Restructuring Officer
Rhodium Enterprises, Inc. and its
affiliate debtors

*s/ David M. Dunn*
_____
By:  David M. Dunn
Co-Chief Restructuring Officer
Rhodium Enterprises, Inc. and its
affiliate debtors

*s/ David Eaton*
_____
By:  David Eaton
Independent Director
Rhodium Enterprises, Inc.

*s/ Spencer Wells*
_____
By:  Spencer Wells
Independent Director
Rhodium Enterprises, Inc.

Dated: November 30, 2025

/s/ Mitchell Hurley
Mitchell Hurley

*Authorized Agent for the Ad Hoc Group of SAFE
Parties*