# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

**DECLARATION OF MICHAEL ROBINSON IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR RHODIUM ENCORE LLC AND ITS AFFILIATED DEBTORS PROPOSED BY DEBTORS AND AD HOC GROUP OF SAFE PARTIES**

I, Michael Robinson, Co-Chief Restructuring Officer ("CRO") of Rhodium Encore LLC and its debtor affiliates in the above-captioned cases (collectively, the "Debtors"), hereby declare under penalty of perjury:

1.  I am a partner at Province, LLC ("Province") with over 14 years of experience in the financial services sector, initially through my work in investment banking advisory where I advised on a number of significant transactions across diverse industry verticals, and then through my work in restructuring advisory in which I have directly managed many in-court and out-of-court restructurings. Additionally, I am a Certified Insolvency and Restructuring Advisor, awarded from the Association of Insolvency and Restructuring Advisors, of which I am a member. I serve

---

[1] The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

1

as the co-CRO of the Debtors.  Accordingly, I am in all respect competent to make this declaration (the "Declaration").

2. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the professionals in this case and/or employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations.

3. I submit this Declaration in support of the confirmation of the *Second Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and Its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* [Docket No. 2062] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[2] and the *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of Rhodium Encore LLC and Its Affiliated Debtors* (the "Memorandum"), which is filed contemporaneously herewith.

4. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**THE PLAN SATISFIES THE BEST INTERESTS TEST UNDER SECTION 1129(A)(7) OF THE BANKRUPTCY CODE**

5. I understand that section 1129(a)(7) of the Bankruptcy Code requires that any chapter 11 plan must satisfy the "best interests of creditors" test, providing that holders of claims or interests in impaired, non-accepting classes must receive under a chapter 11 plan at least as much as they would in a liquidation.  As discussed in below, it is my opinion that the Plan satisfies

---

[2] Capitalized Terms used but not defined herein shall have the meanings given to such terms in the Plan, the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of Rhodium Encore LLC and Its Affiliated Debtors* [Dkt. No. 1832] (the "Disclosure Statement"), the liquidation analysis relating to the Disclosure Statement [Dkt. No. 1813] (the "Liquidation Analysis"), or the Memorandum, respectively.

2

the "best interests of creditors" test based on the Liquidation Analysis prepared by the Debtors with the assistance of their advisors that is attached to the Disclosure Statement as Exhibit C. The Liquidation Analysis provides that, under the Plan, all Impaired Classes of Claims and Interests will receive a recovery that is greater than or equal to the midpoint of the Chapter 7 Recoveries (as defined below) contemplated in a hypothetical chapter 7 liquidation. Accordingly, I believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

## **LIQUIDATION ANALYSIS**

6.  As mentioned above, the Liquidation Analysis was prepared to address the Plan's ability to satisfy the "best interests of creditors" test as defined in section 1129(a)(7) of the Bankruptcy Code.

7.  The Liquidation Analysis was completed after extensive analysis and due diligence by the Debtors, myself and others on the Province team. In preparing the Liquidation Analysis, the Debtors and their advisors utilized a variety of sources, including (i) the Debtors' books and records, including their most recent unaudited financial statements; (ii) input from the Debtors' finance team and advisors; (iii) input from the Special Committee; and (iv) the Debtors' projected cash balance through the Conversion Date (as defined below).

8.  To prepare the Liquidation Analysis, the Debtors, with the assistance of their advisors, estimated proceeds, costs, and resulting recoveries in the event that the Plan is confirmed and consummated, or, alternatively, that the Debtors' chapter 11 cases are converted to a chapter 7 liquidation.

