IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

## **DECLARATION OF MARK CHRISTOPHER WHEELER**

I, MARK "CHRISTOPHER" WHEELER, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am a certified public accountant licensed in the States of New York and California, and the District of Columbia. I am employed as a Managing Director at Riveron Consulting, LLC ("Riveron"), a business advisory firm retained on behalf of Debtors in the above-referenced matter. I obtained a Masters Degree in Taxation, a Bachelor of Science Degree in Accounting, and a Global Business Certificate, all from Brigham Young University.

2. Riveron was engaged by Quinn Emanuel Urquhart & Sullivan, LLP on behalf of Debtors, to advise on tax matters as they relate to Debtors and the Estate, including assisting with an analysis of the tax impact on the Debtors as a result of the Whinstone US, Inc. ("Whinstone") asset sale and other tax matters associated with the disposition of the Debtors' assets.

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511). The mailing and service address of the Debtors in these Chapter 11 Cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

12875-00001/17423289.1

3. I make this declaration on personal knowledge. If allowed to testify at any hearing before this Court regarding the Debtors' Motion to enforce the Purchase and Sale Agreement, I would testify as follows to the facts stated herein.

4. As part of my retention, I reviewed the Debtors' transactional documents with Whinstone resulting from their mediation.

5. The PSA provides in Section 2.2.1 for a total purchase price ("Purchase Price") for the Property at an amount equal to One-Hundred-Eighty-Five Million and 0/100 Dollars ($185,000,000.00). The Property included all tangible and certain intangible property of Sellers located at 2721 Charles Martin Hall Road, Rockdale, Texas 76567-3088, together with the data center located thereon (the "Facility").

6. The PSA contains the following provision about the allocation of funds at Section 2.3:

> a. For tax purposes, not later than sixty (60) days after the Closing Date (as defined below), Sellers shall prepare and deliver to Purchaser a copy of IRS Form 8594 and any required exhibits thereto, or an equivalent certificate allocating the Purchase Price among the Property (an "**Allocation Statement**") in accordance with the principles of Section 1060 of the Code. Purchaser shall inform Sellers in writing within fifteen (15) calendar days after the receipt of such Allocation Statement of any objection Purchaser has to the relevant Allocation Statement. If Purchaser does not object in writing during such fifteen (15) day period, the Allocation Statements shall be final and binding on all parties. To the extent that any such objection is received, the Purchaser and Sellers shall attempt in good faith to resolve any dispute. If Purchaser and the relevant Seller or Sellers are unable to reach such agreement within fifteen (15) calendar days after receipt by Sellers of such notice (or such longer period as may be mutually agreed), the disputed items shall be resolved by the Bankruptcy Court and any determination made thereby shall be final. Any costs related to that determination shall be borne equally by the Purchaser and the relevant Seller. The relevant Seller and Purchaser agree to revise the Allocation Statement as necessary in accordance with the procedure set forth in this Section 2.3(a) to reflect any adjustments to the Purchase Price that are attributable to the Property. The allocation as determined by such Allocation Statement, if applicable and to the extent relevant as revised by agreement of the Purchaser and the Sellers, shall be binding on the Purchaser and the Sellers. The Purchaser and the Sellers each agree to act in accordance with the Allocation Statement, as adjusted and finally as determined in accordance with this section, in any income tax return, including any forms or reports required to be filed pursuant to Section

1060 of the Code or any provisions of any comparable law, and shall take no reporting position inconsistent with such Allocation Statement on any tax return or in the course of any tax audit, tax review or tax litigation relating thereto or otherwise, unless otherwise required by a change in law after the date hereof, or a final "determination," as defined in Section 1313 of the Code or similar final resolution under applicable state, local or other tax law. Purchaser and Sellers shall reasonably cooperate in the preparation of such tax returns and file such forms as required by applicable law. For the avoidance of doubt, nothing contained herein shall be deemed an allocation of asset value for purposes of distribution to any Seller's stakeholders.

7. Based on my review of relevant materials to ensure an allocation is determined in compliance with the Internal Revenue Code, Treasury Regulations, and other applicable laws, regulations, and guidance, I recommend:

   a. $6,120,000 of the Purchase Price should be treated as the return of a deposit held by Whinstone in relation to the Power Supply Agreements entered into between Whinstone and the Debtors;

   b. $43,580,470.00 of the Purchase Price should be allocated to tangible assets sold;

   c. $75,000,000.00 of the Purchase Price should be allocated to settlement of claims asserted by each of the Debtors against Whinstone; and

   d. $60,299,530.00 of the Purchase Price should be allocated to the Power Supply Agreements held by each of the Sellers.

PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY THAT THE STATEMENTS IN THIS DECLARATION ARE TRUE AND CORRECT AND BASED UPON MY PERSONAL KNOWLEDGE.

Dated this 2nd day of December, 2025.

                                  */s/ Mark Christopher Wheeler*
                                  Mark Christopher Wheeler