IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |
| | § | |

**AMENDED NOTICE OF FILING AMENDED PLAN SUPPLEMENT FOR SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR RHODIUM ENCORE LLC AND ITS AFFILIATED DEBTORS PROPOSED BY DEBTORS AND AD HOC GROUP OF SAFE PARTIES[2]**

**PLEASE TAKE NOTICE** that on November 19, 2025, the above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***") and the Ad Hoc Group of SAFE Parties (the "***SAFE AHG***" and with the Debtors, the "***Plan Proponents***") filed the *Notice of Filing of Plan Supplement for the First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2001) (the "***First Plan Supplement***") with the United States Bankruptcy Court for the Southern District of Texas (the "***Court***").

**PLEASE TAKE FURTHER NOTICE** that as contemplated by the *First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 1821), the Plan Proponents filed the

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Rhodium Enterprises, Inc. (6290), Rhodium Technologies LLC (3973), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Shared Services LLC (5868), Rhodium Ready Ventures LLC (8618), Rhodium Industries LLC (4771), Rhodium Encore Sub LLC (1064), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW Sub LLC (3827), Rhodium 30MW Sub LLC (4386), and Rhodium Renewables Sub LLC (9511).  The mailing and service address of the Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

[2]    This Notice is amended to replace Exhibit B-2.

*Second Plan Supplement for First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed* by *Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2051)  (the "***Second Plan Supplement***").

      **PLEASE TAKE FURTHER NOTICE** that on November 30, 2025, the Plan Proponents filed the *Second Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2062) (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "***Plan***") with the Court.

      **PLEASE TAKE FURTHER NOTICE** that as contemplated by the Plan, the Plan Proponents hereby file the *Amended Plan Supplement for Second Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed* by *Debtors and Ad Hoc Group of SAFE Parties* ("***Amended Plan Supplement***," and together with the First Plan Supplement and Second Plan Supplement, the "***Plan Supplement***").  Capitalized Terms used by not defined herein have the meanings set forth in the Plan.  The Plan Supplement includes the following exhibits (in each case, as may be amended, modified, or supplemented from time to time in accordance with the terms of the Plan):

| EXHIBIT | DOCUMENT | NOTE |
|---|---|---|
| A | Severance and Employment Contract Rejection Payments | Document Unchanged |
| B-1 | Identity of Plan Administrator | Document Unchanged |
| B-2 | Plan Administrator Agreement | **Document Revised** |
| C | Schedule of Retained Causes of Action | **Document Revised** |
| D | Schedule of Assumed Contracts | **Document Revised** |
| E | Schedule of Rejected Contracts | Document Unchanged |

| EXHIBIT | DOCUMENT | NOTE |
|---------|----------|------|
| F | Wind Down Budget | Document Unchanged |

**EXHIBITS A, B-1, E AND F ARE IDENTICAL TO THOSE PREVIOUSLY FILED WITH THE FIRST PLAN SUPPLEMENT AND SECOND PLAN SUPPLEMENT. EXHIBIT B-2 HAS BEEN REVISED AS SHOWN IN ANNEX 1 TO THIS NOTICE. EXHIBIT C HAS BEEN REVISED AS SHOWN IN ANNEX 2 TO THIS NOTICE. EXHIBIT D – SCHEDULE OF ASSUMED CONTRACTS HAS BEEN REVISED (AT PAGE XIX OF EXHIBIT D) TO ADD THE FOLLOWING EXECUTORY CONTRACTS:**

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|-------------|----------------------|---------------------|-------------|
| Rhodium Shared Services LLC | UnitedHealthcare Insurance Company | Health Insurance[3] | None |
| Rhodium Shared Services LLC | The Guardian Life Insurance Company of America | Dental, Vision, Short-Term Disability, Life Insurance | None |

**PLEASE TAKE FURTHER NOTICE** that these documents remain subject to continuing negotiations and modifications in accordance with the terms of the Plan and the final versions may contain material differences from the versions filed herewith. For the avoidance of doubt, the requisite parties have not consented to such documents as being in final form and reserve all rights in that regard. Such parties reserve all of their respective rights with respect to such documents and to amend, modify, or supplement the Plan Supplement and any of the documents contained therein through the Effective Date in accordance with the terms of the Plan. To the extent material amendments or modifications are made to any of these documents, the Debtors and the SAFE

---

[3] The contract between Rhodium Shared Services LLC and UnitedHealthcare Insurance Company is a post-petition contract, which will end on December 31, 2025, following its termination by Rhodium Shared Services LLC. To avoid any misunderstanding or confusion regarding this contract, the Plan Proponents included it in the revised Exhibit D – Schedule of Assumed Contracts.

AHG will file a revised version and, if applicable, a redline, with the Court prior to the hearing to consider confirmation of the Plan (the "***Confirmation Hearing***").

      **PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing is scheduled to commence on December 3, 2025, at 9:30 a.m. (Prevailing Central Time) before the Honorable Alfredo R. Perez of the United States Bankruptcy Court, Southern District of Texas, 4th Floor, Courtroom 400, 515 Rusk Street, Houston, Texas 77002.  **The Confirmation Hearing may be continued by the Court or by the Debtors and the SAFE AHG without further notice other than by announcement of the same in open court and/or by filing and serving a notice of adjournment.**  In the event of a timely filed objection that is not settled by the parties, the Court shall hear such objection at the Confirmation Hearing or on a later date as may be fixed by the Court.

      **PLEASE TAKE FURTHER NOTICE** that copies of the documents included in the Plan Supplement or the Plan, or any other document filed in the Chapter 11 Cases, may be obtained free of charge by visiting the website maintained by the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC, d/b/a Verita Global, at https://www.veritaglobal.net/Rhodium.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases through the Court's electronic case filing system at https://www.txs.uscourts.gov/page/bankruptcy-court using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).

      **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE NOTICE AND CLAIMS AGENT E-MAIL:**

RHODIUMINFO@VERITAGLOBAL.COM. PLEASE NOTE THAT THE NOTICE AND

CLAIMS AGENT CANNOT PROVIDE LEGAL ADVICE.

Dated:  December 2, 2025
        Houston, Texas

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/  Patricia B. Tomasco*
Patricia B. Tomasco (SBN 01797600)
Cameron Kelly (SBN 24120936)
Lindsay Weber (*pro hac vice*)
Alain Jaquet (*pro hac vice*)
Rachel Harrington (*pro hac vice*)
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com
Email: cameronkelly@quinnemanuel.com
Email: lindsayweber@quinnemanuel.com
Email: alainjaquet@quinnemanuel.com
Email: rachelharrington@quinnemanuel.com

- and -

Eric Winston (*pro hac vice*)
Razmig Izakelian (*pro hac vice*)
Ben Roth (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
Email: ericwinston@quinnemanuel.com
Email: razmigizakelian@quinnemanuel.com
Email: benroth@quinnemanuel.com

*Counsel for the Debtors and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I, Patricia B. Tomasco, hereby certify that on the 2nd day of December, 2025, a copy of the foregoing filing was served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/  Patricia B. Tomasco*

Patricia B. Tomasco

# EXHIBIT A

## SEVERANCE AND EMPLOYMENT CONTRACT REJECTION PAYMENTS

## SEVERANCE PAYMENTS

| Employee | Last Day | Tenure | No. of Weeks | Severance[1] | Contingent Supplemental Severance[2] |
|---|---|---|---|---|---|
| Roger Grider | 1/31/2025 | 1 | 2 | $2,240.00 | |
| Justin Foxworth | 1/31/2025 | 5 months | 0 | | $5,000.00 |
| Cory Valastek | 1/31/2025 | 4 months | 0 | | $5,000.00 |
| Ivan Almaraz | 2/10/2025 | 3 | 6 | $8,071.20 | $5,000.00 |
| Stevie Saganski | 2/15/2025 | 4 | 8 | $22,307.69 | $5,000.00 |
| Max Thompson | 2/20/2025 | 6 months | 0 | | $5,000.00 |
| Jorge Calderon | 3/31/2025 | 3 | 6 | $17,307.69 | |
| Mike Norman | 3/31/2025 | 3 | 6 | $16,730.77 | |
| Joe Gryzan | 3/31/2025 | 3 | 6 | $14,423.08 | |
| Zachary Sharp | 3/31/2025 | 3 | 6 | $11,538.46 | |
| Spencer Gilliland | 3/31/2025 | 2 | 4 | $5,769.23 | $5,000.00 |
| Ethan Sharp | 3/31/2025 | 2 | 4 | $5,200.00 | $5,000.00 |
| Katherine Butti | 3/31/2025 | 1 | 2 | $3,461.54 | |
| Jefferson Rybak-Dow | 3/31/2025 | 4 months | 0 | | $5,000.00 |
| Peter Richison | 4/30/2025 | 3 | 6 | $18,461.54 | |
| Adrian Gonzalez | 4/30/2025 | 3 | 6 | $10,101.92 | |
| Brendan Cottrell | 4/30/2025 | 2 | 4 | $11,776.00 | $5,888.00 |
| Jonathan Hall | 4/30/2025 | 3 | 6 | $9,403.20 | $3,134.40 |
| Kyle Brossia | 4/30/2025 | 3 | 6 | $8,783.65 | |
| Charles Steffens | 4/30/2025 | 2 | 4 | $5,769.23 | |
| Less Davenport | 4/30/2025 | 3 | 6 | $8,268.00 | $2,756.00 |
| Odilton Barreto | 4/30/2025 | 3 | 6 | $7,749.60 | $2,583.20 |
| Christopher Clements | 4/30/2025 | 2 | 4 | $5,209.60 | $2,604.80 |
| Trey Scott | 4/30/2025 | 1 | 2 | $2,423.20 | $2,423.20 |
| Brandon Vargas | 4/30/2025 | 1 | 2 | $2,377.60 | $2,377.60 |
| Jonathan Adam | 4/30/2025 | 1 | 2 | $2,377.60 | $2,377.60 |
| Thomas Duffles | 4/30/2025 | 1 | 2 | $2,050.40 | $2,050.40 |

[1]    The Company's standard severance practice has been to provide two weeks of severance pay for each completed year of service.  While not formally documented in a written policy, this calculation was consistently applied pre-petition and is based on established Company precedent, plus any other applicable factors.  All payments are subject to adjustment depending on the Employee's departure date and any settlement agreements entered by the Company and the Employee.

[2]    In recognition of services provided to the Debtors related to, among other things, assistance with closing post-petition sales and the winddown of Debtors during the Chapter 11 Cases, the Debtors propose to pay certain key employees a supplemental severance amount as set forth herein.

| Employee | Last Day | Tenure | No. of Weeks | Severance[1] | Contingent Supplemental Severance[2] |
|---|---|---|---|---|---|
| Ethan Burchett | 4/30/2025 | 1 | 2 | $2,030.40 | $2,030.40 |
| Demetri Lara | 4/30/2025 | 1 | 2 | $2,008.80 | $2,008.80 |
| Max Cottrell | 4/30/2025 | 1 | 2 | $1,961.58 | $1,961.58 |
| Chris Frenette | 4/30/2025 | 11 months | 0 | | $2,353.60 |
| Joseph Whalen | 4/30/2025 | 10 months | 0 | | $1,950.40 |
| James Sims | 4/30/2025 | 8 months | 0 | | $6,943.20 |
| Dylan Kessler | 4/30/2025 | 6 months | 0 | | $1,920.00 |
| Chauncey Harrison | 4/30/2025 | 6 months | 0 | | $1,920.00 |
| Shane Phillips | 4/30/2025 | 6 months | 0 | | $1,920.00 |
| Noah Rodriguez | 4/30/2025 | 6 months | 0 | | $1,920.00 |
| Danjumall Roberts | 4/30/2025 | 10 months | 0 | | $2,792.31 |
| Wade Rogers | 5/15/2025 | 2 | 4 | $8,715.38 | |
| Jackson Stewart | 5/15/2025 | 2 | 4 | $7,923.08 | |
| Viktor Palatnyk | 5/15/2025 | 1 | 2 | $3,763.46 | |
| John Ritenour | 5/15/2025 | 1 | 2 | $3,763.46 | $3,763.46 |
| Sean Conner | 5/30/2025 | 3 | 6 | $10,800.00 | |
| Jamie Estes | 5/30/2025 | 3 | 6 | $16,800.00 | |
| Will Boardman | 5/30/2025 | 4 | 8 | $20,000.00 | |
| Daniel Najacht | 6/30/2025 | 3 | 6 | $9,201.92 | $3,067.31 |
| Zach Scheich | 6/30/2025 | 4 | 8 | $25,846.15 | $58,153.85 |
| Gavin Tang | 6/30/2025 | 3 | 6 | $15,426.23 | $5,142.08 |
| Rebecca Rice | 6/30/2025 | 3 | 6 | $13,326.92 | $4,442.31 |
| Amber Hames | 7/15/2025 | 3 | 6 | $18,000.00 | |
| Amarnath Mamidi | 7/31/2025 | 3 | 6 | $21,986.54 | $7,328.85 |
| Jared Kellar | 9/30/2025 | 1 | 2 | $1,980.80 | $1,980.80 |
| Ashley Jonson | TBD (Post-Effective Date) | 3 | 6 | $23,330.77 | $77,769.23 |
| | | | TOTAL | $408,666.69 | $255,563.38 |
| | | | **GRAND TOTAL** | | **$664,230.07** |

s

3

## REJECTED EMPLOYMENT CONTRACTS[3]

| Employee | Amount | Combined Total |
|---|---|---|
| Alex Peloubet<br>(VP of Accounting and Finance) | Severance: $234,000.00<br>Cobra: $38,449.96 | $272,449.96 |
| Alicia Catatao<br>(VP of Human Resources) | Severance: $187,200.00<br>Cobra: $10,650.22 | $197,850.22 |
| Matt Smith<br>(VP of Strategy, Mining Operations) | Severance: $210,000.00<br>Cobra: $8,848.66 | $218,848.66 |
| Morgan Soule<br>(VP and Assistant General Counsel) | Severance: $234,000.00<br>Cobra: $11,443.27 | $245,443.27 |
| Zach Kerr<br>(VP of Technology) | Severance: $200,000.00<br>Cobra: $8,954.48 | $208,954.48 |
| Caleb VanZoeren<br>(SVP of Operations) | Severance: $200,000<br>Cobra: $5,721.64 | $205,721.64 |
| Charles Topping<br>(General Counsel and Secretary) | Severance: $312,000.00<br>Cobra: $38,449.60 | $350,449.60 |
| Kevin Hays<br>(Chief Financial Officer) | Severance: $208,000.00<br>Cobra: N/A | $208,000.00 |
|  | **TOTAL** | **$1,907,717.83** |

---

[3]    The Company's executive agreements generally provide for salary of up to one year, as well as reimbursement for one year of COBRA benefits for applicable Executives.

4

**EXHIBIT B-1**

**IDENTITY OF PLAN ADMINISTRATOR**

This Exhibit B-1 identifies the Plan Administrator selected by the SAFE AHG, in consultation with the Special Committee, pursuant to the Plan.  GXD Labs, a wholly owned subsidiary of Atlas Grove Partners, has been selected to serve as the Plan Administrator.

