## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| RHODIUM ENCORE LLC, *et al.*,[1] | § | Case No. 24-90448 (ARP) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## ORDER APPROVING THE DISCLOSURE
## STATEMENT FOR, AND CONFIRMING, SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR RHODIUM ENCORE LLC AND ITS AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors (collectively, the "Debtors") having:[2]

a.   commenced, on August 24, 2024, and August 29, 2024 (collectively, the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

b.   filed, on August 29, 2024, the *Declaration of David M. Dunn in Support of Chapter 11 Petitions and First Day Relief* (Docket No. 35) (the "First Day Declaration"); and

c.   operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Debtors and the SAFE AHG (the "Plan Proponents") having:

a.   entered into, and filed, that certain plan support agreement dated as of October 7, 2025 (Docket No. 1747) (as may be modified, amended or supplemented from time to time, and together with all term sheets, schedules, annexes and exhibits appended

---

[1]   Debtors in these chapter 11 cases and the last four digits of their corporate identification numbers are as follows: Rhodium Encore LLC (3974), Jordan HPC LLC (3683), Rhodium JV LLC (5323), Rhodium 2.0 LLC (1013), Rhodium 10MW LLC (4142), Rhodium 30MW LLC (0263), Jordan HPC Sub LLC (0463), Rhodium 2.0 Sub LLC (5319), Rhodium 10MW  Sub  LLC  (3827), Rhodium 30MW Sub LLC (4386), Rhodium Encore Sub LLC (1064), Rhodium Enterprises, Inc. (6290), Rhodium Industries LLC (4771), Rhodium Ready Ventures LLC (8618), Rhodium Renewables LLC (0748), Air HPC LLC (0387), Rhodium Renewables Sub LLC (9511), Rhodium Shared Services LLC (5868) and Rhodium Technologies LLC (3973).  The mailing and service address of Debtors in these chapter 11 cases is 2617 Bissonnet Street, Suite 234, Houston, TX 77005.

[2]   Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law and order (collectively, the "Combined Order") have the meanings ascribed to them in the Plan, the Disclosure Statement or the Bankruptcy Code (each as defined herein), as applicable.  The rules of interpretation set forth in Article I.B of the Plan apply.

thereto, the "PSA") by and among the Debtors, the Special Committee, the SAFE AHG, Imperium and the Founders (collectively, the "Parties");

b. filed, on October 7, 2025, the *Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and Its Affiliated Debtors Proposed by Debtors and the Ad Hoc Group of SAFE Parties* (Docket No. 1749, as amended by Docket Nos. 1750 and 1821) (as may be amended, supplemented or otherwise modified from time to time, the "Plan") and the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation of Rhodium Encore LLC and Its Affiliated Debtors* (Docket No. 1751, as amended by Docket Nos. 1822 and 1832) (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement");

c. filed, on October 7, 2025, an amended version of the Plan (Docket No. 1750);

d. filed, on October 8, 2025, the *Emergency Motion of the Debtors and the Ad Hoc Group of SAFE Parties for Entry of an Order (A) Conditionally Approving the Adequacy of the Disclosure Statement; (B) Approving the Solicitation Procedures and Solicitation Packages; (C) Scheduling a Combined Hearing; (D) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (E) Approving the Form, Manner, and Sufficiency of the Notice of Combined Hearing; and (F) Granting Related Relief* (Docket No. 1752) (the "Disclosure Statement Motion");

e. filed, on October 16, 2025, the *Liquidation Analysis Related to the Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Rhodium Encore LLC and Its Affiliated Debtors* (Docket No. 1813-1) (the "Liquidation Analysis");

f. filed, on October 19, 2025, amended versions of the Plan (Docket No. 1821) and Disclosure Statement (Docket No. 1822);

g. filed, on October 21, 2025, an amended version of the Disclosure Statement (Docket No. 1832);

h. obtained, on October 21, 2025, entry of the *Order (A) Conditionally Approving the Adequacy of the Disclosure Statement; (B) Approving the Solicitation Procedures and Solicitation Packages; (C) Scheduling a Combined Hearing; (D) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement; (E) Approving the Form, Manner, and Sufficiency of the Notice of Combined Hearing; and (F) Granting Related Relief* (Docket No. 1834) (the "Disclosure Statement Order"), conditionally approving the Disclosure Statement and approving:

 i. the *Notice of Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of Plan Held on December 3, 2025 at 9:30 A.M. (Prevailing Central Time)* (Docket No. 1834, Ex. A) (the "Combined Notice"), which contained the date and time set for the hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing"), the deadline for filing

objections to the Plan and the Disclosure Statement and the deadline for voting on the Plan;

ii.    the *Notice of Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of Plan Held on December 3, 2025 at 9:30 A.M. (Prevailing Central Time)* (Docket No. 1834, Ex. B) (the "<u>Publication Notice</u>"), which contained the date and time set for the Combined Hearing, the deadline for filing objections to the Plan and the Disclosure Statement and the deadline for voting on the Plan;

iii.    the forms of ballots (Docket No. 1834, Ex. C) (each a "<u>Ballot</u>" and collectively, the "<u>Ballots</u>");

iv.    the *Notice of Non-Voting Status* (Docket No. 1834, Ex. D) (the "<u>Notice of Non-Voting Status and Release Opt-Out Form</u>"); and

iv.    the *Notice of (A) Executory Contracts and Unexpired Leases to Be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, If Any, and (C) Related Procedures in Connection Therewith* (Docket No. 1834, Ex. E) (the "<u>Cure Notice</u>").

i.    commenced distribution, on October 24, 2025, of (i) the Plan, (ii) the Disclosure Statement, (iii) Ballots for voting on the Plan, (iv) the Disclosure Statement Order and (v) the Combined Hearing Notice (collectively, the "<u>Solicitation Packages</u>") to certain Holders of Claims and Interests—namely Holders of the SAFE Claims in Class 6, Common Interests in Class 10 and Imperium Interests in Class 11, as of October 10, 2025, in accordance with the terms of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>");

j.    served, or caused to be served, on October 24, 2025, the Notice of Non-Voting Status and Release Opt-Out Form to certain Holders of Claims and Interests—namely Holders of the Rhodium 2.0 Secured Notes Claims in Class 1, Rhodium Encore Secured Notes Claims in Class 2, Rhodium Technologies Secured Notes Claims in Class 3, Priority Non-Tax Claims in Class 4, Guaranteed Unsecured Claims in Class 5(a), General Unsecured Claims in Class 5(b), Late Filed Claims in Class 7 and Section 510(b) Claims in Class 9, as of October 10, 2025;

k.    published, or caused to be published, on October 27, 2025, the Publication Notice in *The New York Times*, as evidenced by the *Proof of Publication* (Docket No. 1961) (the "<u>Publication Notice Certificate</u>"), consistent with the Disclosure Statement Order;

l.    filed, on November 11, 2025, the *Certificate of Service* of the Combined Notice and Solicitation Packages (Docket No. 1984) (the "<u>Combined Notice Certificate</u>" and, together with the Publication Notice Certificate, the "<u>Certificates</u>");