9.  The Debtors, supported by their advisors, estimated creditor recoveries based on the total estimated proceeds under both the Plan and a chapter 7 liquidation. Under both scenarios, these proceeds have been netted of the estimated wind down expenses. Then, the distribution that

3

Holders would receive if the Plan were confirmed and consummated was compared with the chapter 7 liquidation distribution to creditors under the related priority scheme. The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered case, but each Debtor is treated as an independent legal entity without substantive consolidation. The Liquidation Analysis is also based on a variety of other assumptions that I believe are reasonable on an overall basis.[3]

10. With respect to the chapter 7 liquidation scenario, the Debtors' current chapter 11 cases are assumed to be converted to cases under chapter 7 of the Bankruptcy Code on or about December 3, 2025 (the "Conversion Date"), absent confirmation of the Plan. Furthermore, on the Conversion Date, the Bankruptcy Court would appoint a chapter 7 trustee ("Trustee"), and such Trustee would immediately sell or surrender all of the Debtors' assets, and the cash proceeds of those sales—net of the liquidation-related costs—would then be distributed to creditors in accordance with applicable law.

11. To estimate the creditor recoveries in both the wind down contemplated in the Plan (the "Wind Down") and chapter 7 liquidation, the following steps were performed:

**I.   Estimation of the Gross Total Proceeds**

12. For the purpose of both the Wind Down and chapter 7 liquidation scenarios, the Debtors and their advisors estimated the total proceeds, which include (i) cash available at the time of a hypothetical chapter 7 conversion or the Plan's confirmation;[4] (ii) potential proceeds resulting from the D&O Policies; and (iii) potential proceeds from other miscellaneous assets.

---

[3] The illustrative recoveries provided in the Liquidation Analysis are subject to potentially material change, including due to macroeconomic business conditions and legal rulings.

[4] The Debtors and their advisors included any relevant proceeds from the Whinstone Transaction and already included all relevant forecasted amounts estimated to be paid by a hypothetical Conversion Date.

13. Under the Wind Down scenario contemplated in the Plan, the Debtors and their advisors estimated the proceeds that would be generated if the Wind Down was consummated.

14. In the chapter 7 liquidation scenario, the Liquidation Analysis distinguishes between two sub-scenarios: (i) the "Low" chapter 7 recovery scenario (the "Low Chapter 7 Recovery"), which assumes a low amount of total available distributable cash to stakeholders; and (ii) the "High" chapter 7 recovery scenario (the "High Chapter 7 Recovery," and together with the Low Chapter 7 Recovery, the "Chapter 7 Recoveries"), which assumes a high amount of total available distributable cash to stakeholders.

II. **Estimation of the Wind Down Expenses**

15. In preparing the Liquidation Analysis, the Debtors and their advisors made certain assumptions and estimations regarding the costs of a liquidation under the Plan and a chapter 7 liquidation. In an actual chapter 7 liquidation, the length of the wind-down could vary significantly, which would impact recoveries. The estimated Wind Down expenses under the Plan include: (i) reserved trustee fees; (ii) wind down professional fees; and (iii) general administrative wind down functions and costs, including filing of taxes and termination of the 401(k) program. The estimated costs of the hypothetical chapter 7 liquidation contemplated under the Liquidation Analysis include: (i) wind down costs; (ii) chapter 7 professional fees; (iii) chapter 7 trustee fees; (iv) seed funding for a litigation trust; and (v) professional fees and related costs to support the litigation trust. Compared to Wind Down under the Plan, the Debtors and their advisors estimated an incremental $5.35 million to the midpoint of total wind down costs in a chapter 7 liquidation between the scenarios shown in the Chapter 7 Recoveries.

### III. Distribution of Net Total Proceeds

16. The Liquidation Analysis estimates the Wind Down recoveries to creditors by running the net total estimated proceeds through a waterfall recovery model, which pays claims based on priority until fulfilled, and then "waterfalls" to the next lower priority claim (or interest), until all proceeds are depleted. I believe that the distributions to creditors in the Liquidation Analysis reflect section 1129 of the Bankruptcy Code's "absolute priority rule" that no junior creditor at a given entity would receive any distribution until all senior creditors are paid in full at that entity, and no equity holder would receive any distribution until all creditors at such entity are paid in full.