**EXHIBIT B-2**

**PLAN ADMINISTRATOR AGREEMENT**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made this [●] day of [●], 2025, by and among Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium Renewables LLC, Air HPC LLC, Rhodium Shared Services LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Encore Sub LLC, Jordan HPC Sub LLC, Rhodium 2.0 Sub LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, and Rhodium Renewables Sub LLC (collectively, the "Debtors" or the "Wind-Down Debtor", as applicable), and GXD Labs (the "Plan Administrator"), a wholly owned subsidiary of Atlas Grove Partners, in accordance with the *First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* [Docket No. 1821] (the "Plan"), as may from time to time be amended, supplemented, or otherwise modified in accordance with the terms thereof.[1]

## RECITALS

WHEREAS, Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium Renewables LLC, Air HPC LLC, Rhodium Shared Services LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Encore Sub LLC, Jordan HPC Sub LLC, Rhodium 2.0 Sub LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, and Rhodium Renewables Sub LLC filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 24 and 29, 2024 (the "Petition Dates") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, the Plan contemplates that a Plan Administrator will be appointed as of the Effective Date (as defined below) to administer the Plan in accordance with the terms of the Plan and this Agreement and to take such other actions as may be authorized under the Plan and this Agreement;

WHEREAS, the Plan provides that the Plan Administrator will, among other things, direct the affairs of the Wind-Down Debtor;

WHEREAS, on [●] [●], 2025, the Bankruptcy Court entered an order confirming the Plan [Epic Docket No. [●]] (the "Confirmation Order");

WHEREAS, pursuant to the Plan and the Confirmation Order, the Plan became effective on [●] [●], 2025 (the "Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan; and

---

[1]   Capitalized terms used but not otherwise defined herein have the meaning set forth in the Plan.

WHEREAS, GXD Labs has agreed to serve as the Plan Administrator in accordance with this Agreement and the Plan.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, as well as the relevant provisions of the Plan, the parties hereto agree as follows:

## ARTICLE I

## ACCEPTANCE AND APPOINTMENT; FIDUCIARY STATUS

Section 1.1    **Acceptance and Appointment**.   GXD Labs hereby (a) accepts appointment as the Plan Administrator as of the Effective Date and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, and the Confirmation Order, in each case, on and after the Effective Date.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to his or her position as such.

Section 1.2    **Sole Director and Officer**.   On and after the Effective Date, the Plan Administrator shall act as the sole director and sole officer of the Wind-Down Debtor and the exclusive representative of each of the Estates or the Wind-Down Debtor.  The Plan Administrator shall perform its obligations consistent with the Plan, this Agreement and applicable orders of the Bankruptcy Court.  Pursuant to the Plan and this Agreement, the Plan Administrator shall act on behalf of the interest of all Holders of Claims and/or Interests that will receive distributions pursuant to the Plan.

## ARTICLE II

## GENERAL POWERS, RIGHTS AND OBLIGATIONS
## OF THE PLAN ADMINISTRATOR

Section 2.1    **General Powers**.  On and after the Effective Date, subject in each instance to the terms and conditions of the Plan, the Confirmation Order and any further order of the Bankruptcy Court, the Plan Administrator shall have the following rights, powers, duties and responsibilities:

(a)    The Plan Administrator shall control and exercise authority over the Wind-Down Debtor.  The Plan Administrator will be the exclusive trustee of the assets of the Wind-Down Debtor (the "Wind-Down Debtor Assets") for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  To the extent necessary, on and after the Effective Date, the Plan Administrator, in its capacity as Plan Administrator, shall be deemed to be a judicial substitute for the applicable Debtors as the party in interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a party. For the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, the powers and authority of the Plan Administrator shall in all respects be subject to the terms of the Plan and

the Confirmation Order.  The Plan Administrator shall execute all agreements and other documents on behalf of the Wind-Down Debtor with the signature "as Plan Administrator".

(b)      On the Effective Date the Plan Administrator: (a) shall be deemed to be the party vested with all rights, powers, privileges and authorities of an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable non-bankruptcy law; and (b) pursuant to Article [●] of the Plan, shall succeed to all rights, powers, privileges and authorities as is now, previously was, or would have been applicable to each Debtor's directors, officers, and managers, including the rights of the Debtors as the direct or indirect owners of the Debtor Affiliates, as applicable, and shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions of the Plan, the Confirmation Order, and this Agreement; provided, however, that the Plan Administrator may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in its reasonable discretion.

(c)      The Plan Administrator shall have control over the day-to-day decisions and operations of the Wind-Down Debtor.

(d)      In connection with the implementation of the Plan on behalf of the Wind-Down Debtor, the duties and powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the business and affairs of the Wind-Down Debtor (the "Wind Down"), all without the need for further order of the Bankruptcy Court, including, but not limited to:

        (i)      implementing the Wind Down and making distributions contemplated by and in accordance with the Plan;

        (ii)      marshalling, collecting, marketing for sale, liquidating and winding down any of the Debtors' assets constituting the Wind-Down Debtor Assets;

        (iii)      overseeing the accounts of the Debtors and the Wind-Down Debtor and the Wind Down and dissolution of the Debtors and the Wind-Down Debtor;

        (iv)      implementing, pursuing, and adhering to the terms of the Plan, the Confirmation Order, and any related documents;

        (v)      receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and, where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtor to invest any moneys held as Wind-Down Debtor Assets;

        (vi)      opening, maintaining and closing bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor,

including, in the Plan Administrator's discretion, separate bank accounts for each of the Debtors;

(vii)  establishing a Liquidating Trust or similar vehicle solely to the extent that the Plan Administrator deems it to be reasonably necessary or beneficial in effectuating the Wind Down;

(viii)  entering into any agreement or executing any document or instrument required by or consistent with this Agreement, the Plan or the Confirmation Order, and performing all obligations thereunder;

(ix)  protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Retained Causes of Action) vested in the Wind-Down Debtor by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(x)  reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(xi)  seeking the examination of any Person or Entity pursuant to Federal Rule of Bankruptcy Procedure 2004 or otherwise;

(xii)  entering into a financing facility, which may include, but shall not be limited to, contingency fee arrangements with professionals, and utilizing the proceeds of the Wind-Down Debtor Assets to fund the pursuit of the Retained Causes of Action or otherwise facilitate the Wind Down;

(xiii)  retaining professionals, disbursing agents, and other agents, independent contractors, and third parties on behalf of the Wind-Down Debtor and/or the Plan Administrator, and paying the reasonable compensation thereof;

(xiv)  paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets from the Wind Down Budget and the proceeds of the Wind-Down Debtor Assets;

(xv)  investigating, reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Retained Causes of Action, which, for the avoidance of doubt may include accepting claims from third parties to prosecute for the

4

benefit of the Wind-Down Debtor and the stakeholders under the Plan;

(xvi)    reviewing and compelling turnover of the Debtors' or the Wind-Down Debtor's property;

(xvii)    calculating and making all distributions to the Holders of Allowed Claims against each Debtor, as provided for in, or contemplated by, the Plan;

(xviii)    withholding from the amount distributable to any Person or Entity the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other Laws of the United States or of any state or political subdivision thereof;

(xix)    in reliance upon the Debtors' Schedules, the official register of Claims maintained in the Chapter 11 Cases, and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor;

(xx)    making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the Debtors, the Wind-Down Debtor, or the Liquidating Trust (if applicable) pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(xxi)    abandon any Wind-Down Debtor Assets (other than cash and cash equivalents) that the Plan Administrator reasonably determines to be of de minimis monetary value or burdensome to the Plan Administrator's administration

of the Wind-Down Debtor Assets, in each case after giving effect to the costs and expenses reasonably expected to liquidate such assets to Cash;

(xxii)      seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(xxiii)     establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtor;

(xxiv)     purchasing and carrying all insurance policies and paying all insurance premiums and costs that the Plan Administrator deems reasonably necessary or advisable;

(xxv)      undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtor's, the Liquidating Trust's (if applicable), or the Plan Administrator's duties under the Plan, including filing post-confirmation and post-Effective Date reports and making required payments of Statutory Fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(xxvi)     retaining, terminating, appointing, hiring, or otherwise employing employees, personnel, management, and directors at any of the Wind-Down Debtor to the extent necessary to carry out the purposes of the Plan;

(xxvii)    exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement;

(xxviii)   make all necessary filings in accordance with any applicable law, statute, or regulation; and

(xxix)     taking all other actions consistent with the provisions of the Plan, the Confirmation Order, and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtor.

(e)      All Cash or other property held or collected by the Wind-Down Debtor shall be used solely for the purposes contemplated by the Plan, the Confirmation Order and this Agreement.

6

(f)     The Plan Administrator is authorized, in its reasonable discretion, to invest the Wind-Down Debtor Assets with a bank that is on the U.S. Trustee approved list for section 345 deposits. Subject to the foregoing, any investments of the Wind-Down Debtor Assets (i) shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs and (ii) shall be limited to demand and time deposits, such as certificates of deposit, having maturities of not more than one year, and U.S. Treasury bills or other temporary liquid investments that are readily convertible to known amounts of Cash. The Plan Administrator shall have no liability for interest or producing income on any moneys received hereunder, and held for distribution or payment pursuant to the terms of the Plan and this Agreement.

(g)     The Plan Administrator shall not authorize the Wind-Down Debtor to enter into or engage in any trade or business or use or dispose of any Wind-Down Debtor Assets in furtherance of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Plan.

(h)     From and after the Effective Date, the Plan Administrator, on behalf of the Wind-Down Debtor, shall be solely authorized, with respect to those Claims or Interests which are not Allowed under the Plan, the Confirmation Order or by Bankruptcy Court order, to review, and where appropriate, allow or object to Claims and (if applicable) Interests, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor.  Pursuant to the Plan, the Wind-Down Debtor reserves the right to seek an order of the Bankruptcy Court extending any Claims Objection Deadline.

(i)     When all Disputed Claims have become Allowed or Disallowed, all Retained Causes of Action have been pursued, settled, resolved or abandoned, and all remaining Cash has been distributed in accordance with the Plan (or the Plan Administrator otherwise determines in its reasonable business judgment that the Wind-Down Debtor lacks sufficient assets and financial resources, after reasonable collection efforts, to complete its duties), the Plan Administrator shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.  Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtor shall be deemed to be dissolved without any further action by the Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtor.

Section 2.2     **Pursuit and Resolution of Causes of Action.**     Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Wind-Down Debtor shall have the right to investigate, pursue or not pursue, compromise, or settle any dispute with respect to the Wind-Down Debtor Assets (including the Retained Causes of Action).  On and after the Effective Date, the Wind-Down Debtor may, without further Bankruptcy Court approval, commence, litigate, and settle any Retained Causes of Action or Claims relating to any Wind-Down Debtor Assets, or rights to payment or Claims that belong to each Debtor as of the Effective Date, or are instituted

by the Wind-Down Debtor on or after the Effective Date, except as otherwise expressly provided herein or in the Plan.  The Wind-Down Debtor shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.  In pursuing any Claim, right, or Cause of Action, including the Retained Causes of Action, the Wind-Down Debtor (and any Liquidating Trust, as applicable) shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under section 546 of the Bankruptcy Code.  For the avoidance of doubt, the Plan Administrator may seek (but is not required to seek or obtain) Bankruptcy Court approval of any settlement of any Retained Causes of Action.

**Section 2.3    Retention of Attorneys and Other Professionals by Plan Administrator**.  The Plan Administrator shall have the right to retain the services of attorneys, accountants, experts, advisors, investigators, appraisers, real estate brokers, auctioneers, consultants, financial advisors and other professionals that, in the discretion of the Plan Administrator, are necessary or appropriate to assist the Plan Administrator in the performance of his or her duties, without notice or approval of the Bankruptcy Court. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtor upon the submission of statements to the Plan Administrator without notice or approval of the Bankruptcy Court. Such professionals do not need to be "disinterested," as defined by the Bankruptcy Code, and may include the attorneys, accountants, consultants, financial advisors and other professionals employed by any party in the Chapter 11 cases. The Plan Administrator may retain such professionals without notice or further approval from the Bankruptcy Court, and the Plan Administrator will be permitted to retain any such professionals in light of the efficiencies implicit in continuity.

**Section 2.4    Privileges**.  On the Effective Date, all attorney client privileges, work product protections, and other privileges or immunities ("Privileges") held by any one or more of the Debtors, including any predecessors, pre-petition or post-petition committees or sub-committees of any boards or equivalent governing body of any of the Debtors and their predecessors and such boards or equivalent governing bodies, or other designated Entities or Persons (collectively, the "Privilege Transfer Parties") shall vest in and be succeeded to by the Wind-Down Debtor.  For the avoidance of doubt, the Plan Administrator's receipt of such information (or the transfer of any privileged books and records provided to the Plan Administrator) shall not waive any Privileges and such Privileges are fully preserved.

The foregoing transfer and assignment shall vest the Privileges exclusively in the Plan Administrator, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Plan Administrator and the Wind-Down Debtor. The Plan Administrator shall have the exclusive authority and sole discretion to maintain the Privileges, or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all information subject to any Privilege.

The Privilege Transfer Parties and all directors, officers or persons with similar roles at any of the Debtors and professionals who are or were retained by any of them, agree to take all necessary actions to effectuate the transfer of such Privileges, and to provide to the Plan Administrator without the necessity of a subpoena all information requested by the Plan

Administrator and/or pertinent to the affairs of the Wind-Down Debtor and activities of the Plan Administrator ("Transferred Information") in their respective possession, custody, or control. For the avoidance of doubt, the Plan Administrator is further expressly authorized to formally or informally request documents, testimony or other information that would constitute Transferred Information from any persons, including attorneys, professionals, consultants and experts that may possess Transferred Information, and no such person may object to the production to the Plan Administrator of such Transferred Information on the basis of a Privilege held by a Privilege Transfer Party. Until and unless the Plan Administrator makes a determination in its sole discretion to waive any Privilege, Transferred Information shall be produced solely to the Plan Administrator or as required by law.

Section 2.5     **Cooperation and Access to Information**.  On and after the Effective Date, the Wind-Down Debtor shall maintain documents in accordance with the Debtors' standard document retention policies, if any, as such policies may be altered, amended, modified, or supplemented by the Wind-Down Debtor.  All directors, officers or persons with similar roles at any of the Debtors, as applicable, shall use commercially reasonable efforts, upon reasonable requests, to cooperate with the Plan Administrator in carrying out this Agreement and the activities contemplated hereby, including, without limitation providing the Plan Administrator and its professionals for fact finding, consultation, interviews and as witnesses.  For the avoidance of doubt, the Plan Administrator may  reasonably compensate such parties for their cooperation in connection with section 2.5 of this Agreement, provided that no party shall be required to incur unreimbursed costs in connection with such cooperation.

In connection with this engagement, upon reasonable request, the Plan Administrator shall have complete and full access to all relevant information that the Plan Administrator deems appropriate.  It is understood that the Plan Administrator (a) is relying solely upon the information supplied by the Debtors and their respective representatives without assuming any responsibility for independent investigation or verification thereof, and (b) shall have the absolute and unconditional right to rely on the information provided by the Debtors and their respective representatives and shall not incur any liability by relying on such information.

The Plan Administrator shall be permitted, in his or her discretion, to abandon, destroy or otherwise dispose of any books and records of the Debtors and/or Wind-Down Debtor that the Plan Administrator deems not necessary for the continued administration of the Plan or the Wind Down, or required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same.  For the avoidance of doubt, nothing herein shall limit the rights accorded to the Plan Administrator pursuant to Section 2.4.

Section 2.6     **Potential Conflicts**.  Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of their duties under this Agreement, the issue may be brought to the Bankruptcy Court for consideration.

Section 2.7     **Liquidating Trust**.  The Plan Administrator, in his or her discretion (subject to the terms of the Plan and the Confirmation Order) shall have the right to establish a Liquidating Trust to the extent the Plan Administrator determines that a Liquidating Trust would

more efficiently wind down the Estates, or otherwise maximize value for the Holders of Claims and/or Interest entitled to distributions from the Wind-Down Debtor under the Plan.