m.     filed, on November 19, 2025, the *Notice of Filing Plan Supplement for First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and Its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2001);

n.     reached agreement, on November 20, 2025, with the Transcend Group[3] and the Other Encore Claimants[4] on the terms of a settlement (the "Transcend Settlement") pursuant to which (i) the Transcend Group withdrew *The Transcend Group's Objection to the Solicitation and the Conditional Approval of the Disclosure Statement for Joint Chapter 11 Plan of Liquidation of Rhodium Encore LLC and its Affiliated Debtors* (Docket No. 1787) and (ii) the Transcend Group and the Other Encore Parties agreed to support the Plan pursuant to the terms of the *Settlement Stipulation* (Docket No. 2006);

o.     filed, on November 26, 2025, the *Notice of Filing Second Plan Supplement for First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2051);

p.     filed, on November 26, 2025, the *Certification of Jeffrey Miller Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Debtor Affiliates Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2050) (the "Voting Report");

q.     filed, on December 1, 2025, the *Plan Proponents' Memorandum of Law in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Rhodium Encore LLC and Its Affiliated Debtors* (Docket No. 2088) (the "Confirmation Brief");

r.     filed, on December 1, 2025, the *Declaration of David Eaton in Support of Plan Confirmation* (Docket No. 2074) (the "Eaton Declaration");

s.     filed, on December 1, 2025, the *Declaration of Mitchell Hurley in Support of Plan Confirmation*, as amended (Docket No. 2085) (the "Hurley Declaration");

t.     filed, on December 1, 2025, the *Declaration of Michael Robinson in Support of Plan Confirmation* (Docket No. 2063) (the "Robinson Declaration" and, together

---

[3]     "Transcend Group" shall mean Transcend Partners Legend Fund LLC; Valley High LP; GR Fairbairn Family Trust; Grant Fairbairn Revocable Trust; Nina Claire Fairbairn Revocable Trust; NCF Eagle Trust; GRF Tiger Trust; NC Fairbairn Family Trust; Malcolm P And Emily T Fairbairn 2021 Charitable Remainder Unitrust; Nina C Fairbairn Charitable Remainder Unitrust; Grant R Fairbairn Charitable Remainder Unitrust; Kintz Family Trust; Kingdom Trust, FBO Emily Fairbairn; Kingdom Trust FBO Malcolm Fairbairn; Malcolm Fairbairn; Emily Fairbairn; Nina Fairbairn; Grant Fairbairn; and Scott Kintz, each as members of the Transcend Group collectively, and each as a member of the Transcend Group individually.

[4]     "Other Encore Claimants" shall mean Richard Fullerton; Jerald And Melody Howe Weintraub Revocable Living Trust Dtd 02/05/98 As Amended; Wilkins-Duignan 2009 Revocable Trust; 345 Partners SPV2 LLC; and Jacob Rubin.

4

with the Eaton Declaration and the Robinson Declaration, the "<u>Confirmation Declarations</u>");

u.    filed, on December 1, 2025, the *Second Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and its Debtor Affiliates Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2062) (the "<u>Second Amended Plan</u>"); and

v.    filed, on December 2, 2025, the *Amended Notice of Filing Amended Plan Supplement for Second Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and Its Affiliated Debtors Proposed by Debtors and Ad Hoc Group of SAFE Parties* (Docket No. 2103) (as may be further amended, supplemented or otherwise modified from time to time, the "<u>Plan Supplement</u>").

The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") having:

a.    entered, on October 21, 2025, the Disclosure Statement Order;

b.    set November 21, 2025, at 5:00 p.m. prevailing Central Time as the deadline to file objections to the Disclosure Statement and the Plan (the "<u>Objection Deadline</u>");

c.    set November 21, 2025, at 5:00 p.m. prevailing Central Time as the deadline to vote on the Plan (the "<u>Voting Deadline</u>");

d.    set December 3, 2025, at 9:30 a.m. prevailing Central Time as the date and time for the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

e.    reviewed the Plan, including but not limited to the discharge, compromises, settlements, releases, exculpations and injunctions set forth in Article X of the Plan, the Disclosure Statement, the Disclosure Statement Motion, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Combined Notice, the Certificates and all filed pleadings, declarations, affidavits, certificates, exhibits, statements and comments regarding final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f.    considered the Restructuring/Liquidation Transactions incorporated and described in the Plan or Plan Supplement, as applicable;

g.    held the Combined Hearing;

h.    heard the statements and arguments made by counsel with respect to the Confirmation of the Plan and approval of the requested relief in the Disclosure Statement Motion, including the approval of the solicitation procedures

(the "<u>Solicitation Procedures</u>") and the schedule (the "<u>Confirmation Schedule</u>") set forth therein;

i.     considered all oral representations, testimony, documents, filings and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan;

j.     overruled (i) any and all objections to final approval of the Disclosure Statement and Confirmation of the Plan, except as otherwise stated or indicated on the record, and/or (ii) all statements and reservations of rights not consensually resolved, agreed to or withdrawn, unless otherwise indicated; and

k.     taken judicial notice of all pleadings and other documents filed, all orders entered and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders (the "<u>Combined Order</u>"):

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

IT IS DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

**A.**     **Findings and Conclusions**.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy

Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.** **Jurisdiction, Venue and Core Proceeding**. The Court has jurisdiction over these Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code. The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. Approval of the Disclosure Statement, including the associated Solicitation Procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code. This Court may enter a Final Order consistent with Article III of the United States Constitution.

**C.** **Eligibility for Relief**. The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code. The Plan Proponents are proper plan proponents under section 1121(a) of the Bankruptcy Code.

**D.** **Commencement and Joint Administration of these Chapter 11 Cases**. On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* (Docket No. 41), these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**E.** **Creditors' Committee**. On November 22, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors

(the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code (Docket No. 488). On June 9, 2025, the U.S. Trustee reconstituted the membership of the Creditors' Committee (Docket No. 1255).  No trustee or examiner has been appointed in these Chapter 11 Cases.

F.       **Judicial Notice**.  The Court takes judicial notice of the docket of the Chapter 11 Cases, including all pleadings and other documents filed, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

G.       **Modifications to the Plan**.  Pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Proponents proposed certain modifications to the solicitation version of the Plan, as reflected herein, in the Plan Supplement, the Settlement Stipulation and/or in the Plan filed with the Court prior to entry of this Combined Order.  The Plan Modifications constitute modifications that do not materially adversely affect the treatment of any Claim or Interest under the Plan.  The Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the Plan.  Accordingly, the Plan is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

H.       **Disclosure Statement Order**.  On October 21, 2025, the Court entered the Disclosure Statement Order, conditionally approving the Disclosure Statement and approving the

Confirmation Schedule (subject to modifications as necessary), including setting November 21, 2025, at 5:00 p.m. prevailing Central Time as the Objection Deadline and Voting Deadline.