17. As shown in the Liquidation Analysis, under the Plan, Holders of Secured Notes Claims are expected to receive recoveries that are equal to those in a chapter 7 liquidation.[5]

| Table 1: Recovery to Holders of secured Claims | | | |
|---|---|---|---|
| **Debtor**[6] | **High Ch. 7 Recovery** | **Low Ch. 7 Recovery** | **Plan Recovery** |
| Rhodium Technologies LLC | 107% (Class 3) | 107% (Class 3) | 107% (Class 3) |
| Rhodium 2.0 LLC | 103% (Class 1) | 103% (Class 1) | 103% (Class 1) |

18. With respect to Holders of unsecured Claims in Class 5a – Guaranteed Unsecured Claims, Class 5b – General Unsecured Claims, and Class 6 – SAFE Claims, the Liquidation

---

[5] Holders of Rhodium Encore Secured Notes Claims, which are separately classified under the Plan, were paid in full prior to solicitation of votes on the Plan in accordance with the Payment Orders.

[6] Table 1 lists only the Debtors that are relevant for the Holders of Secured Notes Claims.

Analysis shows that, under the Plan, these Holders will receive recoveries that are higher or equal to those receivable in the midpoint of the Chapter 7 Recoveries.[7]

| Table 2: Recovery to Holders of unsecured Claims (Classes 5a, 5b, and 6) | | | | |
|---|---|---|---|---|
| Debtor[8] | High Ch. 7 Recovery | Low Ch. 7 Recovery | Midpoint Ch. 7 Recovery | Plan Recovery |
| Rhodium Enterprises, Inc. | 105% (Class 5b); 99% (Class 6) | 105% (Class 5b); 80% (Class 6) | **105% (Class 5b); 89.5% (Class 6)** | 105% (Class 5b); 98% (Class 6) |
| Rhodium Technologies LLC | 104% (Class 5a); 105% (Class 5b) | 104% (Class 5a); 105% (Class 5b) | **104% (Class 5a); 105% (Class 5b)** | 104% (Class 5a); 105% (Class 5b) |
| Rhodium 30MW LLC | 105% (Class 5b) | 105% (Class 5b) | **105% (Class 5b)** | 105% (Class 5b) |
| Rhodium 10MW LLC | 105% (Class 5b) | 105% (Class 5b) | **105% (Class 5b)** | 105% (Class 5b) |
| Rhodium 2.0 LLC | 105% (Class 5b) | 105% (Class 5b) | **105% (Class 5b)** | 105% (Class 5b) |
| Rhodium Renewables LLC | 105% (Class 5b) | 105% (Class 5b) | **105% (Class 5b)** | 105% (Class 5b) |
| Rhodium Industries LLC | 25% (Class 5b) | 25% (Class 5b) | **25% (Class 5b)** | N/A |

19. The Liquidation Analysis further shows that, under the Plan, the Holders of Interests in Rhodium Enterprises, Inc. may receive a distribution.[9] In contrast, Holders with claims or interests junior or subordinated to Class 6 are not expected to receive any Chapter 7 Recoveries;

---

[7] As part of the resolution of disputes with the Transcend Group and the Encore Parties (each as defined in the *Settlement Stipulation* (Docket No. 2006), recoveries on certain Class 5b claims are subordinated to Class 6 recoveries.

[8] Table 2 lists only the Debtors that are relevant for the Classes 5a, 5b and 6.

[9] Rhodium Enterprises, Inc. is the only Debtor where its shareholders are not limited to other Debtors and/or Imperium.

7

indeed, in a chapter 7 liquidation, the deficit prior to any recovery is estimated to range from $903,000 to $22,379,000.

20. In light of the foregoing, I believe that a chapter 7 liquidation results in lower distributable value than the wind down under the Plan.

## **CONCLUSION**

21. In summary, it is my opinion that the Plan satisfies the standards discussed above for confirmation applicable under the Bankruptcy Code. Among other things, the Wind Down will provide all Holders of Claims and Interests with a recovery (if any) that, compared to the midpoint of the Chapter 7 Recoveries, is not less than what such Holders would receive pursuant to a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 30th day of November, 2025.

*/s/ Michael Robinson*
Michael Robinson
Co-Chief Restructuring Officer