## ARTICLE III

### TERM OF SERVICE, RESIGNATION AND REMOVAL OF THE PLAN ADMINISTRATOR; APPOINTMENT OF SUCCESSOR; STANDARD OF CARE; <u>COMPENSATION OF PLAN ADMINISTRATOR AND PROFESSIONALS</u>

**Section 3.1      Term of Service**.  The Plan Administrator shall serve in such capacity through the earlier of (a) the date on which the Wind-Down Debtor is dissolved and (b) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve.

**Section 3.2      Resignation of the Plan Administrator**.  The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be chosen by the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, by Transcend Partners Legend Fund LLC; Valley High LP; GR Fairbairn Family Trust; Grant Fairbairn Revocable Trust; Nina Claire Fairbairn Revocable Trust; NCF Eagle Trust; GRF Tiger Trust; and NC Fairbairn Family Trust (collectively, the "<u>Transcend Group</u>"), or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, by the Holders of Common Interests (acting by majority vote).

**Section 3.3      Removal of Plan Administrator**.  Upon Motion to the Bankruptcy Court by the holder of a Claim or Common Interest Holder who is entitled to a potential distribution under the Plan, and entry of an order granting such Motion, the Bankruptcy Court shall have the authority to remove the Plan Administrator at any time, with cause.  Cause for removal shall exist solely to the extent the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court. During the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator, the Plan Administrator shall continue to discharge its rights, obligations, and duties set forth in the Plan and this Agreement.

**Section 3.4      Continuity; Appointment of a Successor Plan Administrator**.

(a)      The death, incapacity, dissolution, resignation, or removal of the Plan Administrator shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Plan Administrator.  In the event of a vacancy by reason of death, incapacity, dissolution, resignation or removal of the Plan Administrator or prospective vacancy by reason of resignation or removal, the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, the Transcend Group, or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, the Holders of Common Interests (acting by majority vote).

(b)      If the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, the Transcend Group, or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, the Holders of Common Interests (acting by majority vote), has not appointed a successor Plan Administrator within thirty (30) days of the occurrence or effectiveness, as applicable, of the prior Plan Administrator's death, incapacity, dissolution, resignation or removal, then the Bankruptcy Court, upon the motion of counsel to the Plan Administrator or another party in interest, shall approve a successor to serve as the Plan Administrator.

(c)      A successor Plan Administrator, without any further action or approval, shall (i) become fully vested with all the rights, powers, duties, and obligations of the Plan Administrator and (ii) become the sole director and sole officer of each of the Wind-Down Debtor; *provided*, *however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.

**Section 3.5      Plan Provisions**.  In connection with all actions taken in his, her or its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order. Notwithstanding anything herein, a Plan Administrator shall not be entitled to release, exculpation, or indemnification for any act or omission that the Plan Administrator is determined to have committed by means of fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court, provided that in no event will the Plan Administrator be liable for punitive, exemplary, consequential, or special damages under any circumstances..

**Section 3.6      Indemnification**.  The Wind-Down Debtor shall indemnify and hold harmless, to the fullest extent of the law, in all respects (a) the Plan Administrator (in his, her or its capacity as such and as sole officer and sole director of each of the Wind-Down Debtor and representative of the Estates), and (b) all professionals retained by the Wind-Down Debtor (collectively, the "Indemnified Parties" and each, an "Indemnified Party"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Indemnified Party's gross negligence, fraud or willful misconduct, with respect to the Wind-Down Debtor or the implementation or administration of the Plan or this Agreement as determined by a Final Order of the Bankruptcy Court.  To the extent an Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced by the Wind-Down Debtor (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined through a Final Order that such Indemnified Party is not entitled to be indemnified therefore).  The indemnification provisions of the Plan or this Agreement shall remain available to and be binding upon any former Plan Administrator (or the estate of any decedent Plan Administrator) and shall survive the termination of this Agreement.

**Section 3.7    Exculpation**.  No Indemnified Party shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Indemnified Party's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court or applicable law or as may arise by reason of any action, omission or error of an Indemnified Party, and Persons dealing or having any relationship with the Wind-Down Debtor and/or the Estates shall have recourse only to the Wind-Down Debtor Assets and shall look only to the Wind-Down Debtor Assets to satisfy any liability or other obligations incurred in carrying out the terms of the Plan and this Agreement, and the Indemnified Parties shall not have any personal obligation to satisfy any such liability; *provided*, *however*, that the foregoing limitations shall not apply to any acts or omissions ultimately and finally determined by a final and non-appealable order of a court of competent jurisdiction to be the direct result of such Indemnified Party's gross negligence, fraud or willful misconduct.   None of the Indemnified Parties is deemed to be responsible for any other Indemnified Party's actions or inactions.  The Indemnified Parties may, in connection with the performance of their functions hereunder and under the Plan, and in their sole and absolute discretion, consult with professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals or any order of the Bankruptcy Court.  Notwithstanding such authority, such Indemnified Parties shall not be under any obligation to consult with any professionals and their determination not to do so shall not result in the imposition of liability, unless such determination is based upon gross negligence, fraud or willful misconduct as determined by a final and non-appealable order of a court of competent jurisdiction; *provided* that in no event will any such person be liable for punitive, exemplary, consequential, or special damages under any circumstances.  Any action taken or omitted to be taken by the Indemnified Parties after the Effective Date on the advice of counsel or with the approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence, fraud, or willful misconduct.  The foregoing indemnification and exculpation with respect to any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which it was deemed indemnified and exculpated and the termination or modification of this Agreement.

**Section 3.8    Insurance**.  The Plan Administrator is authorized (but not required) to obtain and pay at the expense of the Wind-Down Debtor all reasonably necessary insurance coverage for itself, the Wind-Down Debtor, and their respective agents, representatives, and employees or independent contractors, in connection with the Chapter 11 Cases and the Wind Down of the Wind-Down Debtor (in the form of any errors and omissions policy or otherwise), including, but not limited to, coverage with respect to commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtor, which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of this Agreement.

**Section 3.9    Burden of Proof**.  In any proceeding brought by the Wind-Down Debtor or any other Person who is bound by this Agreement challenging any action, determination or failure to act of the Plan Administrator in the Plan Administrator's discharge of its duties under

this Agreement, the Person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constitute gross negligence, fraud or willful misconduct.

Section 3.10    **Reliance by the Plan Administrator**. The Indemnified Parties may absolutely rely on, and shall be fully protected in acting or refraining from acting if it relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that it, as applicable, has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of gross negligence, fraud, or willful misconduct in respect of the Indemnified Parties' duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Agreement, it, as applicable, may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Plan Administrator may consult with counsel and other professionals with respect to matters the Plan Administrator reasonably believes to be in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator. The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

Section 3.11    **Reliance by Entities Dealing with the Plan Administrator**.  In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Wind-Down Debtor shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Wind-Down Debtor, and shall have no obligation to inquire into the existence of such authority.

Section 3.12    **Standard of Care**. The fiduciary duties of the Plan Administrator shall be, and hereby are, eliminated to the fullest extent permitted by applicable law.  Subject to applicable law, the Plan Administrator shall not be liable for any act they may do or omit to do as Plan Administrator while acting in good faith and in the exercise of their reasonable business judgment. The foregoing limitation on liability will apply equally to the agents, and/or employees of the Plan Administrator, as applicable, including the professionals acting on behalf of the Plan Administrator in the fulfillment of the Plan Administrator's duties hereunder. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking, or failing to take, any action that based upon the advice of counsel or other professionals, the Plan Administrator reasonably determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty of the Plan Administrator.

Section 3.13    **No Successor Liability**. Except as otherwise expressly provided in the Plan and the Confirmation Order, the Plan Administrator (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or

obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

      **Section 3.14**    **Survival**.  The provisions of this Article III shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of either or both Administrators.  The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Debtors' charter, bylaws or other organizational documents or policies shall affect the Administrators' or the other Indemnified Parties' rights hereunder.

      **Section 3.15**    **Compensation of Plan Administrator and Professionals**.

      (a)    For its services, the Plan Administrator shall receive $50,000 per month plus 15% of (a) the net proceeds from the sale of any Wind Down Assets and (b) any saving achieved after the Effective Date with respect to the Contingency Fee Professional Reserve and claim objections.  Such monthly fee shall be payable in advance on the first day of each month beginning with the first full month following the Effective Date.

      (b)    In addition to the fees described above, the Plan Administrator shall be entitled to reimbursement of all reasonable and documented costs and expenses.

      (c)    The Plan Administrator's compensation structure may be modified from time to time by agreement between the Plan Administrator and the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, the Transcend Group, or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, the Holders of Common Interests (acting by majority vote).

      (d)    All professionals retained by the Wind-Down Debtor shall be entitled to reasonable compensation for services rendered and reimbursement of expenses reasonably incurred in rendering such services.  Such professionals shall deliver to the Plan Administrator reasonably detailed monthly invoices or fee statements.

      (e)    The payment of the fees and expenses of the Plan Administrator and professionals retained by the Wind-Down Debtor shall be paid from the Wind-Down Debtor Assets in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

      **Section 3.16**    **Information and Reporting.**  In its discretion, from time to time the Plan Administrator may file with the Bankruptcy Court a statement describing the progress of the Wind Down and the activities of the Wind-Down Debtor, in such detail and covering such matters as the Plan Administrator determines is appropriate in its discretion.

## ARTICLE IV

## TERMINATION

**Section 4.1      Termination**.  This Agreement shall terminate upon the dissolution of the Wind-Down Debtor and the entry of an order by the Bankruptcy Court closing the Chapter 11 Cases.  All provisions of this Agreement that expressly survive by their terms shall remain in effect in accordance with their terms. All of the protective provisions contained in ARTICLE III of this Agreement shall survive the termination of this Agreement and the death, dissolution, resignation or removal, as may be applicable, of the Plan Administrator and the Indemnified Parties and shall inure to the benefit of their respective heirs and assigns.

**Section 4.2      Dissolution of the Debtors**. The Wind-Down Debtor will be dissolved by the Plan Administrator as soon as practicable after the liquidation, administration, and distribution of the Wind-Down Debtor Assets, and the pursuit and resolution of the Retained Causes of Actions or Claims in accordance with the terms of this Agreement and the Plan, and its full performance of all other duties and functions set forth herein or in the  Plan. The Plan Administrator shall not unduly prolong the duration of the Debtors or the pursuit of the Retained Causes of Actions.

**Section 4.3      Obligations of the Plan Administrator Upon Termination**.  Upon or as soon as practicable after termination of this Agreement, the Plan Administrator shall (solely at the expense of the Wind-Down Debtor) (a) file a certificate or other document with the Bankruptcy Court stating that (i) the assets of the Wind-Down Debtor have been exhausted and final distributions of Cash have been made under the Plan or (ii) the Wind-Down Debtor lacks sufficient assets and financial resources, after reasonable collection efforts, to continue the wind-down process, and (b) be deemed to have resigned as the sole officer, and sole director of the Wind-Down Debtor.  Upon the filing of certificate(s) described in clause (a) of the preceding sentence, the relevant Debtors and/or Wind-Down Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Wind-Down Debtor or payments to be made in connection therewith.

**Section 4.4      No Other Duties or Obligations**.  The Plan Administrator shall have no duties or obligations under law or otherwise except as set forth in this Agreement and pursuant to the Plan.   Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to the terms hereof, the Plan Administrator shall have no further duties or obligations hereunder and pursuant to the Plan.

## ARTICLE V

## DISTRIBUTIONS

**Section 5.1      Reserves**.  Before making distributions to any to Holders of Claims, the Plan Administrator shall, in his or her reasonable discretion, ensure there are reserves in an amount sufficient to meet any and all accrued expenses and obligations of the Wind-Down Debtor, including professional fees and expenses, and fees owed to the U.S. Trustee, in each case as applicable and in accordance with the Plan and the Confirmation Order.

Section 5.2     **Distributions Under the Plan**.

(a)     Distributions shall be made in accordance with the Plan and the Confirmation Order.  With respect to all payments and distributions made under the Plan, the Plan Administrator shall cause the Wind-Down Debtor to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax and reporting matters.

(b)     Any party entitled to receive any property or distribution under the Plan shall, upon request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator, Form W-9 or, if the payee is a foreign Person, an applicable Form W-8, unless such Person is exempt under the internal revenue code and so notifies the Plan Administrator.  If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the Claim Holder fails to comply within ninety (90) days after the request, the amount of such distribution shall irrevocably revert to the Wind-Down Debtor and any Claim or Interest in respect of such distribution shall be expunged without need of further order of the Bankruptcy Court and the Holder thereof shall be forever barred from asserting such Claim or Interest against any Debtor and their respective assets and property.  The Plan Administrator may, but is not required to, file a notice with the Bankruptcy Court indicating which Claims are to be expunged for failure to comply with such requests for tax information or on account of being unclaimed distributions.  If such information is requested, the request shall be sent to the address provided in proofs of claim submitted or, if no such form has been provided, to the last known address for such entity provided by the Debtors to the Plan Administrator.

## ARTICLE VI

## MISCELLANEOUS PROVISIONS

Section 6.1     **Descriptive Headings**.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 6.2     **Amendment and Waiver**.  This Agreement may be amended or modified by the Plan Administrator with entry of an order from the Bankruptcy Court in any way that is not inconsistent with the Plan or the Confirmation Order and that is necessary to implement the provisions of the Plan and to facilitate the Wind Down and maximize the value of the Wind-Down Debtor Assets (including to clarify any ambiguity or inconsistency or render the Agreement in compliance with its stated purposes); provided, however, for the avoidance of doubt, the identity and/or compensation of the Plan Administrator may be amended by the terms set forth herein without entry of an order from the Bankruptcy Court.

Section 6.3     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to the rules of conflict of laws of the State of Texas or any other jurisdiction that would result in the application of law of a jurisdiction other than Texas.

Section 6.4    **Counterparts; Effectiveness**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same agreement.  Executed copies of this Agreement may be delivered by facsimile, electronic mail, PDF or other electronic means and shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 6.5    **Severability; Validity**.   If any provision of this Agreement or the application thereof to any Entity or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other Entities or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

Section 6.6    **Notices**.  Any notice or other communication hereunder shall be deemed given upon (a) confirmed delivery by a standard overnight carrier or when delivered by hand, or (b) the expiration of five (5) Business Days after the date mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice), and in all instances shall include a concurrent copy via e-mail to the e-mail addresses set forth below:

**If to the Plan Administrator**:

GXD Labs
Attn: David Proman
7301 SW 57th Court, Suite 515
Miami, FL 33143
Tel:  (305) 458-9023
Email:  david@gxdlabs.io

with a copy to counsel:

[●]
Attn: [●]
[ADDRESS]
[ADDRESS]
Tel: [●]
Email: [●]

and

[●]
Attn: [●]
[ADDRESS]
[ADDRESS]
Tel: [●]
Email: [●]

Section 6.7     **Change of Address**.  Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Section 6.6 of this Agreement in the manner set forth therein.  Such change of address shall be effective ten (10) Business Days after service of such notice.

Section 6.8     **Relationship to Plan**.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order, whether or not such action is specified in this Agreement.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or Confirmation Order, the provisions of the Plan and Confirmation Order control.

Section 6.9     **Meaning of Terms**.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, and words importing the singular number include the plural number and vice versa.