I.     **Burden of Proof—Confirmation of the Plan**.   The Plan Proponents, as co-proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.   In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

J.     **Notice**.   As evidenced by the Certificates and the Voting Report, the Plan Proponents provided due, adequate and sufficient notice of the commencement of these Chapter 11 Cases, the Plan (and the opportunity to opt out of the Third-Party Releases), the Disclosure Statement, the Combined Hearing, the Objection Deadline, the Voting Deadline, the Plan Supplement and all of the other materials distributed by the Plan Proponents in connection with Confirmation of the Plan in compliance with the Bankruptcy Code, including sections 1125, 1126(b) and 1128 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019 and 3020(b), the Bankruptcy Local Rules and the procedures set forth in the Disclosure Statement Order.   No other or further notice is or shall be required.

K.     **Disclosure Statement**.   The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan and the transactions contemplated therein.   The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b), and the Disclosure Statement, the Plan, the Solicitation Packages and the Notice of

Non-Voting Status and Release Opt-Out Forms provided all parties in interest with sufficient notice regarding the settlement, release, exculpation and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).

**L.**  **Ballots**.

a.  The Classes of Claims and Interests entitled to vote to accept or reject the Plan (the "<u>Voting Classes</u>") are set forth below:

| Class | Designation |
|---|---|
| Class 6 | SAFE Claims |
| Class 10 | Common Interests |
| Class 11 | Imperium Interests |

b.  The Ballots the Plan Proponents used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan. As evidenced by the Voting Report, Classes 6 and 11 have voted to accept the Plan in accordance with the requirements of sections 1126 and 1129 of the Bankruptcy Code.

**M.**  **Solicitation**.

a.  As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules and any other applicable rules, laws and regulations, including the Securities Act.

b.  As described in the Voting Report and the Confirmation Declarations, as applicable, on or before October 24, 2025, the Plan Proponents caused the Solicitation Packages to be transmitted and served to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order and any applicable non-bankruptcy law. Transmission and service of the Solicitation Packages were timely, adequate and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

c.  As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim or Interest as of October 10, 2025 (the "<u>Voting Record Date</u>"). The establishment and notice of the Voting Record Date were reasonable and sufficient.

d.     The period during which the Plan Proponents solicited votes to accept or reject the Plan was a reasonable and sufficient period of time for Holders in the Voting Classes to make an informed decision to accept or reject the Plan.

e.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Rhodium Secured Notes Claims), Class 2 (Rhodium Encore Secured Notes Claims), Class 3 (Rhodium Technologies Secured Notes Claims), Class 4 (Priority Non-Tax Claims), Class 5(a) (Guaranteed Unsecured Claims), Class 5(b) (General Unsecured Claims), Class 7 (Late Filed Claims), Class 8 (Intercompany Claims), Class 9 (Section 510(b) Claims) and Class 12 (Intercompany Interests) (collectively, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to reject the Plan, and, in either event, are not entitled to vote to accept or reject the Plan. The Plan Proponents were therefore not required to solicit votes from the Non-Voting Classes. Nevertheless, the Plan Proponents served, or caused to be served, on or before October 24, 2025, on Holders in Classes 1, 2, 3, 4, 5a, 5b, 7 and 9, the Combined Notice and the Notice of Non-Voting Status and Release Opt-Out Forms. The Plan Proponents were not required to provide Holders in Classes 8 or 12 with any type of notice.

**N.     Voting**. As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement and any applicable non-bankruptcy law, rule or regulation.

**O.     Plan Supplement**. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules, and no other or further notice is required. All documents included in the Plan Supplement are integral to, part of and incorporated by reference into the Plan. Subject to the terms of the Plan and the PSA (including, for the avoidance of doubt, any consent or consultation rights set forth or incorporated therein), and only consistent therewith, the Plan Proponents reserve the right to alter, amend, update or modify, in each case in whole or in part, the Plan Supplement and any documents that are part of the Plan Supplement before the Effective Date. All parties were provided due, adequate and sufficient notice of the Plan Supplement and no further notice is required.

**P.** **Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).** The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code. In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

a. <u>Proper Classification—Sections 1122 and 1123</u>. The classification of Claims under the Plan is proper and satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into 12 Classes. Valid business, factual and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

b. <u>Specified Unimpaired Classes—Section 1123(a)(2)</u>. The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in the following Classes (the "<u>Unimpaired Classes</u>") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
|-------|-------------|
| 1 | Rhodium 2.0 Secured Notes Claims |
| 2 | Rhodium Encore Secured Notes Claims |
| 3 | Rhodium Technologies Secured Notes Claims |
| 4 | Priority Non-Tax Claims |
| 5a | Guaranteed Unsecured Claims |
| 5b | General Unsecured Claims |
| 7 | Late Filed Claims |
| 8 | Intercompany Claims |
| 9 | Section 510(b) Claims |

i. Additionally, Article II of the Plan specifies that Allowed Administrative Expense Claims, including the SAFE AHG Substantial Contribution Claim, Professional Fee Claims, Allowed Priority Tax Claims and Post-Effective Date Fees and Expenses, will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

c. <u>Specified Treatment of Impaired Classes—Section 1123(a)(3)</u>. The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "<u>Impaired Classes</u>") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|-------|-------------|
| Class 6 | SAFE Claims |
| Class 10 | Common Interests |
| Class 11 | Imperium Interests |
| Class 12 | Intercompany Interests |

d.  <u>No Discrimination—Section 1123(a)(4)</u>.  The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.  The Plan provides for the same treatment by the Debtors of each Claim or Interest in each respective Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest (including, without limitation, the agreement by the Holders of Transcend Claims to a less favorable treatment than other Claims in Class 5(b) of the Plan).

e.  <u>Adequate Means for Plan Implementation—Section 1123(a)(5)</u>.  The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.  The provisions in Article V and elsewhere in the Plan, and in the exhibits and attachments to the Plan, the Plan Supplement and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including, among other provisions: (a) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including the D&O Insurance Settlement, the Transcend Settlement and the settlement with the SAFE AHG (including the payment of the SAFE AHG Substantial Contribution Claim) (the "<u>SAFE AHG Settlement</u>" and, together with the D&O Insurance Settlement and the Transcend Settlement, the "<u>Stakeholder Settlements</u>"); (b) authorization for the Debtors and the Wind Down Debtor, as applicable, to take all actions necessary to effectuate the Plan, including those actions necessary to effectuate the Restructuring/Liquidation Transactions and any liquidation transaction steps set forth in the Plan Supplement, as the same may be modified or amended (in accordance with the terms of the Plan and the PSA, subject, in each case, to any consent rights set forth or incorporated therein) from time to time prior to the Effective Date; (c) the funding and sources of consideration for the Plan distributions, including cash on hand, the D&O Insurance Settlement and the liquidation of all Remaining Assets and Retained Causes of Action following the Effective Date; (d) the redemption of Rhodium Technologies Interests; (e) the vesting of the Remaining Assets in the Wind Down Debtor; (f) the preservation of Retained Causes of Action; (g) the cancellation of liens, security interests, and debt instruments pursuant to Article 5.5 of the Plan, except to the extent otherwise provided in the Plan; (h) the authorization and approval of corporate actions under the Plan; (i) the appointment of the Plan Administrator; and (j) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate, the transactions contemplated by the Plan.