Section 6.10     **Retention of Jurisdiction**.  As provided in Article XI of the Plan, the Bankruptcy Court shall retain jurisdiction over the Wind-Down Debtor, including, but not limited to, for the purpose of interpreting and implementing the provisions of this Agreement; provided, however, that nothing in this Section or Article XI of the Plan shall prevent the Plan Administrator or the Wind-Down Debtor from pursuing the Retained Causes of Action in jurisdictions other than the Bankruptcy Court.

Section 6.11     **Assignment**.  Neither this Agreement nor any of the rights, duties or obligations of any of the parties hereto may be assigned without Bankruptcy Court approval.

Section 6.12     **Successors and Assigns; No Third-Party Beneficiaries**.  This Agreement shall be binding on and shall inure to the benefit of each of the parties and their respective successors and assigns, except as otherwise provided herein.  No party may assign, transfer, hypothecate or otherwise convey its respective rights, benefits, obligations or duties hereunder without the prior express written consent of the other parties and any such purported assignment, transfer, hypothecation, or other conveyance by any party without the prior express written consent of the other parties shall be null and void and of no force or effect.  The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties with respect to the transactions contemplated hereby and no Entity shall be a third-party beneficiary of any of the terms and provisions of this Agreement, other than each of the Indemnified Parties and the Exculpated Parties with respect to Section 3.6 and Section 3.7, respectively, unless specifically set forth in this Agreement.

Section 6.13     **Effective Date**.  This Agreement shall become effective on the Effective Date.

[*Remainder of page intentionally left blank.*]

**IN WITNESS WHEREOF,** the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written and effective as of the Effective Date.

ON BEHALF OF THE ESTATES OF THE DEBTORS.

By: _____

Name: _____

Title: _____


AS PLAN ADMINISTRATOR ON BEHALF OF THE WIND-DOWN DEBTOR

By: _____

Name: _____

Title: _____

**<u>Annex 1</u>**
**Redline Exhibit B-2**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made this [●] day of [●], 2025, by and among Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium Renewables LLC, Air HPC LLC, Rhodium Shared Services LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Encore Sub LLC, Jordan HPC Sub LLC, Rhodium 2.0 Sub LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, and Rhodium Renewables Sub LLC (collectively, the "Debtors" or the "Wind-Down Debtor", as applicable), and GXD Labs (the "Plan Administrator"), a wholly owned subsidiary of Atlas Grove Partners, in accordance with the *First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* [Docket No. 1821] (the "Plan"), as may from time to time be amended, supplemented, or otherwise modified in accordance with the terms thereof.[1]

## RECITALS

WHEREAS, Rhodium Encore LLC, Jordan HPC LLC, Rhodium JV LLC, Rhodium 2.0 LLC, Rhodium 10MW LLC, Rhodium 30MW LLC, Rhodium Enterprises, Inc., Rhodium Technologies LLC, Rhodium Renewables LLC, Air HPC LLC, Rhodium Shared Services LLC, Rhodium Ready Ventures LLC, Rhodium Industries LLC, Rhodium Encore Sub LLC, Jordan HPC Sub LLC, Rhodium 2.0 Sub LLC, Rhodium 10MW Sub LLC, Rhodium 30MW Sub LLC, and Rhodium Renewables Sub LLC filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 24 and 29, 2024 (the "Petition Dates") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, the Plan contemplates that a Plan Administrator will be appointed as of the Effective Date (as defined below) to administer the Plan in accordance with the terms of the Plan and this Agreement and to take such other actions as may be authorized under the Plan and this Agreement;

WHEREAS, the Plan provides that the Plan Administrator will, among other things, direct the affairs of the Wind-Down Debtor;

WHEREAS, on [●] [●], 2025, the Bankruptcy Court entered an order confirming the Plan [Epic Docket No. [●]] (the "Confirmation Order");

WHEREAS, pursuant to the Plan and the Confirmation Order, the Plan became effective on [●] [●], 2025 (the "Effective Date");

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan; and

---

[1] Capitalized terms used but not otherwise defined herein have the meaning set forth in the Plan.

WHEREAS, GXD Labs has agreed to serve as the Plan Administrator in accordance with this Agreement and the Plan.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, as well as the relevant provisions of the Plan, the parties hereto agree as follows:

# ARTICLE I

## ACCEPTANCE AND APPOINTMENT; FIDUCIARY STATUS

**Section 1.1    Acceptance and Appointment**.   GXD Labs hereby (a) accepts appointment as the Plan Administrator as of the Effective Date and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, and the Confirmation Order, in each case, on and after the Effective Date.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to his or her position as such.

**Section 1.2    Sole Director and Officer**.  On and after the Effective Date, the Plan Administrator shall act as the sole director and sole officer of the Wind-Down Debtor and the exclusive representative of each of the Estates or the Wind-Down Debtor.   The Plan Administrator shall perform its obligations consistent with the Plan, this Agreement and applicable orders of the Bankruptcy Court.  Pursuant to the Plan and this Agreement, the Plan Administrator shall act on behalf of the interest of all Holders of Claims and/or Interests that will receive distributions pursuant to the Plan.

# ARTICLE II

## GENERAL POWERS, RIGHTS AND OBLIGATIONS
## OF THE PLAN ADMINISTRATOR

**Section 2.1    General Powers**.   On and after the Effective Date, subject in each instance to the terms and conditions of the Plan, the Confirmation Order and any further order of the Bankruptcy Court, the Plan Administrator shall have the following rights, powers, duties and responsibilities:

(a)    The Plan Administrator shall control and exercise authority over the Wind-Down Debtor.  The Plan Administrator will be the exclusive trustee of the assets of the Wind-Down Debtor (the "Wind-Down Debtor Assets") for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.   To the extent necessary, on and after the Effective Date, the Plan Administrator, in its capacity as Plan Administrator, shall be deemed to be a judicial substitute for the applicable Debtors as the party in interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal to which any of the Debtors is a party. For the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, the powers and authority of the Plan Administrator shall in all respects be subject to the terms of the

2

Plan and the Confirmation Order.  The Plan Administrator shall execute all agreements and other documents on behalf of the Wind-Down Debtor with the signature "as Plan Administrator".

(b)     On the Effective Date the Plan Administrator: (a) shall be deemed to be the party vested with all rights, powers, privileges and authorities of an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable non-bankruptcy law; and (b) pursuant to Article [●] of the Plan, shall succeed to all rights, powers, privileges and authorities as is now, previously was, or would have been applicable to each Debtor's directors, officers, and managers, including the rights of the Debtors as the direct or indirect owners of the Debtor Affiliates, as applicable, and shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions of the Plan, the Confirmation Order, and this Agreement; provided, however, that the Plan Administrator may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in its reasonable discretion.

(c)     The Plan Administrator shall have control over the day-to-day decisions and operations of the Wind-Down Debtor.

(d)     In connection with the implementation of the Plan on behalf of the Wind-Down Debtor, the duties and powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the business and affairs of the Wind-Down Debtor (the "Wind Down"), all without the need for further order of the Bankruptcy Court, including, but not limited to:

(i)     implementing the Wind Down and making distributions contemplated by and in accordance with the Plan;

(ii)     marshalling, collecting, marketing for sale, liquidating and winding down any of the Debtors' assets constituting the Wind-Down Debtor Assets;

(iii)     overseeing the accounts of the Debtors and the Wind-Down Debtor and the Wind Down and dissolution of the Debtors and the Wind-Down Debtor;

(iv)     implementing, pursuing, and adhering to the terms of the Plan, the Confirmation Order, and any related documents;

(v)     receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and, where appropriate, causing the Wind-Down Debtor to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtor to invest any moneys held as Wind-Down Debtor Assets;

(vi)     opening, maintaining and closing bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtor, including, in the Plan

3

Administrator's discretion, separate bank accounts for each of the Debtors;

(vii)    establishing a Liquidating Trust or similar vehicle solely to the extent that the Plan Administrator deems it to be reasonably necessary or beneficial in effectuating the Wind Down;

(viii)    entering into any agreement or executing any document or instrument required by or consistent with this Agreement, the Plan or the Confirmation Order, and performing all obligations thereunder;

(ix)    protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Retained Causes of Action) vested in the Wind-Down Debtor by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(x)    reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind;

(xi)    seeking the examination of any Person or Entity pursuant to Federal Rule of Bankruptcy Procedure 2004 or otherwise;

(xii)    entering into a financing facility, which may include, but shall not be limited to, contingency fee arrangements with professionals, and utilizing the proceeds of the Wind-Down Debtor Assets to fund the pursuit of the Retained Causes of Action or otherwise facilitate the Wind Down;

(xiii)    retaining professionals, disbursing agents, and other agents, independent contractors, and third parties on behalf of the Wind-Down Debtor and/or the Plan Administrator, and paying the reasonable compensation thereof;

(xiv)    paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets from the Wind Down Budget and the proceeds of the Wind-Down Debtor Assets;

(xv)    investigating, reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning,

4

resolving, or electing not to pursue all Retained Causes of Action, which, for the avoidance of doubt may include accepting claims from third parties to prosecute for the benefit of the Wind-Down Debtor and the stakeholders under the Plan;

(xvi)     reviewing and compelling turnover of the Debtors' or the Wind-Down Debtor's property;

(xvii)    calculating and making all distributions to the Holders of Allowed Claims against each Debtor, as provided for in, or contemplated by, the Plan;

(xviii)   withholding from the amount distributable to any Person or Entity the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other Laws of the United States or of any state or political subdivision thereof;

(xix)     in reliance upon the Debtors' Schedules, the official register of Claims maintained in the Chapter 11 Cases, and the Debtors' filed lists of equity security holders, reviewing, and where appropriate, allowing or objecting to Claims and (if applicable) Interests, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor;

(xx)      making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtor, and filing tax returns for the Debtors, the Wind-Down Debtor, or the Liquidating Trust (if applicable) pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtor, as applicable; *provided, however*, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(xxi)      abandon any Wind-Down Debtor Assets (other than cash and cash equivalents) that the Plan Administrator reasonably determines to be of de minimis monetary value or burdensome to the Plan Administrator's administration of the Wind-Down Debtor Assets,  in each case after  giving effect to the costs and expenses reasonably expected to liquidate such assets to Cash;

(xxii)     seeking a determination of tax liability or refund under Bankruptcy Code section 505;

(xxiii)    establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtor as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtor;

(xxiv)     purchasing and carrying all insurance policies and paying all insurance premiums and costs that the Plan Administrator deems reasonably necessary or advisable;

(xxv)      undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtor's, the Liquidating Trust's (if applicable), or the Plan Administrator's duties under the Plan, including filing post-confirmation and post-Effective Date reports and making required payments of Statutory Fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(xxvi)     retaining, terminating, appointing, hiring, or otherwise employing employees, personnel, management, and directors at any of the Wind-Down Debtor to the extent necessary to carry out the purposes of the Plan;

(xxvii)    exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement;

(xxviii)   make all necessary filings in accordance with any applicable law, statute, or regulation; and

(xxix)     taking all other actions consistent with the provisions of the Plan, the Confirmation Order, and this Agreement that the Plan Administrator deems reasonably necessary

or desirable to administer the Debtors and the Wind-Down Debtor.

(e)     All Cash or other property held or collected by the Wind-Down Debtor shall be used solely for the purposes contemplated by the Plan, the Confirmation Order and this Agreement.

(f)     The Plan Administrator is authorized, in its reasonable discretion, to invest the Wind-Down Debtor Assets with a bank that is on the U.S. Trustee approved list for section 345 deposits. Subject to the foregoing, any investments of the Wind-Down Debtor Assets (i) shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs and (ii) shall be limited to demand and time deposits, such as certificates of deposit, having maturities of not more than one year, and U.S. Treasury bills or other temporary liquid investments that are readily convertible to known amounts of Cash. The Plan Administrator shall have no liability for interest or producing income on any moneys received hereunder, and held for distribution or payment pursuant to the terms of the Plan and this Agreement.

(g)     The Plan Administrator shall not authorize the Wind-Down Debtor to enter into or engage in any trade or business or use or dispose of any Wind-Down Debtor Assets in furtherance of any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Plan.

(h)     From and after the Effective Date, the Plan Administrator, on behalf of the Wind-Down Debtor, shall be solely authorized, with respect to those Claims or Interests which are not Allowed under the Plan, the Confirmation Order or by Bankruptcy Court order, to review, and where appropriate, allow or object to Claims and (if applicable) Interests, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims and (if applicable) Disputed Interests required to be administered by the Wind-Down Debtor.  Pursuant to the Plan, the Wind-Down Debtor reserves the right to seek an order of the Bankruptcy Court extending any Claims Objection Deadline.

(i)     When all Disputed Claims have become Allowed or Disallowed, all Retained Causes of Action have been pursued, settled, resolved or abandoned, and all remaining Cash has been distributed in accordance with the Plan (or the Plan Administrator otherwise determines in its reasonable business judgment that the Wind-Down Debtor lacks sufficient assets and financial resources, after reasonable collection efforts, to complete its duties), the Plan Administrator shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.  Upon a certification to be filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtor shall be deemed to be dissolved without any further action by the Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtor.

**Section 2.2     Pursuit and Resolution of Causes of Action.**     Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Wind-Down Debtor shall have the right to investigate, pursue or not pursue, compromise, or settle any dispute with respect to the Wind-Down Debtor Assets (including the Retained Causes of Action).   On and after the Effective Date, the Wind-Down Debtor may, without further Bankruptcy Court approval, commence, litigate, and settle any Retained Causes of Action or Claims relating to any Wind-Down Debtor Assets, or rights to payment or Claims that belong to each Debtor as of the Effective Date, or are instituted by the Wind-Down Debtor on or after the Effective Date, except as otherwise expressly provided herein or in the Plan.   The Wind-Down Debtor shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.   In pursuing any Claim, right, or Cause of Action, including the Retained Causes of Action, the Wind-Down Debtor (and any Liquidating Trust, as applicable) shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under section 546 of the Bankruptcy Code.   For the avoidance of doubt, the Plan Administrator may seek (but is not required to seek or obtain) Bankruptcy Court approval of any settlement of any Retained Causes of Action.

**Section 2.3     Retention of Attorneys and Other Professionals by Plan Administrator**.  The Plan Administrator shall have the right to retain the services of attorneys, accountants, experts, advisors, investigators, appraisers, real estate brokers, auctioneers, consultants, financial advisors and other professionals that, in the discretion of the Plan Administrator, are necessary or appropriate to assist the Plan Administrator in the performance of his or her duties, without notice or approval of the Bankruptcy Court. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtor upon the submission of statements to the Plan Administrator without notice or approval of the Bankruptcy Court. Such professionals do not need to be "disinterested," as defined by the Bankruptcy Code, and may include the attorneys, accountants, consultants, financial advisors and other professionals employed by any party in the Chapter 11 cases. The Plan Administrator may retain such professionals without notice or further approval from the Bankruptcy Court, and the Plan Administrator will be permitted to retain any such professionals in light of the efficiencies implicit in continuity.

**Section 2.4     Privileges**.  On the Effective Date, all attorney client privileges, work product protections, and other privileges or immunities ("Privileges") held by any one or more of the Debtors, including any predecessors, pre-petition or post-petition committees or sub-committees of any boards or equivalent governing body of any of the Debtors and their predecessors and such boards or equivalent governing bodies, or other designated Entities or Persons (collectively, the "Privilege Transfer Parties") shall vest in and be succeeded to by the Wind-Down Debtor.   For the avoidance of doubt, the Plan Administrator's receipt of such information (or the transfer of any privileged books and records provided to the Plan Administrator) shall not waive any Privileges and such Privileges are fully preserved.