f.  <u>Disclosure of New Directors and Officers—Section 1123(a)(7)</u>.  The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code by providing that, on the Effective Date, the authority, power and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in

their capacities as such, and the Plan Administrator shall be appointed as the sole director and the sole officer of the Wind Down Debtor and shall succeed to the powers of the Wind Down Debtor's managers, directors and officers, in accordance with the Plan Administrator Agreement, filed as Exhibit B-2 to the Plan Supplement.  Exhibit B-1 to the Plan Supplement provides the identity of the Plan Administrator.

g.      <u>Impairment / Unimpairment of Classes—Section 1123(b)(1)</u>.   The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan impairs or leaves unimpaired each Class of Claims and Interests.

h.      <u>Assumption—Section 1123(b)(2)</u>.  The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article VIII of the Plan provides for the rejection of all of the Debtors' Executory Contracts and Unexpired Leases, subject to Article 8.5 of the Plan and other than the Unexpired Leases and Executory Contracts identified on the Schedule of Assumed Contracts and as otherwise provided in Article 8.1 of the Plan, and the payment of Cure Amounts, if any, related thereto, not previously assumed, assumed and assigned or rejected during these Chapter 11 Cases under section 365 of the Bankruptcy Code.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, the Debtors' Estates, Holders of Claims and other parties in interest in the Chapter 11 Cases.  Entry of this Combined Order by the Court shall constitute approval of such assumptions, assumptions and assignments and/or rejections, as applicable, including the rejection of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

i.      <u>Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action—Section 1123(b)(3)</u>.

        i.      The Court has jurisdiction under 28 U.S.C. § 1334, and authority under 28 U.S.C. § 157, to approve the injunctions, exculpations, releases, indemnifications, discharges, settlements and compromises set forth in the Plan (including those set forth in Article X).  Sections 105(a), 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019 permit issuance of the injunctions and approval of the exculpations, releases, indemnifications, discharges, settlements and compromises set forth in the Plan (including Article X).

        ii.     The Exculpated Parties have played a meaningful role in, and significantly and tangibly contributed to, the Chapter 11 Cases and their resolution, have participated in the Chapter 11 Cases and the Debtors' restructuring in good faith and have acted in compliance with all provisions of the Bankruptcy Code, including in connection with the negotiation, preparation and pursuit of Confirmation of the Plan.  Specifically, each of the Exculpated Parties

14

owed fiduciary duties to the Debtors and their Estates and fulfilled such fiduciary duties at all times.

iii.     The Released Parties have worked diligently (both before and after the Petition Date) in connection with the Debtors' restructuring efforts, by exploring out-of-court restructuring options, preparing the Chapter 11 Cases, negotiating, formulating and seeking and obtaining Court approval of the Stakeholder Settlements, the Disclosure Statement and the Plan (including the Plan Supplement and the applicable definitive documents). Furthermore, the non-Debtor Released Parties assisted the Debtors with negotiating and developing the Plan and the transactions and settlements contemplated thereby, agreed to settle disputes and Claims, facilitated the settlement or compromise of disputes and Claims with the Debtors and other major stakeholders, or have agreed to forgo certain rights, or make certain concessions, to permit recoveries for the Estates' creditors and other stakeholders set forth in the Plan which might not otherwise have been achievable.

iv.     Accordingly, and based on the Record before the Court:

1.     each of the injunction, exculpation, release, indemnification, discharge, settlement and compromise provisions set forth in the Plan (including those set forth in Article X) are (i) the product of extensive good faith and arm's-length negotiations, (ii) fair, equitable, reasonable and appropriate under the circumstances, (iii) confers a material benefit on, and is in the best interests of, the Debtors, their Estates and their creditors, (iv) essential, integral and non-severable components of the Plan, consummation and resolution of the Chapter 11 Cases, (v) appropriately and narrowly tailored, (vi) supported by good and valuable consideration (including the Released Parties' contributions to facilitate the resolution of the Chapter 11 Cases and implementation of the Plan), (vii) granted after due notice and opportunity for hearing, (viii) consistent with the Bankruptcy Code and applicable law (including *NexPoint Advisors, L.P., et al. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 437–38 (5th Cir. 2022) and *Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P.*, 132 F.4th 353 (5th Cir. 2025)), (ix) intended to promote finality and prevent parties from circumventing or attempting to circumvent the Plan, (x) supported by the Debtors and their key stakeholders, including the Imperium, the Founders, the SAFE AHG, the Transcend Group and the Other Encore Claimants, (xi) constitute good faith compromises and settlements of the matters covered thereby, (xii) are supported by proper evidence, (xiii) contain appropriate carve outs for actions or omissions judicially determined by a Final Order to have constituted actual fraud, willful misconduct or gross negligence, (xiv) with respect to

the injunction provisions, necessary to preserve and enforce the Plan's discharge, release and exculpation provisions and (xv) are the result of a fair and valid exercise of the Debtors' business judgment;

2. the Third-Party Releases are supported by good and valuable consideration, consensual as to all relevant parties, including all Releasing Parties, and such parties (i) were provided notice of the Chapter 11 Cases, the Plan, the deadline to object to Confirmation of the Plan and the scheduled Combined Hearing, (ii) received the Combined Hearing Notice, a Ballot and/or the Notice of Non-Voting Status and Release Opt-Out Form and (iii) were properly informed that any Holder of a Claim against or Interest in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Notice of Non-Voting Status and Release Opt-Out Form or otherwise objected to the Third-Party Release, returned in advance of the Voting Deadline, would be deemed to have expressly, unconditionally, generally, individually and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Combined Hearing Notice and Notice of Non-Voting Status and Release Opt-Out Form; and

3. in consideration for the Plan distributions and other benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Causes of Action and controversies incorporated in the Plan; such compromises and settlements are fair, equitable, reasonable and are in the best interests of the Debtors, their Estates and the Holders of such Claims.

j. <u>Additional Plan Provisions—Section 1123(b)(6)</u>. The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**Q. Plan Proponents' Compliance with the Bankruptcy Code—Section 1129(a)(2).**

The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor is eligible to be a debtor under section 109 of the Bankruptcy Code and the Plan Proponents:

a. are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

16

b.      have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.      complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**R.**     **Plan Proposed in Good Faith—Section 1129(a)(3)**.  The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the PSA, the process leading to Confirmation of the Plan, and the transactions to be implemented pursuant thereto.  The Plan Proponents' good faith is evident from the facts and the record of the Chapter 11 Cases, the Plan, the Disclosure Statement, the hearing on conditional approval of the Disclosure Statement and the record of the Combined Hearing and other proceedings held in the Chapter 11 Cases.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring/Liquidating Transactions and effect an orderly liquidation and winddown of their operations to maximize value for the benefit of all stakeholders.  The Plan (including the Plan Supplement and all other documents necessary to effectuate the Plan) was negotiated in good faith and at arm's-length among the Parties, and the compromises and settlements embodied in the Plan are reasonable given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases.  Further, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections

105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129 and 1142 of the Bankruptcy Code, are each integral to the Plan and are necessary for the Debtors' successful reorganization.