The foregoing transfer and assignment shall vest the Privileges exclusively in the Plan Administrator, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Plan Administrator and the Wind-Down Debtor. The Plan

Administrator shall have the exclusive authority and sole discretion to maintain the Privileges, or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all information subject to any Privilege.

The Privilege Transfer Parties and all directors, officers or persons with similar roles at any of the Debtors and professionals who are or were retained by any of them, agree to take all necessary actions to effectuate the transfer of such Privileges, and to provide to the Plan Administrator without the necessity of a subpoena all information requested by the Plan Administrator and/or pertinent to the affairs of the Wind-Down Debtor and activities of the Plan Administrator ("Transferred Information") in their respective possession, custody, or control. For the avoidance of doubt, the Plan Administrator is further expressly authorized to formally or informally request documents, testimony or other information that would constitute Transferred Information from any persons, including attorneys, professionals, consultants and experts that may possess Transferred Information, and no such person may object to the production to the Plan Administrator of such Transferred Information on the basis of a Privilege held by a Privilege Transfer Party. Until and unless the Plan Administrator makes a determination in its sole discretion to waive any Privilege, Transferred Information shall be produced solely to the Plan Administrator or as required by law.

Section 2.5    Cooperation and Access to Information.  On and after the Effective Date, the Wind-Down Debtor shall maintain documents in accordance with the Debtors' standard document retention policies, if any, as such policies may be altered, amended, modified, or supplemented by the Wind-Down Debtor. The allAll directors, officers or persons with similar roles at any of the Debtors, as applicable, shall use commercially reasonable efforts, upon reasonable requests, to cooperate with the Plan Administrator in carrying out this agreementAgreement and the activities contemplated hereby, including, without limitation providing the Plan Administrator and its professionals for fact finding, consultation, interviews and as witnesses (including as needed to authenticate documents where appropriate concerning matters relevant to the Wind-Down, taking commercially reasonable measures to retain documents relevant to the Wind-Down, and providing commercially reasonable assistance to maximize the value of the Retained Causes of Action and Claims and Causes of Action against any parties that are not "Released Parties.".  For the avoidance of doubt, the Plan Administrator may, in its sole discretion, reasonably compensate such parties for their cooperation in connection with section 2.5 of this Agreement, provided that no party shall be required to incur unreimbursed costs in connection with such cooperation.

In connection with this engagement, upon reasonable request, the Plan Administrator shall have complete and full access to all relevant information that the Plan Administrator deems appropriate.  It is understood that the Plan Administrator (a) is relying solely upon the information supplied by the Debtors and their respective representatives without assuming any responsibility for independent investigation or verification thereof, and (b) shall have the absolute and unconditional right to rely on the information provided by the Debtors and their respective representatives and shall not incur any liability by relying on such information.

The Plan Administrator shall be permitted, in his or her discretion, to abandon, destroy or otherwise dispose of any books and records of the Debtors and/or Wind-Down Debtor that the Plan Administrator deems not necessary for the continued administration of the Plan or the Wind

Down, or required to be retained under applicable law, without the need for any order of the Bankruptcy Court, and shall have no liability for same. For the avoidance of doubt, nothing herein shall limit the rights accorded to the Plan Administrator pursuant to Section 2.4.

Section 2.6    **Potential Conflicts**. Should the Plan Administrator perceive or any party in interest assert that the Plan Administrator holds a conflict of interest with regard to the performance of any aspect of their duties under this Agreement, the issue may be brought to the Bankruptcy Court for consideration.

Section 2.7    **Liquidating Trust**. The Plan Administrator, in his or her discretion (subject to the terms of the Plan and the Confirmation Order) shall have the right to establish a Liquidating Trust to the extent the Plan Administrator determines that a Liquidating Trust would more efficiently wind down the Estates, or otherwise maximize value for the Holders of Claims and/or Interest entitled to distributions from the Wind-Down Debtor under the Plan.

## ARTICLE III

### TERM OF SERVICE, RESIGNATION AND REMOVAL OF THE PLAN ADMINISTRATOR; APPOINTMENT OF SUCCESSOR; STANDARD OF CARE; COMPENSATION OF PLAN ADMINISTRATOR AND PROFESSIONALS

Section 3.1    **Term of Service**. The Plan Administrator shall serve in such capacity through the earlier of (a) the date on which the Wind-Down Debtor is dissolved and (b) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve.

Section 3.2    **Resignation of the Plan Administrator**. The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be chosen by the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, by Transcend Partners Legend Fund LLC; Valley High LP; GR Fairbairn Family Trust; Grant Fairbairn Revocable Trust; Nina Claire Fairbairn Revocable Trust; NCF Eagle Trust; GRF Tiger Trust; and NC Fairbairn Family Trust (collectively, the "Transcend Group"), or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, by the Holders of Common Interests (acting by majority vote).

Section 3.3    **Removal of Plan Administrator**. Upon Motion to the Bankruptcy Court by the holder of a Claim or Common Interest Holder who is entitled to a potential distribution under the Plan, and entry of an order granting such Motion, the Bankruptcy Court shall have the authority to remove the Plan Administrator at any time, with cause. Cause for removal shall exist solely to the extent the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court. During the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator, the Plan Administrator shall continue to discharge its rights, obligations, and duties set forth in the Plan and this Agreement.

**Section 3.4        Continuity; Appointment of a Successor Plan Administrator**.

(a)        The death, incapacity, dissolution, resignation, or removal of the Plan Administrator shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Plan Administrator.  In the event of a vacancy by reason of death, incapacity, dissolution, resignation or removal of the Plan Administrator or prospective vacancy by reason of resignation or removal, the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, the Transcend Group, or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, the Holders of Common Interests (acting by majority vote).

(b)        If the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance of the Plan, the Transcend Group, or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, the Holders of Common Interests (acting by majority vote), has not appointed a successor Plan Administrator within thirty (30) days of the occurrence or effectiveness, as applicable, of the prior Plan Administrator's death, incapacity, dissolution, resignation or removal, then the Bankruptcy Court, upon the motion of counsel to the Plan Administrator or another party in interest, shall approve a successor to serve as the Plan Administrator.

(c)        A successor Plan Administrator, without any further action or approval, shall (i) become fully vested with all the rights, powers, duties, and obligations of the Plan Administrator and (ii) become the sole director and sole officer of each of the Wind-Down Debtor; *provided*, *however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or subsequent Plan Administrator.

**Section 3.5        Plan Provisions**.  In connection with all actions taken in his, her or its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order. Notwithstanding anything herein, a Plan Administrator shall not be entitled to release, exculpation, or indemnification for any act or omission that the Plan Administrator is determined to have committed by means of fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court, provided that in no event will the Plan Administrator be liable for punitive, exemplary, consequential, or special damages under any circumstances..

**Section 3.6        Indemnification**.  The Wind-Down Debtor shall indemnify and hold harmless, to the fullest extent of the law, in all respects (a) the Plan Administrator (in his, her or its capacity as such and as sole officer and sole director of each of the Wind-Down Debtor and representative of the Estates), and (b) all professionals retained by the Wind-Down Debtor (collectively, the "Indemnified Parties" and each, an "Indemnified Party"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such

11

actions or omissions, other than acts or omissions resulting from such Indemnified Party's gross negligence, fraud or willful misconduct, with respect to the Wind-Down Debtor or the implementation or administration of the Plan or this Agreement as determined by a Final Order of the Bankruptcy Court.  To the extent an Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced by the Wind-Down Debtor (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined through a Final Order that such Indemnified Party is not entitled to be indemnified therefore). The indemnification provisions of the Plan or this Agreement shall remain available to and be binding upon any former Plan Administrator (or the estate of any decedent Plan Administrator) and shall survive the termination of this Agreement.

Section 3.7    **Exculpation**.  No Indemnified Party shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Indemnified Party's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, the Confirmation Order, any other order of the Bankruptcy Court or applicable law or as may arise by reason of any action, omission or error of an Indemnified Party, and Persons dealing or having any relationship with the Wind-Down Debtor and/or the Estates shall have recourse only to the Wind-Down Debtor Assets and shall look only to the Wind-Down Debtor Assets to satisfy any liability or other obligations incurred in carrying out the terms of the Plan and this Agreement, and the Indemnified Parties shall not have any personal obligation to satisfy any such liability; *provided*, *however*, that the foregoing limitations shall not apply to any acts or omissions ultimately and finally determined by a final and non-appealable order of a court of competent jurisdiction to be the direct result of such Indemnified Party's gross negligence, fraud or willful misconduct.  None of the Indemnified Parties is deemed to be responsible for any other Indemnified Party's actions or inactions.  The Indemnified Parties may, in connection with the performance of their functions hereunder and under the Plan, and in their sole and absolute discretion, consult with professionals and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals or any order of the Bankruptcy Court.  Notwithstanding such authority, such Indemnified Parties shall not be under any obligation to consult with any professionals and their determination not to do so shall not result in the imposition of liability, unless such determination is based upon gross negligence, fraud or willful misconduct as determined by a final and non-appealable order of a court of competent jurisdiction; *provided* that in no event will any such person be liable for punitive, exemplary, consequential, or special damages under any circumstances.  Any action taken or omitted to be taken by the Indemnified Parties after the Effective Date on the advice of counsel or with the approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence, fraud, or willful misconduct.  The foregoing indemnification and exculpation with respect to any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which it was deemed indemnified and exculpated and the termination or modification of this Agreement.

**Section 3.8     Insurance**.  The Plan Administrator is authorized (but not required) to obtain and pay at the expense of the Wind-Down Debtor all reasonably necessary insurance coverage for itself, the Wind-Down Debtor, and their respective agents, representatives, and employees or independent contractors, in connection with the Chapter 11 Cases and the Wind Down of the Wind-Down Debtor (in the form of any errors and omissions policy or otherwise), including, but not limited to, coverage with respect to commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtor, which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of this Agreement.

**Section 3.9     Burden of Proof**.  In any proceeding brought by the Wind-Down Debtor or any other Person who is bound by this Agreement challenging any action, determination or failure to act of the Plan Administrator in the Plan Administrator's discharge of its duties under this Agreement, the Person bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constitute gross negligence, fraud or willful misconduct.

**Section 3.10     Reliance by the Plan Administrator**. The Indemnified Parties may absolutely rely on, and shall be fully protected in acting or refraining from acting if it relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that it, as applicable, has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of gross negligence, fraud, or willful misconduct in respect of the Indemnified Parties' duties as found by a final and non-appealable court of competent jurisdiction, or material breach of this Agreement, it, as applicable, may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon. The Plan Administrator may consult with counsel and other professionals with respect to matters the Plan Administrator reasonably believes to be in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator. The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

**Section 3.11     Reliance by Entities Dealing with the Plan Administrator**.  In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Wind-Down Debtor shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Wind-Down Debtor, and shall have no obligation to inquire into the existence of such authority.

13

Section 3.12 **Standard of Care**. The fiduciary duties of the Plan Administrator shall be, and hereby are, eliminated to the fullest extent permitted by applicable law. Subject to applicable law, the Plan Administrator shall not be liable for any act they may do or omit to do as Plan Administrator while acting in good faith and in the exercise of their reasonable business judgment. The foregoing limitation on liability will apply equally to the agents, and/or employees of the Plan Administrator, as applicable, including the professionals acting on behalf of the Plan Administrator in the fulfillment of the Plan Administrator's duties hereunder. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking, or failing to take, any action that based upon the advice of counsel or other professionals, the Plan Administrator reasonably determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty of the Plan Administrator.

Section 3.13 **No Successor Liability**. Except as otherwise expressly provided in the Plan and the Confirmation Order, the Plan Administrator (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

Section 3.14 **Survival**. The provisions of this Article III shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of either or both Administrators. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Debtors' charter, bylaws or other organizational documents or policies shall affect the Administrators' or the other Indemnified Parties' rights hereunder.

Section 3.15 **Compensation of Plan Administrator and Professionals**.

(a) For its services, the Plan Administrator shall receive $50,000 per month plus 15% of (a) the net proceeds from the sale of any Wind Down Assets and (b) any saving achieved after the Effective Date with respect to the Contingency Fee Professional Reserve and claim objections. Such monthly fee shall be payable in advance on the first day of each month beginning with the first full month following the Effective Date.

(b) In addition to the fees described above, the Plan Administrator shall be entitled to reimbursement of all reasonable and documented costs and expenses.

(c) The Plan Administrator's compensation structure may be modified from time to time by agreement between the Plan Administrator and the SAFE AHG or, to the extent that the holders of Allowed Class 6 SAFE Claims, including, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim, have been paid in full in accordance with the Plan, the Transcend Group, or to the extent the claim of the Transcend Group has been paid in full in accordance with the Plan, the Holders of Common Interests (acting by majority vote).

14

(d)      All professionals retained by the Wind-Down Debtor shall be entitled to reasonable compensation for services rendered and reimbursement of expenses reasonably incurred in rendering such services.  Such professionals shall deliver to the Plan Administrator reasonably detailed monthly invoices or fee statements.

(e)      The payment of the fees and expenses of the Plan Administrator and professionals retained by the Wind-Down Debtor shall be paid from the Wind-Down Debtor Assets in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**Section 3.16      Information and Reporting.**  In its discretion, from time to time the Plan Administrator may file with the Bankruptcy Court a statement describing the progress of the Wind Down and the activities of the Wind-Down Debtor, in such detail and covering such matters as the Plan Administrator determines is appropriate in its discretion.

# ARTICLE IV

## TERMINATION

**Section 4.1      Termination.**  This Agreement shall terminate upon the dissolution of the Wind-Down Debtor and the entry of an order by the Bankruptcy Court closing the Chapter 11 Cases.  All provisions of this Agreement that expressly survive by their terms shall remain in effect in accordance with their terms. All of the protective provisions contained in ARTICLE III of this Agreement shall survive the termination of this Agreement and the death, dissolution, resignation or removal, as may be applicable, of the Plan Administrator and the Indemnified Parties and shall inure to the benefit of their respective heirs and assigns.

**Section 4.2      Dissolution of the Debtors**. The Wind-Down Debtor will be dissolved by the Plan Administrator as soon as practicable after the liquidation, administration, and distribution of the Wind-Down Debtor Assets, and the pursuit and resolution of the Retained Causes of Actions or Claims in accordance with the terms of this Agreement and the Plan, and its full performance of all other duties and functions set forth herein or in the  Plan. The Plan Administrator shall not unduly prolong the duration of the Debtors or the pursuit of the Retained Causes of Actions.

**Section 4.3      Obligations of the Plan Administrator Upon Termination**.  Upon or as soon as practicable after termination of this Agreement, the Plan Administrator shall (solely at the expense of the Wind-Down Debtor) (a) file a certificate or other document with the Bankruptcy Court stating that (i) the assets of the Wind-Down Debtor have been exhausted and final distributions of Cash have been made under the Plan or (ii) the Wind-Down Debtor lacks sufficient assets and financial resources, after reasonable collection efforts, to continue the wind-down process, and (b) be deemed to have resigned as the sole officer, and sole director of the Wind-Down Debtor.  Upon the filing of certificate(s) described in clause (a) of the preceding sentence, the relevant Debtors and/or Wind-Down Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Wind-Down Debtor or payments to be made in connection therewith.

Section 4.4      **No Other Duties or Obligations**.  The Plan Administrator shall have no duties or obligations under law or otherwise except as set forth in this Agreement and pursuant to the Plan.  Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to the terms hereof, the Plan Administrator shall have no further duties or obligations hereunder and pursuant to the Plan.