       **S.**      **Payment for Services or Costs and Expenses—Section 1129(a)(4)**.   The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

       **T.**      **Directors, Officers and Insiders—Section 1129(a)(5)**.  Article 5.6 of the Plan provides that the post-Effective Date management of the Wind Down Debtor will be directed by the Plan Administrator, whose identity was disclosed in the Plan Supplement, and in accordance with the Plan Administrator Agreement.  Accordingly, the Plan Proponents have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

       **U.**      **No Rate Changes—Section 1129(a)(6)**.  Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

       **V.**      **Best Interest of Creditors—Section 1129(a)(7)**.   The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis attached to the Disclosure Statement as Exhibit C, the Robinson Declaration, and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to or in connection with the Combined Hearing:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as

much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

       **W.**    **Acceptance by Certain Classes—Section 1129(a)(8)**.  The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code.  Classes 1, 2, 3, 4, 5a, 5b, 7, 8 and 9 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Classes 6 and 11 voted to accept the Plan.  Holders of Intercompany Interests in Class 12 are Impaired and deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.  Holders of Claims in Class 10, however, voted to reject the Plan.  Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

       **X.**    **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9)**.  The treatment of Administrative Expense Claims, including the SAFE AHG Substantial Contribution Claim, Professional Fee Claims, Priority Tax Claims and Post-Effective Date Fees and Expenses under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

       **Y.**    **Acceptance by at Least One Impaired Class—Section 1129(a)(10)**.  The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Report, Class 6, which is Impaired, voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

       **Z.**    **Feasibility—Section 1129(a)(11)**.  The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The information contained in the Disclosure Statement, the

Liquidation Analysis and the other evidence presented, proffered or adduced at the Combined Hearing, including the Robinson Declaration, (i) are persuasive and credible, (ii) have not been controverted by any evidence and (iii) establish that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down and liquidation of the Debtors' Estates, as contemplated by the Plan.

AA.     **Payment of Fees—Section 1129(a)(12)**.  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article 12.1 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

BB.     **Non-Applicability of Certain Sections—Sections 1129(a)(13), (14), (15) and (16)**.  Sections 1129(a)(13), (14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors have no obligations to pay retiree benefits, owe no domestic support obligations, are not individuals and are not nonprofit corporations.

CC.     **"Cram Down" Requirements—Section 1129(b)**.  The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that Class 12 has been deemed to reject the Plan and Class 10 has voted to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  *First*, all of the applicable requirements of section 1129(a) of the Bankruptcy Code other than of section 1129(a)(8) of the Bankruptcy Code have been met.  *Second*, the Plan is fair and equitable with respect to the Classes 10 and 12.  The Plan has been proposed in good faith, is reasonable and meets the requirements that (a) no Holder of any Claim or Interest that is junior to such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Class is receiving more than 100 percent recovery on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable to all Holders of Claims and

Interests in Classes 10 and 12. *Third*, the Plan does not discriminate unfairly with respect to Classes 10 and 12 because similarly situated creditors will receive substantially similar treatment on account of their Claim or Interest irrespective of Class. Holders of SAFE Claims and Imperium Interests voted to accept the Plan in sufficient number and in sufficient amount to constitute accepting classes under the Bankruptcy Code. Therefore, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code and can be confirmed.

      **DD.**    **Only One Plan—Section 1129(c)**. The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

      **EE.**    **Principal Purpose of the Plan—Section 1129(d)**. The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

      **FF.**    **Small Business Case—Section 1129(e)**. None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

      **GG.**    **Good Faith Solicitation—Section 1125(e)**. The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, the Solicitation Packages, the hearing to conditionally approve the Disclosure Statement, the record of the Combined Hearing, the Confirmation Declarations, the Voting Report, the Certificates and testimony submitted to the Court and other proceedings held in the Chapter 11 Cases. The Plan Proponents have proposed the Plan with the legitimate and honest purpose of maximizing the value of each of the Debtors' Estates for the benefit of the Debtors' stakeholders. Accordingly, the Plan Proponents have been, are and will continue to act in good faith if they proceed to: (i) consummate

the Plan, the Plan Supplement and the agreements, settlements, transactions and transfers contemplated thereby; and (ii) take the actions authorized and directed or contemplated by this Combined Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the Plan Proponents have acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

HH.     **Satisfaction of Confirmation Requirements**.  Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

II.     **Likelihood of Satisfaction of Conditions Precedent to the Effective Date**.  Each of the conditions precedent to the Effective Date, as set forth in Article 9.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article 9.4 of the Plan.

JJ.     **Substantial Contribution of SAFE AHG**.  As demonstrated by the testimony and other evidence presented to the Court, the SAFE AHG has made a substantial contribution to the Debtors' Estates within the meaning of section 503(b)(3)(D) of the Bankruptcy Code, including, but not limited to, its leading role in identifying and negotiating the Whinstone Settlement, which resulted in liquid proceeds for the Debtors' Estates in excess of $185 million; the investigation of claims and causes of actions against the Founders, and advocacy for the merits of those claims with the Debtors, the Court and others; its negotiation of and consent to settlements with the Founders embodied in the Plan, which increased value for distribution to other stakeholders by at least $13 million compared to a prior proposed plan, cut off litigation that would have cost the Debtors' Estates millions in professional fees, and allowed for the possibility of recoveries to stakeholders junior to holders of SAFE Claims; ensuring the allocation of the Debtors' assets to its creditors in accordance with the requirements of section 1129 of the Bankruptcy Code; negotiating and consenting to the settlements with the Transcend Group and Other Encore

22

Claimants that saved millions of dollars in legal fees to the Debtors' Estates; and playing a leadership role that ordinarily would be expected of a statutory committee, including during periods before the Creditors' Committee was appointed, before holders of SAFE Claims were recognized in these cases as creditors, and after noteholders and a majority of other stakeholders recognized as creditors were nearly certain to be paid in full due to the Whinstone Settlement; the SAFE AHG Substantial Contribution Claim is reasonable and commensurate with the benefit the SAFE AHG conferred on the Debtors' Estates through its participation in these Chapter 11 Cases; and the SAFE AHG is entitled to the allowance of the SAFE AHG Substantial Contribution Claim in the amount of $8.5 million as an Administrative Expense Claim under section 503(b)(4) of the Bankruptcy Code for reasonable compensation for professionals services rendered and expenses incurred by Akin Gump Strauss Hauer & Feld LLP on behalf of the SAFE AHG in connection with its substantial contribution in these Chapter 11 Cases.