**ARTICLE V**

**DISTRIBUTIONS**

Section 5.1      **Reserves**.  Before making distributions to any to Holders of Claims, the Plan Administrator shall, in his or her reasonable discretion, ensure there are reserves in an amount sufficient to meet any and all accrued expenses and obligations of the Wind-Down Debtor, including professional fees and expenses, and fees owed to the U.S. Trustee, in each case as applicable and in accordance with the Plan and the Confirmation Order.

Section 5.2      **Distributions Under the Plan**.

(a)      Distributions shall be made in accordance with the Plan and the Confirmation Order.  With respect to all payments and distributions made under the Plan, the Plan Administrator shall cause the Wind-Down Debtor to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax and reporting matters.

(b)      Any party entitled to receive any property or distribution under the Plan shall, upon request, deliver to the Plan Administrator or such other Person designated by the Plan Administrator, Form W-9 or, if the payee is a foreign Person, an applicable Form W-8, unless such Person is exempt under the internal revenue code and so notifies the Plan Administrator.  If such request is made by the Plan Administrator or such other Person designated by the Plan Administrator and the Claim Holder fails to comply within ninety (90) days after the request, the amount of such distribution shall irrevocably revert to the Wind-Down Debtor and any Claim or Interest in respect of such distribution shall be expunged without need of further order of the Bankruptcy Court and the Holder thereof shall be forever barred from asserting such Claim or Interest against any Debtor and their respective assets and property.  The Plan Administrator may, but is not required to, file a notice with the Bankruptcy Court indicating which Claims are to be expunged for failure to comply with such requests for tax information or on account of being unclaimed distributions.  If such information is requested, the request shall be sent to the address provided in proofs of claim submitted or, if no such form has been provided, to the last known address for such entity provided by the Debtors to the Plan Administrator.

16

## ARTICLE VI

## MISCELLANEOUS PROVISIONS

**Section 6.1     Descriptive Headings**.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 6.2     Amendment and Waiver**.  This Agreement may be amended or modified by the Plan Administrator with entry of an order from the Bankruptcy Court in any way that is not inconsistent with the Plan or the Confirmation Order and that is necessary to implement the provisions of the Plan and to facilitate the Wind Down and maximize the value of the Wind-Down Debtor Assets (including to clarify any ambiguity or inconsistency or render the Agreement in compliance with its stated purposes); provided, however, for the avoidance of doubt, the identity and/or compensation of the Plan Administrator may be amended by the terms set forth herein without entry of an order from the Bankruptcy Court.

**Section 6.3     Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to the rules of conflict of laws of the State of Texas or any other jurisdiction that would result in the application of law of a jurisdiction other than Texas.

**Section 6.4     Counterparts; Effectiveness**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same agreement.  Executed copies of this Agreement may be delivered by facsimile, electronic mail, PDF or other electronic means and shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 6.5     Severability; Validity**.  If any provision of this Agreement or the application thereof to any Entity or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other Entities or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

**Section 6.6     Notices**.  Any notice or other communication hereunder shall be deemed given upon (a) confirmed delivery by a standard overnight carrier or when delivered by hand, or (b) the expiration of five (5) Business Days after the date mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice), and in all instances shall include a concurrent copy via e-mail to the e-mail addresses set forth below:

**If to the Plan Administrator**:

GXD Labs
Attn: David Proman
7301 SW 57th Court, Suite 515
Miami, FL 33143

17

Tel:  (305) 458-9023
Email:  david@gxdlabs.io

with a copy to counsel:

[●]
Attn: [●]
[ADDRESS]
[ADDRESS]
Tel: [●]
Email: [●]

and

[●]
Attn: [●]
[ADDRESS]
[ADDRESS]
Tel: [●]
Email: [●]

 **Section 6.7**  **Change of Address**.  Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Section 6.6 of this Agreement in the manner set forth therein.  Such change of address shall be effective ten (10) Business Days after service of such notice.

 **Section 6.8**  **Relationship to Plan**.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and Confirmation Order.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order, whether or not such action is specified in this Agreement.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or Confirmation Order, the provisions of the Plan and Confirmation Order control.

 **Section 6.9**  **Meaning of Terms**.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, and words importing the singular number include the plural number and vice versa.

 **Section 6.10**  **Retention of Jurisdiction**.  As provided in Article XI of the Plan, the Bankruptcy Court shall retain jurisdiction over the Wind-Down Debtor, including, but not limited to, for the purpose of interpreting and implementing the provisions of this Agreement; provided, however, that nothing in this Section or Article XI of the Plan shall prevent the Plan Administrator or the Wind-Down Debtor from pursuing the Retained Causes of Action in jurisdictions other than the Bankruptcy Court.

 **Section 6.11**  **Assignment**.  Neither this Agreement nor any of the rights, duties or obligations of any of the parties hereto may be assigned without Bankruptcy Court approval.

**Section 6.12    Successors and Assigns; No Third-Party Beneficiaries**.    This Agreement shall be binding on and shall inure to the benefit of each of the parties and their respective successors and assigns, except as otherwise provided herein.    No party may assign, transfer, hypothecate or otherwise convey its respective rights, benefits, obligations or duties hereunder without the prior express written consent of the other parties and any such purported assignment, transfer, hypothecation, or other conveyance by any party without the prior express written consent of the other parties shall be null and void and of no force or effect.    The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties with respect to the transactions contemplated hereby and no Entity shall be a third-party beneficiary of any of the terms and provisions of this Agreement, other than each of the Indemnified Parties and the Exculpated Parties with respect to Section 3.6 and Section 3.7, respectively, unless specifically set forth in this Agreement.

**Section 6.13    Effective Date**.    This Agreement shall become effective on the Effective Date.

[*Remainder of page intentionally left blank.*]

**IN WITNESS WHEREOF,** the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written and effective as of the Effective Date.

ON BEHALF OF THE ESTATES OF THE DEBTORS.

By: _____

Name: _____

Title: _____


AS PLAN ADMINISTRATOR ON BEHALF OF THE WIND-DOWN DEBTOR

By: _____

Name: _____

Title: _____

**EXHIBIT C**

**SCHEDULE OF RETAINED CAUSES OF ACTION**

This schedule is the "Schedule of Retained Causes of Action" referenced in Section 10.8 of the Plan. Notwithstanding anything to the contrary herein or in the Plan, any Causes of Action against Non-Released Parties (defined below) shall constitute retained causes of action and shall not be released by any Debtor or Affiliate thereof under the Plan. All Causes of Action described, identified and retained herein shall exclude any Causes of Action that are expressly released under the Plan or any order of the Bankruptcy Court, including those released with respect to the Released Parties (which, for the avoidance of doubt, shall exclude the Non-Released Parties).

Subject to the paragraph above, the Causes of Actions described and identified herein are intended to be numerous and may have varying degrees of value on an individual basis but may have material value in the aggregate, the exact amount of which is indeterminate as of the date hereof. The bases and nature of the Causes of Action described or identified herein, as well as the identification of persons or entities who may be defendants or the description of the classes or categories thereof, shall be read and interpreted as broadly as possible. To the extent that a Cause of Action or a creditor or other party, person, or entity, may be construed as coming within the scope of any basis or nature of claim or description herein, they shall be interpreted as within the scope of such basis or description, subject to the paragraph above. Without limiting the generality of the foregoing, the word "including (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word.

### A.  Nature and/or Basis of Claims and Causes of Action

Subject to the first two paragraphs above, the Causes of Action retained shall include any claims, rights, and causes of action, whether based on the federal law of the United States, state law, municipal law, territorial law, the law of any other country, nation, international law, or common law, or any other law or right, and whether arising in law or equity (or otherwise), and whether before or after the Petition Date, based on the following or as described in this Exhibit: breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, breach of the duty of good faith, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, theft, misappropriation of assets, misappropriation of trade secrets, sharing of confidential information, unfair competition, breach of contract, breach of warranty, breach of promissory note, breach of any other duty or obligation, fraud, misrepresentation, constructive fraud, negligence, negligence per se, gross negligence, actual or constructive fraudulent conveyance, actual or constructive fraudulent transfer, quiet title, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, tortious interference with business relations, tortious interference with existing contracts, tortious interference with prospective contracts, intentional interference with prospective economic advantage, quantum meruit, unjust enrichment, money had and received, abuse of process, spoliation of evidence, alter ego, veil piercing, entity consolidation (including substantive consolidation), securities fraud, unlawful dividend, assumption of liability, unjust enrichment, disgorgement, corporate waste, misappropriation, deceptive trade practices, embezzlement, civil conspiracy, malpractice, respondeat superior, vicarious liability, substantive consolidation, recharacterization, business disparagement, defamation, commercial disparagement, libel, slander, injurious falsehood, product liability, premises liability, indemnity, preference, account stated, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel,

equitable estoppel, judicial estoppel, quasi-contract claims, any counterclaims, all rights, claims and causes of action under the Bankruptcy Code (including equitable subordination, any equitable or injunctive relief (including any temporary restraining order, temporary injunction, or permanent injunction)), turnover, aiding and abetting any claim or cause of action (including any Cause of Action), conspiracy, extortion, racketeering (including any cause of action under civil Racketeer Influenced and Corrupt Organizations Act and any state law or other corollaries), avoidance and preference actions provided for under Chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, any objection or motion to disallow claims in accordance with sections 502 and 506(c) of the Bankruptcy Code, claims brought under state law (or the law of any province, municipality, subdivision, or territory), claims brought under federal law, claims brought under international law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

For the avoidance of doubt, but subject to the first two paragraphs of this schedule with respect to the Released Parties, the retained Causes of Action shall include, but shall not be limited to, any of the foregoing claims and any other claim, in any case, based upon, arising out of, or in any way related to any action, agreement, instrument, contract, disclosure, deliberation, release, or transaction received, made, entered into, or delivered in connection with any of the following:

1. Temple Green Data LLC, Rowan Green Data LLC, Rowan Digital Infrastructure Pty Ltd and each of their respective Affiliates and any current and former employee, officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any of the foregoing Persons, and any of their subsidiaries (collectively, the "***Temple Green Parties***"), whether occurring prior to or after the Petition Date, related to breaches of contract, tortious interference with contract, negligence, gross negligence, any claims or causes of action arising out of or related to any dealings with any Debtor (or Affiliate thereof), or any services provided by the Temple Green Parties to any Debtor (or Affiliate thereof); provided that, the pursuit of the Causes of Action retained pursuant to this paragraph shall not directly or indirectly delay or impede the confirmation or consummation of the Plan.

2. Midas Green Technologies LLC and each of its respective Affiliates and any current and former employee, officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any of the foregoing Persons, and any of their subsidiaries (collectively, the "***Midas Green Parties***"), whether occurring prior to or after the Petition Date, related to the Debtors' motions for sanctions, or any other claim or cause of action arising out of or related to any dealings by the Midas Green Parties with any Debtor (or Affiliate thereof), or any services provided by them to any Debtor (or Affiliate thereof); provided that, the pursuit of the Causes of Action retained pursuant to this paragraph shall not directly or indirectly delay or impede the confirmation or consummation of the Plan.

3. Kirkland & Ellis LLP ("***K&E***") for professional services to any Debtor (or Affiliate thereof) prior to the Petition Date related to K&E's representation of, and/or services provided to, any Debtor (or Affiliate thereof), including claims or causes of action for negligence (or

malpractice), gross negligence, breach of fiduciary duty, breach of contract, and any other claims or causes of action arising from or related to K&E's representation of, and/or services provided to, any Debtor (or Affiliate thereof).

4. All defenses, counterclaims, crossclaims and any affirmative defenses of the Debtors (or Affiliate thereof) related to the (a) assertion of any indemnification obligations by any current or former director, officer, employee or agent of any Debtor (or any Affiliates thereof) or other Person and (b) claims against the Debtors;

5. Any and all claims or causes of action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor (or Affiliate thereof) is a party or pursuant to which any Debtor (or Affiliate thereof) has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters;

6. Any and all claims or causes of action based in whole or in part upon any and all tax obligations to which any Debtor (or Affiliate thereof) is a party or pursuant to which any Debtor (or Affiliate thereof) has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors (or Affiliates thereof), regardless of whether such Entity is specifically identified herein;

7. Any and all claims or causes of action against or related to all Entities (or Affiliates thereof) that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, regardless of whether such Entity (or its Affiliate) is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.

## B. Potential Defendants and Classes and Categories of Defendants

With respect to any Non-Released Party (as such term is defined above), and any other person or entity that is not a Released Party under the Plan, the Causes of Action retained shall include any claim or cause of action identified or otherwise described, categorized, classified, or referenced below, including Causes of Action, potential counterclaims, and defenses that may be asserted against:

(i) each Person against whom a Cause of Action is retained above;

(ii) any current and former officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any Debtor, and any of their subsidiaries;

(iii)     any past or present counterparty or other party with an interest in any of the aforementioned transactions or conduct listed above;

(iv)     any persons or entities identified on any of the Debtors' Statements of Financial Affairs as recipients of certain payments made within 90 days of the Petition Date;

(v)     any person or entity identified or described in the Debtors' Schedules;

(vi)     any current or former insider (whether "statutory" or "non-statutory," including any Insider), including any persons or entities identified on any of the Debtors' statements of financial affairs as recipients of certain payments made within 1 (one) year prior to the Petition Date;

(vii)     any person or entity that, at any time, asserted an interest in or control over the Debtors or any affiliate or subsidiary of any of the Debtors;

(viii)     any current or former shareholder or other equity-holder of any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(ix)     any current or former contractor or vendor to any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(x)     any current or former insurer, surety, or insurance broker to any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(xi)     any current or former professional (including any attorney, accountant, auditor, appraiser, broker, tax professional, or other consultant) retained by any of the Debtors or any subsidiary or affiliate of any of the Debtors;

(xii)     any person or entity who had possession of or control over any of the Debtors' or any affiliate or subsidiary of any of the Debtors' books and records, in whole or in part, at any time;

(xiii)     any person or entity who received money, personal property, intellectual property, intangibles, or real property from any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time;

(xiv)     any person or entity to which any of the Debtors or any affiliate or subsidiary of any of the Debtors incurred any obligation at any time;

(xv)     any person, entity, or governmental unit, asserting any lien, encumbrance, or interest in or on any property of any of the Debtors' or any affiliate or subsidiary of any of the Debtors' estates;

(xvi)     any person or entity that was a party or beneficiary of any contract, lease, or settlement agreement (or similar agreement) with any of the Debtors or any affiliate or subsidiary

of any of the Debtors, or their insiders (whether "statutory" or "non- statutory," including any Insider);

(xvii) any person or entity who entered into a service agreement with any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(xviii) any person or entity who leased or purchased any truck, trailer, vehicle, or other equipment from any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time before the Petition Date;

(xix) any person or entity who had any debt, claim, or obligation released, waived, or forgiven by any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time;

(xx) any person or entity who acted in violation of, or with recklessness or disregard with respect to, any federal, state, local, or other applicable law with respect to or otherwise concerning any of the Debtors or any affiliate or subsidiary of any of the Debtors; and

(xxi) any person or entity who aided, aided and abetted, or otherwise assisted any person or entity identified or described in the foregoing sentence or the conduct identified, described, or referenced in Section A hereof.

Additionally, with respect to any person or entity identified, referenced, or described in the foregoing, such person or entity shall include: (a) any entity owned directly or indirectly, whether in whole or in part, or otherwise controlled, or operated for the benefit of any person or entity identified or described herein; (b) any entity for which any person or entity identified or described herein is, or holds itself as, a principal, employee, agent, officer, member, or director; (c) any spouse, parent, grandparent, cousin, offspring, family member, or other relation of any person described herein; (d) any affiliate or subsidiary of any entity identified or described herein; and (e) any mediate or intermediate transferee from any person or entity identified or described herein.