KK. **Implementation**. All documents and agreements necessary to implement the Plan, including the definitive documents, and all other relevant and necessary documents have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors and shall, upon completion of documentation and execution, be valid, binding and enforceable documents and agreements not in conflict with any federal, state or local law. Consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests. The Debtors have exercised reasonable

business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

LL.    **Disclosure of Facts**.  The Plan Proponents have disclosed all material facts regarding the Plan, including with respect to consummation of the Restructuring/Liquidation Transactions.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.    **Disclosure Statement**.  The Disclosure Statement is approved in all respects on a final basis.

2.    **Solicitation**.  The solicitation complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and complied with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

3.    **Confirmation of the Plan**.  The Plan, as modified by the Combined Order, is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement (including any supplements, amendments or modifications thereof in accordance with this Combined Order and the Plan), are incorporated by reference into and are an integral part of this Combined Order.

4.    **Objections**.  All parties have had a full and fair opportunity to be heard on all issues raised by the objections to Confirmation of the Plan or approval of the Disclosure Statement.  All objections and all reservations of rights pertaining to Confirmation of the Plan or final approval of the Disclosure Statement, whether formal or informal, that have not been withdrawn, waived or settled are hereby **OVERRULED** on the merits and **DENIED**.  All objections to Confirmation of the Plan not filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Court.  All parties have had a full and fair opportunity to litigate all issues

raised or that might have been raised in the objections to final approval of the Disclosure Statement and Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon provisions as set forth in this Combined Order.

5.    **Resolution of Objections**.

(i)    **Resolution of Caleb VanZoeren Objection (Docket No. 2011)**.  In full and final satisfaction of all amounts due and owing by the Debtors to Caleb VanZoeren, the Debtors or the Winddown Debtor, as applicable, shall pay Caleb VanZoeren a single payment of $265,000 in accordance with section 8.5 of the Plan on the Effective Date or as soon thereafter as practical.  For the avoidance of doubt, such payment is conditioned upon Mr. VanZoeren executing, and not revoking, the release, as provided for in section 8.5 of the Plan.

(ii)    **Potential Resolution of Lehotsky Keller Cohn LLP's Limited Objection (Docket No. 2010)**.

(1)    Plan Proponents' Proposed Language: (For the avoidance of doubt, any potential claims or causes of action of Lehotsky Keller Cohn LLP ("LKC") that arose after the Petition Date related to the March 2025 Engagement Letter approved in the Order Granting Debtors' Application for an Updated Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel (Docket No. 1418) or LKC's Success Fee (as defined in the Second and Final Application for Payment of Compensation and Reimbursement of Expenses for the Period August 28 through June 30, 2025 (Docket No. 1560–61)) against (i) counsel to the Debtors or (ii) counsel to the Special Committee are not barred by the Plan or the Confirmation Order, including, without limitation, the release and exculpation provisions of Article X of the Plan.  For the avoidance of doubt, LKC is not a "Releasing Party" as defined in the Plan.)

(2)    LKC's Proposed Language: (LKC is not a "Releasing Party" and, notwithstanding anything in the Plan to the contrary (including but not limited to section 10.6 of the Plan), no claims of LKC related to the LKC engagement, the LKC Success Fee, or the Special Committee's motions, actions, and claims related to LKC are released under the Plan or Confirmation Order and such claims are fully preserved.)

6.    **Plan Modifications**.  Subsequent to the filing of the solicitation version of the Plan on October 19, 2025, the Plan Proponents made certain technical modifications to the Plan (the

"Plan Modifications"). The Plan Modifications are reflected in the Second Amended Plan. The Plan Modifications do not materially adversely affect the treatment of any Claim or Interest under the Plan. After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan Proponents provided due and sufficient notice of the Plan Modifications under the circumstances. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

7.    **Acceptance of Plan**.  In accordance with section 1126 of the Bankruptcy Code and Bankruptcy Rule 3019, over two-thirds in dollar amount and one-half in number of Holders of SAFE Claims and Imperium Interests voted to accept the Plan and all Holders of Claims and Interests, as applicable, who are conclusively presumed to accept the Plan, including Holders of Rhodium 2.0 Secured Notes Claims, Rhodium Encore Secured Notes Claims, Rhodium Technologies Secured Notes Claims, Priority Non-Tax Claims, Guaranteed Unsecured Claims, General Unsecured Claims, Late Filed Claims, Intercompany Claims and Section 510(b) Claims, are deemed to have accepted the Plan.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

8.    **No Action Required**.  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers or

members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan, the Restructuring/Liquidating Transactions (subject, in each case, to any consent rights set forth or incorporated in the PSA and the Plan) and any contract, assignment, certificate, instrument or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan, including the Plan Supplement, and the PSA.

9.      **Binding Effect**.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Wind Down Debtor, any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

10.     **Incorporation by Reference**.  The terms and provisions of the Plan, the definitive documents, all other relevant and necessary documents and each of the foregoing's schedules and exhibits are, on and after the Effective Date, incorporated herein by reference and are an integral part of this Combined Order.

11.     **Vesting of Assets in the Wind Down Debtor**.  Except as otherwise provided in the Plan, this Combined Order or any agreement, instrument or other document incorporated herein, on the Effective Date, all Remaining Assets and Retained Causes of Action, including any property acquired by the Debtors under or in connection with the Plan, shall vest in the Wind Down Debtor, free and clear of all Liens, Claims, charges or other interests or encumbrances. From and after the Effective Date, except as otherwise provided in the Plan, this Combined Order

or any agreement, instrument or other document incorporated herein, the Wind Down Debtor shall promptly liquidate all of the Remaining Assets and Retained Causes of Action.

12.    **Cancellation of Existing Agreements and Interests**.  On the Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments, and certificates evidencing debt of the Debtors will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except for the purpose of allowing the applicable Persons to receive distributions under the Plan and make any further distributions to the applicable Holders on account of their Allowed Claims and Interests.

13.    **Release of Liens**.  After the Effective Date, the Debtors (or the Wind Down Debtor), at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges and other security interests including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy or release any mortgages, deeds of trust, Liens, pledges and other security interests held by the Holders of Claims or Interests including, without limitation, UCC-3 termination statements, in accordance with the Plan.

14.    **Effectiveness of All Actions**.  All actions contemplated by the Plan, the Plan Supplement, the PSA and the definitive documents, as the same may be modified from time to time prior to the Effective Date subject, in each case, to the consent rights set forth or incorporated therein, are hereby effective and authorized to be taken on, prior to or after the Effective Date, as applicable, under this Combined Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members or equity holders of the Debtors or the Wind Down Debtor and with the effect that such actions had been taken by the

unanimous action, consent, approval and vote each of such officers, directors, managers, members or equity holders.

15. **Restructuring/Liquidation Transactions**.  After the Confirmation Date, the Debtors or Wind Down Debtor, as applicable, are authorized to enter into and effectuate the Restructuring/Liquidation Transactions, including the entry into and consummation of the transactions contemplated by the PSA, the Plan and/or the definitive documents (including, for the avoidance of doubt, the Plan Supplement), as the same may be modified from time to time prior to the Effective Date, subject, in each case, to the consent rights set forth or incorporated therein, and authorized to enter into any transactions necessary or desirable to effectuate the Restructuring/Liquidation Transactions and the corporate structure of the Wind Down Debtor, in each case pursuant to this Combined Order and applicable bankruptcy law.