**<u>Annex 2</u>**
**Redline Exhibit C**

This schedule is the "Schedule of Retained Causes of Action" referenced in Section 10.8 of the Plan. Notwithstanding anything to the contrary herein or in the Plan, any Causes of Action against Non-Released Parties (defined below) shall constitute retained causes of action and shall not be released by any Debtor or Affiliate thereof under the Plan. All Causes of Action described, identified and retained herein shall exclude any Causes of Action that are expressly released under the Plan or any order of the Bankruptcy Court, including those released with respect to the Released Parties (which, for the avoidance of doubt, shall exclude the Non-Released Parties).

Subject to the paragraph above, the Causes of Actions described and identified herein are intended to be numerous and may have varying degrees of value on an individual basis but may have material value in the aggregate, the exact amount of which is indeterminate as of the date hereof. The bases and nature of the Causes of Action described or identified herein, as well as the identification of persons or entities who may be defendants or the description of the classes or categories thereof, shall be read and interpreted as broadly as possible. To the extent that a Cause of Action or a creditor or other party, person, or entity, may be construed as coming within the scope of any basis or nature of claim or description herein, they shall be interpreted as within the scope of such basis or description, subject to the paragraph above. Without limiting the generality of the foregoing, the word "including (and, with correlative meaning, the forms of the word "include") shall mean including, without limiting the generality of any description preceding that word.

### A. Nature and/or Basis of Claims and Causes of Action

Subject to the first two paragraphs above, the Causes of Action retained shall include any claims, rights, and causes of action, whether based on the federal law of the United States, state law, municipal law, territorial law, the law of any other country, nation, international law, or common law, or any other law or right, and whether arising in law or equity (or otherwise), and whether before or after the Petition Date, based on the following or as described in this Exhibit: breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, breach of the duty of good faith, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, theft, misappropriation of assets, misappropriation of trade secrets, sharing of confidential information, unfair competition, breach of contract, breach of warranty, breach of promissory note, breach of any other duty or obligation, fraud, misrepresentation, constructive fraud, negligence, negligence per se, gross negligence, actual or constructive fraudulent conveyance, actual or constructive fraudulent transfer, quiet title, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, tortious interference with business relations, tortious interference with existing contracts, tortious interference with prospective contracts, intentional interference with prospective economic advantage, quantum meruit, unjust enrichment, money had and received, abuse of process, spoliation of evidence, alter ego, veil piercing, entity consolidation (including substantive consolidation), securities fraud, unlawful dividend, assumption of liability, unjust enrichment, disgorgement, corporate waste, misappropriation, deceptive trade practices, embezzlement, civil conspiracy, malpractice, respondeat superior, vicarious liability, substantive consolidation, recharacterization, business disparagement, defamation, commercial

disparagement, libel, slander, injurious falsehood, product liability, premises liability, indemnity, preference, account stated, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, equitable estoppel, judicial estoppel, quasi-contract claims, any counterclaims, all rights, claims and causes of action under the Bankruptcy Code (including equitable subordination, any equitable or injunctive relief (including any temporary restraining order, temporary injunction, or permanent injunction)), turnover, aiding and abetting any claim or cause of action (including any Cause of Action), conspiracy, extortion, racketeering (including any cause of action under civil Racketeer Influenced and Corrupt Organizations Act and any state law or other corollaries), avoidance and preference actions provided for under Chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, any objection or motion to disallow claims in accordance with sections 502 and 506(c) of the Bankruptcy Code, claims brought under state law (or the law of any province, municipality, subdivision, or territory), claims brought under federal law, claims brought under international law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

For the avoidance of doubt, but subject to the first two paragraphs of this schedule with respect to the Released Parties, the retained Causes of Action shall include, but shall not be limited to, any of the foregoing claims and any other claim, in any case, based upon, arising out of, or in any way related to any action, agreement, instrument, contract, disclosure, deliberation, release, or transaction received, made, entered into, or delivered in connection with any of the following:

1. Temple Green Data LLC, Rowan Green Data LLC, Rowan Digital Infrastructure Pty Ltd and each of their respective Affiliates and any current and former employee, officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any of the foregoing Persons, and any of their subsidiaries (collectively, the "***Temple Green Parties***"), whether occurring prior to or after the Petition Date, related to breaches of contract, tortious interference with contract, negligence, gross negligence, any claims or causes of action arising out of or related to any dealings with any Debtor (or Affiliate thereof), or any services provided by the Temple Green Parties to any Debtor (or Affiliate thereof); provided that, the pursuit of the Causes of Action retained pursuant to this paragraph shall not directly or indirectly delay or impede the confirmation or consummation of the Plan.

2. Midas Green Technologies LLC and each of its respective Affiliates and any current and former employee, officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any of the foregoing Persons, and any of their subsidiaries (collectively, the "***Midas Green Parties***"), whether occurring prior to or after the Petition Date, related to the Debtors' motions for sanctions, or any other claim or cause of action arising out of or related to any dealings by the Midas Green Parties with any Debtor (or Affiliate thereof), or any services provided by them to any Debtor (or Affiliate thereof); provided that, the pursuit of the Causes of Action retained pursuant to this paragraph shall not directly or indirectly delay or impede the confirmation or consummation of the Plan.

3. ~~Three Way Logistics, Inc. and each of its respective Affiliates and any current and former employee, officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any of the foregoing Persons, and any of their subsidiaries (collectively, the "*Three Way Parties*") whether occurring prior to or after the Petition Date, related to breach of contract, negligence, gross negligence or any other claim or cause of action arising out of or related to any dealings by the Three Way Parties with any Debtor (or Affiliate thereof), or any services provided by them to any Debtor (or Affiliate thereof); provided that, the pursuit of the Causes of Action retained pursuant to this paragraph shall not directly or indirectly delay or impede the confirmation or consummation of the Plan. The Three Way Parties, the Temple Green Parties, and the Midas Green Parties are hereinafter referred to as the *Non-Released Parties*.~~

3. Kirkland & Ellis LLP ("*K&E*") for professional services to any Debtor (or Affiliate thereof) prior to the Petition Date related to K&E's representation of, and/or services provided to, any Debtor (or Affiliate thereof), including claims or causes of action for negligence (or malpractice), gross negligence, breach of fiduciary duty, breach of contract, and any other claims or causes of action arising from or related to K&E's representation of, and/or services provided to, any Debtor (or Affiliate thereof).

4. All defenses, counterclaims, crossclaims and any affirmative defenses of the Debtors (or Affiliate thereof) related to the (a) assertion of any indemnification obligations by any current or former director, officer, employee or agent of any Debtor (or any Affiliates thereof) or other Person and (b) claims against the Debtors;

5. Any and all claims or causes of action based in whole or in part upon any and all insurance contracts and insurance policies to which any Debtor (or Affiliate thereof) is a party or pursuant to which any Debtor (or Affiliate thereof) has any rights whatsoever, regardless of whether such contract or policy is specifically identified in the Plan, this Plan Supplement, or any amendments thereto, including, without limitation, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters;

6. Any and all claims or causes of action based in whole or in part upon any and all tax obligations to which any Debtor (or Affiliate thereof) is a party or pursuant to which any Debtor (or Affiliate thereof) has any rights whatsoever, including, without limitation, against or related to all Entities that owe or that may in the future owe money related to tax refunds to the Debtors (or Affiliates thereof), regardless of whether such Entity is specifically identified herein;

7. Any and all claims or causes of action against or related to all Entities (or Affiliates thereof) that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, regardless of whether such Entity (or its

Affiliate) is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.

**B. Potential Defendants and Classes and Categories of Defendants**

With respect to any Non-Released Party (as such term is defined above), and any other person or entity that is not a Released Party under the Plan, the Causes of Action retained shall include any claim or cause of action identified or otherwise described, categorized, classified, or referenced below, including Causes of Action, potential counterclaims, and defenses that may be asserted against:

(i)     each Person against whom a Cause of Action is retained ~~in Sections A(4) through A(6)~~ above;

(ii)    any current and former officer, director, manager, member, shareholder, controlling person, affiliate, subsidiary, or other representative or advisor of any Debtor, and any of their subsidiaries;

(iii)   any past or present counterparty or other party with an interest in any of the aforementioned transactions or conduct listed above;

(iv)    any persons or entities identified on any of the Debtors' Statements of Financial Affairs as recipients of certain payments made within 90 days of the Petition Date;

(v)     any person or entity identified or described in the Debtors' Schedules;

(vi)    any current or former insider (whether "statutory" or "non-statutory," including any Insider), including any persons or entities identified on any of the Debtors' statements of financial affairs as recipients of certain payments made within 1 (one) year prior to the Petition Date;

(vii)   any person or entity that, at any time, asserted an interest in or control over the Debtors or any affiliate or subsidiary of any of the Debtors;

(viii)  any current or former shareholder or other equity-holder of any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(ix)    any current or former contractor or vendor to any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(x)     any current or former insurer, surety, or insurance broker to any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(xi)    any current or former professional (including any attorney, accountant, auditor, appraiser, broker, tax professional, or other consultant) retained by any of the Debtors or any subsidiary or affiliate of any of the Debtors;

(xii)     any person or entity who had possession of or control over any of the Debtors' or any affiliate or subsidiary of any of the Debtors' books and records, in whole or in part, at any time;

(xiii)    any person or entity who received money, personal property, intellectual property, intangibles, or real property from any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time;

(xiv)    any person or entity to which any of the Debtors or any affiliate or subsidiary of any of the Debtors incurred any obligation at any time;

(xv)     any person, entity, or governmental unit, asserting any lien, encumbrance, or interest in or on any property of any of the Debtors' or any affiliate or subsidiary of any of the Debtors' estates;

(xvi)    any person or entity that was a party or beneficiary of any contract, lease, or settlement agreement (or similar agreement) with any of the Debtors or any affiliate or subsidiary of any of the Debtors, or their insiders (whether "statutory" or "non-statutory," including any Insider);

(xvii)   any person or entity who entered into a service agreement with any of the Debtors or any affiliate or subsidiary of any of the Debtors;

(xviii)  any person or entity who leased or purchased any truck, trailer, vehicle, or other equipment from any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time before the Petition Date;

(xix)    any person or entity who had any debt, claim, or obligation released, waived, or forgiven by any of the Debtors or any affiliate or subsidiary of any of the Debtors at any time;

(xx)     any person or entity who acted in violation of, or with recklessness or disregard with respect to, any federal, state, local, or other applicable law with respect to or otherwise concerning any of the Debtors or any affiliate or subsidiary of any of the Debtors; and

(xxi)    any person or entity who aided, aided and abetted, or otherwise assisted any person or entity identified or described in the foregoing sentence or the conduct identified, described, or referenced in Section A hereof.

Additionally, with respect to any person or entity identified, referenced, or described in the foregoing, such person or entity shall include: (a) any entity owned directly or indirectly, whether in whole or in part, or otherwise controlled, or operated for the benefit of any person or entity identified or described herein; (b) any entity for which any person or entity identified or described herein is, or holds itself as, a principal, employee, agent, officer, member, or director;

(c) any spouse, parent, grandparent, cousin, offspring, family member, or other relation of any person described herein; (d) any affiliate or subsidiary of any entity identified or described herein; and (e) any mediate or intermediate transferee from any person or entity identified or described herein.

**<u>EXHIBIT D</u>**

**<u>SCHEDULE OF ASSUMED CONTRACTS</u>**

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to Article VIII of the Plan, and in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to a final order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be assumed on the attached schedule of Assumed Contracts.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan or this Supplement.  Except as otherwise specifically set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by final order of the Bankruptcy Court but may be withdrawn, settled, or otherwise prosecuted by the Debtors or the Wind Down Debtor.  The Debtors or the Wind Down Debtor shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree; provided that if a dispute regarding assumption or Cure Amount is unresolved as of the Effective Date, then payment of the applicable Cure Amount shall occur as soon as reasonably practicable after such dispute is resolved.  Any Cure Amount shall be deemed fully satisfied, released, and discharged upon payment of the Cure Amount.

Unless otherwise agreed in writing by the parties in the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Amount must be filed, served, and actually received by counsel to the Debtors no later than the date and time specified in the notice (which shall not be less than fourteen (14) days after such notice is served).  The Debtors or the Wind Down Debtor, as applicable, may reconcile and settle in the ordinary course of the Debtors' business any dispute (following a timely filed objection) regarding any Cure Amount or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Amount (including any request for an additional or different Cure Amount) will be deemed to have assented to such assumption or Cure Amount and any untimely request for an additional or different Cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, without the need for any objection by the Wind Down Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Nothing contained in the Plan or this Plan Supplement, shall constitute an admission by the Debtors or the Wind Down Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors have any liability thereunder.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind Down Debtor, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

Certain documents, or portions thereof, contained in this Exhibit remain subject to continued review by the Debtors and parties in interest.  The respective rights of the Debtors, the Wind Down Debtor, and other parties in interest are expressly reserved, subject to the terms and conditions set forth in the Plan, the Plan Supplement, or by order of the Bankruptcy Court; provided that if any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