16. **Distributions**.  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.

17. **Compromise of Controversies**.  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved under the Plan, and the entry of this Combined Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

18. **Preservation of Causes of Action**.  Unless any Causes of Action are expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order entered by this Court including, without limitation, this Combined Order, the Wind Down Debtor shall have, retain, reserve and be entitled to assert and may enforce all rights to commence and pursue, as appropriate, any and all claims or Retained Causes of Action, whether arising before or after the

Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  For the avoidance of doubt, Retained Causes of Action shall not be released pursuant to section 10.5(a) of the Plan.

19.    **Assumption and Assignment of Contracts and Leases**.  On the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected, unless such Executory Contract and Unexpired Lease:  (1) was previously assumed or rejected by the Debtors, pursuant to a Final Order of the Court, (2) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (3) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date or (4) is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Contracts, without the need for any further notice to or action, order or approval of the Court, under section 365 of the Bankruptcy Code and the payment of Cure Amounts, if any, shall be paid in accordance with Article 8.2 of the Plan.  Any assumed Executory Contracts and Unexpired Leases shall vest in the Wind Down Debtor.  Each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests.   Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority or amount of any Claims that may arise in connection therewith.

20.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article VIII of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption and assignment, as applicable, of such Executory Contracts and Unexpired Leases as set forth in Article 8.8 of the Plan) shall be, and hereby are, approved in their entirety.

21.     Nothing in this Combined Order or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

22.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure Amount pursuant to Article 8.2 of the Plan shall result in the full release and satisfaction of any Cure Amounts, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Combined Order, and for which any Cure Amount has been fully paid pursuant to Article 8.2 of the Plan, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order or approval of the Court.

23.     For the avoidance of doubt, to the extent an Executory Contract or an Unexpired Lease is assumed pursuant to section 365 of the Bankruptcy Code, any agreement with a Debtor guaranteeing performance under such Executory Contract or Unexpired Lease shall also be assumed in connection with the assumption of such Executory Contract or Unexpired Lease.

24.     All Claims for damages resulting from the rejection of an Executory Contract or Unexpired Lease shall be asserted in accordance with Article 8.3 of the Plan and shall be treated as General Unsecured Claims, as applicable, pursuant to Article 4.6 of the Plan and may be objected to in accordance with the provisions of Article 7.2 of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

25.     **Exemption from Transfer Tax and Recording Fees**.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind Down Debtor or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, reinstatement, distribution, transfer or exchange of any debt, Equity Security or other interest in the Debtors or the Wind Down Debtor; (2) the Restructuring/Liquidation Transactions; (3) the creation, modification, consolidation, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment or recording of any lease or sublease; or (5) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and upon entry of this Combined Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental

assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

26.    **Authorization to Consummate**. The Debtors are authorized to consummate the Plan, solely in accordance with the terms thereof (including any consent rights set forth or incorporated therein) after the entry of this Combined Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in Article IX of the Plan.

27.    **Professional Compensation**. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. The Wind Down Debtor shall pay Professional Fee Claims in Cash in the amount the Court allows, including from the Professional Fee Escrow, which the Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Claims Estimate as soon as reasonably practicable after the Confirmation Date. No funds in the Professional Fee Escrow Account shall be considered property of the Debtors' Estates or the Wind Down Debtor. When all Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow shall revert to the Wind Down Debtor and shall become Distributable Cash without any further action or order of the Court.

28.    **Payment of Statutory Fees**.  All fees due and payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  On and after the Effective Date, the Wind Down Debtor or any Disbursing Agent shall pay any and all such fees in full in Cash when due and payable and shall File with the Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.

29.    **Payment of SAFE AHG Substantial Contribution Claim**.  The SAFE AHG Substantial Contribution Claim is approved in its entirety and Allowed as an Administrative Expense.  Pursuant to section 5.13 of the Plan, the Debtors or the Wind Down Debtor, as appropriate, are authorized and directed to pay $6.0 million of the SAFE AHG Substantial Contribution Claim directly to the SAFE AHG on or as soon as practicable after the Effective Date.  The remaining $2.5 million of the SAFE AHG Substantial Contribution Claim shall be deposited into a segregated account controlled by the Plan Administrator and shall be distributed in accordance with sections 5.13(c) and (d) of the Plan.

30.    **Post-Effective Date Fees and Expenses**.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Wind Down Debtor shall, in the ordinary course of business and without any further notice to or action, order or approval of the Court, pay in Cash all reasonable legal, professional or other fees and expenses related to implementation of the Plan incurred by the Debtors or the Wind Down Debtor, as applicable.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363 and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Wind Down Debtor may employ any Professional in the ordinary course of business without any further notice to or action, order or approval of the Court.

31.     **Release, Exculpation, Discharge and Injunction Provisions**.   The release, exculpation, discharge and injunction provisions embodied in the Plan, including those contained in Article 10.4-7 of the Plan, are hereby approved and authorized in their entirety and shall be effective and binding on all Persons and Entities, to the extent provided in the Plan, without further order or action by this Court.

32.     **SAFE AHG Settlement**.   The terms of the SAFE AHG Settlement, as embodied in the Plan, are approved in all respects.   The SAFE AHG Settlement satisfies all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, including section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

33.     The parties to the SAFE AHG Settlement are hereby authorized and directed to effectuate the SAFE AHG Settlement, including payment of the SAFE Substantial Contribution Claim, consistent with the Plan, and the Debtors and the Wind Down Debtor, as applicable, are authorized to enter into, perform, execute and deliver all documents and take all actions necessary to immediately continue and fully implement the SAFE AHG Settlement in accordance with the terms and conditions set forth in the Plan, all of which are hereby approved.

34.     **D&O Insurance Settlement**.   The terms of the D&O Insurance Settlement, as embodied in the Plan and the D&O Insurance Term Sheet[5], are approved in all respects.   The D&O Insurance Settlement satisfies all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, including section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

35.     The parties to the D&O Insurance Settlement are hereby authorized and directed to effectuate the D&O Insurance Settlement, consistent with the Plan and the D&O Insurance Term

---

[5]   The "D&O Insurance Term Sheet" means that certain Illustrative Summary of Principal Terms for Settlement of Rhodium D&O Claims entered into by and between the Founders, the Debtors and certain insurance carriers providing directors and officers insurance as well as corporate liability insurance to the Debtors and the current and former directors and officers of the Debtors, as identified on Exhibit A of the D&O Insurance Term Sheet.

Sheet, and the Debtors and the Wind Down Debtor, as applicable, are authorized to enter into, perform, execute and deliver all documents and take all actions necessary to immediately continue and fully implement the D&O Insurance Settlement in accordance with the terms and conditions set forth in the Plan and the D&O Insurance Term Sheet, all of which are hereby approved.