**SCHEDULE 1 (ASSUMED EXECUTORY CONTRACTS)**

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium 2.0 LLC | Brennan Nacol | Non-Disclosure Agreement | None |
| Rhodium 2.0 LLC | Jacquelyn Letschert | Non-Disclosure Agreement | None |
| Rhodium 2.0 LLC | KeekBC LLC | Non-Disclosure Agreement | None |
| Rhodium 2.0 LLC | Pat and Cindy Hawkins | Non-Disclosure Agreement | None |
| Rhodium 2.0 LLC | R2BMI LLC | Non-Disclosure Agreement | None |
| Rhodium 2.0 LLC | Resolutions Real Estate Services LLC | Non-Disclosure Agreement | None |
| Rhodium 2.0 LLC | Ross Wlodawsky | Non-Disclosure Agreement | None |
| Rhodium Encore LLC | ERS Capital LLC | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | AXA AL | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | AXA XL Insurance | Excess Liability Insurance | None |
| Rhodium Enterprises, Inc. | Bart Mallon | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Bitmain Technologies Georgia Limited | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Blockchain Recovery Investment Consortium, LLC | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Colocation Technology Services | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Compute North Holdings | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Continental Casualty Company (CNA) | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Crawford & Co. | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Crowe LLP | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Brian Cullinan | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Endurance American Insurance Company | Excess Liability Insurance | None |
| Rhodium Enterprises, Inc. | EQ Private Company Solutions, Inc. | Services Order Form | None |
| Rhodium Enterprises, Inc. | Everest National Insurance Co | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Hudson Insurance Co. | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Enterprises, Inc. | Ionic Digital Inc. | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | James Calvin | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Kintz Family Trust, Transcend Partners Legend Fun LLC & Nina Claire Fairbairn Revocable Trust | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Lexington Insurance Company | Excess Liability Insurance | None |
| Rhodium Enterprises, Inc. | Lexington Insurance Company | General Liability Insurance | None |
| Rhodium Enterprises, Inc. | Mara USA Corporation | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Marsh USA Inc. | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | National Union Fire Insurance Co of Pittsburgh (AIG) | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Navitas Global | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | New York Digital Investment Group | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Jonas Norr | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Orion Insurance Intermediaries | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Proof Capital Inc. | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | R. Dylong & Associates | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | RelaDyne Reliability Services | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Renata Skzoda | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | RSG Specialty | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | RSM US LLP | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | RSUI Group Inc. | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Matthew Smith | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Enterprises, Inc. | The BVA Group LLC | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | US Data Mining Group Inc. | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | USDM Ventures LLC | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Vantage Risk Assurance Company | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Weaver and Tidwell LLP | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Westfield Specialty Insurance Company | Non-Disclosure Agreement | None |
| Rhodium Enterprises, Inc. | Whitley Penn | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | AKG of America | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Akron Energy | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Aspen Speciality Insurance Company | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | AT&T Corp | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Ben Barrington | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Blockware Solutions LLC | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Boston Energy & Marketing LLC (BETM) | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Paul Brewer | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Ethan Burchett | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Alicia Catatao | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Hayden Christie | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Max Cottrell | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Data Airflow LLC | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Dolphin Heat - Exchanger USA, Inc. | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Industries LLC | Joseph Drake | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Keith Duncan | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Enviromatic Systems | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | EPIC Blockchain | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Juan Escobar | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Fabric8Labs, Inc. | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Flowtrac | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | FNK IR, LLC | Non-Mutual Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Michael Foland | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Christopher Frenette | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Michael Hanrahan | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Hayden Industrial | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Bryan Helm | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Insperity | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Intel | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Jared Kellar | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Lancium LLC | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Steven Lopez | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Lu-Ve US Inc. | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Miljkovic, Dr. Nenard | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Moffitt LLC | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Industries LLC | Anthony Morrison | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | O'Neill Engineered Systems, Inc. | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | OpenPath Securities (Motorola) | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Palatnyk, Victor | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Paul, Sean | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Ramos-Montanez, Jason | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Ramos-Montanez, Jason | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Roberts, Danuumall | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Rootstock Rivers LLC | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | RT Speciality | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Rybak-Dow, Jefferson | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Segrest, Shon | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Segrest, Shon | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Sims, James | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Streicher, Jonathan | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Streicher, Jonathon | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Streicher, Jonathon | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Thompson, Max | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Tigges, Josh | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Top Speed Energy | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Upchurch, Schon | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Industries LLC | Valastek, Cory | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | ValueHash | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Verde Mining | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Victaulic Company | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Whalen, Joseph Richard | Non-Disclosure Agreement | None |
| Rhodium Industries LLC | Ziehl Abegg | Non-Disclosure Agreement | None |
| Rhodium Ready Ventures LLC | Accelerant Specialty Insurance Company | Property Insurance | None |
| Rhodium Renewables LLC | Christie, Hayden | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Cruz, Dean | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Drake, Joseph | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Duncan, Keith | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Energy Engineering Associates, Inc. dba EEA Consulting Engineers | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Escobar, Juan | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Foland, Michael | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Foxworth, Justin | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Freeman, Darius | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Hall, David | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Markel American Insurance Company | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | MP2 Energy LLC dba Shell Energy Solutions | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Segrest, Shon | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Renewables LLC | Thompson, Max | Non-Disclosure Agreement | None |
| Rhodium Renewables LLC | Vargas, Brandon | Non-Disclosure Agreement | None |
| Rhodium Shared Services LLC | Aaron Booker | Severance Agreement | None |
| Rhodium Shared Services LLC | AccidentFund General Insurance Company | Workers Compensation Insurance | None |
| Rhodium Shared Services LLC | Aerotek, Inc. | Services Agreement | None |
| Rhodium Shared Services LLC | Alerus Financial, N.A | Online Services Agreement | None |
| Rhodium Shared Services LLC | Andrew Kleinheinz | Severance Agreement | None |
| Rhodium Shared Services LLC | Anthony Ausiello | Severance Agreement | None |
| Rhodium Shared Services LLC | Billy Collier, Jr. | Severance Agreement | None |
| Rhodium Shared Services LLC | Bryson Wells | Severance Agreement | None |
| Rhodium Shared Services LLC | Cassandra Mallory | Severance Agreement | None |
| Rhodium Shared Services LLC | Cassic Leschber | Severance Agreement | None |
| Rhodium Shared Services LLC | Chad Smith | Severance Agreement | None |
| Rhodium Shared Services LLC | Chris Fye | Severance Agreement | None |
| Rhodium Shared Services LLC | Christopher Alec Kerr | Severance Agreement | None |
| Rhodium Shared Services LLC | Craig Tarvin | Severance Agreement | None |
| Rhodium Shared Services LLC | David Wayne Shafer | Severance Agreement | None |
| Rhodium Shared Services LLC | Deborah Chandra | Severance Agreement | None |
| Rhodium Shared Services LLC | Ejan O'Rea | Severance Agreement | None |
| Rhodium Shared Services LLC | Ethan Chamberlain | Severance Agreement | None |
| Rhodium Shared Services LLC | Jack Sanders | Severance Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Jared Melillo | Severance Agreement | None |
| Rhodium Shared Services LLC | Jennifer Manz | Severance Agreement | None |
| Rhodium Shared Services LLC | JFDI Accountants | Agreement for Services | None |
| Rhodium Shared Services LLC | John Lewis Zoeckler | Severance and Consulting Agreement | None |
| Rhodium Shared Services LLC | Joshua Smith | Severance Agreement | None |
| Rhodium Shared Services LLC | Justin Howes | Severance Agreement | None |
| Rhodium Shared Services LLC | Kelly Rawls | Severance Agreement | None |
| Rhodium Shared Services LLC | Lane Ragsdale | Severance Agreement | None |
| Rhodium Shared Services LLC | Manuel Ramirez | Severance Agreement | None |
| Rhodium Shared Services LLC | Marshall Long | Severance Agreement | None |
| Rhodium Shared Services LLC | Michael Burnstein | Severance Agreement | None |
| Rhodium Shared Services LLC | Patrick Benavente | Severance Agreement | None |
| Rhodium Shared Services LLC | Paul Opoku | Severance Agreement | None |
| Rhodium Shared Services LLC | Rippling Technologies, Inc. | Benefits Provider Historical Contracts | None |
| Rhodium Shared Services LLC | Riveron Consulting, LLC | Professional Services Agreement | None |
| Rhodium Shared Services LLC | Roberto Leal | Severance Agreement | None |
| Rhodium Shared Services LLC | Rodney Mills | Severance Agreement | None |
| Rhodium Shared Services LLC | The Guardian Life Insurance Company of America | Indemnification Agreement | None |
| Rhodium Shared Services LLC | United Healthcare Services, Inc. | Billing and Collection Agreement | None |
| Rhodium Shared Services LLC | Unum Life Insurance Company of America | Master Application | None |
| Rhodium Shared Services LLC | Workday Inc | Non-Disclosure Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Zachery Hughes | Severance Agreement | None |
| Rhodium Shared Services LLC | Michael Foland | Independent Contractor Agreement | None |
| Rhodium Shared Services LLC | Cameron Blackmon | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ashley Jonson | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Gavin Tang | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Kessha Spruill | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Christian Sartori | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jamie Estes | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Kyle Brossia | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Charles Topping | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Andrew Kleinheinz | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Less Davenport | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Charlie Steffens | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | christopher fye | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Matthew Smith | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Stevie Saganski | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | James Pratt | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Alexander Peloubet | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Zachary Sharp | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Rebecca Bartha | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Trey Scott | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ethan Burchett | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ben Barrington | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Max Cottrell | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Katherine Butti | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | David Hall | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Chris Frenette | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Joseph Whalen | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Cory Valastek | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Jonathon Streicher | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jefferson Rybak-Dow | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Michelle Rathbun Saganski | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Anthony Ausiello | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Anthony Ausiello | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Isaiah Gonzalez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jack Sanders | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Chase Blackmon | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Zachary Kerr | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Brandon McWard | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Andrew Mulac | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Rebecca Rice | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Brendan Cottrell | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Luke Ferrell | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Michael Grider | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Nicholas Howard | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Spencer Gilliland | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Roberto Leal | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Daniel Najacht | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ulises Diaz | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Matthew Williams | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Zachary Hughes | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jorge Calderon | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Sean Conner | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Devane Jarmon | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Mike Machado | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Demetri Lara | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jordan Porter | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Steven Lopez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Alec Santellan | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | John Ritenour | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Viktor Palatnyk | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | James Davenport | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jared Kellar | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Danjumall Roberts | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Bryan Helm | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Max Thompson | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Justin Foxworth | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Promise Ayansiji | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Noah Rodriguez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Chauncey Harrison | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Bruce Kutsche | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Timothy Turnipseed | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Amber Hames | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jonathan Hall | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Will Boardman | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jared Melillo | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Deborah Chandra | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ryan Abalos | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Billy Collier | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Mike Norman | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Sulema Martinez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ivan Almaraz | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Billy Jr Collier | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Billy Jr Collier | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Manuel Ramirez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Lane Ragsdale | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ethan Chamberlain | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Ethan Chamberlain | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jackson Stewart | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Caleb VanZoeren | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Kevin Woods | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Zach Scheich | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Joe Gryzan | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Alicia Catatao | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Darius Freeman | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Robert Mulkey | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jim Sanchez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jim Sanchez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Kyle Smith | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Juan Escobar | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Kevin Hays | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Sean Paul | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Hayden Christie | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Schon Upchurch | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Michael Hanrahan | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Josh Tigges | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Anthony Morrison | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Tyrone Turner | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Dylan Kessler | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Erik Thompson | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Luke Landers | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Christopher Kerr | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Peter Richison | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Terry Dietrick | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Justin Howes | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Marshall Long | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Morgan Soule | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Odilton Barreto | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Cassandra Mallory | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Paul Opoku | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Patrick Benavente | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Patrick Benavente | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Adrian Gonzalez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jose Ramirez | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Christopher Clements | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Kelly Rawls | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Bryson Wells | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Ethan Sharp | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Nathan Nichols | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Nathan Nichols | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Amarnath Mamidi | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Wade Rogers | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Roger Grider | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Marco Toledo | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Thomas Duffles | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Brandon Vargas | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Jonathan Adam | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Brandon Thomas | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Dean Cruz | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Shon Segrest | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Paul Brewer | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |

| Debtor Name | Contract Counterparty | Contract Description | Cure Amount |
|---|---|---|---|
| Rhodium Shared Services LLC | Joseph Drake | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | James Sims | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Adam Dyer | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | Shane Phillips | Confidentiality, Proprietary Rights, and Protective Covenants Agreement | None |
| Rhodium Shared Services LLC | UnitedHealthcare Insurance Company | Health Insurance | None |
| Rhodium Shared Services LLC | The Guardian Life Insurance Company of America | Dental, Vision, Short-Term Disability, Life Insurance | None |
| Rhodium Technologies LLC | Proof Capital Alternative Growth Fund | Binding Agreement to Equitize Debt | None |
| Rhodium Technologies LLC | Proof Capital Alternative Income Fund | Binding Agreement to Equitize Debt | None |
| Rhodium Technologies LLC | Proof Proprietary Investment Fund Inc. | Binding Agreement to Equitize Debt | None |
| Rhodium Technologies LLC | Coinbase Inc | Non-Disclosure Agreement | None |
| Rhodium Technologies LLC | DRW Derivatives LLC (Cumerbland) | Non-Disclosure Agreement | None |
| Rhodium Technologies LLC | Ippolito, Ian | Non-Disclosure Agreement | None |
| Rhodium Technologies LLC | Johnston, Heather | Non-Disclosure Agreement | None |
| Rhodium Technologies LLC | LeFebvre, Jon | Non-Disclosure Agreement | None |

**EXHIBIT E**

**SCHEDULE OF REJECTED CONTRACTS**

As set forth in Article VIII of the Plan, and in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, all Executory Contracts and Unexpired Leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors, pursuant to a final order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be assumed on the attached schedule of Assumed Contracts.

**EXHIBIT F**

**ILLUSTRATIVE WIND-DOWN BUDGET[1]**

---

[1]     All amounts set forth herein are non-binding estimates and actual amounts incurred may be higher. All amounts are subject to material revision in all respects.

| Item | Amount[2] |
|---|---|
| Plan Administrator Fees | $600,000[3] |
| Claims Administration[4] | $TBD[5] |
| Wind Down Employees, non-legal professionals, insurance, taxes and other miscellaneous expenses | $300,000 |
| U.S. Trustee Fees[6] | $200,000 |
| Legal Budget[7] | $TBD |
| | |
| Total Plan Administrator Budget is estimated by the Plan Proponents to be $2 million. | |
| | |

---

[2]  This budget assumes that it will take not more than one year to pursue causes of action against third parties. However, such period may be shorter or longer depending upon a number of factors, including, the discovery period and whether there are any settlements. The actual amount incurred by the Plan Administrator may be higher or lower than the estimate. The Plan Administrator may, in accordance with the Plan Administrator Agreement, incur debt and/or utilize the proceeds of the Wind Down Assets to fund the Wind Down Debtor.

[3]  The Plan Administrator shall receive $50,000 per month plus 15% of (a) the net proceeds from the sale of any Wind Down Assets and (b) any saving achieved after the Effective Date with respect to the Contingency Fee Professional Reserve and claim objections. Plan Administrator fees are estimated assume it will take approximately one year to resolve all issues related to the Wind Down Debtor and close the Chapter 11 Cases. However, such period may be shorter or longer.

[4]  The estimated amount assumes that claims reconciliation will take approximately six (6) months. However, the period of time to reconcile claims may be shorter or longer depending on a number of factors, including, whether there are any contested claims matters, and the time required to resolve the fee claims dispute with Lehotsky Keller Cohn LLP and the appeal asserted by Midas Green with respect to its asserted claim.

[5]  The determination of whether to pursue any claim objections, and the fee structure related to same, for the benefit of holders of Claims and Interests will be made by the Plan Administrator. At this time, the legal fees and expenses associated with such claim objections is too speculative to estimate.

[6]  U.S. Trustee fees are calculated based on assumption that remaining cash as of the Effective Date will be disbursed, subject to the other terms hereof. The Liquidation Analysis prepared in connection with the Plan included $500,000 for U.S. Trustee fees related to disbursements made in the 4th quarter of 2025, which are assumed to include substantially all distributions to holders of SAFE Claims. The estimate contained herein is for U.S. Trustee fees incurred for distributions made in 2026. U.S. Trustee fees may be higher if additional amounts are recovered through litigation and/or if the Plan Administrator requires additional time to pursue and resolve causes of actions against third parties.

[7]  The determination of whether to pursue any litigation, and the fee structure related to same, for the benefit of holders of Claims and Interests will be made by the Plan Administrator. At this time, the legal fees and expenses associated with such litigation is too speculative to estimate.

| Reserves | |
|---|---|
| Plan Cash Reserve[8] | TBD |
| Professional Fee Escrow[9] | $9,200,000 |
| Contingency Fee Professional Reserve[10] | $8,180,460.98 |
| Transcend Claim Reserve | $2,500,000 |

---

[8]    The Plan Cash Reserve will be equal to the Debtors' cash on hand as of the Plan Effective Date less the Plan Administrator Budget, Professional Fee Reserve, the Contingency Fee Professional Reserve and the Transcend Claim Reserve.

[9]    This Professional Fee Escrow shall be calculated in accordance with the terms of the Plan. Amounts set forth herein are calculated based on the professional fee estimates utilized in connection with the Liquidation Analysis and are the Plan Proponents' best, reasonable estimate of these amounts. These amounts will be updated in accordance with the procedures set forth in the Plan prior to the Effective Date and are subject to material revision in all respects. The reserve of these funds is not an admission of liability by any party, including the Plan Proponents.

[10]    This Contingency Fee Professional Reserve includes amounts escrowed by the Debtors for the payment of contingent fees asserted by Lehotsky Keller Cohn LLP and B. Riley Securities, Inc. The calculation of fees is subject to a live dispute before the Court. The reserve of these funds was made at the direction of the Court and is not an admission of liability by any party, including the Plan Proponents.