36.    **Transcend Settlement**.    The terms of each of the Transcend Settlement, as embodied in the Plan and the Settlement Stipulation, are approved in all respects.    As set forth in the Plan, the Transcend Claim shall be Allowed as a Class 5(b) General Unsecured Claim in the amount of $10 million.[6]    Such Claim is expressly subordinated to payment of the SAFE Claims (and, for the avoidance of doubt, the SAFE AHG Substantial Contribution Claim).    The treatment of the Transcend Claim and the distributions thereon are subject to the terms of section 5.13 of the Plan.

37.    All Claims against or Interests in the Debtors held or asserted by the Transcend Group against the Debtors other than the Transcend Claim Allowed pursuant to section 5.13(a) of the Plan shall be Disallowed by operation of the Plan.    Neither the Transcend Group nor any individual member thereof shall be entitled to receive any Distributions under the Plan other than on account of the Transcend Claim Allowed pursuant to section 5.13(a) of the Plan; provided, however, that the Transcend Group, and the individual members thereof, shall be entitled to retain any and all amounts previously paid or otherwise disbursed to the Transcend Group in accordance with any proof of claim filed thereby.

38.    Nothing in the Plan shall affect any right of the Transcend Group to recover amounts from the Founders and/or Imperium in the adversary proceeding styled *345 Partners*

---

[6]    The Settlement Stipulation inadvertently provided for the allowance of the Transcend Claim in Class 6.    For the avoidance of doubt the parties intended and this Court orders that the Transcend Claim shall be allowed in Class 5(b).

*SPV2 LLC, et al. v. Nathan Nichols, et al.*, Adv. No 25-03413, currently pending in the Bankruptcy Court.

39.     The Transcend Settlement and Settlement Stipulation satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, including section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

40.     The parties to the Transcend Settlement and Settlement Stipulation are hereby authorized and directed to effectuate the Transcend Settlement, consistent with the Plan and the Settlement Stipulation, and the Debtors and the Wind Down Debtor, as applicable, are authorized to enter into, perform, execute and deliver all documents and take all actions necessary to immediately continue and fully implement the Transcend Settlement in accordance with the terms and conditions set forth in the Plan and Settlement Stipulation, all of which are hereby approved.

41.     **Conditions Precedent to Effective Date**.  The Plan shall not become effective unless and until all conditions set forth in Article 9.1 of the Plan have been satisfied or waived in accordance with Article 9.3 of the Plan.

42.     **Dissolution of Creditors' Committee**.  On the Effective Date, and absent pending appeal of this Order, the Creditors' Committee shall be dissolved in accordance with Article 12.17 of the Plan, subject in all cases to the rights set forth therein, and the engagement of each Professional retained by the Creditors' Committee shall be terminated except with respect to respect to (a) final fee applications of the Professionals asserting Professional Fee Claims, including any appeals in connection therewith, or (b) for purposes of participating in any appeals of this Order as set forth in and in accordance with Article 12.17 of the Plan.

43.     **Governmental Approvals Not Required**.  Except as otherwise specifically provided herein, this Combined Order shall constitute all approvals and consents required, if any,

by the laws, rules or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments or agreements and any amendments or modifications thereto and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

44.     **Compliance with Tax Requirements**.  In connection with the Plan, to the extent applicable, the Wind Down Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Wind Down Debtor and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Wind Down Debtor reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and encumbrances.

45.     **Documents, Mortgages and Instruments**.  Each federal, state, commonwealth, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the Plan, including the Restructuring/Liquidation Transactions and this Combined Order.

46.     **Continued Effect of Stays and Injunction**.  Unless otherwise provided in the Plan or in this Combined Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court and extant on the

Confirmation Date (excluding any injunctions or stays contained in the Plan or the Combined Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Combined Order shall remain in full force and effect in accordance with their terms.

47. **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (c) nonseverable and mutually dependent.

48. **Post-Confirmation Modifications**.  Without need for further order or authorization of the Court, the Plan Proponents are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to the consent rights contained in each of the Plan and the PSA).  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the PSA, the Plan Proponents expressly reserve their respective rights to revoke or withdraw or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Combined Order, in such manner as may be necessary to carry out the purposes and intent of the Plan (subject to the consent rights contained or incorporated in each of the Plan and the PSA). Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article 12.5 of the Plan.

49.     **Applicable Non-bankruptcy Law**.  The provisions of this Combined Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

50.     **Notices of Confirmation and Effective Date**.  The Plan Proponents shall serve notice of entry of this Combined Order in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Interests within ten Business Days after the date of entry of this Combined Order.  As soon as reasonably practicable after the Effective Date, the Plan Proponents shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

51.     **Failure of Consummation**.  Notwithstanding the entry of this Combined Order, if consummation does not occur, (a) the Plan shall be null and void in all respects; (b) any assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by the Debtors, Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests or any other Entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders of Claims or Interests or any other Entity.

52.     **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

53.     **Waiver of Stay**.  For good cause shown, the stay of this Combined Order provided by any Bankruptcy Rule or Bankruptcy Local Rule is waived, and this Combined Order shall be effective and enforceable immediately upon its entry by the Court.

54.     **References to and Omissions of Plan Provisions**.  References to articles, sections and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure specifically to include or to refer to any particular article, section or provision of the Plan or the Plan Supplement in this Combined Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that the Plan and any related documents be confirmed and approved in their entirety, except as expressly modified herein, and incorporated herein by this reference.

55.     **Plan Supplement**.  Notwithstanding anything to the contrary herein, (a) the Plan Supplement that has been filed as of the date of entry of this Combined Order include certain documents that have not been determined to be acceptable or reasonably acceptable, as the case may be, to the Plan Proponents or other parties with applicable consent rights under the Plan or the PSA, (b) certain documents included in the Plan Supplement remain subject to further negotiation and are subject to the consent rights set forth in the Plan or the PSA and (c) as a requirement for satisfaction of the condition precedent in Article 9.1(e) of the Plan, the Plan Supplement will be amended and supplemented with documents that meet the consent rights set forth in the Plan or the PSA prior to the occurrence of the Effective Date and subject to the milestones in the PSA.

56.     **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the period from entry of this Combined Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the

Court as provided under the Bankruptcy Code, the Bankruptcy Rules, this Combined Order and any Final Order of the Court and in accordance with the terms of the Plan, the PSA and other applicable definitive documents.

57.     **Headings**.  Headings utilized herein are for convenience and reference only and do not constitute a part of the Plan or this Combined Order for any other purpose.

58.     **Effect of Conflict**.  This Combined Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Combined Order.  If there is any inconsistency between the terms of the Plan (other than with respect to any consent rights set forth or incorporated therein) and the terms of this Combined Order, the terms of this Combined Order govern and control.

59.     **Final Order**.  This Combined Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

60.     **Retention of Jurisdiction**.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article 10.8 of the Plan and section 1142 of the Bankruptcy Code.

**Signed:  December \_\_\_\_, 2025**

_____
**ALFREDO R. PÉREZ**
**UNITED STATES BANKRUPTCY JUDGE**

## Exhibit A

**Plan**

(*Intentionally omitted*)